Magistrate Judge Nathanael Cousins
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

Re:     *Emblaze Ltd. v. Apple Inc., 4:11-CV-01079-SBA (NC)*  **Joint Letter Brief** via ECF

Dear Magistrate Judge Cousins:

Defendant Apple Inc. ("Apple") seeks an order compelling Plaintiff Emblaze Ltd. ("Emblaze") to provide a full and complete response to Apple's Revised Interrogatory No. 9, and to produce documents responsive to Apple's First Set of Requests for Production ("First RFPs") Nos. 3, 6-8, 10-14, 16-20, 21-22, 24, 26, 34, 48-51, 53, 56, 74-75, 77, and 80; Apple's Second Set of Requests for Production ("Second RFPs") Nos. 1-6,[1] and Apple's First Set of Requests for Admission ("RFAs") Nos. 1-11.  In compliance with your February 10, 2012 civil standing order, the parties respectfully submit this joint letter brief.

The parties have engaged in two telephonic meet and confers[2] and exchanged a total of eight letters in a good faith effort to resolve their discovery disputes without court action.  While the parties have had some success in eliminating or narrowing their disputes, they have been unable to resolve issues concerning more than forty of Apple's discovery requests, organized below into eight categories.

**I. Documents concerning the preparation and prosecution of two Emblaze Patents incorporated by reference throughout, and co-pending with, the Patent-in-Suit,[3] responsive to Apple's First RFPs 50, 51, 74, 75, 77, and 80, and a full response to Interrogatory No. 9.**

Unresolved Issue: Emblaze objects to producing any documents on grounds of relevancy.

Summary of Apple's Position:  Patents incorporated-by-reference into the Suit Patent are effectively part of the host patent, "as if it were explicitly contained therein." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).  The incorporated patents are relied upon in the specification of the Suit Patent as describing preferred embodiments of the alleged invention and therefore necessarily are intended to support the scope of the asserted claims.  The '230 and '432 Patents are plainly relevant to the claims and defenses of this litigation and are expected to lead to information regarding the invention of, and the scope or interpretation of the claims at issue.  Further, Apple is entitled to explore its defense of inequitable conduct by requesting, as it has in Revised Interrogatory No. 9, that Emblaze set forth the factual basis underlying the statements submitted to the USPTO that the filings leading to the '230 Patent were made by a small entity. The '230 Patent was a co-pending application that lists four of the same named inventors as the Suit Patent, as such, statements made to the USPTO pursuant to that application may lead to discoverable information relevant to Apple's defense of inequitable conduct.  *See e.g., Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139 (Fed. Cir. 2003) (inappropriate payment of small entity fees rather than large will support a finding of inequitable conduct where clear and convincing evidence demonstrates a patentee's intent to deceive the PTO).

Summary of Emblaze's Position:  Apple states that patents referred to in the Suit Patent are "plainly relevant to the claims and defenses of this litigation."  Yet, the referenced requests are impermissibly overbroad, seeking all documents relating to the conception and development of the inventions underlying

---

[1] Apple does not expect Emblaze to produce documents or other work product subject to either the work product privilege or attorney client privilege, but does expect that any document properly withheld be included on a privilege log.

[2] Lead counsel for Apple Inc. and Emblaze Ltd. are located in New York City.

[3] The Patent-in-Suit is U.S. Patent No. 6,389,473 (the "'473 Patent" or "Suit Patent" or "Patent-in-Suit"), and the two patents incorporated-by-reference in the Patent-in-Suit are: United States Patent No. 6,397,230 ("'230 Patent") and United States Patent No. 5,841,432 ("'432 Patent").

- 1 -

these other patent applications (Request No. 51), all prosecution documents from the U.S. or foreign patent offices on these two patents (Request No. 50), any documents that "refer" to these other patents (Request Nos. 74-75), and any software "related to or embodying the technology" of these other patents. This is not seeking documents that might lead to admissible evidence; it is creating a collateral litigation on patents not at issue in this lawsuit.  The only relevance of the incorporated patents is what they disclose; and that is apparent from the patents themselves.  The validity and infringement of the incorporated patents are not in issue.  Nor is inequitable conduct with respect to these other patents.  Emblaze's objection should be upheld.

**II.  Documents concerning any Apple product believed by Emblaze to be covered by the Suit Patent or any Emblaze patent incorporated by reference therein, responsive to the First RFP 24.**

Unresolved Issue: Emblaze proposes to modify the request to production of documents "concerning any Apple product believed by Emblaze to be covered by the Patent-in-Suit."

Summary of Apple's Position:   Apple significantly narrowed its request for all documents concerning Apple to only those documents concerning Apple products believed by Emblaze to be covered by the Suit Patent and any Emblaze patent incorporated-by-reference therein.  The patents incorporated by reference teach methodologies central to the core activity of the '473 Patent.  Documents responsive to Apple's modified request are reasonably calculated to lead to information regarding the scope or interpretation of the claims at issue, and infringing activity at the heart of this patent litigation.  Finally, Apple seeks documents responsive to the first RFP 24 to the extent such documents exist and does not, as Emblaze contends, expect Emblaze to undertake an effort to analyze Apple products against the patents incorporated-by-reference in the Suit Patent and then produce responsive documents.

Summary of Emblaze's Position:  Emblaze's proposed modification of Request No. 24 will result in Emblaze producing documents concerning any Apple product believed by Emblaze to be covered by the '473 patent, *i.e.,* documents concerning the subject matter of this lawsuit.  Apple, however, seeks to have Emblaze analyze the two other patents referenced in the '473 patent, determine which Apple products, if any, infringe those patents, and then produce documents concerning those products.  This request is overly broad, and seeks documents on matters not at issue in the present litigation as Emblaze has not accused Apple of infringing the incorporated patents.  Emblaze's limitation of the Request to the Suit Patent should be adopted.

**III.  Documents concerning the preparation and prosecution of any patent application that claims priority from the application leading to the issuance of the Suit Patent responsive to the First RFP 49.**

Unresolved Issue: The Suit Patent claims priority to Israeli Patent No. 123,819.  Emblaze will only agree to produce "all documents filed in, or transmitted to or from, the USPTO or any foreign patent office in connection with any patent application that claims priority from the application leading to issuance of the Patent-in-Suit."

Summary of Apple's Position:  The patent application for a patent identified as Foreign Application Priority Data is part of the prosecution history of the Suit Patent and is unquestionably expected to lead to the discovery of relevant evidence.  *See e.g., Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1290 (Fed. Cir. 2009); *Regal Electronics, Inc. v. Pulse Eng'g, Inc.*, No. 5:03CV1296JWRS, 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005) (compelling production of *all* documents not protected by the attorney-client privilege that refer or relate to preparation and/or prosecution of any foreign patent application related to or claiming priority from a patent application that led to the Suit Patent).  Apple is advised that Emblaze's US patent law firm destroyed all Emblaze patent files shortly before this lawsuit was instituted.  Although Emblaze claims that the destruction "would have been part of a routine document destruction policy" the issue of the destruction of these documents is still subject to discovery (Apple has not yet taken the appropriate third party depositions) and, in any event, Emblaze has advised Apple that the law firm responsible for the destruction has no formal firm-wide policies regarding document destruction.  The

Suit Patent has more inventors and contains more subject matter than that contained in the Israeli priority patent. The information sought is highly relevant to the issues of inventorship, ownership, Emblaze's priority claim and possible inequitable conduct, and can be obtained no other way.

Summary of Emblaze's Position: Here, too, Apple seeks to turn discovery into a fishing expedition. Emblaze has indicated that, with respect to Request No. 49, it would agree to produce any documents filed in, or transmitted to or from, the USPTO or any foreign office patent office in connection with any patent application claiming priority from the patent-in-suit. Apple has stood by its initial Request, however, which seeks "*[a]ll documents and things that refer or relate to* the preparation and prosecution of any patent application that claims priority from the applications leading to the issuance of the Patent-in-Suit." This Request is vague and overbroad, and goes well beyond what is necessary to investigate the prosecution history of foreign application priority data. As for the reference to the destruction of files by Emblaze's patent prosecution counsel, any such destruction would have been part of routine document destruction and does not change the analysis. Emblaze's proposed modification should be adopted.

**IV. Documents responsive to discovery requests containing the language: "the technology described and claimed in the Patent-in-Suit" responsive to the First RFPs 3, 6-8, 10-14, 21, 34, 56, 80**.

Unresolved Issue: Notwithstanding the use of the same language in its Complaint, Emblaze seeks to narrow discovery including the language, "technology described and claimed in the Patent-in-Suit" to be limited to the "claims of the Patent-in-Suit."

Summary of Apple's Position: To address Emblaze's relevance and overbreadth arguments, Apple revised the language of its initial RFPs to adopt the language of Emblaze's own Complaint, *i.e.* to seek information related to "the technology described and claimed in the Patent-in-Suit". Apple submits that since the claims of the '473 Patent have not yet been construed there is no reasonable way for Emblaze to impose its proposed limitation, nor has Emblaze provided any explanation. Emblaze's limitation threatens to deprive Apple of relevant discoverable information. *See, e.g., Regal Electronics*, 2005 WL 3078983, at *3 (in the face of plaintiff's relevance objection, Judge Seeborg compelled production of all prior art known to Regal *relating to the subject matter disclosed or claimed in the patent-in-suit*.") (emphasis added).

Summary of Emblaze's Position: Emblaze responded to virtually every one of the cited Requests by stating that it would produce the requested documents "to the extent they . . . concern the claims of the Patent-in-Suit." This was not enough for Apple, which wanted all documents and software concerning the "technology" of the patent-in-suit, *i.e.,* research, development, commercialization, and manufacture of the "technology" of the patent-in-suit. The term is vague and overbroad. Emblaze is a technology company with many different products and technology over the years. The dispute does not turn on claim construction; it turns on whether Apple should be allowed to conduct a fishing expedition into Emblaze's business, all of which may concern the "technology" of the patent-in-suit depending upon how that term is interpreted. Emblaze's proposed modification should be adopted. *E.g., Monsanto Co. v. E.I. DuPont de Nemours,* Case No. 4:09CV00686 ERW, 2010 U.S. Dist. LEXIS 128914, *16-*17 (E.D.Mo. Dec. 7, 2010) (upholding party's refusal to produce documents concerning "research underlying the '247 Patent, documents concerning research into glyphosate tolerance generally, and documents related to certain articles . . . that [plaintiff] is alleged to have improperly withheld from the Patent and Trademark Office"; "[t]hese wide-ranging requests, encompassing a large amount of material that is admittedly not at issue in the present case, are not 'reasonably calculated to lead to the discovery of admissible evidence.'"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC,* Case No. 09-C-0916, 2011 U.S. Dist. LEXIS 40919, *11-*12 (E.D.Wis. April 8, 2011) (production of documents concerning prior testing, use and sale of plaintiff's products other than those covered by patent-in-suit "would be overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence").

**V. Documents concerning the preparation and prosecution of any Emblaze patent applications that refer or relate to the technology described and claimed in the Suit Patent, responsive to the First RFP 48.**

Unresolved Issue: Emblaze objects to producing documents on grounds of relevancy.

Summary of Apple's Position: Apple significantly narrowed its request from all documents related to the preparation and prosecution of any patent application relating to the subject matter of the Suit Patent. Emblaze patents that relate to the technology described and claimed in the Suit Patent (the precise language used by Emblaze in its Complaint) are reasonably expected to lead to information regarding the meaning and construction of claim terms, potentially relevant prior art, and other information related to Apple's inequitable conduct counterclaims and defenses. *See, e.g., Regal Electronics*, 2005 WL 3078983, at *3 (Judge Seeborg compelled production of all prior art known to Regal relating to the subject matter disclosed or claimed in the patent-in-suit, "or any U.S. or foreign patents or patent applications corresponding in whole or in part to such patent, which would include prior art cited or referred to during the preparation and prosecution of any such patents or patent applications.")

Summary of Emblaze's Position: Rather than seeking specific, identifiable documents, Apple seeks "all documents" that "refer or relate" to "the technology described in the Patent-in-Suit." Once again, Apple's Requests are a fishing expedition in which the burden to Emblaze far outweighs any potential benefit to Apple. Indeed, Apple fails to explain how straying to documents concerning unrelated patent applications will lead to the discovery of admissible evidence concerning Apple's infringement of the patent-in-suit, or how Emblaze's prosecution of other patents relate to Apple's inequitable conduct claims (which concern Emblaze's designation of entity size in connection with the patent-in-suit). Emblaze's objection should be upheld. *E.g., Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.,* Civil Action No. 05-5727 (GEB), 2009 U.S. Dist. LEXIS 114105, *12 (D.N.J. Dec. 8, 2009) ("Documents and consideration of disclosure of documents related to the prosecution of the patent at issue are relevant, but straying to the prosecution history of other patents that . . . [concern active ingredient in drug patent] is outside the scope of relevant discovery in this matter.").

**VI. Documents concerning any study or comparison between any instrumentality Emblaze has accused of infringing the Suit Patent and claims of the Suit Patent -- whether or not the comparison resulted in a notice of infringement and regardless of whether the instrumentality is an Accused Apple product or Non-Accused Apple product, responsive to the First RFPs 16-20, 22, and 26.**

Unresolved Issue: Emblaze proposes to produce only copies of all notices of infringement to any third party in response to the First RFP 22.

Summary of Apple's Position: Responsive documents are expected to show, among other things, those instruments (including Apple products and services) Emblaze has considered or otherwise compared to the claims of the Suit Patent but and which it believes does or does not deem infringing. Apple's requests are expected -- at a minimum -- to lead to the discovery of admissible evidence regarding what constitutes infringing activity and the scope of Emblaze's claims.

Summary of Emblaze's Position: As a strict liability offense, patent infringement does not depend upon Emblaze's subjective belief as to whether other products infringe or do not infringe the patent-in-suit. Nonetheless, Apple seeks to conduct a fishing expedition into Emblaze's analysis of other products, if any, regardless of whether the products are Apple's or not. Emblaze reasonably proposed to provide copies of notices of infringement to any third parties so that Apple would have the information as to those third parties Emblaze may have notified of infringement. More should not be required since any such information is not only irrelevant but unlikely to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1).

**VII. Communications with consumers, competitors, licensees, accused infringers, lenders, and/or creditors which relate to the Suit Patent, responsive to the First RFP 53.**

Unresolved Issue: Emblaze objects to producing documents responsive to this request.

Summary of Apple's Position: Emblaze has never proposed any revisions to Apple's Request 53 or articulated the nature of its objections beyond boilerplate responses.  Documents responsive to this request are expected to lead to the discovery of a wide range of issues, including but not limited to infringement, damages, the scope of Emblaze's claims, divided infringement, standing and/or the real parties in interest, and should be produced.

Summary of Emblaze's Position:   Apple neglects to mention that Apple seeks not only "all communications" with every group on this list, but all communications with "consumers (actual or potential), . . . licensees (actual or potential), [and] customers (actual or potential)."  Apple has essentially demanded that Emblaze search for and produce every single communication ever sent or received concerning a patent that was applied for in 1999, and concerning companies and individuals with whom Emblaze may never have done business.  The request is overly broad.  Further, Apple has no explanation of how communications with many on this list – for instance, consumers, lenders and creditors – even remotely concern the issue of patent infringement.  Emblaze's objection should be upheld.

### VIII. Documents and responses to Requests For Admission ("RFA") relating to the contributions or edits made to the Wikipedia entry for HTTP Live Streaming on February 4, 2011, responsive to Apple's Second RFPs 1-6 and Apple's First Set of RFAs 1-11.

Unresolved Issue: Emblaze objects to answering requests for admission or producing any documents it may have responsive to Apple's requests regarding the Wikipedia activity on February 4, 2011 that revised the Wikipedia entry describing Apple's HTTP Live Streaming entry to include a statement that HTTP Live Streaming is a "technology [that] is *based on* Emblaze's Real Time Streaming technology that was first released on 1998" (emphasis added)  and included the addition of the hyperlink with the title, '"Network Media Streaming by Emblaze" that leads to the '473 Patent.  The nature of Emblaze's objections to this discovery is relevancy.

Summary of Apple's Position: Emblaze's refusal to answer requests for admission on relevancy grounds rather than a simple denial indicates that Emblaze is somehow connected to the effort to revise the Wikipedia entry on HTTP Live Streaming.  To the extent responsive documents exist, Apple is entitled to materials relating to Emblaze's efforts to portray its allegations as fact on the public forum of Wikipedia, and its attempts to shape the public record on the technology it accuses as infringing the Suit Patent.  Responsive documents may shed light on those persons or entities acting at Emblaze's direction, the motivation and timing for the revised entry, and other relevant information that may lead to admissible evidence relevant to potential counterclaims by Apple concerning public allegations by Emblaze that Apple misappropriated Emblaze technology, and should be produced.  Emblaze's comment that Apple's potential counterclaims regarding the Wikipedia entry are "pointless" is illogical.  Precisely because Emblaze refuses to admit or deny the requests for admission on this topic, Apple does not yet know if it can bring any counterclaims and thus seeks, and is entitled, to discovery on the matter.

Summary of Emblaze's Position:   In these discovery requests, Apple has sought documents and information concerning the posting of publicly available information on Wikipedia concerning the topic of HTTP Live Streaming.  Without any basis, Apple has concluded that Emblaze is responsible for the posting.  Regardless, this is a patent infringement case and, as such, will be decided based upon whether Apple has infringed Emblaze's '473 patent under the patent statute, not based on a Wikipedia posting.  Someone's personal beliefs about HTTP Live Streaming, whether that person is connected to Emblaze or not, is irrelevant to the strict liability issue of infringement, and is not reasonably calculated to lead to the discovery of admissible evidence.  Apple never explains why "the persons or entities" who directed the posting, or the "motivation and timing" for those entries, has any relevance to this litigation, or what "other relevant information" will be learned from responses to these discovery requests.  *See* Fed.R.Civ.P. 26(b)(1).  Apple's suggestion that it has potential counterclaims based on the Wikipedia entry (it does not) is, in any event, pointless because no such counterclaims are currently part of this litigation.  Emblaze's objection should be upheld.

DATED: March 21, 2012     GREENBERG TRAURIG, LLP

By:/s/ James J. DeCarlo

JAMES J. DECARLO (admitted *pro hac vice*)
decarloj@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400

KENNETH STEINTHAL (SBN 268655)
steinthalk@gtlaw.com
SARAH BARROWS (SBN 253278)
barrowss@gtlaw.com
GREENBERG TRAURIG, LLP
153 Townsend Street, 8th Fl.
San Francisco, CA 94107
Telephone: (415) 655-1300
Facsimile: (415) 707-2010
*Attorneys for Defendant Apple Inc.*

DAVIS WRIGHT TREMAINE LLP
COZEN O'CONNOR

By: /s/ Lisa A. Ferrari

MARTIN B. PAVANE, (admitted *pro hac vice*)
LISA A. FERRARI, (admitted *pro hac vice*)
COZEN O'CONNOR
277 Park Avenue
New York, NY 10172
Telephone: (212) 883-4900
Facsimile: (212) 986-0604
Email: mpavane@cozen.com
Email: lferrari@cozen.com

MARTIN L. FINEMAN (SBN 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6575
Facsimile: (415) 276-6599
Email: martinfineman@dwt.com

*Attorneys for Plaintiff*
*Emblaze Ltd.*

## ATTESTATION CLAUSE

I, Kenneth Steinthal, am the ECF User whose ID and password are being used to file this JOINT DISCOVERY LETTER BRIEF. In compliance with General Order 45, X.B., I hereby attest that Lisa Ferrari, attorney at Cozen O'Conner and Martin Fineman, attorney at Davis Wright Tremaine LLP, concurred in this filing.

Dated: March 21, 2012

                                                GREENBERG TRAURIG, LLP

                                                By: /s/ Kenneth L. Steinthal

                                                    Kenneth L. Steinthal