IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

EMBLAZE LTD.

  *Plaintiff,*

vs.          Case No. 10 CIV 5713 (PKC)

APPLE INC.

  *Defendant.*

## DEFENDANT APPLE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF

Pursuant to Federal Rule of Civil Procedure 34, Defendant Apple Inc. ("Apple") requests that Plaintiff Emblaze Ltd. produce copies of the documents and things set forth below within thirty (30) days at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, subject to the following definitions and instructions.

### DEFINITIONS

1. "Plaintiff," "you," "your," or "Emblaze" shall mean Emblaze Ltd., including without limitation its predecessors in interest (including without limitation Geo Interactive Media Group Ltd.), agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with Plaintiff, or any entities acting under its direction or control.

2. "Apple" shall mean Apple Inc. and any of the agents, employees, shareholders, officers, former employees, former officers, directors, subsidiaries, parent corporations, attorneys or other persons or entities acting on its behalf.

3. "Patent-in-Suit" or "'473 Patent" shall mean United States Patent No. 6,389,473, including the applications and prosecution history leading to that patent and all patents and patent applications claiming priority to or related to the Patent-in-Suit, including without

limitation, any parent or priority application to the '473 Patent, reexaminations, divisionals, continuations, continuations-in-part, foreign counterpart patents, and foreign counterpart patent applications whether pending or abandoned.

4. "'230 Patent" shall mean United States Patent No. 6,397,230, including the applications and prosecution history leading to that patent and all patents and patent applications claiming priority to or related to the '230 Patent, including without limitation, reexaminations, divisionals, continuations, continuations-in-part, foreign counterpart patents, and foreign counterpart patent applications whether pending or abandoned.

5. "'432 Patent" shall mean United States Patent No. 5,841,432, including the applications and prosecution history leading to that patent and all patents and patent applications claiming priority to or related to the '432 Patent, including without limitation, reexaminations, divisionals, continuations, continuations-in-part, foreign counterpart patents, and foreign counterpart patent applications whether pending or abandoned.

6. "Accused Instrumentality" shall mean every Apple product, product feature, system, system feature, method, method feature, activity, and/or action that Emblaze contends infringes any claim of the Patent-in-Suit.

7. "Emblaze Instrumentality" shall mean every product, product feature, system, system feature, method, and/or method feature developed or created by or for Emblaze that Emblaze contends is disclosed and/or claimed in the Patent-in-Suit, including without limitation all versions of the software identified in, and forming all or a part of the software appendix of the '473 Patent.

8. "Prior Art" includes by way of example and without limitation, subject matter as described in 35 U.S.C. § 103 and 35 U.S.C. § 102, including but not limited to patents, printed publications, prototypes, know-how, uses, sales, and offers for sale. Thus, for example, "Prior Art" includes information, knowledge, documents, and things concerning the subject matter of the Patent-in-Suit that were made or existed in the United States or abroad before the effective filing date of each claim of the Patent-in-Suit or the alleged date of invention of the same.

9. "Person" or "persons" shall mean entities and natural persons, including: all governmental entities, agencies, officers, departments, or affiliates of the United States of America, or any other governmental entity; and any corporation, foundation, partnership, proprietorship, association, organization, or group of natural persons.

10. "Communication" shall mean any oral, written, or electronic transmittal of information or request for information made from one person to another person, whether made in person, electronically, by telephone, or by any other means and includes any document(s) made only for the purpose of recording a communication, a fact, an idea, a statement, an inquiry, an opinion, a belief, or otherwise.

11. "Agreement" shall mean any contract, transaction, license, or other arrangement of any kind, whether conditional, executed, executory, express, or implied, and whether oral or written, in which rights are granted or obligations are assumed. The term "agreement" shall encompass completed, actual, contemplated, or attempted agreements or renewals of agreements.

12. "Document(s)" shall mean anything that would be a "writing" or "recording" as defined by Rule 1001(1) of the Federal Rules of Evidence or a "document" as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, the originals, and all nonidentical copies, whether different from the original by reason of any notation made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, e-mails, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, voice messages, meetings, printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, or electric

records or representations of any kind (including without limitation, tapes, cassettes, discs, recordings, and e-mail).

13. "Thing(s)" shall mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

14. As used herein, the terms "relate" and "refer" are used in their broadest possible sense and include all matters comprising, constituting, containing, concerning, embodying, reflecting, involving, discussing, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to, for each request whichever definition makes the request most inclusive.

15. As used herein, "and" and "or" shall each be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

16. As used herein, the singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of a noun or a pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

17. In producing documents and things responsive to these requests, Emblaze shall furnish all documents within its possession, custody, or control, regardless of whether these documents are possessed directly by Emblaze, or by its present or past agents, employees, representatives, investigators, or attorneys.

## INSTRUCTIONS

1. All documents must be produced in a form that renders them susceptible to copying.

2. All electronic documents and records must be produced in a reasonably usable form.

3. Documents from any single file should be produced in the same order as they were found in such file. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

4. Each document should be segregated and identified by the request to which it is primarily responsive or produced as it is kept in the ordinary course of business.

5. All requests herein are directed to those documents within your possession, custody or control, or within the possession, custody or control of your agents, servants and employees and your attorneys. They are also directed to those firms, corporations, partnerships, or trusts that you control and to documents in the possession, custody or control of employees, agents and representatives of such entities.

6. If any of the documents requested herein are no longer in your possession, custody or control, identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies and provide a summary of its pertinent contents.

7. If any document requested herein has been destroyed or is no longer in existence, for any reason, describe the content of such document as completely as possible, the date of such destruction and the name of the person who ordered or authorized such destruction.

8. With respect to any document that you are withholding because the document is asserted to be immune from discovery, state separately with respect to each document:

    (a) the general nature of such document, i.e., whether it is a letter, memorandum, report, pamphlet, etc.;

    (b) the date on which each such document or thing was created, reproduced or transcribed;

    (c) the name, title, and business address of each person who signed or prepared each such document and the name and business address of each person who has edited, corrected, revised or amended the document;

(d) the name and business address of each person to whom each such document was communicated or made available, or otherwise known to you as being an intended or actual recipient of a copy thereof;

(e) the name and business address of each person having knowledge of the contents of the document;

(f) the name and business address of each person having possession, custody, or control of the document or any identical or non-identical copy;

(g) the number of pages;

(h) a brief description of the nature and subject matter of the document in sufficient detail to permit other parties to this action to assess the applicability of the asserted privilege or immunity;

(i) the paragraph(s) of the request to which the document is responsive; and

(j) the grounds for the claimed immunity.

9. There shall be a continuing duty on Emblaze to furnish additional documents in response to these Document Requests in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Any additional information relating in any way to these requests that you acquire, or that becomes known to you, up to and including the time of trial, shall be furnished to Apple promptly after such information is acquired by you or becomes known to you.

10. If you find any request or any term used in a request to be vague, ambiguous, subject to varying interpretations, or unclear, state what portion of the request or term you find to be vague, ambiguous, subject to varying interpretations, or unclear and state the construction employed by you in responding to the request.

## DOCUMENT REQUESTS

1. All documents and things relating to the Patent-in-Suit.

2. All documents and things reflecting, referring, or relating to Apple's actual or constructive knowledge or awareness (if any) of: the Patent-in-Suit or acts by any person that you contend infringe the Patent-in-Suit.

3. All documents and things relating to the conception, development, and/or reduction to practice of the subject matter claimed in the Patent-in-Suit, including, but not limited to: (a) any invention disclosures; (b) all drafts of applications that became the Patent-in-Suit; (c) log books, notes, presentations, or engineering notebooks created or kept by the inventor of the Patent-in-Suit; (d) the first and any subsequent written descriptions; and (e) drawing or sketches.

4. All documents which evidence, refer to, or relate to the diligence of each alleged inventor of the Patent-in-Suit between the date of first conception and the date of reduction to practice of the each invention described or claimed in the Patent-in-Suit.

5. All documents which evidence, refer to, or relate to the first disclosure by any inventor to any third party of the inventions described or claimed in the Patent-in-Suit.

6. All documents which evidence refer to or relate to the design, research, development, testing, evaluation, commercialization, manufacture, or operation of the subject matter of any claims of the Patent-in-Suit.

7. All documents and things sufficient to identify all persons who participated in the design or development of every Emblaze Instrumentality that embodies, practices, or employs or is capable of embodying, practicing, or employing the subject matter claimed in the Patent-in-Suit.

8. All documents and things relating to the inventorship of the Patent-in-Suit, including all documents and things relating to whether Sharon Carmel, Tzur Daboosh, Eli Reifman, Naftali Shani, Ziv Eliraz, Dror Ginsberg, and Edan Ayal are the first inventors of the subject matter claimed in the Patent-in-Suit, or that relate to whether any other individual could claim to be the first inventor of the subject matter claimed in the Patent-in-Suit.

9. All documents and things that refer or relate to Emblaze's contention that Emblaze is the owner of all rights, title, and interest in and to the Patent-in-Suit and that Emblaze possesses all rights of recovery under the Patent-in-Suit.

10. All documents concerning or discussing any differences, as term "differences" is used in 35 U.S.C. § 103, between the Prior Art and the subject matter described and claimed in the Patent-in-Suit.

11. To the extent not produced in response to the preceding request, all documents concerning any alleged "long-felt but unmet need" as described in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny, for the subject matter described and claimed in the Patent-in-Suit including, without limitation, all documents that allegedly establish that the claimed invention satisfied that alleged long-felt but unmet need.

12. To the extent not produced in response to the preceding requests, all documents concerning any alleged "commercial success" as described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Patent-in-Suit including, without limitation, all documents identifying the product(s) alleged to be commercially successful, all sales records for the period of time that such sales were made (including, for example, monthly and year-end sales by customer, by region, and by product), all documents allegedly purporting to establish nexus between the claimed invention and the "commercial success," and all documents necessary to establish that the claims "read on," cover, or otherwise encompass such product(s).

13. To the extent not produced in response to the preceding requests, all documents concerning any alleged "failure of others" as described in *Graham v. John Deere* and its progeny, to arrive at the subject matter described and claimed in the Patent-in-Suit, including without limitation, all documents that reflect the alleged failures and all documents that allegedly establish that the claimed subject matter solved the problem that others failed to solve.

14. To the extent not produced in response to the immediately preceding requests, all documents concerning any alleged "secondary considerations" of the type described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Patent-in-Suit.

15. All documents and things concerning any lawsuit or dispute resolution proceeding (including but not limited to mediation or arbitration), whether pending or settled, whether inter

partes or ex parte, whether before a civil court, the United States Patent and Trademark Office ("USPTO"), a foreign court, an arbitrator, or a mediator, concerning alleged patent infringement or non-infringement of the Patent-in-Suit by any party, including but not limited to pleadings filed with the adjudicative person or entity, documents and things produced, papers served (whether or not actually filed), expert reports and drafts thereof, deposition transcripts and videos, hearing transcripts, and correspondence between adverse parties and/or their respective counsel. The foregoing documents requested shall include any documents or things generated, disclosed, or provided in connection with settlement discussions.

16. All documents and things relating in any way to any comparison between any instrumentality Emblaze has accused of infringing the Patent-in-Suit at any time and claims of the Patent-in-Suit, or any embodiment described in the Patent-in-Suit.

17. All documents and things relating to all other instances in which Emblaze has accused a person or entity of infringing the Patent-in-Suit, including all analysis, reviews, and opinions regarding the allegedly infringing instrumentality.

18. All documents and things relating to communications regarding each and every alleged infringement of the Patent-in-Suit, including Apple's alleged infringement of the Patent-in-Suit.

19. All documents and things concerning any investigation or study of any instrumentality for infringement or non-infringement of the Patent-in-Suit, as well as documents sufficient to establish the instrumentality so investigated or studied, the source of the instrumentality, and the result(s) and/or conclusion(s) of each investigation or study of each instrumentality.

20. All documents concerning any accusation, allegation, or other assertion that any instrumentality infringes or is covered by any claim of the Patent-in-Suit, as well as documents sufficient to establish said instrumentality, the source of the instrumentality, all actions, communications, or other conduct resulting from such accusation, allegation, or other assertion, and all documents concerning any investigation or study of any instrumentality designed, made,

or sold by any accused party after such allegation of infringement, including but not limited to any conclusion(s) or statements that such instrumentality is non-infringing.

21. All documents and things constituting blueprints or other technical diagrams, design and engineering specifications, computer modeling information, and testing information, referring or relating to the subject matter of the Patent-in-Suit.

22. All documents concerning any notice of infringement sent or proposed to be sent by you to any person concerning the Patent-in-Suit.

23. All documents and things that relate to Emblaze's decision to bring a patent infringement lawsuit against Apple, including documents that identify or state the date of Emblaze's first awareness of Apple's alleged infringement of the Patent-in-Suit.

24. All documents and things, including all communications, concerning or relating to Apple.

25. All documents concerning your earliest knowledge or awareness of each of the activities, products, methods, or processes of Apple that you contend have infringed or currently infringe, have constituted or currently constitute contributory infringement of, or have induced or currently are inducing others to infringe, any claim of the Patent-in-Suit.

26. All documents concerning any test, measurements, evaluations, studies, analyses or surveys of or that refer or relate to any product or service of Apple.

27. All documents and things that refer or relate to any opinion(s), investigation(s), or study(ies) relating to the similarity or dissimilarity between the claims in the Patent-in-Suit and the Accused Instrumentalities.

28. All documents which evidence, relate to or refer to Emblaze's knowledge, understanding, belief, perception, or apprehension of alleged or potential infringement by Apple of the Patent-in-Suit.

29. All documents supporting, evidencing, contradicting, and/or relating to each of your claims in this action.

30. All documents evidencing, referring to, or relating to any Accused Instrumentality, including but not limited to all documents and things reflecting, referring, or relating to Emblaze's knowledge or awareness of each Accused Instrumentality.

31. All documents relating to, referring to, or evidencing any alleged pre-suit notice to Apple.

32. All documents which evidence, refer to or relate to communication between you and Apple regarding the Patent-in-Suit.

33. All documents and things that relate to Emblaze's participation or involvement with any industry or standards-setting groups relating to the development of secure electronic information transfer including but not limited to any submission of proposals or comments, voting activities, or participation in group meetings, conferences, or forums.

34. All documents and things relating to the scope, patentability, validity, invalidity, infringement, non-infringement, enforceability, and/or unenforceability of the Patent-in-Suit, including but not limited to publications, Prior Art, Prior Art searches, opinions, offers for sale, sales, or public uses of or related to the subject matter claimed in the Patent-in-Suit.

35. All documents comprising anything that anyone has ever indicated to you constitutes Prior Art to any claim of one of the Patent-in-Suit (including, without limitation, any and all material prior art patents, publications and/or literature or other documents).

36. All documents comprising or relating to Prior Art, possible Prior Art, any Prior Art search or investigation by any person that concerns the subject matter of the Patent-in-Suit, or anything that anyone has ever indicated to you -- or any current or former attorney(s) or patent agent(s) who drafted, prosecuted, and/or were involved in prosecution of the Patent-in-Suit -- constitutes Prior Art to any claim of one of the Patent-in-Suit (including, without limitation, any and all material Prior Art patents, publications and/or literature or other documents).

37. All documents and things concerning or relating to any patent or Prior Art search or investigation conducted by or on behalf of Emblaze, or otherwise communicated or provided

to Emblaze -- or any current or former attorney(s) or patent agent(s) who drafted, prosecuted, and/or were involved in prosecution of the Patent-in-Suit -- relating to the Patent-in-Suit.

38. All documents and things constituting or concerning any opinion(s), investigation(s), or study(ies) relating to: (a) patentability or unpatentability; (b) infringement or non-infringement; (c) invalidity or validity; (d) unenforceability or enforceability; (e) obviousness or non-obviousness of the Patent-in-Suit; and/or the scope or construction of the claims of the Patent-in-Suit.

39. All documents and things referring, relating to, or tending to establish Emblaze's marking of the Patent-in-Suit on its instrumentalities or others' instrumentalities, including physical samples of such patent marking(s).

40. All documents and things referring or relating to whether Emblaze has practiced the claims of the Patent-in-Suit from the dates the Patent-in-Suit issued to the present.

41. All drawings, schematics, and/or brochures of each of your products that you contend is within the scope of the claims of the Patent-in-Suit.

42. All documents and things constituting or concerning advertising, business plans, strategic plans, research and development plans, marketing plans or efforts, promotional programs or strategies on the part of Emblaze, or on its behalf, concerning any Emblaze Instrumentality, including but not limited to a sample of each advertisement or promotional document that concerns any Emblaze Instrumentality, and documents that show the amount spent on such marketing, advertising, research and development, and/or promotion

43. All documents which evidence, refer to, or relate to the first sale, first offer for sale, first disclosure, first demonstration, first promotion, first license, first manufacture of, or first use of any Emblaze Instrumentality.

44. All documents which evidence, refer to, or relate to any attempt by you to sell any object, system, machine, software or other thing embodying any invention claimed in the Patent-in-Suit, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecast, strategic plans, budgeting documents, pricing policies, lost business

reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

45. All documents which evidence, refer to, or relate to any attempt by you to explore the market or the technical or the commercial viability any object, system, machine, software or other thing embodying any invention claimed in the Patent-in-Suit, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecasts, market assessments or studies on the market, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

46. All documents which describe or which contain an offer to sell any system, software, service, or other instrumentality related to real-time broadcasting over a network.

47. All documents and things that refer or relate to the preparation and prosecution of the patent applications leading to the issuance of the Patent-in-Suit, including, without limitation, all communications to or from the USPTO.

48. All documents and things that refer or relate to the preparation and prosecution of any patent application that refers or relates to the subject matter of the Patent-in-Suit, including without limitation, all communications to or from the USPTO or any foreign patent office.

49. All documents and things that refer or relate to the preparation and prosecution of any patent application that claims priority from the applications leading to the issuance of the Patent-in-Suit, including, without limitation, all communications to or from the USPTO or any foreign patent office.

50. All documents and things that refer or relate to the preparation and prosecution of any patent application that refers or relates to the subject matter of the '230 Patent or the '432 Patent, including without limitation, all communications to or from the USPTO or any foreign patent office.

51. All documents and things relating to the conception, development, and/or reduction to practice of the subject matter claimed in the '230 Patent or the '432 Patent,

including, but not limited to: (a) any invention disclosures; (b) all drafts of applications that became the Patent-in-Suit; (c) log books, notes, presentations, or engineering notebooks created or kept by the inventor of the Patent-in-Suit; (d) the first and any subsequent written descriptions; and (e) drawing or sketches.

52. All documents and things that refer or relate to your contention that Apple's alleged infringement is and/or has been willful.

53. All communications relating to the Patent-in-Suit, including but not limited to communications with consumers (actual or potential), competitors, licensees (actual or potential), customers (actual or potential), accused infringers, lenders, and/or creditors.

54. All documents and things relating to actual or proposed agreement(s), assignment(s), and/or license(s) concerning the subject matter of the Patent-in-Suit.

55. All documents and things, including communications, that refer or relate to any Emblaze licensing policy regarding patents, including the subject matter disclosed and claimed in the Patent-in-Suit.

56. All documents and things that refer or relate to any alleged commercial success of the subject matter claimed in the Patent-in-Suit.

57. All documents relating or referring to, or otherwise evidencing any covenant not to sue relating to the Patent-in-Suit.

58. All documents which evidence, refer to or relate to any offer of, request for, or expression of interest in a license and/or immunity from suit under the Patent-in-Suit.

59. All agreements and drafts of agreements entered into between Emblaze and any nonparty relating, in whole or in part, to the Patent-in-Suit.

60. All communications regarding agreements and drafts of agreements entered into between Emblaze and any nonparty relating, in whole or in part, to the Patent-in-Suit.

61. All documents which evidence, refer to or relate to the settlement of any claim of infringement of the Patent-in-Suit.

62. All documents and things that refer or relate to Emblaze's capacity to manufacture, sell, and/or market instrumentalities covered by the claims of the Patent-in-Suit.

63. All documents relating or referring to alleged infringement, potential infringement, possible infringement and/or non-infringement of the Patent-in-Suit by any nonparty.

64. All documents and things relating to Emblaze's contention regarding the level of ordinary skill in the art relevant to the Patent-in-Suit.

65. All documents and things that refer or relate to the scope and/or construction of the claims of the Patent-in-Suit.

66. All documents identified in Emblaze's response to each and every interrogatory served on Emblaze in this case.

67. All documents and things that support or form any part of the basis of your responses to each and every interrogatory served on Emblaze in this case.

68. All documents and things concerning Emblaze's policies, practices, and/or procedures now or previously in effect with respect to the retention or destruction of documents, including electronically stored information.

69. All documents and things concerning Emblaze instructing any third party, including, but not limited to, Ladas & Parry LLP, to destroy documents in any way related to the subject matter of this lawsuit, including electronically stored information.

70. All documents related to any communication regarding this lawsuit, or the anticipated commencement of this lawsuit, to persons not employed by Emblaze at the time of the communication, including but not limited to any and all litigation hold notices, letters, or memos or any other notice or instruction to preserve documents.

71. All documents related to any communication regarding any other lawsuit involving the Patent-in-Suit to persons not employed by Emblaze at the time of the communication.

72. A copy of any Prior Art identified to or by the Israeli patent office during the prosecution of the priority application to the '473 Patent.

73. All documents or things that relate or refer to the '473 Patent or any related or corresponding domestic or foreign patent filing, including but not limited to communications with any person affiliated with Ladas & Parry LLP, Venable LLP, or Sanford T. Colb & Co.

74. All documents or things that relate or refer to the '230 Patent or any related or corresponding domestic or foreign patent filing, including but not limited to communications with any person affiliated with Ladas & Parry LLP, Venable LLP, or Sanford T. Colb & Co.

75. All documents or things that relate or refer to the '432 Patent or any related or corresponding domestic or foreign patent filing, including but not limited to communications with any person affiliated with Ladas & Parry LLP, Venable LLP, or Sanford T. Colb & Co.

76. All documents or things that relate or refer to the status change from "small entity" pursuant to 37 C.F.R. 1.27 to large entity status associated with the '473 Patent.

77. All documents or things that relate or refer to large entity status maintenance fee payments for the '230 Patent.

78. All documents or things that relate or refer to the submission of a request to correct entity status pursuant to 37 C.F.R 1.28 on January 21, 2010 for the '473 Patent, including but not limited to any correspondence to or from Plaintiff on the subject of small or large entity status.

79. All documents relating or referring to GEO Interactive Media Group Ltd. including without limitation its agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with GEO Interactive Media Group Ltd., or any entities acting under its direction or control.

80. Any software related to or embodying the subject matter of any of the '473 Patent, '230 Patent, and/or '432 Patent.

81. All documents and things related to the April 13, 1998 Easter Egg Roll at the White House ("1998 Egg Roll"), evidenced by the attached press release.

82. Any software or portion of software used in the 1998 Egg Roll.

83. Documents sufficient to identify any persons involved in the 1998 Egg Roll, including but not limited to persons affiliated with Emblaze, the White House, Earthlink, Inc. or any other technology company involved in the broadcast of the 1998 Egg Roll.

84. Documents sufficient to identify the date on which Emblaze learned of the 1998 Egg Roll.

85. Documents sufficient to identify the person(s) to whom Emblaze provided software for use in broadcasting the 1998 Egg Roll.

86. Documents sufficient to identify when Emblaze first provided software to any third party to be used in broadcasting the 1998 Egg Roll.

Dated: March 1, 2011

GREENBERG TRAURIG, LLP

By: _____
Scott J. Bornstein
bornsteins@gtlaw.com
James J. DeCarlo
decarloj@gtlaw.com
Julie P. Bookbinder
bookbinderj@gtlaw.com

MetLife Building
200 Park Avenue, 34th Floor
New York, New York 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Defendant Apple Inc.*