```
1                 IN THE UNITED STATES DISTRICT COURT

2               FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4

5

    EMBLAZE, LTD.,                    )   CV-11-1079-PSG
6                                     )
                    PLAINTIFF,        )   SAN JOSE, CALIFORNIA
7                                     )
               VS.                    )   MAY 28, 2013
8                                     )
    APPLE, INC.,                      )   PAGES 1-27
9                                     )
                    DEFENDANT.        )
10                                    )

11

12                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE PAUL S. GREWAL
13                   UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:      COZEN O'CONNOR
                              BY:  LISA FERRARI
17                            277 PARK AVENUE
                              NEW YORK, NY 10176
18

19    FOR THE DEFENDANT:      [!FIRM2]
                              BY:  [!ATTORNEY2]
20                            [!ADDRESS-A2]
                              [!CITY2], [!STATE2]  [!ZIP2]
21    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
      PRODUCED WITH COMPUTER.
22

23              APPEARANCES CONTINUED ON THE NEXT PAGE

24

25    OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
```

```
 1    SAN JOSE, CALIFORNIA                    MAY 28, 2013

 2                     P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5            THE CLERK:  CALLING EMBLAZE LIMITED VERSUS APPLE,

 6    INC.  CASE CV-11-1079-PSG.

 7        MATTER ON FOR DEFENDANT'S MOTION TO COMPEL.

 8        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 9            MS. FERRARI:  GOOD MORNING, YOUR HONOR.

10        FOR THE PLAINTIFF, EMBLAZE, LISA FERRARI, COZEN O'CONNOR.

11            THE COURT:  GOOD MORNING.

12            MS. BARROWS:  GOOD MORNING, YOUR HONOR.

13        SARAH BARROWS FOR DEFENDANT, APPLE, INC.

14            THE COURT:  COUNSEL, GOOD MORNING TO EACH OF YOU.

15        ARE ANY PARTIES APPEARING BY PHONE?

16            MS. FERRARI:  NO, YOUR HONOR.

17        I DO HAVE WITH ME EMBLAZE'S CHAIRMAN IN PERSON, MR. NAFTALI

18    SHANI.

19            THE COURT:  GOOD MORNING, SIR, WELCOME.

20            MS. BARROWS:  AND YOUR HONOR, I HAVE WITH US APPLE'S

21    IN HOUSE COUNSEL, RYAN MORAN.

22            THE COURT:  MR. MORAN, GOOD MORNING TO YOU AS WELL.

23        ALL RIGHT.

24        WHY DON'T WE PROCEED WITH THE MOTION AT HAND.  THIS IS

25    APPLE'S MOTION, SO I WILL BEGIN WITH YOU, COUNSEL.
```

1    WHY DON'T YOU TELL ME EXACTLY WHAT IT IS YOU NEED AND

2    WHERE THINGS STAND IN THE DISCUSSION WITH THE PARTIES.  I WILL

3    CONFESS I WAS A BIT UNCLEAR ABOUT THAT LAST QUESTION WHEN I

4    READ THE PAPERS.  WITH THAT, WHY DON'T YOU TELL ME WHAT YOU

5    NEED.

6        MS. BARROWS:  SURE.

7    RIGHT NOW WE REQUEST THE COURT HAVE EMBLAZE CONDUCT THE

8    PROPOSED KEY WORD SEARCHES THAT APPLE HAS PROPOSED WITHIN THE

9    NEXT 48 HOURS.

10    AND TO INFORM APPLE OF THE SEARCH RESPONSES THAT COME BACK.

11    AND THEN IDENTIFY FOR ANY OF THE SEARCH TERMS IT MAINTAINS ARE

12    BURDENSOME BECAUSE OF THOSE HITS, MAKE THOSE IDENTIFICATIONS

13    AND MAKE SOME PROPOSED LIMITATIONS SO WE CAN LOOK AT THOSE

14    PROPOSED LIMITATIONS.

15        THE COURT:  HAVE YOU BEEN GIVEN ANY INSIGHT OR ANY

16    EXPLANATION AS TO THE VOLUME OR BURDEN THAT'S CREATED BY ANY OF

17    YOUR PROPOSED SEARCHES?

18        MS. BARROWS:  IN JUST ONE LIMITED INSTANCE,

19    YOUR HONOR.

20    THE PARTIES HAVE HAD SOME LIMITED MEET AND CONFER IN THE

21    PAST WEEK OR TWO.  ON FRIDAY AFTERNOON WE WERE INFORMED BY

22    EMBLAZE THAT FOR ONE OF THE SEARCH TERMS WE REQUESTED THE TERM

23    WEB RADIO WHICH IS A PRODUCT THAT ANOTHER -- THAT A SUBSIDIARY

24    OF EMBLAZE PUT OUT IN WHICH EMBLAZE HAS IDENTIFIED IN THEIR

25    INFRINGEMENT CONTENTIONS AS A PRODUCT THAT EMBODIES THE PATENT

1    IN SUIT.

2         FOR THAT SEARCH TERM WE WERE INFORMED BY EMBLAZE THAT THEY

3    RAN A SEARCH AGAINST ONE CUSTODIAN FOR THE YEARS 1996 THROUGH

4    1999.  NOW APPLE HAD REQUESTED NO DATE LIMITATIONS, BUT THEY

5    HAD PUT A DATE LIMITATION AND RAN IT AGAINST ONE CUSTODIAN.

6         WE ARE INFORMED THEY RECEIVED OVER 150 DOCUMENTS.  SO I

7    GUESS WE WILL SAY APPROXIMATELY 150 DOCUMENTS.  AND IT APPEARS

8    THAT THEY CONTEND THAT THERE'S A BURDEN ON THAT BASIS FOR EVEN

9    THAT SEARCH TERM ALONE.  SO WE ARE ASKING THE COURT TODAY.

10        I KNOW IT'S NOT A SCIENCE TO ACCESS WHEN A PARTICULAR

11   SEARCH TERM IS BURDENSOME OR NOT BURDENSOME, BUT I THINK IT

12   WOULD BE HELPFUL TODAY TO HAVE SOME SORT OF GUIDANCE FROM THE

13   COURT AS TO THE PARAMETERS OF WHAT MIGHT CONSTITUTE BURDEN.

14        WE DON'T THINK 150 DOCUMENTS COULD IN ANY WAY CONSTITUTE

15   A BURDEN, PARTICULARLY IN A PATENT INFRINGEMENT CASE WHERE

16   THERE ARE USUALLY TENS OF THOUSANDS OF DOCUMENTS, AND APPLE IN

17   FACT HAS PRODUCED OVER 20,000 DOCUMENTS AND SEARCHED MANY, MANY

18   MORE TIMES THAT NUMBER.

19        SO WE -- THE ONLY INFORMATION WE HAVE SO FAR ON THAT ONE

20   SEARCH TERM RUN ON ONE CUSTODIAN FOR A LIMITED PERIOD IS TURNED

21   BACK AROUND 150 DOCUMENTS.  WE DON'T THINK THAT CAN CONSTITUTE

22   BURDEN.

23             THE COURT:  SO LET'S STEP BACK FOR A MOMENT AND LOOK

24   AT THE BIG PICTURE HERE.  YOU ALL HAVE A TRIAL DATE IN THE NEXT

25   SEVERAL MONTH AND FACT DISCOVERY IS ABOUT TO CLOSE.

1        MS. BARROWS:  YES.  THAT'S ANOTHER CONCERN WE HAVE IS

2    DISCOVERY IS CLOSING IN APPROXIMATELY THREE MONTHS AND WE ARE

3    STILL --

4        THE COURT:  THAT'S EXPERT DISCOVERY, CORRECT?

5        MS. BARROWS:  NO, ACTUALLY REGULAR DISCOVERY CLOSES

6    THE END OF AUGUST AND EXPERT DISCOVERY WOULD CLOSE AT THE END

7    OF NOVEMBER.

8        THE COURT:  OKAY.  THANK YOU.

9      AND REMIND ME, ROUGHLY, WHEN IS TRIAL SET IN THIS CASE?

10        MS. BARROWS:  IT'S FOR MARCH 2014.

11        THE COURT:  OKAY.  THANK YOU.

12        MS. BARROWS:  BUT WE DO HAVE CONCERNS GIVEN THE THREE

13    MONTHS FOR DISCOVERY.  AND HONESTLY, YOUR HONOR, WE KNOW

14    EMBLAZE'S PRODUCTION IS INCOMPLETE.

15      WE HAVE EVIDENCE OF ONE DOCUMENT THAT WAS CALLED FOR IN

16    PRODUCTION, BOTH THEY AGREED TO AND REQUESTS AND IT WAS ORDERED

17    FOR PRODUCTION BY MAGISTRATE COUSINS IN A MOTION TO COMPEL OVER

18    A YEAR AGO.

19      WE KNOW THE PRODUCTION IS INCOMPLETE.  THE DOCUMENTS

20    SHOULD HAVE ALREADY BEEN PRODUCED AND NOW WE ARE STILL, TWO

21    DAYS BEFORE THIS HEARING, THEY WILL NOT GIVE US INFORMATION

22    ABOUT WHAT ARE THE RESULTS FROM THEIR SEARCH.

23        SO WE ARE IN A POSITION WHERE WE ARE STILL SORT OF BACK

24    AT SQUARE ONE.  WE ARE ARGUING IN A VACUUM.  THEY WANT TO SAY

25    THERE'S A BURDEN, THEY WON'T ARTICULATE THE BURDEN BY

```
 1      IDENTIFYING THE AMOUNT OF HITS FOR THE SEARCH TERMS OR EVEN

 2      EVALUATE WHETHER OR NOT THAT'S BURDENSOME.

 3          THE ONE PIECE --

 4          THE COURT:  I'M SORRY FOR INTERRUPTING, BUT IS IT

 5      CORRECT FOR ME TO UNDERSTAND THE FOCUS, IF NOT THE EXCLUSIVE

 6      SCOPE BUT THE ENTIRE SCOPE I SHOULD SAY, BUT THE FOCUS OF WHAT

 7      YOU ARE TARGETING HERE ARE DOCUMENTS WHICH SHOW PUBLIC USE OR

 8      PUBLIC SALE RELATING TO THE INVENTIONS CLAIM.

 9          MS. BARROWS:  THAT'S ONE KEY PART, YOUR HONOR.

10      BUT ACTUALLY, WE DON'T HAVE ANY CONCEPTION OR REDUCTION OF

11      PRACTICE TYPE DOCUMENTS RELATED TO THE PATENT IN SUIT.

12      AND IN EXHIBIT 1 WHICH LISTS ALL OF OUR SEARCH TERMS, WE

13      IDENTIFY EXACTLY THE RELEVANCE OF EACH OF OUR CATEGORIES.

14      SO THE ON SALE BAR IS A SIGNIFICANT PORTION OF AND THRUST

15      OF THE SEARCH TERMS THAT WE HAVE, BUT THERE ARE ADDITIONAL

16      POINTS AS WELL.

17      THE SECONDARY CONSIDERATIONS, COMMERCIAL SUCCESS, 112

18      DEFENSES, THERE'S A WHOLE SERIES AND HOST OF REASONS WHY WE ARE

19      SPECIFICALLY TARGETING THE SEARCH TERMS THAT WE HAVE.

20      AND WE'VE EXPLAINED THOSE TO EMBLAZE.  SO WE HAVEN'T HAD

21      YET AN OBJECTION THAT THE TERMS THEMSELVES ARE NOT RELEVANT BUT

22      THEY JUST HAVE CONTINUED TO MAINTAIN IT'S OVERLY BURDENSOME FOR

23      THEM TO SEARCH THE DOCUMENTS.

24      BUT WITHOUT ANY INFORMATION AS TO, DID THEY GET 3 MILLION

25      HITS?  THE SEARCH TERMS THAT WE'VE CRAFTED GO DIRECTLY TO THE
```

1    HEART OF THE CLAIMS AND DEFENSES AT ISSUE IN THIS CASE.

2           SO WE HAVE A HARD TIME UNDERSTANDING HOW, YOU KNOW, IN

3    THEIR ENTIRE PRODUCTION CONSISTS OF 151 DOCUMENTS MOST OF WHICH

4    ARE PUBLICLY AVAILABLE COPIES OF THE PATENT AND FILE WRAPPERS

5    AND NEWS CLIPS.  WE HAVE ONLY 22 NON PUBLIC INTERNAL EMBLAZE

6    DOCUMENTS.

7           WE KNOW FROM ANOTHER SOURCE THAT THEY HAVEN'T PRODUCED AT

8    LEAST ONE HIGHLY RELEVANT DOCUMENT ALREADY CALLED FOR

9    PRODUCTION.

10          THE COURT:  YOU REFERRED TO THIS DOCUMENT TWICE.

11   WHAT DOCUMENT ARE YOU REFERRING TO?

12          MS. BARROWS:  IT'S THE GEO BROCHURE.

13       AND WE DID ACTUALLY FILE IT UNDER SEAL IN SORT OF AN

14   ABUNDANCE OF CAUTION, SO I DON'T WANT TO GET INTO TOO MUCH

15   DETAIL IN OPEN COURT ABOUT THAT.

16       IN A MOMENT WE COULD REFER YOU TO WHAT EXHIBIT NUMBER

17   THAT IS.

18          THE COURT:  THAT'S FINE.

19       SO YOUR POINT IS UNDER THE TERMS OF JUDGE COUSINS' ORDER

20   THIS DOCUMENT WAS REQUIRED TO BE PRODUCED MONTHS AGO, MAYBE A

21   YEAR AGO.

22          MS. BARROWS:  OVER A YEAR AGO.  APRIL OF 2012.

23          THE COURT:  OKAY.

24       DID YOU GET ANY PRODUCTION?  I BELIEVE YOU GOT SOMETHING

25   LIKE 1300 PAGES FOLLOWING JUDGE COUSINS' ORDER, CORRECT?

1        MS. BARROWS:  YES, WE DID.

2      AND THAT PRODUCTION CONSISTS OF A MAJORITY OF PUBLICLY

3  AVAILABLE DOCUMENTS.  IT HAS ONLY 22 NON PUBLIC INTERNAL

4  EMBLAZE DOCUMENTS.

5          THE COURT:  SO IN THE ENTIRE EMBLAZE'S PRODUCTION IN

6  THIS CASE TO DATE YOU'VE RECEIVE 22 NON PUBLIC DOCUMENTS?

7          MS. BARROWS:  THAT'S CORRECT.

8          THE COURT:  ALL RIGHT.

9          MS. BARROWS:  AND JUST TO ADDRESS A FEW MORE ISSUES.

10      SO WE ARE ASKING THE SEARCHES BE PERFORMED, THAT -- AND

11  THE SEARCHES WE REQUESTED I UNDERSTAND THEY HAVE PROPOSED

12  LIMITATIONS BUT WE WOULD LIKE TO KNOW WHAT IS THE YIELD FROM

13  THE SEARCHES WE ACTUALLY REQUESTED.  THEN WE WANT TO KNOW IF

14  THEY COULD IDENTIFY FROM THOSE WHICH ONES THEY MAINTAIN ARE A

15  BURDEN, POSSIBLY HAVE SOME GUIDELINES FROM THE COURT AS TO WHAT

16  MIGHT CONSTITUTE A BURDENSOME SEARCH IN A PATENT INFRINGEMENT

17  CASE.

18      THEN WE DID HAVE ONE OUTSTANDING ISSUE.  IT'S A LITTLE

19  UNCLEAR.  WE HAD ASKED FOR THEM TO IDENTIFY THE AVAILABLE DATA

20  FOR THE CUSTODIANS FROM WHOM THEY GATHERED DOCUMENTS.

21      THEY REFERRED VAGUELY IN A LETTER TO HAVING OBTAINED

22  DOCUMENTS FROM PAST PATENT ATTORNEYS AND FROM CO-INVENTORS.

23          THE COURT:  YOU ARE TALKING ABOUT CUSTODIAL

24  INFORMATION.

25          MS. BARROWS:  THAT'S TRUE, YES.

1          THEY SAID IN THEIR LAST LETTER FRIDAY THEY WOULD PROVIDE

2     US THE INFORMATION BUT THEY DIDN'T SPECIFY IF THEY COULD

3     PROVIDE INFORMATION FROM EACH OF THE CUSTODIANS APPLE

4     IDENTIFIED ON EXHIBIT 2 OF ITS MOTION.

5          SO WE HOPE WE DON'T HAVE TO DISCUSS THAT TODAY AND THAT

6     DISPUTE HAS BEEN RESOLVED, BUT WE DO NEED CLARIFICATION FROM

7     EMBLAZE AS TO WHETHER OR NOT THE INFORMATION WOULD BE PROVIDED.

8               THE COURT:  HAVE YOU RECEIVED A PRIVILEGE LOG?

9               MS. BARROWS:  YES, WE HAVE SEEN A PRIVILEGE LOG.

10              THE COURT:  OKAY.

11              MS. BARROWS:  IN THIS CASE.

12         THEN FINALLY, I THINK WE HAVE RESOLVED THE ISSUE AS TO

13    WHETHER OR NOT THE KEY WORD SEARCH TERMS WOULD BE DONE IN BOTH

14    ENGLISH AND HEBREW.

15         AND EMBLAZE HAS ASKED US TO PROVIDE A TRANSLATION AND WE

16    ARE HAPPY TO DO THAT.  WE WILL DO THAT AS SOON AS POSSIBLE SO

17    THEY CAN RUN THAT SEARCH AS WELL.

18              THE COURT:  ALL RIGHT.

19       I MAY HAVE FURTHER QUESTIONS FROM YOU, BUT I WOULD LIKE TO

20    HEAR FROM THE OTHER SIDE.

21              MS. BARROWS:  THANK YOU, YOUR HONOR.

22              THE COURT:  THANK YOU VERY MUCH.

23         MR. FER, GOOD MORNING.

24              MS. FERRARI:  GOOD MORNING.  HOW ARE YOU, YOUR HONOR.

25         WITH RESPECT TO THE WAY APPLE HAS APPROACHED SEEKING ESI

1    FROM EMBLAZE IN THIS CASE, THEY HAVE ENGAGED IN A CAMPAIGN OF

2    LETTER UPON LETTER UPON LETTER SEEKING INFORMATION FROM EMBLAZE

3    OUTSIDE THE CONFINES OF FORMAL DISCOVERY.

4        AS THE PARTIES HAVE DISCUSSED THE ISSUES OF ESI -- AND

5    LET ME MAKE CLEAR WHERE APPLE SAYS EMBLAZE HAS NOT COMPLIED

6    WITH ITS DISCOVERY OBLIGATIONS.

7        YOUR HONOR, WE HAVE PARTICIPATED IN TWO MEET AND CONFERS.

8    WE HAVE ENGAGED IN 14 LETTERS AND E-MAILS BACK AND FORTH

9    NEGOTIATING THESE ISSUES; FOUR MEET AND CONFERS ON OTHER

10   DISCOVERY ISSUES; AND 14 LETTERS AND E-MAILS ALSO ON OTHER

11   DISCOVERY ISSUES.

12       AND APPLE'S TACT HERE IS TO SUGGEST TO YOUR HONOR THAT IT

13   SHOULD BE ALLOWED TO REQUEST THESE OVERLY BROAD -- HAVE US DO

14   THESE OVERLY BROAD SEARCH TERMS BECAUSE WE HAVEN'T COMPLIED

15   WITH DISCOVERY OBLIGATIONS.

16       BUT THAT IS NOT CORRECT.  THAT DOCUMENT THAT MS. BARROWS

17   HAS REFERRED TO A COUPLE OF TIMES WHICH IT WAS AN INVESTOR

18   SOLICITATION DOCUMENT.  APPLE ATTACHED TO ITS REPLY BRIEF

19   PUTTING US AT A DISADVANTAGE TO RESPOND.

20       THE COURT:  HERE'S YOUR CHANCE, TELL ME WHAT YOU WANT

21   TO SAY IN RESPONSE.

22       MS. FERRARI:  FIRST, THAT DOCUMENT THEY GOT FROM

23   MICROSOFT, FROM WHOM EMPLOY BLAZE, HAS A PATENT DISPUTE

24   PROCEEDING.

25       EMBLAZE PRODUCED THE DOCUMENT TO MICROSOFT.  IT DEFIES

1    LOGIC, YOUR HONOR, TO SUGGEST IT WAS GIVEN TO MICROSOFT BUT

2    INTENTIONALLY WITHHELD FROM APPLE.

3            THE COURT:  SO WHY WASN'T IT PRODUCED TO APPLE?

4            MS. FERRARI:  IT WAS AN OVERSIGHT, YOUR HONOR AND IT

5    HAS NOW BEEN CORRECTED AND PRODUCED TO APPLE.

6        ALSO THE DOCUMENT --

7            THE COURT:  WHERE DO THESE DOCUMENTS COME FROM?

8            MS. FERRARI:  I WAS GOING TO SAY, YOUR HONOR, IT'S

9    NOT FROM EMBLAZE'S ESI.  THEY ARE USING THE OMISSION OF IT TO

10   SAY NOW WE HAVE TO DO THESE ESI SEARCHING, BUT IT CAME

11   EMBLAZE'S HARD COPY FILES.

12       AND IT WAS PROVIDED TO MICROSOFT AND INADVERTENTLY NOT

13   PROVIDED TO EMBLAZE.  IT'S SIMPLY NOT AN EXAMPLE OF A DISCOVERY

14   ABUSE.

15           THE COURT:  LET'S TALK ABOUT WHAT THE UNIVERSE OF

16   EMBLAZE ESI LOOKS LIKE.

17       I HAVE TO SAY I HAVE NO IDEA SITTING HERE TODAY, HAVING

18   READ ALL THESE PAPERS AND DECLARATIONS, WHAT DATABASES EXIST,

19   WHAT CUSTODIAN EXIST OVER WHAT TIME PERIOD.

20       SO IF YOU WOULD PAINT ME A PICTURE OF WHAT IT IS YOU HAVE

21   IN YOUR POSSESSION CUSTODY OR CONTROL.

22           MS. FERRARI:  CERTAINLY, YOUR HONOR.

23       EMBLAZE, PRIOR TO 2002, DID NOT HAVE A COMPANY WIDE

24   DOCUMENT MANAGEMENT SYSTEM.

25       SO IF I CAN JUST REMIND THE COURT THAT THE PATENT AT

1    ISSUE HERE WAS APPLIED FOR IN ISRAEL IN 1998 AND APPLIED FOR IN

2    THE U.S. IN 1999, SO THAT THE MOST OF THE TYPES OF DOCUMENTS

3    THAT APPLE IS SEEKING WITH RESPECT TO CONCEPTION AND

4    DEVELOPMENT AND RESEARCH AND DEVELOPMENT AND THINGS LIKE THAT,

5    ARE 15-YEAR OLD DOCUMENTS PRIOR TO THE DATE WHEN EMBLAZE HAD A

6    COMPANY-WIDE DOCUMENT MANAGING SYSTEM, AND SO THEY ARE NOT

7    GOING TO BE IN EXISTENCE ANYMORE.

8         THE COURT:  WELL, JUST BECAUSE YOU DON'T HAVE A

9    COMPANY WIDE DOCUMENT MANAGEMENT SYSTEM DOESN'T MEAN YOU DON'T

10   HAVE THE DOCUMENTS.

11        MS. FERRARI:  CERTAINLY, YOUR HONOR.

12        THE COURT:  SO TELL ME, BEFORE 2002, HOW MANY

13   EMPLOYEES WORKED FOR EMBLAZE?  ROUGHLY.

14        MS. FERRARI:  ROUGHLY, I THINK A THOUSAND.

15        DEPENDS ON WHICH PERIOD.  PRIOR TO 2002?

16        THE COURT:  MORE THAN A HUNDRED?

17        MS. FERRARI:  YES, YOUR HONOR.

18        THE COURT:  ALL RIGHT.

19     SO THERE WERE A HUNDRED, PERHAPS HUNDREDS OF EMPLOYEES

20   WORKING FOR EMBLAZE AT THIS TIME.

21     HOW WAS THEIR DATA ORGANIZED?

22        MS. FERRARI:  SO AN EMPLOYEE WAS ASSIGNED AN

23   INDIVIDUAL MAILBOX AND THERE WAS AN EXTERNAL --

24        THE COURT:  THERE WAS AN EXCHANGE SERVER OF SOME KIND

25   HOSTING E-MAIL.

1              MS. FERRARI:  OUTSIDE EXCHANGE SERVER; THAT'S

2     CORRECT.

3              THE COURT:  SO IT WAS HOSTED BY A THIRD PARTY?

4              MS. FERRARI:  YES.

5          BUT YOUR HONOR, IF I CAN CLARIFY, EMBLAZE SWITCHED TO,

6     STARTED CREATING BACK UP TAPES IN ABOUT 2009.

7          SO AS OF 2009, WHAT THESE INDIVIDUAL CUSTODIANS HAD IN

8     THEIR E-MAILS OR HAD SAVED TO THE FILE SERVER FOR EMBLAZE WOULD

9     BE PRESUMABLY SAVED ON THE BACKUP TAPES.

10         AND THAT IS WHAT EMBLAZE -- SINCE JANUARY YOUR HONOR,

11    EMBLAZE HAS BEEN SAYING TO APPLE, WE WILL DO THE SEARCH, A

12    VERSION OF THE SEARCHES YOU HAVE PROPOSED.

13         WHAT WE HAVE OBJECTED TO, YOUR HONOR IS --

14             THE COURT:  BEFORE WE GET TO THAT, I STILL WANT TO

15    UNDERSTAND THE ARCHITECTURE OF THE ESI AT EMBLAZE BEFORE 2002.

16         SO I THINK YOU JUST EXPLAINED TO ME THAT THERE WAS A

17    THIRD PARTY HOSTED SERVICE FOR E-MAIL; IS THAT CORRECT?

18             MS. FERRARI:  THAT IS MY UNDERSTANDING, YES.

19             THE COURT:  OKAY.

20         SO FOR HUNDREDS OF EMPLOYEES, WHO WAS THE THIRD PARTY WHO

21    HOSTED THE E-MAIL?

22             MS. FERRARI:  I'M SORRY, YOUR HONOR, I DON'T HAVE THE

23    NAME OF THE THIRD PARTY PROVIDER.

24             THE COURT:  DID YOU INVESTIGATE THAT QUESTION?

25             MS. FERRARI:  WHAT I HAVE -- WHAT WE HAVE

1    INVESTIGATED IS SPEAKING WITH EMBLAZE ABOUT WHAT IS ACCEPTABLE

2    TO THEM IN TERMS OF DOING THE SEARCHES.

3           THE COURT:  WERE YOU USING AN ISP OR A CONTENT

4    PROVIDER LIKE YAHOO OR GOOGLE TO HOST THE E-MAIL?

5           MS. FERRARI:  THAT FAR BACK, I DON'T THINK SO, BUT I

6    WOULD HAVE TO CONFER.

7           THE COURT:  OKAY.  SO HERE'S THE PROBLEM.  THESE

8    APPELLANTS ARE RELATIVELY MATURE.  I WILL USE THAT TERM.

9         AND THE CONCEPTION OF REDUCTION TO PRACTICE DILIGENCE, ON

10   SALE, ALL OF THESE ISSUES ARE GOING TO BE IMPORTANT IN THIS

11   CASE.

12        IT WOULD SEEM TO ME AT A MINIMUM YOU WOULD NEED TO

13   EXPLORE WHAT E-MAIL WAS AVAILABLE FROM THESE SERVICES YOU USED

14   WAY BACK WHEN IN ORDER TO SATISFY YOUR OBLIGATIONS, RIGHT?

15          MS. FERRARI:  WE ARE PREPARED TO DO THAT.

16        WHAT WE HAVE BEEN FOCUSSING ON IS NEGOTIATING WITH APPLE AS

17   TO WHAT THE SEARCH TERMS WOULD BE.

18        WE HAVE NO OBJECTION.  IN FACT WE ARE HERE TO SAY IT'S

19   THE INITIAL OPPOSITION ACT OBJECTED TO APPLE'S MOTION IN ITS

20   ENTIRETY, WE ARE ACTUALLY PREPARED TO DO VIRTUALLY ALL THE

21   SEARCHES APPLE HAS REQUESTED.

22        WE WILL PROVIDE, IF THEY PROVIDE THE TERMS IN HEBREW, WE

23   WILL GO BACK AND DO THEM IN HEBREW.

24           THE COURT:  SO LET'S ASSUME WE CAN SWEAR AWAY WHAT

25   THE TERMS ARE.

1    WHAT ARE YOU GOING TO USE THE SEARCH TERMS TO REVIEW?

2    IN OTHER WORDS WHAT'S THE UNIVERSE OF DATA YOU ARE PREPARED

3    TO SEARCH GIVEN WE ARE TALKING ABOUT 13 YEARS OF HISTORY HERE?

4    MS. FERRARI:  WE HAVE NO OBJECTION TO ASCERTAINING

5    WHATEVER IS AVAILABLE.

6    THE COURT:  THAT'S WHAT I'M TRYING TO FIGURE OUT

7    COUNSEL, WHAT IS AVAILABLE.

8    YOU ARE TELLING ME IN YOUR PAPERS THAT MUCH OF THIS TIME

9    PERIOD, DATA FROM -- IS UNAVAILABLE.

10   ARE YOU ABLE TO ACCESS BOTH E-MAIL AND NON E-MAIL ESI

11   GOING BACK TO 1999 OR NOT?

12   MS. FERRARI:  WE ARE IN THE PROCESS OF DETERMINING

13   THAT, YOUR HONOR.

14   THE COURT:  WELL, WITH ALL RESPECT RIGHT, I GOT A LOT

15   OF PEOPLE HERE WHO COMPLY WITH THEIR OBLIGATIONS.  WOULDN'T YOU

16   THINK THAT WITH THE CASE SET FOR TRIAL IN 2014, THIS CASE WAS

17   FILED A COUPLE YEARS AGO IN FRONT OF JUDGE ARMSTRONG, WHY ARE

18   YOU ONLY NOW BEGINNING TO EXPLORE THE ISSUES?

19   MS. FERRARI:  THE PARTIES TOGETHER DID NOT START

20   SUBSTANTIVE ESI DISCUSSIONS UNTIL SEVERAL MONTHS AGO.

21   THE COURT:  JUDGE COUSINS ISSUED THE ORDER OVER A

22   YEAR AGO.  THIS COURT RULED YOU HAD TO PRODUCE DATA FROM OVER A

23   YEAR AGO.

24   MS. FERRARI:  AND WE DID SEARCHING IN RESPONSE TO

25   THAT.

1    THE COURT:  WHAT DID YOU SEARCH?

2    MS. FERRARI:  PRODUCED MORE THAN 1300 DOCUMENTS.

3    THE COURT:  1300 DOCUMENTS, OR PAGES?

4    MS. FERRARI:  PAGES, EXCUSE ME.  MY APOLOGIES.

5    THE COURT:  THAT'S HALF A BANKER'S BOX, WITH ALL DUE

6 RESPECT, RIGHT?

7    MS. FERRARI:  BUT AGAIN, I GO BACK TO THE FACT THAT

8 WE ARE DEALING WITH SO FAR BACK IN TIME.

9    THE COURT:  I GO BACK TO THE FACT THAT I DON'T EVEN

10 KNOW, SITTING HERE IN MAY OF 2013, WHAT DATA SOURCES WE HAVE

11 AVAILABLE AT OUR DISPOSAL TO GET THEM THE INFORMATION.  NOT

12 STUFF THEY ARE NOT ENTITLED TO, JUST THE STUFF THEY ARE.  YOU

13 ARE SITTING HERE TELLING ME YOU DON'T EVEN KNOW?

14    MS. FERRARI:  WHAT I KNOW IS THERE IS -- I THOUGHT I

15 HAD AND MADE CLEAR THERE ARE BACKUP TAPES FROM PRIOR TO 2009.

16    THE COURT:  SO YOU WANT TO GO TO THE BACKUP TAPES

17 BEFORE YOU GO TO THE ACTIVE DATA?

18    MS. FERRARI:  NO, NO, I'M SORRY.  IN ADDITION.  WE

19 HAVEN'T MADE ANY ARGUMENT THAT THE CASES ARE REPLETE WITH

20 DISCUSSIONS ABOUT THE BURDEN IN SEARCHING BACKUP TAPES.  WE

21 HAVE SAID FROM THE OUTSET WE WILL SEARCH AVAILABLE CUSTODIANS.

22    THE COURT:  AND I'M TRYING TO FIGURE OUT WHO THOSE

23 PEOPLE ARE.

24   AND YOU ARE STANDING HERE IN COURT IN MAY 2013, YEARS AFTER

25 THIS CASE WAS BROUGHT, WELL OVER A YEAR AFTER A JUDGE OF THIS

1  COURT ISSUES YOU TO -- ORDERED YOU TO PRODUCE DOCUMENTS, AND

2  YOU CAN'T EVEN TELL ME WHAT THE SOURCES OF DATA ARE, CAN YOU?

3          MS. FERRARI:  THE AVAILABLE CUSTODIANS ARE MR. SHANI,

4  WHO IS THE CHAIRMAN OF THE COMPANY, HAGIT GAL WHO IS THE

5  EXECUTIVE DIRECTOR OF THE COMPANY AND GANI.

6          THE COURT:  SO OVER THE COURSE OF THIS RELEVANT

7  PERIOD THERE ARE HUNDREDS OF EMPLOYEES AND YOU ARE TELLING ME

8  THREE ARE AVAILABLE FOR SEARCHING.

9          MS. FERRARI:  APPLE HAS REQUESTED 12, YOUR HONOR.

10          THE COURT:  AND I'M TRYING TO UNDERSTAND WHO IS

11  AVAILABLE FOR SEARCHING.

12          MS. FERRARI:  THOSE THREE AS THE INDIVIDUAL

13  CUSTODIANS.

14          THE COURT:  WHO ELSE?

15          MS. FERRARI:  PLUS ANYONE WHO WAS, AS OF 2009, THE

16  BACKUP TAPES, ANYONE WHO WOULD HAVE BEEN AN EMPLOYEE AS OF

17  2009.  BUT AGAIN, YOUR HONOR --

18          THE COURT:  WHAT ABOUT FROM THE TIME PERIOD BEFORE

19  2009?

20          MS. FERRARI:  IF THEY WERE SAVED WHEN THE BACKUP

21  TAPES STARTED --

22          THE COURT:  WHEN WAS IT?

23          MS. FERRARI:  PRIOR TO -- I'M SORRY, AS OF 2009 --

24          THE COURT:  DO YOU KNOW?

25          MS. FERRARI:  NO.  THE BACKUP TAPES STARTED IN 2009

```
 1    AND THAT'S WHEN --

 2             THE COURT:  SO IF YOU PUT ASIDE THE BACKUP TAPES, DO

 3    YOU HAVE ACCESS TO ANY ACTIVE DATA, ANY DATA THAT WILL NOT

 4    REQUIRE A RESTORATION FROM A BACKUP SYSTEM?

 5             MS. FERRARI:  ABSOLUTELY, YOUR HONOR.

 6             THE COURT:  WHO?

 7             MS. FERRARI:  WE HAVE PRODUCED HARD COPY DOCUMENTS,

 8    WE SEARCHED EMBLAZE'S ARCHIVES.  WE HAVE GONE TO PAST PATENT

 9    ATTORNEYS, PAST INVENTORS WHO ARE NO LONGER EMPLOYEES.

10             THE COURT:  CAN YOU TELL ME WHETHER YOU HAVE ACCESS

11    TO ANY NON BACKUP TAPES FOR ANY EMPLOYEES OTHER THAN THE 3 OR 4

12    GENTLEMAN YOU LISTED?

13             MS. FERRARI:  YES, WE DO.

14             THE COURT:  WHO?

15             MS. FERRARI:  I'M NOT ABLE TO IDENTIFY THEM AND

16    THAT'S BECAUSE, YOUR HONOR, APPLE HAS REQUESTED SEARCHES OF 12

17    CUSTODIANS.

18         WE WERE NEGOTIATING A LIST OF CUSTODIANS.  THEY HAD

19    PEOPLE ON THEIR LIST

20             THE COURT:  LET'S START WITH THE 12 THEN.

21             MS. FERRARI:  YES.

22             THE COURT:  OTHER THAN THE 3 OR 4 YOU IDENTIFIED FOR

23    ME ALREADY, OF THOSE 12 DO YOU HAVE ACCESS TO ACTIVE DATA FOR

24    ANY OF THOSE 12?

25             MS. BARROWS:  HERE'S THE LIST OF 12.
```

1        MS. FERRARI:  THANK YOU.  NO, IT IS THE THREE --

2        THE COURT:  WHAT HAPPENED TO THOSE OTHER NINE THEN?

3        MS. FERRARI:  THEY WERE -- THEIR SYSTEMS WERE SAVED

4   ON INDIVIDUAL COMPUTERS THAT WERE NOT TRANSFERRED OVER WHEN THE

5   COMPANY SWITCHED OVER.

6        THE COURT:  BUT I THOUGHT YOU EXPLAINED TO ME THAT

7   THOSE FOLKS USED E-MAIL HOSTED BY A THIRD PARTY GOING BACK TO

8   1999.

9        MS. FERRARI:  I MAY NEED TO CLARIFY THAT ASPECT OF

10  IT.

11      IT WAS MY UNDERSTANDING FROM DISCUSSIONS, OUR

12  INVESTIGATION, THAT THE ACTIVE -- THAT THE AVAILABLE DATA WAS

13  LIMITED TO THREE CUSTODIANS ON THIS LIST.

14      THAT WE WERE PREPARED TO DO SEARCHES OF NEARLY ALL THE

15  TERMS ON APPLE'S LIST WITH A FEW DATE RESTRICTIONS I WOULD LIKE

16  TO ADDRESS.  BUT OTHER THAN THAT, THAT THAT WAS THE LIMIT ON

17  WHAT WE COULD SEARCH.

18      THE COURT:  ALL RIGHT.

19      DO YOU HAVE ANY OTHER POINTS YOU WISH TO MAKE, COUNSEL?

20      MS. FERRARI:  JUST TO ADDRESS THIS IN THE FRAMEWORK

21  OF EMBLAZE NOT ENGAGING IN THE SMEAR -- YOU KNOW, THE CONDUCT

22  THAT WE HAVE BEEN ACCUSED OF.  THIS WHOLE -- THERE'S BEEN

23  ACCUSATIONS THAT WE DIDN'T PRODUCE DOCUMENTS RELATED TO

24  CONCEPTION WHEN WE HAVE.  ACCUSATIONS OF DESTRUCTION OF FILES

25  BY THE U.S. LAW FIRM THAT PROSECUTED THE PATENT.  AS THE

1    DOCUMENTS PRODUCED TO APPLE INDICATE, THAT LAW FIRM HAD A

2    NUMBER OF -- HAD A PROJECT IN PLACE BEFORE THE ALLEGATIONS WERE

3    MADE AGAINST APPLE.

4         THE COURT:  I'M SURE -- I UNDERSTAND YOU PRODUCED A

5    PRIVILEGE LOG IN THIS CASE.  I TAKE IT THAT ON THAT LOG YOU

6    HAVE CITED BOTH THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK

7    PRODUCT DOCTRINE IN WITHHOLDING PRODUCTION, AS IS YOUR RIGHT.

8         MS. FERRARI:  YES, YOUR HONOR.

9         THE COURT:  OKAY.

10        WHAT IS THE DATE YOU REASONABLY ANTICIPATED THIS LITIGATION

11   BASED ON WHAT YOU PROVIDED ON THE LOG?

12        MS. FERRARI:  WITHOUT SAYING PRECISELY, IT WOULD HAVE

13   BEEN A DATE PROBABLY WITHIN THE YEAR 2009 OR 2008 WHEN -- 2009

14   I BELIEVE, WHEN WE LEARNED, EMBLAZE LEARNED OF APPLE'S HTP LIVE

15   STREAMING.

16        THE COURT:  ALL RIGHT.

17        YOU WANTED TO MAKE A FINAL POINT, I BELIEVE?

18        MS. FERRARI:  JUST THAT EMBLAZE HAS COMPLIED WITH ITS

19   DISCOVERY OBLIGATIONS THAT IT WILL CONTINUE TO DO SO IN

20   ACCORDANCE WITH WHATEVER THE COURT ORDERS.  BUT THAT AS FAR AS

21   THE 50 SEARCH WORDS, THE SEARCH TERMS, THE HUNDRED SEARCH WORDS

22   THAT APPLE HAS PROVIDED, SOME OF WHICH ARE THINGS LIKE WEB

23   RADIO OR A NAME, BRUCE EDWARDS.

24        THE COURT:  SO FOR EXAMPLE, MR. EDWARDS, HOW MANY

25   DOCUMENTS BASED ON THE DATA AVAILABLE TO EMBLAZE SITTING HERE,

1      HOW MANY DOCUMENTS WOULD BRUCE EDWARDS GENERATE?

2            MS. FERRARI:  I DON'T HAVE THE ANSWER BECAUSE THEY

3      ARE DUE THIS WEEK.

4            THE COURT:  DO YOU HAVE AN ANSWER TO THE TERMS OTHER

5      THAN WEB RADIO.

6            MS. FERRARI:  I DO NOT.  WE ARE IN THE PROCESS OF

7      SEARCHING THEM NOW.  BUT WHAT WE HAVE OFFERED --

8            THE COURT:  YOU ARE HERE ON A RESPONSE TO A MOTION TO

9      COMPEL IN MAY OF 2013.

10     DOES IT STRIKE YOU AS A BIT UNREASONABLE THAT YOU DON'T

11     HAVE THESE BASIC FACTS IN HAND IN RESPONSE TO A MOTION TO AN

12     ORDER FROM THIS COURT?

13           MS. FERRARI:  YOUR HONOR, WHAT WE HAVE DONE IS

14     RESPONDING TO THE QUESTIONS PUT FORTH BY APPLE ON A WEEKLY

15     BASIS IN TERMS WAS 14 LETTERS SENT TO US.

16     WE HAVE BEEN NEGOTIATING WITH THEM AS TO THE PARAMETERS OF

17     THE SEARCH.  AND IN FACT, SINCE JANUARY WE HAVE SAID WE WILL DO

18     A VERSION OF WHAT YOU ARE SEARCHING BUT WHAT WE WANT TO DO IS

19     SCALE BACK ON THE BROADNESS OF THE TERMS BECAUSE IN THIS CASE

20     THE PARTIES --

21           THE COURT:  HOW DO YOU KNOW WHETHER THEY ARE BROAD OR

22     NOT?  YOU HAVEN'T EVEN RUN THE SEARCHES YET.  YOU DON'T KNOW

23     WHETHER THE TERMS WILL GENERATE FIVE DOCUMENTS OR 5 MILLION,

24     RIGHT?

25           MS. FERRARI:  THAT IS -- YOUR HONOR, THAT'S CORRECT.

1    THAT'S CORRECT.

2         HOWEVER, WE HAVE IN GOOD FAITH NEGOTIATED WITH APPLE TO

3    SCALE BACK THE TERMS AND TO.

4         THE COURT:  BUT HOW CAN YOU SCALE BACK SOMETHING THAT

5    FOR WHICH YOU DON'T UNDERSTAND THE SCALE?  YOU DON'T KNOW

6    WHETHER THESE DOCUMENTS TERMS WILL GENERATE 10 MILLION

7    DOCUMENTS OR 10, RIGHT?

8         MS. FERRARI:  WHAT WE CAN SAY IS THAT A TERM LIKE WEB

9    RADIO, A TERM LIKE BRUCE EDWARDS, A NAME OF A CEO OF EMBLAZE'S

10   U.S. SUBSIDIARY, WILL RETURN DOCUMENTS BEYOND WHAT CONCERNS THE

11   PATENT INFRINGEMENT ALLEGATIONS IN THIS CASE.

12        THE COURT:  YOU HAVE THREE CUSTODIANS.  YOU HAVEN'T

13   EVEN RUN THE TERMS.  YOU DON'T KNOW, DO YOU?

14        MS. FERRARI:  WE ARE IN THE PROCESS OF RUNNING THE

15   TERMS.  WE HAVE GONE ALONG WITH APPLE'S SCHEDULE.

16        THE COURT:  SO WHEN YOU SAY YOU ARE IN THE PROCESS

17   YOU ARE RUNNING THE TERM SAYS AS WE STAND HERE TODAY.

18        MS. FERRARI:  THIS WEEK, YOUR HONOR?

19        THE COURT:  HAVE YOU RUN THOSE SEARCH TERMS?

20        MS. FERRARI:  WE ARE -- THE COMPANY IS IN THE PROCESS

21   OF RUNNING THEM.  AGAIN, WE HAVE BEEN NEGOTIATING WITH APPLE TO

22   FIGURE OUT WHAT THE SEARCH TERMS WOULD BE.

23        APPLE IS NOW THEY KEEP INCREASING THE TERMS.  THEY START

24   WITH TERMS LIMITED PROPERLY TO 1996 TO '99.

25        FOR EXAMPLE, WHEN THE DATE OF THE PATENT WAS FILED.  ALL

1    OF THE SUDDEN THEY TAKE OUT THAT DATE RESTRICTION IN THIS

2    MOTION AND THEY CLAIM THEY HAVE BEEN ALLOWED TO SEARCH --

3             THE COURT:  YOU DON'T HAVE DATA THAT PREDATES 2009

4    ANYWAY, RIGHT?

5             MS. FERRARI:  NO, YOUR HONOR.  WE HAVE BACKUP TAPES

6    BEGINNING IN 2009.

7             THE COURT:  YOU ARE SAYING YOU ARE WILLING TO SEARCH

8    BACKUP TAPES.

9             MS. FERRARI:  WE HAVE ALWAYS BEEN WILLING TO SEARCH

10   BACKUP TAPES.  WE'VE NEVER CLAIMED THAT WE WOULDN'T SEARCH

11   BACKUP TAPES.

12       OUR ISSUE IS WITH THE BREADTH OF THE TERMS AND NARROWING

13   THEM SO THAT THEY HAVE SOME RELEVANCE TO THE PATENT

14   INFRINGEMENT ALLEGATIONS IN DISPUTE.

15       A TERM LIKE WEB RADIO, WEB RADIO WAS A SUBSIDIARY OF

16   EMBLAZE.  IT HAS NOTHING TO DO WITH THE PATENT INFRINGEMENT

17   ALLEGATIONS.  THEY ARE GOING FOR THE SERVICE, THE WEB RADIO

18   SERVICE.

19       SO HOW ABOUT APPLE, AS WE HAVE BEEN ASKING, NARROW THE

20   TERM WEB RADIO TO --

21             THE COURT:  WELL, IF I UNDERSTAND COUNSEL'S

22   REPRESENTATION, WEB RADIO GENERATED BETWEEN 1996 AND 1999, 150

23   DOCUMENTS.  ARE YOU SUGGESTING THAT'S OVER BROAD?

24             MS. FERRARI:  YOUR HONOR, THAT NUMBER IS NOT OVER

25   BROAD.

1        BUT AGAIN, WE HAVE PARTICIPATED IN THE MEET AND CONFERS

2    THAT APPLE AND US HAVE DONE.  WE HAVE IN GOOD FAITH BEEN

3    NARROWING THE TERMS.

4            THE COURT:  ALL RIGHT.

5        I UNDERSTAND YOUR POSITION, COUNSEL.  THANK YOU VERY

6    MUCH.

7            ANY BRIEF REBUTTAL?  VERY BRIEF.

8            MS. BARROWS:  YES.

9        LISA, CAN I JUST GET THE LIST OF CUSTODIANS FROM YOU.

10   OKAY.

11           JUST REALLY BRIEFLY ON THE ISSUE OF HARASSMENT AND THE

12   MEET AND CONFERS, THE PARTIES HAVE ENGAGED IN MEET AND CONFERS,

13   THE PROBLEM IS THEY NEVER RESULTED -- WE ARE STILL STANDING IN

14   A VACUUM TODAY, SIX MONTHS AFTER WE BEGAN THE LETTER CAMPAIGN

15   AND OVER A YEAR AFTER OUR MOTION TO COMPEL.

16           THE COURT:  WHY ENGAGE IN A LETTER CAMPAIGN FOR A

17   YEAR?  WHY NOT ENGAGE THE COURT EARLY IN THIS PROCESS SO YOU

18   DON'T HAVE TO SIT HERE, ESSENTIALLY MONTHS AWAY FROM TRIAL.

19           MS. BARROWS:  SURE.

20           THE COURT:  WITHOUT ANY DOCUMENTS.

21           MS. BARROWS:  WELL, BECAUSE THE PRODUCTION THEY MADE

22   WAS IN MAY.  WE GAVE THEM SEARCH TERMS IN JUNE.  WE HAD SOME

23   LETTERS BACK AND FORTH.  WE ALSO TRANSFERRED TO YOUR HONOR, WE

24   WERE BEFORE JUDGE ARMSTRONG.  AT THAT POINT WE KNEW THE REST OF

25   THE CASE WAS GOING TO BE TRANSFERRED.

```
1            SO WITHIN TWO WEEKS OF BEING TRANSFERRED TO YOUR HONOR WE

2    DID FILE OUR MOTION.

3            THE COURT:  ALL RIGHT.

4        I THINK I UNDERSTAND YOUR POSITIONS.

5        YOU WILL HAVE AN ORDER FROM ME SHORTLY.  I DO NEED TO MOVE

6    ON TO OTHER MATTERS.

7            MS. FERRARI:  YOUR HONOR, MAY I RAISE ONE THING

8    CONNECTED TO THIS?

9        VERY BRIEFLY, THERE WAS A MOTION TO COMPEL THAT APPLE MADE

10   WITH RESPECT TO --

11           THE COURT:  I BELIEVE THAT'S CALENDARED FOR NEXT

12   MONTH.

13           MS. FERRARI:  CORRECT.  OUR OPPOSITION IS DUE TODAY.

14       I WANTED TO CONFIRM AN AGREEMENT ON THE RECORD THAT APPLE

15   WILL BE WITHDRAWING THAT BECAUSE IT SHOULD HAVE BEEN FILED IN

16   NEW YORK WHERE THE SUBPOENA WAS ISSUED, BECAUSE OUR OPPOSITION

17   IS DUE TODAY, I DID WANT TO CONFIRM THAT ON THE RECORD.

18           THE COURT:  DO YOU WANT TO BRIEFLY RESPOND?

19           MS. BARROWS:  YES, YOUR HONOR.

20       WE DID RECOGNIZE AT THE MOMENT THAT THE SUBPOENA WAS ISSUED

21   IN NEW YORK.  WE WILL RE FILE IN NEW YORK.

22           THE COURT:  AND WITHDRAW FROM THIS COURT?

23           MS. BARROWS:  YES, WE WILL.

24           THE COURT:  THANK YOU.

25       ALL RIGHT.  THE MATTER IS SUBMITTED.
```

1           HAVE A GOOD MORNING.

2           (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

1

2

3

4                       **CERTIFICATE OF REPORTER**

5

6

7

8               I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13               THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185              DATED: 6/6/13