1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                             SAN JOSE DIVISION

4

5

     EMBLAZE, LTD.,                    )  CV-11-1079-PSG
6                                      )
                     PLAINTIFF,        )  SAN JOSE, CALIFORNIA
7                                      )
            VS.                        )  AUGUST 20, 2013
8                                      )
     APPLE, INC.,                      )  PAGES 1-41
9                                      )
                     DEFENDANT.        )
10                                     )

11

12                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE PAUL S. GREWAL
13                  UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:       DAVIS WRIGHT TREMAINE, LLP
                              BY:  MARTIN FINEMAN
17                            505 MONTGOMERY STREET, STE 800
                              SAN FRANCISCO, CA 94111
18

19   FOR THE DEFENDANT:       GREENBERG TRAURIG, LLP
                              BY:  JAMES DECARLO
20                            200 PARK AVENUE, 34TH FLOOR
                              NEW YORK, NY 90404
21

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23

24              APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185

```
 1    FOR THE PLAINTIFF:        COZEN O'CONNOR
                                BY:  MARTIN PAVANE
 2                              277 PARK AVENUE
                                NEW YORK, NY 10172
 3

 4    FOR THE DEFENDANT:        GREENBERG TRAURIG, LLP
                                BY:  SARAH BARROWS
 5                              4 EMBARCADERO CENTER, STE 3000
                                SAN FRANCISCO, CA 94111
 6

 7    ALSO PRESENT:            RYAN MORAN

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    AUGUST 20, 2013
 2                     P R O C E E D I N G S
 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5            THE CLERK:  CALLING EMBLAZE VERSUS APPLE.  CASE
 6    NUMBER CV-11-1079-PSG.
 7        MATTER ON FOR DEFENDANT APPLE, INC.'S MOTION FOR LEAVE TO
 8    SUPPLEMENT VALIDITY CONTENTIONS AND APPLE, INC.'S MOTION FOR
 9    RELIEF.
10        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.
11            MR. FINEMAN:  GOOD MORNING AGAIN, YOUR HONOR.
12        I'M MARTIN FINEMAN, WITH DAVIS WRIGHT TREMAINE, LLP.
13        WITH ME IS MARTIN PAVANE OF COZEN O'CONNOR OF NEW YORK
14    CITY.  MR. PAVANE HAS APPEARED BEFORE YOU PREVIOUSLY AND WAS
15    PERMITTED PRO HAC VICE.
16            THE COURT:  I REMEMBER WELL.  WELCOME BACK.
17        GOOD MORNING, AGAIN.
18            MR. DECARLO:  GOOD MORNING, YOUR HONOR.
19        JAMES DECARLO, GREENBERG TRAURIG FOR DEFENDANT, APPLE.
20            THE COURT:  WELCOME, SIR.  WELCOME BACK.
21         AND YOUR COLLEAGUES?
22            MR. DECARLO:  SARA BARROWS OF GREENBERG TRAURIG AND
23    RYAN MORAN WITH APPLE.
24            THE COURT:  GOOD MORNING TO EACH OF YOU.
25        ALL RIGHT.  WELL, AS I UNDERSTAND IT I'VE GOT TWO MOTIONS
```

1    BEFORE ME.  A MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY

2    CONTENTIONS AND ALSO A MOTION FOR RELIEF FROM THE ORDER, I

3    GUESS THE SCHEDULING ORDER, PURSUANT TO RULE 37.

4         OBVIOUSLY THESE MOTIONS ARE SOMEWHAT RELATED, I'M SURE

5    MR. CAR LI, YOU WOULD LOOK AT IT THAT WAY.

6              MR. DECARLO:  THEY ARE, YOUR HONOR.

7              THE COURT:  WHY DON'T WE TAKE THEM UP COLLECTIVELY

8    AND I WILL GIVE MR. VAIN A FULL AND FAIR OPPORTUNITY TO RESPOND

9    IF NEEDED.

10        GO AHEAD MR. CAR, YOU MAY PROCEED.

11             MR. DECARLO:  WELL, YOUR HONOR, IN THE FIRST INSTANCE

12   I WOULD LIKE TO DISCUSS OUR MOTION TO HAVE THE OPPORTUNITY TO

13   AMEND OUR INVALIDITY CONTENTIONS AS A RESULT OF -- THERE ARE

14   WERE SEVERAL FACTORS.

15        ONE IS THE LATE DISCOVERY OF DOCUMENTS AS YOU OBSERVED IS

16   INTERTWINED WITH OUR MOTION FOR RELIEF.

17        AND ALSO THE FACT THAT THE LOCAL RULES DO CONTEMPLATE IN

18   ACCORDANCE WITH THOSE LOCAL RULES WE WOULD LIKE TO AMEND IN

19   LIGHT OF WHAT TOOK PLACE AS A RESULT OF THE MARKMAN ORDER.

20             THE COURT:  I HAVE TO TELL YOU -- I'M SORRY FOR

21   INTERRUPTING YOU, SIR.

22        I FOUND YOUR CANDOR IN YOUR PAPERS REFRESHING IN THAT MOST

23   PARTIES AFTER MARKMAN, NO MATTER HOW I RULE, TELL ME HOW

24   THEY'VE WON.  YOU SEEM TO ACKNOWLEDGE THAT WASN'T THE CASE.

25             MR. DECARLO:  THEY SAY SOMETIMES YOU EAT THE BEAR AND

1    SOMETIMES THE BEAR EATS YOU.

2          THE COURT:  I HAD TO NOTE THAT.  WHY DON'T YOU GO

3    AHEAD.

4          MR. DECARLO:  SO WITH THAT, AND THANKFUL FOR THE

5    COURT'S UNDERSTANDING OF THAT, I THINK IT WAS PERFECTLY

6    REASONABLE FOR APPLE TO SEEK, AS MOST PARTIES WOULD HAVE UNDER

7    THE CIRCUMSTANCES, A RENEWED SEARCH.

8       AND SO, THE ISSUES THAT ARE, THAT SEEM TO BE IN PLAY WITH

9    RESPECT TO OUR MOTION TO AMEND, IS NOT THAT WE ARE ENGAGED IN

10   ANY GAMES MAN SHIP WHICH OF COURSE THE COURTS HAVE LOOKED AT AS

11   A FACTOR IN DISALLOWING.  THERE'S BEEN NO ARGUMENTS OF UNDUE

12   PREJUDICE HERE.  WE ARE WELL BEFORE THE CLOSE OF FACT DISCOVERY

13   AND WELL BEFORE THE CLOSE OF EXPERT DISCOVERY AND WELL, WELL

14   BEFORE TRIAL.

15         THE COURT:  COULD YOU JUST REMIND ME AGAIN, MR. CAR,

16   OF THOSE DEADLINES.

17         MR. DECARLO:  FACT DISCOVERY CLOSES AUGUST 30TH.

18   OPENING EXPERT REPORTS ARE IN OCTOBER.  EXPERT DISCOVERY

19   CLOSES, I BELIEVE NOVEMBER 26TH -- SOMEONE HERE SHOULD KEEP ME

20   ON THAT.  WE ARE NOT DUE FOR I TRIAL UNTIL END OF MARCH 2014,

21   YOUR HONOR.

22         MR. PAVANE:  OCTOBER 1ST IS THE EXPERT REPORT.

23         MR. DECARLO:  THANKS MARTIN.

24         THE COURT:  OKAY.  THANK YOU.

25         MR. DECARLO:  AND I'M SURE MR. VERVAIN WILL HAVE HIS

1    MOMENT.

2         SO THERE DOESN'T SEEM TO BE AN ARGUMENT ABOUT RELEVANCE.

3    I THINK WE DEMONSTRATED THE RELEVANCE IN OUR NOT ONLY HAVING

4    DISCUSSIONS WITH MR. PAVANE BEFORE THE FILING OF THE MOTION,

5    BUT PROPOSING AND PUTTING BEFORE THE COURT AND EMBLAZE OUR

6    PROPOSED AMENDMENTS.

7         AND SETTING FORTH WITH PARTICULARITY THE REASONS FOR

8    THOSE AMENDMENTS.

9         SO THE ISSUE SEEMS TO BE DILIGENCE IS THE ONLY ARGUMENT

10   THAT SEEMS TO BE RAISED HERE.  AND I THINK THAT HERE, IF WE ARE

11   TO LOOK AT THE TIMELINE WE PRESENTED IN OUR PAPERS THAT I CAN

12   GO THROUGH BRIEFLY, WE HAVE A MARKMAN DECISION ON APRIL 19TH,

13   WITHIN A MONTH WE COMMISSIONED A NEW SEARCH.  WE USED A

14   COMPLETELY NEW SEARCH STRATEGY THAT WE USED AT OUR INITIAL

15   SEARCHES THAT WERE DONE WHEN WE FILED OUR EARLIER INVALIDITY

16   CONTENTIONS.  THERE WAS A MOTION FOR RECONSIDERATION.

17        THE COURT:  IF I COULD, AND AGAIN I APOLOGIZE FOR

18   INTERRUPTING --

19        MR. DECARLO:  OF COURSE.

20        THE COURT:  -- BUT I WANT TO MAKE SURE I UNDERSTAND

21   AND LEARN, FRANKLY, HOW YOU'VE GONE ABOUT THIS BECAUSE I THINK

22   IT IS MATERIAL TO THE REQUESTED RELIEF.

23        YOU KNOW, WHEN I USED TO COMMISSION SEARCH FIRMS TO HELP

24   ME WITH PRIOR ART IN ATTEMPTING TO VALIDATE PATENTS, I WILL

25   CONFESS WE WOULD GIVE RATHER BROAD DIRECTION IN ORDER TO GATHER

1       UP AS MUCH AS WE COULD.

2            YOUR PAPERS, AT LEAST, AND YOUR COMMENT THIS MORNING

3       SUGGESTS THE MARKMAN REALLY DID CHANGE THE FOCUS OF THE

4       DIRECTION YOU GAVE TO YOUR TEAM.  AND I DON'T WANT TO GET INTO

5       THE COMMUNICATIONS THAT TOOK PLACE, BUT I WANT TO BETTER

6       UNDERSTAND EXACTLY WHAT IT WAS THAT YOU WOULD POINT TO IN THE

7       MARKMAN THAT GAVE, IN YOUR VIEW, JUSTIFICATION FOR THE NEW

8       SEARCH.

9            MR. DECARLO:  I THINK THAT'S FAIR, YOUR HONOR.  I

10      THINK THAT THE FACT THAT THERE WERE A NUMBER OF RULINGS THAT

11      MOVED THE, NOT ONLY THE, WHAT WE FELT WERE THE ORDER OF

12      OPERATIONS BUT THE SCOPE OF THE OPERATIONS.

13           I THINK PARTICULARLY, I THINK THE TIME DURATION AND SIZE

14      DURATION WAS AN ISSUE FOR US WHICH WE MOVED FOR

15      RECONSIDERATION.  THERE WAS, I THINK THE ISSUE OF THE ENCODING

16      OCCURRING AS WE ARGUED, AND AS THE CLAIM, WE WOULD LIKE TO SAY

17      READS, ENCODES AFTER THE SLICING.

18           SO NOW YOU ARE DEALING WITH COMPRESSED PACKETS OR A

19      COMPRESSED STREAM.  AND I THINK THAT THERE WAS ANOTHER SET OF

20      TERMINOLOGY THAT CAME TO LIGHT AS A RESULT OF THAT, AS A RESULT

21      OF SOME OF THE OTHER DISCOVERY THAT WAS TAKING PLACE AT THE

22      TIME.

23           THE COURT:  AND IT'S FAIR TO SAY.

24           MR. DECARLO:  WITH RESPECT TO HOW FRAMES ARE UTILIZED

25      IN THE TERM FRAMES AS UTILIZED IN THE PRIOR ART.

1          AND INSTEAD OF, I THINK YOU'VE CALLED ON YOUR EXPERIENCE,

2     AND I THINK, YOUR HONOR, HERE ONE OF THE THINGS THAT WE DID

3     THAT WAS DIFFERENT IN NOT ONLY WITH RESPECT TO THOSE CLAIM

4     TERMS BUT WITH INDEXING WHICH WAS ANOTHER TERM THAT WAS

5     BROADENED CONSIDERABLY BY HOW THE COURT CONSTRUED HOW THE PLAY

6     LIST WOULD OPERATE AND HOW DIFFERENT METHODOLOGIES FOR INDEXING

7     THE FILES AND USING THE INDEX FILE TO CALL ON THOSE INDIVIDUAL

8     CHUNKS OR SEGMENTS.

9          THOSE ARE ALL THINGS THAT WERE VERY DIFFERENT AND VERY

10    CONTRARY TO YOUR UNDERSTANDING OF THE PATENT.  SO THOSE WERE

11    AREAS WE PARTICULARLY FOCUSED ON AND WE ALSO TOOK AN APPROACH.

12         AND AGAIN, I ACTUALLY DISCUSSED THIS WITH APPLE BEFORE WE

13    CAME IN HERE BECAUSE I DO WANT THE COURT TO UNDERSTAND THAT

14    WHEN YOU ENGAGE IN A KEY WORD SEARCH WHERE YOU DO THESE VERY

15    BROAD SEARCHES, I THINK AS YOU ALSO KNOW THOSE APPROACHES

16    SOMETIMES CREATE SUCH A FOG THAT IT'S DIFFICULT TO GET DOWN TO

17    THE REFERENCES THAT REALLY MATTER.

18         THE COURT:  SURE.

19         MR. DECARLO:  HERE, IN CONSULTATION WITH OUR EXPERT

20    AND UTILIZING THE SOURCE THAT INSTEAD OF DOING KEY WORD

21    SEARCHES ACTUALLY WAS -- IT WAS A CROWD SOURCE METHODOLOGY

22    WHERE WE WERE ABLE TO REACH OUT TO PEOPLE WHO HAD PARTICULAR

23    EXPERTISE AND ACTUALLY REFINE THEIR ABILITY AND THEY WERE

24    SEARCHING THROUGH THERE ARE OWN PRIVATE ARCHIVES AND THINGS

25    THAT WEREN'T AVAILABLE TO US.

1      SO I THINK THAT THE ISSUE OF OUR TIMELINESS AND THE

2  RATIONAL BEHIND THE MARKMAN CHANGES THAT WE RECOGNIZED AND

3  FOCUSED ON, WARRANT UNDER THE CIRCUMSTANCES.

4           THE COURT:  AND IT ALSO SEEMS, IF I UNDERSTAND THE

5  TIMELINE YOU'VE JUST LAID OUT FOR ME, YOU DID NOT WAIT UNTIL

6  YOU BROUGHT THE MOTION FOR RECONSIDERATION OR CERTAINLY

7  RECEIVED A RULING ON THE MOTION FOR RECONSIDERATION IN ORDER TO

8  INITIATE THE FOLLOW ON SEARCH.

9           MR. DECARLO:  OH, NO, THAT'S CORRECT, YOUR HONOR.

10      WE -- AS I SAID, IT WAS A LITTLE OVER THREE WEEKS FROM THE

11  TIME THAT THE RULING CAME DOWN, OF COURSE WE WERE CONSIDERING

12  OUR RECONSIDERATION AT THE TIME AND CONSULTING ARE OUR EXPERT

13  ABOUT THE RAMIFICATIONS ABOUT THAT THEN WE COMMISSIONED A NEW

14  SEARCH.

15      AND THOSE TYPES OF SEARCHES ARE NOT THE KIND OF SEARCH

16  WHERE YOU SIT IN FRONT OF A COMPUTER AND DO KEY WORDS, THEY

17  ACTUALLY TAKE WEEKS AND WEEKS OF ITERATION AND COMMUNICATION

18  BACK AND FORTH WITH THE EXPERT CONTRIBUTING TO THE END RESULT.

19      BUT EVEN GIVEN THOSE WEEKS I THINK THAT WE ARE WELL

20  WITHIN THE PARAMETERS, CERTAINLY THE CASE LAW WE LOOKED AT THAT

21  ALLOWS IN CONSIDERING DILIGENCE WHERE WEEKS AND A COUPLE OF

22  MONTHS, ESPECIALLY SO FAR ADVANCE THAT BEFORE THE CLOSE OF

23  DISCOVERY AND EXPERT DISCOVERY AND WHERE THERE'S BEEN NO

24  ARGUMENT OF UNDUE PREJUDICE, I THINK WE ARE WELL WITHIN OUR

25  BOUNDS THERE.

1      THE COURT:  MAY I ASK ABOUT THE NET RESULT OF ALL

2  THIS BEFORE WE GET TO THE DOCUMENTS, IN YOUR VIEW, THAT JUSTIFY

3  THE REQUEST.

4      I WANT TO JUST FIRST OF ALL NOTE, TO THE EXTENT ANYBODY

5  PAYS ATTENTION TO WHAT I HAVE TO SAY, THE APPROACH HERE THAT

6  YOU TOOK WAS THE RIGHT ONE WHICH IS TO GIVE THE COURT AND GIVE,

7  FRANKLY MORE IMPORTANT, YOUR ADVERSARY, THE ACTUAL CONTENTIONS,

8  I'M SURPRISED THAT MANY PARTIES COME TO THIS COURT LOOKING FOR

9  THAT RELIEF WITHOUT ACTUALLY SHOWING YOU THE OTHER SIDE OR

10 WHATEVER YOU WANT TO CHANGE.

11     MR. DECARLO:  WELL ACTUALLY, YOUR HONOR, THE EARLY

12 CONVERSATIONS THAT WE HAD WHICH TOOK PLACE WITH MR. PAVANE IN

13 EARLY JULY AFTER OUR RESULTS WERE STARTING TO THE PROCESSED AND

14 WE TALKED ABOUT IT, YOU KNOW, MR. PAVANE SAID HE WOULD CONSIDER

15 OUR REQUEST, CONSIDERING THE MEET AND REFER PROCESS.  I THINK

16 THE WORD WAS HE WAS WILLING TO HORSE TRADE.  ULTIMATELY, WE

17 WERE -- I THINK AS I SAID AT THE TIME, IT DEPENDS ON THE HORSE.

18     THE COURT:  AND HOW FAST SHE RUNS.

19     MR. DECARLO:  BUT IN ANY EVENT, WE ACTUALLY

20 COMMUNICATED ALL OF THE REFERENCES THAT WE WERE, AND THE

21 RATIONAL IN A LETTER TO MR. PAVANE BEFORE AS PART OF THE MEET

22 AND CONFER PROCESS.

23     BECAUSE OF SCHEDULING, THE MEET AND CONFER PROCESS KIND

24 OF DELAYED THINGS ANOTHER WEEK.  AND THAT'S WHY WE FILED ON

25 JULY 13TH.  BUT WE WERE TRYING TO GET THIS DONE IN EARLY AS

1   JULY AS WE POSSIBLY COULD.

2          THE COURT:  ALL RIGHT.

3       AND LET'S TURN TO THE DOCUMENTS AS WELL BECAUSE I WANT TO

4   BETTER UNDERSTAND THAT HISTORY.

5          MR. DECARLO:  SO THE CATEGORIES WE'VE GOT AS WE LAID

6   OUT IN OUR BRIEF WE'VE GOT NONPATENT REFERENCES THAT WE ARE

7   SEEKING TO AMEND.

8       THOSE NONPATENT REFERENCES COME IN THE FORM OF BOTH

9   ARTICLES AS WELL AS MANUALS FOR PRODUCTS THAT WE WERE ACTUALLY

10  TRYING TO FIND IN THE PRIOR ART AND THROUGH OUR SEARCH EFFORTS

11  ACTUALLY FOUND PEOPLE WHO HAD IN THEIR OWN PERSONAL ARCHIVES

12  SOFTWARE MANUALS FOR PRIOR ART REFERENCES AND WE HAD ACTUALLY

13  CHARTED EARLIER BUT WERE NOT PUBLICLY AVAILABLE DESPITE OUR

14  BEST EFFORTS YOUR HONOR WE COULDN'T LOCATE THEM.

15         SO FOR EXAMPLE, ONE OF THOSE DOCUMENTS IS A GUIDE TO

16  VIDEO LIVE TOOLS WHICH WAS PROVIDED TO US THROUGH THE SEARCH.

17         THE COURT:  I SEE.

18      SO AT LEAST AS TO THAT MANUAL, FOR EXAMPLE, YOU WERE

19  CONFIDENT THAT IN TERMS OF CHARTING AND LIMITATIONS YOU WOULD

20  BE ABLE TO RELY UPON THE REFERENCE, BUT AT LEAST AT THAT POINT

21  IN YOUR INVESTIGATION WERE NOT ABLE TO ESTABLISH ITS PUBLIC

22  AVAILABILITY.  SO ON THAT BASIS YOU WERE REFRAINED FROM

23  INCLUDING IT IN YOUR ORIGINAL SET.

24         MR. DECARLO:  WE NEVER HAD IT IN THE ORIGINAL SET,

25  YOUR HONOR.

1      WE KNEW ABOUT THE FACT THAT THIS VIDEO PRODUCT EXISTED AND

2    WE DID DISCLOSE REFERENCES THAT WE WERE ABLE TO FIND ABOUT THIS

3    VIDEO PRODUCT, BUT THIS IS ACTUALLY A GUIDE TO TOOLS THAT A

4    DEVELOPER WOULD HAVE HAD BACK IN THE LATE NINETIES.  AND THAT

5    WASN'T SOMETHING THAT WAS AVAILABLE, THIS WAS SOMETHING THAT

6    WAS IN SOMEONE'S PERSONNEL ARCHIVES THAT RESULTED FROM OUR

7    SEARCH.

8      AND SO WITH RESPECT TO THE NONPATENT REFERENCES THAT WE

9    HAVE CHARTED AND AS WE IDENTIFIED TO MR. PAVANE, THOSE WERE ALL

10   FOUND AS A RESULT OF OUR SEARCH.  THOSE WERE NOT REFERENCES

11   THAT WE HAD PREVIOUSLY.  THEY WERE ALL FOUND IN THE LATE MAY TO

12   MID JUNE TIME FRAME AS OUR SEARCH EFFORTS WERE TAKING PLACE.

13     NOW MR. PAVANE RAISES THE SPECIFICATION DOCUMENTS, THE

14   SPECIFICATION FOR RTSP, THE SPECIFICATION FOR HTTP.  THOSE WERE

15   CLEARLY MENTIONED NOT ONLY THROUGH THE PATENT BUT THROUGH MANY

16   OF THE REFERENCES.  THOSE WERE ADDED AND SO THEY WERE KNOWN.

17   I'M NOT GOING TO ADMIT THEY WEREN'T KNOWN.  BUT THEY WEREN'T

18   CHARTED.

19     AND WE'RE NOT SEEKING NECESSARILY TO CHART THOSE

20   PARTICULAR REFERENCES, BUT OUR EXPERT RAISED THE POINT, AM I

21   GOING TO BE ABLE TO ARTICULATE WHAT WAS IN THE STANDARD THAT'S

22   RAISED IN ALL THESE PRIOR ART REFERENCES.

23            THE COURT:  I HAVE TO CONFESS I WAS A LITTLE CONFUSED

24   READING YOUR PAPERS.

25      SO WHAT DO YOU WANT TO DO HERE?  AS I UNDERSTAND THE WAY IT

1    WORKS THEY ARE EITHER CHARTED AND THEY ARE 103 REFERENCES OR

2    THEY ARE NOT.  ARE YOU INTENDING TO RELY UPON THEM WITH 103?

3              MR. DECARLO:  THERE'S ACTUALLY -- WITH RESPECT TO TWO

4    OF THE STANDARDS FOR RTP AND FOR HTTP, WE HAVE SUPPLEMENTED OUR

5    CHARTS NOT AS PRINCIPAL REFERENCES BUT AS OBVIOUSNESS

6    REFERENCES.

7        AND YOU KNOW EVEN IN THE GOOGLE CASE WHICH WAS CITED BY

8    MR. PAVANE, WHERE THERE WERE REFERENCES THAT WERE ALREADY

9    CHARTED OR ALREADY KNOWN IN THE RECORD AND YOU'RE APPLYING THEM

10   FOR NEW COMBINATION SAYS AS A RESULT OF THINGS THAT HAVE COME

11   ABOUT LATER, THAT'S BEEN ALLOWED.

12       BUT I DO WANT TO, I WILL ADMIT THAT THOSE WERE REFERENCES

13   THAT WERE KNOWN TO US.  BUT OUR CONCERN IS THAT, ARE WE GOING

14   TO GET AN OBJECTION THAT OUR EXPERT CAN'T TESTIFY ABOUT WHAT

15   RTP DID WHICH WAS KNOWN IN THE ART OR RTSP WHICH WAS IN THE RTP

16   SPECIFICATION DID BECAUSE WE DIDN'T CHART THEM.

17       IF THAT'S NOT THE CASE, THEN -- AND IF THERE ARE A MATTER

18   OF WHAT IS KNOWN TO A PERSON OF SKILL AND CAN BE TREATED AS

19   PART OF THE STATE OF THE ART THEN I DON'T THINK IT'S NECESSARY

20   FOR US TO ACTUALLY CHART THOSE REFERENCES, YOUR HONOR.

21       AND I WOULD -- BUT I WOULD EMPHASIZE THAT WE DID IT IN AN

22   ABUNDANCE OF CAUTION BECAUSE THERE'S BEEN A LOT OF TWISTS AND

23   TURNS IN THIS CASE.

24             THE COURT:  MORE TO COME, I'M SURE.

25             MR. DECARLO:  WELL, STAY TUNED, YOUR HONOR.

```
 1              THE COURT:  ALL RIGHT.

 2              MR. DECARLO:  SO WITH RESPECT TO THE PATENT

 3    REFERENCES WE WERE TRYING TO ADD, THOSE WERE ALSO -- AND I WILL

 4    EXCLUDE THE CARMEL PATENTS WHICH I WILL TALK ABOUT IN A MOMENT.

 5              BUT THE NEW PATENTS WE WERE TRYING TO ADD WERE ALSO LOCATED

 6    AS A SEARCH RESULT OF THE SEARCH.  THE '495 PATENT AND THE '043

 7    PATENT TO GUEDALIA, I'M HOPING I'M DOING HIS NAME JUSTICE, WERE

 8    ALSO LOCATED DURING THE SEARCH.

 9              AND THOSE WERE ADDED AND THEY WERE LOCATED BECAUSE DURING

10    THE COURSE OF OUR ANALYSIS THERE WAS A TERM THAT WE FOUND IN

11    EMBLAZE'S DOCUMENTS, THERE WAS A TERM THAT WE FOUND IN SOME OF

12    THE MATERIAL THAT WAS TURNED OVER TO US LATE IN THE PROCESS,

13    AND BOTH OF THOSE PATENTS UTILIZED THOSE TERMS IN A WAY THAT WE

14    HADN'T BEEN SEARCHING THEM.

15              IF THE COURT WANTS ME TO CLOSE THOSE TERMS AND CLOSE MY

16    WORK PRODUCT, I WILL, BUT I REPRESENT TO THE COURT THERE'S

17    TERMS USED IN THE PATENTS THAT CAUSED US -- IT WAS BECAUSE OF

18    OUR RECENT UNDERSTANDING OF HOW BOTH EMBLAZE'S PRIOR ART

19    PRODUCTS, WHICH WE ARE ONLY NOW STILL BEGINNING TO APPRECIATE,

20    OPERATED.

21              AND HAVING OTHER REFERENCES THAT SUPPORTED THAT

22    INTERPRETATION WE THINK IS HELPFUL.  AND BOTH OF THOSE WERE NOT

23    KNOWN TO US PRIOR TO OUR SEEKING TO AMEND, THEY WERE LOCATED

24    DURING THE SEARCH WE DID IN MAY OR JUNE.

25              WITH RESPECT TO THE CARMEL PATENT, I DON'T THINK,
```

1    CERTAINLY THAT WAS CITED ON THE FACE OF THE PATENT.  BUT I

2    THINK THERE WERE THREE ISSUES SURROUNDING THOSE PATENTS THAT

3    CAUSED US TO CHANGE OUR MIND WITH RESPECT TO CHARTING THEM.

4         FIRST OF ALL, THEY'RE INCORPORATED BY REFERENCE.  THEY

5    ARE IN THE PRIOR ART.  SO, YOU KNOW, WHETHER THEY EVEN NEED TO

6    BE CHARTED IS AN OPEN QUESTION.  BUT I THINK IT'S HELPFUL TO

7    LAY OUT THE ANALYSIS AGAIN NOW THAT THE COURT HAS CONSTRUED HOW

8    THE STREAM DOES NOT HAVE TO BE FED INTO THE TRANSMITTING

9    COMPUTER BUT CAN JUST BE IN, OR PRODUCED AT OR BY THE

10   TRANSMITTING COMPUTER, AS WELL AS THE FACT THAT THE WAY THE

11   COURT HAS INTERPRETED BOTH THE FILED INDEX AND THE INDEX FILE,

12   I THINK CHANGED OUR VIEW OF THOSE REFERENCES.

13        SO THEY WERE ADMITTEDLY KNOWN BUT THIS WAS CLEARLY A

14   SITUATION WHERE THE MARKMAN CAUSED US TO REALLY RETHINK OUR

15   STRATEGY.  AND WITH THE COURT'S EXPANDED VIEW OF THOSE TERMS,

16   CAUSED THOSE PATENTS TO REACH A HIGHER LEVEL OF RELEVANCE TO

17   US.

18        BY THE WAY THAT RELEVANCE WAS ACTUALLY CONFIRMED DURING

19   MR. CARMEL'S DEPOSITION WHICH TOOK PLACE IN JULY AFTER WE MADE

20   OUR MOTION WHICH OF COURSE TIES INTO THE LATE PRODUCED

21   DOCUMENTS WHERE AT HIS DEPOSITION HE TESTIFIED THAT IN FACT THE

22   CREATOR DOCUMENT WHICH I'M GOING TO GET TO NEXT WHICH ARE THE

23   DOCUMENTS THAT RELATE TO THIS EARLIER PRODUCT THAT WE HAVE ONLY

24   JUST RECENTLY LEARNED OF, IS IN FACT EMBODIED IN THOSE PATENTS

25   AND WE BELIEVES THAT THOSE TWO PATENTS ARE THE PATENT FORM, THE

1    SPECIFICATIONS AND CLAIMS AS WELL AS THE COST WARE THAT WAS

2    ADDED AS A APPENDIXES TO THOSE APPLICATIONS WHEN THEY WERE

3    FILED, RELATE TO THIS CREATOR PRODUCT, THE EARLIER VERSION AND

4    THE VERSION 2.5, BOTH OF WHICH WELL PRE DATE THE FILING OF THE

5    ISRALI PATENT APPLICATION.

6                THE COURT:  I SEE.

7          SO AS TO THAT TECHNOLOGY THEN YOU CONTEMPLATE BOTH A

8    PRINTED PUBLICATION 102, 103 ARGUMENT AS WELL AS A PRIOR USE OR

9    SALE CHALLENGE AS WELL.

10               MR. DECARLO:  WELL, THE PRIOR USE OF SALE WOULDN'T

11   COME ABOUT AS A RESULT OF THE PATENTS.

12               THE COURT:  NATURALLY.

13               MR. DECARLO:  BUT WITH RESPECT TO THE CARMEL CREATOR

14   DOCUMENT, THE CREATOR PRODUCT, THAT IS CLEARLY WHAT OUR

15   ARGUMENT, PRIOR USE AND SALE IN THE UNITED STATES WELL BEFORE

16   THE FILING OF THE UNITED STATES ISRALI PATENT APPLICATION.

17         IT'S IMPORTANT TO UNDERSTAND AS THESE DOCUMENTS CAME TO

18   LIGHT AND I'M SURE MR. PAVANE IS GOING TO TAKE A DIFFERENT VIEW

19   AS TO WHEN WE WERE SUPPOSEDLY SUPPOSED TO LEARN ABOUT THIS.

20         THE DOCUMENTS WE RECEIVED CONCERNING HOW CREATOR ACTUALLY

21   FUNCTIONED WERE DISCLOSED IN MID JUNE AT THE EARLIEST AS A

22   RESULT OF THE MARKETING MATERIAL TURNED OVER BY A THIRD PARTY

23   DEPONENT THAT WAS DEFENDANT AND REPRESENTED BY EMBLAZE, AND

24   ALSO AS A RESULT OF THE DOCUMENTS THAT WERE PRODUCED AFTER OUR

25   SUCCESSFUL MOTION TO COMPEL.

1    AND THOSE DOCUMENTS, MANY, THERE'S A FAIR NUMBER OF THOSE

2    DOCUMENTS THAT HAD ACTUALLY BEEN IN THE POSSESSION OF

3    MR. PAVANE AND THROUGH INADVERTENCE THROUGH THEIR MOVE THEY

4    WEREN'T PRODUCED TO US.

5        AGAIN, IT'S IMPORTANT TO UNDERSTAND OUR MOTION FOR RELIEF

6    IS IN NO WAY SEEKING TO CAST ANY ALLEGATIONS OR MISCONDUCT ON

7    MR. PAVANE OR HIS FIRM OR THE PREDECESSOR FIRM, IT'S MERELY TO

8    ADDRESS THE CIRCUMSTANCES.  SO I WANT THAT VERY CLEAR ON THE

9    RECORD

10        THE COURT:  LET ME ASK YOU MR. DECARLO, PICKING UP ON

11    THAT POINT, AN EARLIER POINT, ACTUALLY.

12        YOU SEEM TO SUGGEST THAT BEFORE JUNE YOU REALLY HAD NO

13    IDEA HOW CREATOR WORKED OR WERE GIVEN NO DOCUMENTS OR OTHER

14    DISCOVERY THAT MIGHT SHED LIGHT ON HOW IT WORKED.  IS THAT

15    REALLY TRUE YOU HAD NOTHING IN THE CREATOR'S OPERATION.

16        MR. DECARLO:  WE HAD NOTHING ON CREATOR'S OPERATION,

17    YOUR HONOR.

18        THE ONLY DOCUMENTS EMBLAZE HAS BEEN ABLE TO POINT TO IS

19    THERE WERE EARLY PUBLIC DOCUMENTS THAT INDICATED EMBLAZE HAD

20    SIX PRODUCTS ON SALE IN THE UNITED STATES.

21        AND THERE WAS A DOCUMENT THAT WAS ACTUALLY THE SUBJECT OF

22    OUR MOTION TO COMPEL, IT WAS AN EXHIBIT THERE IN THE MOTION TO

23    COMPEL THAT STARTED TO INDICATE WHAT THE FEATURES OF CREATOR

24    WERE IN A MANNER THAT MADE THEM MORE RELEVANT.

25        AND, YOU KNOW, IN ALL HONESTY, YOUR HONOR, THOSE

1    DOCUMENTS SHOULD HAVE BEEN PRODUCED TO US A LONG TIME AGO.  I

2    KNOW MR. PAVANE HAS TRIED TO ARGUE THAT THE COUSINS ORDER

3    DIDN'T REQUIRE THEM TO PRODUCE THIS.  BUT FIRST OF ALL, I WOULD

4    SAY THAT IF A PARTY WAS ALLOWED TO PARSE WHAT IT PRODUCED BASED

5    ON WHETHER OR NOT IT BELIEVED IT WAS AN INVALIDATING REFERENCE

6    OR IT CAME BEEN THE SCOPE OF THE CLAIMS, NO ONE WOULD HAVE EVER

7    PRODUCED ANYTHING.

8         ESPECIALLY HERE WHERE THE CLAIM CONSTRUCTION HAS BEEN

9    SOMEWHAT EXPANDED, YOU KNOW, VIS A VI APPLE.  I THINK THAT

10   THOSE -- THE IMPORTANCE OF THESE REFERENCES CAN'T BE

11   EMPHASIZED.

12        AND AGAIN, THEY HAD THE DOCUMENTS, WE DIDN'T GET THEM

13   UNTIL JUNE.

14        WHEN I DEPOSED MR. EDWARDS WHO WAS THE MARKETING

15   REPRESENTATIVE WHO WAS SUPPOSEDLY MAKING THESE THINGS AVAILABLE

16   IN CHARGE OF SELLING THEM, HE HAD NO IDEA HOW THEY OPERATED.

17   IT WASN'T UNTIL WE TOOK MR. CARMEL'S DEPOSITION IN ISRAEL AFTER

18   WE MADE THE MOTION TO COMPEL WHICH QUITE FRANKLY -- AFTER WE

19   MADE OUR MOTION TO AMEND, KIND OF PUT US IN A WEIRD SITUATION

20   BECAUSE IT'S KIND OF PREMATURE.

21        WE'VE LEARNED A LOT MORE ABOUT THESE PRODUCTS SINCE WE

22   FILED OUR MOTION, BUT THE WAY EMBLAZE CREATOR WORKS, WE HAVE

23   NOW LEARNED IS THAT IT TAKES A PIECE OF VIDEO AND WORKS ON NO

24   SPECIAL SERVICE, WORKS ON HTTP SERVERS, BREAKS A STREAM INTO

25   SMALL CHUNKS WHICH IT CALLS FRAMES WHICH ARE NOT THE FRAMES OF

1    THE VIDEO.  THE FRAMES IN CREATOR CONTAIN MULTIPLE FRAMES OF

2    VIDEO SO IT'S ACTUALLY CHUNKING A STREAM.

3         A MASTER FILE IS CREATED THAT KEEPS A RUNNING INDEX OF

4    WHERE THOSE FILES APPEAR IN THE STREAM AND HOW THEY SHOULD BE

5    PLAYED BACK.

6         SO IT'S CLEARLY RELEVANT NOT ONLY TO THE BROADEST CLAIM

7    OF THE CONCEPT OF BREAKING THINGS INTO CHUNKS, PUTTING THEM ON

8    AN HTTP SERVER WITHOUT REQUIRING ANY SPECIAL SERVER SOFTWARE,

9    BUT ALSO HOW INDEXING WORKS.

10        AND AGAIN, GIVEN THE COURT'S BROAD EXPANSIVE VIEW OF

11   INDEX WITH RESPECT TO THE CLAIM CONSTRUCTION, WE HAD NO INSIGHT

12   TO THAT UNTIL WE ACTUALLY SAT DOWN WITH THE AUTHOR OF THIS

13   THING AND THERE'S A USER INTERFACE, DRAWINGS THAT ARE IN THE

14   MANUALS THAT WE OBTAINED THAT SHOW HOW THESE FRAMES LAY OUT.

15        WHEN I ASKED MR. EDWARDS IN HIS DEPOSITION IN JUNE, HE

16   WASN'T ABLE TO GIVE US THAT TESTIMONY SO WE DIDN'T GET THE

17   TESTIMONY UNTIL JULY.

18        SO WE ARE STILL ANALYZING THAT MATERIAL BECAUSE WE ONLY

19   HAD IT FOR A NUMBER OF WEEKS.

20             THE COURT:  WHY DON'T YOU WALK ME THROUGH,

21   MR. DECARLO, LET'S ASSUME FOR THE SAKE OF OUR CONVERSATION,

22   OBVIOUSLY BEFORE I HEAR FROM MR. PAVANE, AND I'M INCLINED TO

23   GRANT YOU THIS RELIEF, WHAT WOULD THIS DO IN PRACTICAL TERMS OF

24   THE SCHEDULE?

25             MR. DECARLO:  WE ARE NOT ASKING FOR RELIEF WITH

1    RESPECT TO CHANGING ANY OF THE DATES IN THE SCHEDULE.

2         AND I THINK THAT IF WE ARE ALLOWED TO AMEND, WE WOULD HOPE

3    TO HAVE OUR AMENDMENT AGAIN, PUTTING ASIDE THE RELIEF WE ARE

4    ASKING FOR IN OUR RULE 37 MOTION.

5         THE WAY IT TIES INTO THE AMENDMENT, THE ONLY, WE ARE

6    PREPARED TO PROVIDE OUR AMENDED COP ATTENTIONS FOR EVERYTHING

7    OTHER THAN THE LATE PRODUCED CREATOR MATERIAL NOW.

8         IF IT'S GRANTED WE WILL SERVE.  FACT DISCOVERY HASN'T

9    CLOSED.  WE ARE I THINK SEVEN WEEKS OUT FROM FIRST --

10         THE COURT:  IT'S THE CREATOR I'M MOST CONCERNED

11    ABOUT.

12         SO HOW WOULD YOU PROPOSE THAT PLAY OUT OVER THE NEXT FEW

13    WEEKS AND MONTHS?

14         MR. DECARLO:  ASSUMING WE CAN GET MR. CARMEL'S

15    DEPOSITION AND ASSUMING THAT THERE'S NOT GOING TO BE ANY

16    FURTHER DOCUMENTS PRODUCED, WE WOULD JUST WANT TO AMEND THAT

17    PORTION OF OUR CONTENTIONS WITHIN TWO WEEKS AFTER THE

18    CONCLUSION OF THE DEPOSITION WHERE THE LATE PRODUCTION OF

19    FURTHER DOCUMENTS, WHICHEVER COMES LATER.

20         SO THOSE WOULD -- IF WE TAKE MR. CARMEL'S DEPOSITION BY

21    THE 4TH OF SEPTEMBER, WHICH WE ARE AWARE OF WITH RESPECT TO THE

22    JEWISH HOLIDAYS THAT HAVE BEEN ON RECORD, WE TALKED ABOUT

23    THOSE.  WE WOULD HAVE TO OCCUR BY THEN, OTHERWISE NOW WE ARE

24    PUSHING IT VERY LATE THAT I DON'T BELIEVE THAT ANY AMENDMENT TO

25    THE SCHEDULE WOULD BE NECESSARY BECAUSE THEY WOULD HAVE OUR

1   AMENDED CONTENTIONS WITH RESPECT TO CARMEL, AND THAT CREATOR

2   RELATED PRIOR ART OR ANYTHING ELSE THEY PRODUCE LATE, BEFORE

3   THEIR INVALIDITY EXPERT REPORTS ARE DUE AND BEFORE REBUTTAL

4   REPORTS, WELL BEFORE.  BECAUSE WE ARE TALKING THE END OF

5   NOVEMBER, BEFORE THE REPORTS ARE IN.

6        DOES IT SQUEEZE THEM YOUR HONOR, A LITTLE BIT.  BUT QUITE

7   FRANKLY, THEY WERE PUT IN THIS POSITION NOT BY US.  IT WAS

8   THEIR OWN BEHAVIOR THAT GOT THEM THERE.

9            THE COURT:  ALL RIGHT.

10       I MAY HAVE FURTHER QUESTIONS, MR. DECARLO, BUT I WANT TO

11   HEAR FROM MR. PAVANE.

12       MR. PAVANE?

13            MR. PAVANE:  THANK YOU, JUDGE.

14       FIRST, I WANT TO ADDRESS THE ISSUE OF TIMING A LITTLE

15   BIT.  THE FACT THAT THIS IS ALLEGEDLY DUE TO OUR BEHAVIOR.

16   IT'S NOT.

17       LET ME TALK ABOUT THE DIFFERENT REFERENCES THAT

18   MR. DECARLO MENTIONED.

19       CERTAINLY MR. DECARLO AND HIS FIRM MADE A MOTION WHICH

20   WAS GRANTED AND WE TURNED OVER AND COMPLIED WITH THE COURT'S

21   ORDER, I THINK COMPLETELY, AND I THINK THAT WILL MAYBE COME UP

22   AGAIN IN THE SANCTIONS MOTION BUT WE WILL SEE.

23       BUT LET'S TALK ABOUT THE DOCUMENTS THEY ARE RELYING ON

24   NOW TO JUSTIFY THE MOTION TO AMEND THE INVALIDITY CONTENTIONS.

25       THEY DON'T CITE A SINGLE DOCUMENT IN THEIR PAPERS, NOT

1   ONE DOCUMENT THAT WE, EMBLAZE, TURNED OVER IN RESPONSE TO THE

2   MOTION TO COMPEL IN SUPPORT OF THE MOTION TO INVALIDITY

3   CONTENTIONS.  NOT ONE.  WHICH SUPPORTS WHAT WE SAID RIGHT FROM

4   THE BEGINNING THAT THIS ADDITIONAL SEARCH IS LARGELY A WASTE OF

5   TIME.

6        WERE THERE SOME RELEVANT DOCUMENTS IN THERE?  MAYBE THERE

7   WERE, BUT NOTHING THEY ARE RELYING ON NOW.

8        THE DOCUMENTS THEY ARE RELYING ON NOW THEY OBTAINED FROM

9   A THIRD PARTY, BRUCE EDWARDS WHO HASN'T WORKED FOR US FOR 12,

10  13 YEARS.  FROM TWO INVENTORS OF THE PATENT WHO ALSO HAVEN'T

11  WORKED FOR US SINCE AT LEAST 2002.

12       SO -- AND WHEN IT COMES TO THE INVENTORS, THE THIRD PARTY

13  IN CALIFORNIA, MR. EDWARDS THEY SUBPOENAED HIM AND TOOK HIS

14  DEPOSITION AND GOT THE DOCUMENTS, AND THAT'S HOW THEY GOT THE

15  CREATOR DOCUMENTS MR. DECARLO WAS REFERRING TO, NOT FROM US.

16       AND THE DOCUMENTS THAT THEY GOT FROM THE INVENTORS, LET'S

17  LOOK AT THE HISTORY OF THAT.  THEY WAITED UNTIL MAY 13TH TO

18  APPROACH US AND SAY, WE WOULD LIKE TO TAKE THE DEPOSITIONS OF

19  THE INVENTORS IN ISRAEL.  DID THEY START A HAGUE CONVENTION

20  PROCEEDING?  NO.

21       IF THEY HAD STARTED A HAGUE CONVENTION PROCEEDING THEY

22  COULD HAVE DEMANDED THE DEPOSITION AND THE DOCUMENTS AND RELIED

23  ON THEMSELVES AND THE COURT TO MAKE SURE THAT THEY GOT FULL

24  PRODUCTION.

25       INSTEAD, THEY CAME TO US AND SAID COULD YOU HELP US GET

1    THE INVENTOR DEPOSITIONS AND WE DID.

2         ALL OF THEM AGREED TO VOLUNTARILY APPEAR.  AND I THINK

3    YOU SAW IN THE SANCTIONS MOTION WE SENT THEM AT LEAST THREE

4    NOTIFICATIONS SAYING HEY LOOK WE ARE DOING THIS BUT I CAN'T

5    COMPEL THESE FOLKS TO SHOW UP.  THEY ULTIMATELY IN THE END

6    SHOWED UP

7              THE.  COURT:  AND THEY ALL APPEARED WITHOUT ANY

8    FORMAL PROCESS?

9              MR. PAVANE:  ABSOLUTELY.  AT OUR REQUEST.

10        IN FACT MR. SHANI IS SITTING IN THE COURTROOM, THE CHAIRMAN

11   OF EMBLAZE AT THE TIME, INDICATED -- REACHED OUT TO EACH OF

12   THEM AND ASKED THEM TO APPEAR AND THEY VOLUNTARILY AGREED TO DO

13   SO.

14        AND THEY ALSO CHASTISED US BECAUSE THESE PEOPLE REFUSED

15   TO PRODUCE DOCUMENTS AT THE DEPOSITION.

16        WELL, WE VOLUNTARILY ASKED THESE PEOPLE TO PRODUCE THE

17   DOCUMENTS THEY PRODUCED THE DOCUMENTS AT THE DEPOSITION.  THEY

18   ARE COMPLAINING THEY DIDN'T PRODUCE THEM EARLIER.  WHY DIDN'T

19   THEY GO THROUGH THE HAGUE CONVENTION, THIS CASE WAS FILED IN

20   2010.

21        THE INVENTORS, BY THE WAY, AS YOU WELL KNOW, WERE LISTED

22   ON THE FACE OF THE PATENT.  THEY KNEW WHERE THEY WERE.  SO THEN

23   THEY ARE TRYING TO PUT THAT AT MY DOORSTEP.  THAT'S NOT FAIR.

24        SO THERE WERE NO DOCUMENTS THAT COME FROM US THAT THEY

25   ARE RELYING ON HERE.  THE LATE DISCOVERY HAS GOT NOTHING TO DO

1     WITH THIS.  IF THERE WAS LATE DISCOVERY IT'S BECAUSE THEY

2     DIDN'T TAKE IT ON TIME AND THEY DIDN'T USE THE PROPER

3     PROCEDURES, THAT'S WHY THEY ARE GETTING THIS NOW.

4          THE COURT:  IF I COULD, YOU MENTIONED MR. EDWARDS,

5     MR. PAVANE.  MR. EDWARDS WAS THE FORMER CEO; IS THAT CORRECT?

6          MR. PAVANE:  HE WAS THE CEO OF A SUBSIDIARY IN THE

7     UNITED STATES THAT WAS RESPONSIBLE FOR DISTRIBUTING THESE VERY

8     PRODUCTS, THE CREATOR AND SO ON, WHICH BY THE WAY WERE NOT

9     SUCCESSFUL AS THE DEPOSITIONS BORE OUT.

10     THEY WERE TOO SOON IN TIME OR FOR WHATEVER REASON THEY

11    DIDN'T SUCCEED.  THEY WERE PROBABLY NOT IN THE MARKET ANYMORE

12    BY 2001.

13     SO IT'S NOT SURPRISING THESE PRODUCTS WERE NOT READILY

14    AVAILABLE.  MR. EDWARDS HAPPENS TO HAVE SAVED A COPY, I CAN'T

15    REMEMBER IF IT WAS HIM OR ONE OF THE INVENTORS.  SOMEBODY HAD

16    ONE IN THE BOX OF ONE OF THE PRODUCTS.

17          THE COURT:  THERE'S ALWAYS THE BOX IN THE GARAGE.

18          MR. PAVANE:  EXACTLY.  THAT WAS EXACTLY IN THE BOX,

19    BUT I THINK IT WAS IN HIS BASEMENT.

20          THE COURT:  OKAY.  FAIR ENOUGH.  EITHER THAT OR A

21    WOOD SHED.

22     SO HE PRODUCED THE DOCUMENTS WE'RE TALKING ABOUT AND HAS

23    NOT BEEN ASSOCIATED WITH EMBLAZE FOR A DECADE OR MORE.

24          MR. PAVANE:  RIGHT.  MORE.  MORE THAN A DECADE.

25    THAT'S EXACTLY RIGHT.

 1          SECONDLY, LET'S TALK ABOUT THE ISSUE OF WE HAVE THE RIGHT

 2     TO AMEND BECAUSE THE CLAIM CONSTRUCTIONS ARE DIFFERENT.

 3          OKAY, THAT'S WAY TOO EASY BECAUSE THAT MEANS ANY TIME YOU

 4     COME UP WITH A CLAIM CONSTRUCTION THAT IS DIFFERENT THAN THE

 5     ONE YOU ANTICIPATED OR THAN THE ONE THAN YOU PROFFERED, THEN

 6     ALL THE SUDDEN YOU AUTOMATICALLY SEEM TO HAVE THIS RIGHT TO

 7     AMEND YOUR CLAIM CONSTRUCTIONS?  THAT DOESN'T MAKE ANY SENSE.

 8     THAT'S WAY TOO EASY.

 9          AND IN FACT, YOU KNOW, YOU SAID IT WAS REFRESHING THAT

10     MR. DECARLO ADMITTEDLY HE LOST 15.  IT'S IN HIS INTEREST TO

11     ADMIT HE LOST 15 NOW SO HE CAN ARGUE THAT HEY, EVERYTHING I

12     DIDN'T ANTICIPATE.  HE MAY HAVE LOST 15 THOUGH, IT'S POSSIBLE.

13          BUT THE POINT I'M MAKING IS THAT --

14          THE COURT:  I SAID REFRESHING, NOT GENEROUS.  SO I

15     TAKE YOUR POINT.

16          NEVERTHELESS IT SEEMS TO ME THAT THE OUR LOCAL RULES

17     RIGHTLY OR WRONGLY CLEARLY CONTEMPLATE THAT WHEN THE MARKMAN

18     COMES OUT, AND IT'S NOT WHAT YOU PUSHED FOR, IN GENERAL YOU GET

19     A FREE SHOT AT AMENDMENT; SO WHAT AM I MISSING HERE?

20          MR. PAVANE:  OKAY.  I DON'T THINK THE RULE STANDS FOR

21     THAT PROPOSITION, I REALLY DON'T.

22          I THINK THE RULE IS IF THERE'S A CONSTRUCTION THAT'S

23     DIFFERENT AND YOU CAN JUSTIFY THAT YOU HAVE THE RIGHT TO SUBMIT

24     NEW CONNECTIONS BASED ON THAT, FINE.  I DON'T DISPUTE THAT.

25          THE COURT:  YOUR POINT IS THAT'S NOT WHAT WE HAVE

1    HERE.

2              MR. PAVANE:  THAT'S NOT WHAT WE HAVE HERE.

3         AND PART OF IT, YOUR HONOR, LET'S JUST LOOK AT THE FIRST

4    THING THAT MR. DECARLO MENTIONS.

5         HE MENTIONS THE FACT THAT IT WAS SURPRISING OF THE TIME

6    DURATION THEY BROUGHT UP WHICH IS THEY ALSO MOVE FOR

7    RECONSIDERATION, IF YOU REMEMBER.

8         YOUR HONOR, THAT CAN HARDLY BE SURPRISING.  FIRST OF ALL,

9    WE SUBMITTED OUR CONSTRUCTIONS ON MARCH 5TH OF 2012.  SO THEY

10   HAVE KNOWN ALL ALONG THIS IS WHAT THESE WERE WHAT WE WERE

11   ARGUING.

12        LOOK AT THE CLAIMS OF THE PATENT, THE REASON YOUR HONOR

13   RULED THE WAY HE DID IT SAYS DIVIDING THE SLICES, EACH SLICE

14   HAS A PREDETERMINED DATA SIZE, THAT'S CLAIM 1.

15        CLAIM 23 SAYS, WHEN DIVIDING THE STREAM INTO SLICES

16   COMPRISING DIVIDING THE STREAM INTO TIME SLICES.

17        HOW COULD THEY BE SURPRISED THAT YOUR HONOR WOULD RULE

18   TIME SLICES WOULD BE USED TO GENERATE THE DATA SIZE?  THAT'S

19   NONSENSE.

20        THIS IS JUST AN EXCUSE FOR THE FACT THAT THEY WENT BACK

21   AND THEY RETHOUGHT THEIR STRATEGY AND NOW HAVE DECIDED, YOU

22   KNOW, HOLY -- WHATEVER, WE NEED TO GO BACK AND DO SOMETHING

23   DIFFERENT HERE.

24        AND, YOU KNOW, THESE THINGS FALL INTO VARIOUS CATEGORIES.

25        THE OTHER THING THEY INTERESTINGLY SAID IS THAT

 1    RIGHTFULLY SO, THAT THE CARMEL PATENT WHICH IS A PATENT THAT'S

 2    LISTED ON THE FACE OF THE SUIT PATENT, HARD TO ARGUE YOU DIDN'T

 3    KNOW ABOUT THAT.  AND HE ADMITS THEY KNEW ABOUT THAT.  HE SAYS

 4    THAT EMBODIES THE CREATOR PRODUCT.

 5         WELL IF IT'S SO RELEVANT, WHY DIDN'T THEY CITE IT THE

 6    FIRST TIME AROUND.  I DON'T REALLY UNDERSTAND THAT.  I THINK

 7    YOU NEED A FAR MORE DEEP EXPLANATION HERE OF WHAT THEY EXACTLY

 8    DID AND WHY THAN JUST SIMPLY TO WALK INTO COURT AND SAY OH,

 9    DIFFERENT CLAIM CONSTRUCTION, PLEASE LET US PUT THAT IN.

10         AND THEY SAY NO PREJUDICE, THIS CASE HAS BEEN GOING ON

11    FOR YEARS.  WE WORKED WITH AN EXPERT YOU MET AT THE MARKMAN

12    HEARING WORKING WITH US, WORKING ON THEIR INVALIDITY

13    CONTENTIONS AND OUR RESPONSES TO IT FOR MONTHS WE HAVE BEEN

14    WORKING WITH HIM, GETTING DRAFT -- I WON'T GO INTO TOO MUCH

15    DETAIL -- WE'VE BEEN GETTING DRAFT REPORTS FROM HIM, ET CETERA,

16    ET CETERA.

17         HOW WE ARE GOING TO RESPOND TO THIS?

18         HE SAYS THERE'S A LOT OF TIME LEFT.  THERE'S NOT THAT

19    MUCH TIME LEFT.  OCTOBER 1ST ARE OPENING REPORTS WHERE DR.

20    MADISETTI SAID HE HAS TO MAKE SURE WE HAVE A FULL INFRINGEMENT

21    REPORT BY OCTOBER 1, AND THEN I THINK THE REBUTTAL REPORTS ARE

22    DUE WITHIN 30 DAYS.

23         MR. DECARLO:  OCTOBER 30TH.

24         MR. PAVANE:  YEAH, 30 DAYS AFTER THAT.  SO IT'S NOT

25    THAT MUCH TIME.

1          THE COURT:  SO YOU EFFECTIVELY GOT 30 DAYS ON OPENING

2    REPORTS, GIVE OR TAKE 30 DAYS FOR REBUTTAL.

3          MR. PAVANE:  RIGHT.  THAT'S EXACTLY RIGHT.

4          THE COURT:  I TAKE IT DR. MADISETTI IS GOING TO OPINE

5    ON INFRINGEMENT AND ANY INVALIDITY ISSUES?

6          MR. PAVANE:  YES.

7          THE OTHER THING IS WITH THE PROTOCOLS, AND YOU KNOW YOU

8    ARE ABSOLUTELY RIGHT, I WASN'T REALLY CLEAR EXACTLY WHAT THEY

9    WERE SAYING EITHER, BUT I THINK MR. DECARLO DID ACKNOWLEDGE

10   WHEN HE WAS UP HERE THAT THEY DO PLAN ON CHARTING SOME OF THE

11   PROTOCOLS.

12         AND I WOULD SAY AGAIN, FOR EXAMPLE WITH THE RTSP

13   PROTOCOL, THEY HAVE KNOWN ABOUT THIS ALL ALONG.  THERE'S NO

14   EXPLANATION OF WHAT IS IT THAT'S NEW ABOUT THE COURT'S CLAIM

15   CONSTRUCTION THAT ALL THE SUDDEN MAKES THIS MORE RELEVANCE THAN

16   IT WAS.

17         I THINK THE WORDS THEY USED ACTUALLY IN DEFERENCE AND

18   FAIRNESS TO HIM.  I THINK HE SAID IN AN ABUNDANCE OF CAUTION

19   THAT WE WANTED TO BE ABLE TO USE IT.

20         IF THEY WERE BEING CAUTIOUS HAVING GOOD CAUSE AND

21   DILIGENCE, THEY SHOULD HAVE DONE THIS BACK WHEN THEY PUT IN

22   THEIR ORIGINAL INVALIDITY CONTENTIONS OR AT LEAST THEY COULD

23   HAVE MOVED ON THIS, AGAIN THE CASE HAS BEEN PENDING SINCE 2010.

24   THEY COULD HAVE MOVED ON ALL THIS LONG AGO.

25         SO WHEN YOU TAKE INTO ACCOUNT WHERE WE ARE IN THE CASE

1    AND WHAT WE THINK IS THE LACK OF DILIGENCE THAT THEY HAVE SHOWN

2    HERE, AGAIN, WHAT WAS THAT REFERENCE, GUEDALIA PATENTS, HOW DO

3    YOU PRONOUNCE THAT --

4            MR. DECARLO:  YOU ARE ON YOUR OWN WITH THAT ONE.

5            MR. PAVANE:  THEY CITED THE GUEDALIA PATENT IN THEIR

6    ORIGINAL INVALIDITY CONTENTIONS BOTH OF WHICH ARE REFERENCED,

7    BOTH WHICH IN THE ASSUME FAMILY OF PATENTS AS THE TWO OTHERS

8    ONES THEY MEANT TO CITE.

9            THEY MENTION THIS THING ABOUT THE, MENTIONED IN PASSING,

10   NOT SO MUCH IN PASSING, BUT A GUIDE TO VDO LIVE THAT WAS IN

11   SOMEONE'S PRIVATE ARCHIVE.

12           BUT AGAIN, WHAT DOES THAT MEAN?  WHY WASN'T THAT FOUND IN

13   THE PRIOR ART THE FIRST TIME THEY SEARCHED FOR IT.  WHY IS IT

14   ALL THE SUDDEN SHOWING UP NOW?  ARE THEY SAYING THEY WENT BACK

15   DO THIS GUY WHO HAD THIS PRIVATE ARCHIVE AND SAID, HEY, LOOK AT

16   THESE SEARCH TERMS, AND WE LOOK AT WHAT YOU HAVE AND SEE IF YOU

17   CAN HAVE IT.

18           I DON'T THINK THAT'S WHAT HAPPENED BECAUSE THEY ADMITTED

19   THEY KNEW ABOUT THE PRODUCT AND WERE LOOKING FOR INFORMATION

20   ABOUT IT.

21           SO WHY DID HE COME UP WITH THE PRODUCT NOW ALL OF THE

22   SUDDEN?  THERE'S NO EXPLANATION.  I DON'T THINK -- AGAIN,

23   THAT'S WHAT REALLY BOTHERS ME HERE IS THAT THERE'S NO CLEAR

24   EXPLANATION OF WHY WE ARE WHERE WE ARE AND WHERE WHY THEY ARE

25   TRYING TO DO THIS NOW OTHER THAN MY GUT FEELING, AND BASED ON

1    EVERYTHING I'VE SEEN THEY JUST WENT BACK AND DECIDED TO TAKE

2    ANOTHER LOOK.

3         IT HAD IN NOTHING TO DO WITH YOUR HONOR'S CLAIM

4    CONSTRUCTION IT HAD NOTHING TO DO WITH THE DOCUMENTS WE GAVE

5    THEM AND WE REALLY SHOULDN'T BE FORCED INTO THIS SQUEEZE NOW AT

6    THE VERY END OF THE CASE.  IT'S JUST NOT RIGHT.

7              THE COURT:  ALL RIGHT.

8         MR. PAVANE, DO YOU WANT TO SPEAK TO THE -- YOU'VE TOUCHED

9    UPON THESE ISSUES BUT I WANT TO JUST DEAL ALL THESE THINGS AT

10   ONCE.

11        DO YOU WANT TO SPEAK TO THE ISSUE OF MR. CARMEL'S

12   DEPOSITION AND THE REQUEST IN THEIR MOTION TO REOPEN IT?

13             MR. PAVANE:  YEAH.

14        I MEAN, YOUR HONOR, I'M FLABBERGASTED.  HERE WE DID -- AT

15   THEIR REQUEST WE VOLUNTARILY TRACKED THIS GUY DOWN, GET HIM TO

16   VOLUNTARILY APPEAR FOR A DEPOSITION, HE BRINGS DOCUMENTS THAT

17   HE DOESN'T EVEN HAVE TO BRING BECAUSE WE ASK HIM TO BRING THE

18   DOCUMENTS.  THERE'S NO HAGUE CONVENTION REQUEST.

19        AND NOW BECAUSE HE BROUGHT THE DOCUMENTS AT HIS DEPOSITION

20   THEY WANT TO GO BACK, AT MY EXPENSE AND TAKE THIS DEPOSITION

21   AGAIN.  IT'S OUTRAGEOUS.  IT'S ABSOLUTELY OUTRAGEOUS.  I'VE

22   NEVER HEARD ANYTHING LIKE THAT.

23        I WOULD SAY THIS, I THINK THEIR POINT OF VIEW THEY GOT THE

24   DOCUMENTS THEY ONLY HAD THE CHANCE TO REVIEW THEM AFTER THE

25   FACT.  BUT I WILL TELL YOU THIS, THAT LET'S TALK ABOUT WHAT

1    THOSE DOCUMENTS ARE.  THEY ARE PATENTS THAT ARE CITED ON THE

2    FACE OF EITHER THIS PATENT OR ONE OF THERE MR. CARMEL'S OTHER

3    TWO PATENTS WHICH THEY HAVE KNOWN ABOUT, THE '230 AND '432,

4    IT'S ALL OVER THE DOCUMENT REQUEST.  THAT'S NUMBER ONE.

5         SO THEY HAVE KNOWN ABOUT THE PATENTS.  ALL THAT ART WAS

6    KNOWN TO THEM.  SO NOTHING NEW THERE.  THEY COULD HAVE ASKED

7    HIM ABOUT IT AT HIS DEPOSITION.  HE'S THE INVENTOR ON THE

8    PATENTS.  HERE'S THE PATENT, IT IS LISTED ON THE FACE.  THEY

9    COULD HAVE ASKED HIM QUESTIONS ABOUT THE PATENTS.

10        THE OTHER THINGS IN THERE WERE PRIVILEGED COMMUNICATIONS

11   BETWEEN HIM AND THE PATENT ATTORNEYS, BECAUSE HE WAS THE

12   PRINCIPLE INVENTOR AT EMBLAZE WHO WAS INTERFACING WITH PATENT

13   COUNSEL ON THE PATENTS IN SUIT.

14        AND THEN THE THIRD THING THAT WAS IN THERE WAS THIS RTSP

15   PROTOCOL WHICH THEY HAVE KNOWN ABOUT ALL ALONG WHICH WASN'T IN

16   THEIR INVALIDITY KNOW IT CONTENTIONS BECAUSE NOW BECAUSE IT

17   HAPPENS TO ALSO HAVE BEEN IN MR. CARMEL'S FILE, IT'S TAKEN ON

18   HEIGHTENED SIGNIFICANCE.

19        WELL, IF IT WASN'T SIGNIFICANT BEFORE THE PATENTS IN

20   SUIT, WHY WAS THE FACT IT WAS IN HIS FILE SIGNIFICANT WHEN THEY

21   HAVE KNOWN ABOUT IT ALL ALONG?

22        THEIR TWO PRINCIPAL PEOPLE WHO I DEPOSED, MR. WILLIAM MAY

23   AND ROGER PANTOS, THIS IS IN OUR PAPERS, WHO DEVELOPED THEIR

24   ACCUSED SYSTEM, THE LHS STREAMING SYSTEM, ACKNOWLEDGED THEY

25   KNEW ABOUT AN RTSP FROM THE BEGINNING AND THAT WAS A PRIOR ART

1    SYSTEM.  THEY'VE KNOWN ABOUT THAT ALL ALONG.  SO THERE'S

2    NOTHING NEW HERE.

3         SO MR. -- THE WHOLE THING WITH MR. CARMEL'S DEPOSITION TO

4    ME DOESN'T MAKE ANY SENSE.

5         I DON'T UNDERSTAND WHY THEY WANT TO DO IT.  THE ONLY

6    THING I CAN THINK OF WHY THEY WANT TO DO IT IS EVEN THOUGH THEY

7    HAVEN'T IN THEIR INVALIDITY CONTENTIONS ORIGINALLY ARGUED RTSP

8    WAS EVEN RELEVANT, NOW THEY WANT TO AMEND THE CONTENTIONS ARGUE

9    IT'S RELEVANT AND PERHAPS COME BACK AND SAY, SEE, HE ENGAGED IN

10   INEQUITABLE CONDUCT BECAUSE HE DOESN'T DISCLOSE IT AND IT'S

11   RELEVANT NOW IN OUR SUPPLEMENTAL CONTENTIONS.

12        OTHER THAN THAT I DON'T KNOW WHY THEY WANT TO TAKE HIS

13   DEPOSITION AGAIN.

14             THE COURT:  ALL RIGHT.

15        ONE FURTHER QUESTION, MR. PAVANE, I HAVE FOR YOU IS THE

16   QUESTION OF WHETHER THE DOCUMENT PRODUCTION FROM EMBLAZE IS NOW

17   COMPLETE.

18        DO I HAVE TO WORRY ABOUT OR THINK ABOUT ANY FURTHER

19   DOCUMENTS TO COME OUT IN THE NEXT SEVERAL WEEKS OR ARE WE DONE,

20   FROM YOUR PERSPECTIVE?

21             MR. PAVANE:  GOD, I HOPE NOT.  WE ARE DONE AS FAR

22   AS --

23             THE COURT:  I RECOGNIZE THERE ARE ALSO CONTINGENCIES,

24   BUT AS FAR AS YOU CAN TELL STANDING HERE TODAY THAT'S THE

25   SITUATION.

```
 1              MR. PAVANE:  YES.

 2        LET ME MENTION ONE OTHER THING, AGAIN, I KNOW IT'S NOT

 3    RELEVANT TO THE CURRENT PENDING MOTIONS, BUT JUST IN TERMS OF

 4    THE PEOPLE CONSTANTLY PRODUCING DOCUMENTS IN THE VARIOUS STAGES

 5    OF LITIGATION.

 6           SINCE -- JUST GIVE ME ONE SECOND HERE, I APOLOGIZE.

 7    SINCE JULY 10TH OF THIS YEAR, APPLE HAS PRODUCED TO US A

 8    165,000 PAGES OF DOCUMENTS.

 9              AND SINCE AUGUST 1ST ALONE, 65,000 PAGES OF DOCUMENTS SO

10    LET'S NOT HAVE THE POT CALLING THE KETTLE TOO BLACK HERE.

11           I MEAN, YES, YOUR HONOR, RULED WE HAD A MOTION TO COMPEL,

12    OKAY, WE COMPLIED, BUT YES WE PRODUCED EVERYTHING

13               THE COURT:  ALL RIGHT.

14         ANY FURTHER POINTS YOU WANT TO MAKE, MR. PAVANE?

15               MR. PAVANE:  YEAH, ONE LAST POINT.

16               THE COURT:  GO AHEAD.

17               MR. PAVANE:  THE VERY LAST POINT IS ON THE WHOLE

18    ISSUE OF THE CREATOR AND THE FACT THAT WE DIDN'T PRODUCE

19    DOCUMENTS, ET CETERA, I THINK YOU SAW IN THE PAPERS, I DON'T

20    KNOW -- ANYWAY, IN THE PAPERS IS THE FACT THAT MR. WHEDER I

21    BELIEVE IT WAS, PUT IN A DECLARATION EXPLAINING THAT THEY HAD

22    DOCUMENT REQUESTS OUT ASKING FOR THOSE DOCUMENTS FROM THE VERY

23    BEGINNING.

24              AND YET EVERY ONE OF THOSE REQUESTS, AS WE POINTED OUT IN

25    OUR RESPONSE, IS DIRECTED TO SOMETHING WITHIN THE SUBJECT
```

```
1      MATTER OF THE CLAIMS OF THE PATENT IN SUIT.

2           NOW, THEY COMPLAINED THAT OH, WELL, WE SHOULDN'T BE ABLE

3      TO MAKE THOSE JUDGMENT CALLS, WE SHOULD HAVE TO TURN OVER ALL

4      THE PRIOR ART EVEN IF WE DON'T THINK IT'S WITHIN -- THE REALITY

5      IS WE ARE SUPPOSED TO MAKE A JUDGMENT CALL THAT EVEN THOUGH WE

6      DON'T THINK SOMETHING IS ANTICIPATING, WE SHOULD SAY, YOU KNOW,

7      THIS IS ANTICIPATING BECAUSE YOU'VE ASKED FOR IT AND WE SHOULD

8      TAKE THE POSITION.

9           THAT DOESN'T MAKE ANY SENSE.  THERE'S PLENTY OF WAYS TO

10     ASK FOR PRIOR ART THAT DON'T REQUIRE YOU TO ASK FOR ONLY THINGS

11     THAT DON'T FALL WITHIN THE SCOPE OF THE CLAIMS.  AND WE

12     RESPONDED TO WHAT THEY ASKED.

13               THE COURT:  ALL RIGHT.

14          THANK YOU, MR. PAVANE.

15          MR. DECARLO, DO YOU WANT TO OFFER A COUPLE BRIEF POINTS?

16               MR. DECARLO:  BRIEFLY, YOUR HONOR.

17          LET'S TALK ABOUT THAT LAST POINT FIRST SINCE THE ISSUE OF

18     THE CREATOR DOCUMENTS WHICH WERE ADMITTEDLY PRODUCED LATE,

19     THERE'S NO ARGUMENT FROM MR. PAVANE THEY WERE PRODUCED LATE.

20          THOSE DOCUMENTS WERE COVERED.

21               THE COURT:  THEY ONLY CAME FROM MR. EDWARDS.

22               MR. DECARLO:  NO, MR. EDWARDS FROM EMBLAZE'S OWN

23     RECORDS, FROM THE DOCUMENTS THAT WERE LOST IN THE MOVE AS WELL

24     AS DOCUMENTS THAT WERE PRODUCED TO US DURING THE ISRAELI

25     DEPOSITION.
```

1    THERE'S MULTIPLE SOURCES.  MR. PAVANE IS KIND OF CHERRY

2  PICKING THE PROBLEMATIC DOCUMENTS FROM THE -- IN SUPPORT OF HIS

3  ARGUMENT, AS WELL HE SHOULD.

4    BUT I THINK YOU CAN'T PAINT THE PICTURE THAT BROADLY

5  YOUR HONOR.  THERE ARE CATEGORIES OF DOCUMENTS THAT WE ARE

6  ARGUING HERE.

7    I JUST WANT TO CONTINUE ON THAT LAST POINT.  JUDGE

8  COUSINS ORDERED THAT THE DOCUMENTS THAT RELATE TO THE REDUCTION

9  TO PRACTICE OF THE TECHNOLOGY DESCRIBED IN THE PATENTS IN SUIT

10  INCLUDING THE WRITTEN DESCRIPTION, THAT WAS ORDERED.

11    SO FOR MR. PAVANE TO ARGUE THAT THOSE DOCUMENTS WERE

12  SOMEHOW NOT RESPONSIVE IS I THINK BEYOND THE APPEAL HERE.

13    YOU HAVE AN INVENTOR WHO TESTIFIED.  YOU HAVE THE

14  DOCUMENTS THAT ARE RELATED TO, PATENTS THAT ARE RELATED TO A

15  PRODUCT.

16    THEY DON'T DISCLOSE ANYTHING ABOUT THE PRODUCT AND NOW

17  THEY ARE ARGUING WE DIDN'T HAVE AN OBLIGATION TO PRODUCE THEM

18  WHEN JUDGE COUSINS ORDERS THE PRODUCTION OF DOCUMENTS THAT

19  RELATE TO THE REDUCTION OF PRACTICE OF THE TECHNOLOGY DESCRIBED

20  IN THE PATENTS, NOT THE CLAIMS.

21    AND THIS WAS WELL BEFORE THE CLAIMS WERE EVEN CONSTRUED,

22  INCLUDING THE WRITTEN DESCRIPTION.

23    AND BOTH OF THOSE PATENTS, AND MR. PAVANE LIKES TO WAVE

24  THE PATENT AROUND, THOSE CARMEL PATENTS WERE INCORPORATED BY

25  REFERENCE NOT ONLY JUST CITED, THEY ARE SPECIFICALLY

1    INCORPORATED BY REFERENCE AS THE BEST MODE FOR CERTAIN ASPECTS

2    OF THE INVENTION.

3          SO TO SAY THAT THE CREATOR DOCUMENTS WHICH CLEARLY, IT'S

4    MR. SHANI IS IN THE COURTROOM, HE'S THE INVENTOR.  FOR HIM NOT

5    TO KNOW THAT THE CREATOR PRODUCT RELATED TO THAT TECHNOLOGY,

6    JUDGE COUSINS ORDERS NOT THAT YOU CAN PARSE THE CLAIMS AND ONLY

7    PRODUCE DOCUMENTS FROM YOUR FILES THAT YOU THINK COME BEEN THE

8    SCOPE OF THOSE CLAIMS.

9          JUDGE COUSINS ORDERED, AND THIS WAS IN RESPECT TO

10   GRANTING OUR RELIEF FOR REQUEST FOR PRODUCTION 3, THE FIRST AND

11   ANY SUBSEQUENT WRITTEN DESCRIPTIONS, DRAWINGS OR SKETCHES FOR

12   THE TECHNOLOGY DESCRIBED AND CLAIMED IN THE PATENTS IN SUIT.

13          THE COURT:  WHEN DID JUDGE COUSINS ISSUE HIS ORDER,

14   IF YOU CAN REMIND ME.

15          MR. DECARLO:  APRIL 13TH, 2012.

16          THE COURT:  THANK YOU.

17          MR. DECARLO:  THANK YOU.

18      SO FOR THEM TO ARGUE THEY HAD NO DUTY TO TURN THOSE OVER,

19   THAT'S I WILL LEAVE IT AT THAT.

20          AND LET'S TALK ABOUT THE INVENTOR DEPOSITIONS.  WHEN WE

21   ARE HERE DURING OUR, AND IT'S A LITTLE BIT OF HISTORY THAT GOES

22   ON LIKE WE SHOULD HAVE GONE THROUGH THE HAY.

23          WHEN WE ORIGINALLY BROUGHT IN CASE IN NEW YORK WE RAISED

24   THE ISSUE OF INVENTOR DEPOSITIONS IN THE UNITED STATES.  AND

25   THE ORIGINAL JUDGE IN NEW YORK, MR. PAVANE WASN'T AT THE CASE

1    MANAGEMENT CONFERENCE AND WHETHER OR NOT HIS COLLEAGUE WHO IS

2    NO LONGER WITH HIS FIRM REMEMBERS THIS OR NOT, BUT I WILL

3    REPRESENT THAT THE ISSUE OF PRODUCING THE INVENTORS HERE IN THE

4    UNITED STATES WAS RAISED AND THE JUDGE SAID THAT HE WOULD

5    DEFINITELY REQUIRE THEM TO BE HERE.

6         WHEN WE MOVED THE CASE HERE TO JUDGE ARMSTRONG, IT WASN'T

7    SOMETHING THAT WAS ORIGINALLY MADE A PART OF THAT ORDER.  WHEN

8    WE CAME HERE IN FOR THE CASE MANAGEMENT CONFERENCE IN FRONT OF

9    YOUR HONOR, WHICH WAS ON THE SAME DAY OF THE MARKMAN HEARING,

10   MS. BARROWS STOOD UP HERE AND STARTED TO TALK TO YOU ABOUT

11   CONTINUING WITH THAT THEORY THAT THE INVENTORS WOULD BE

12   PRODUCED HERE.

13        MR. PAVANE SAID IT WAS THE FIRST TIME HE WAS HEARING IT

14   AND WE WOULD DISCUSS IT.

15        WE DISCUSSED IT.  AND IN MAY WE ISSUED OUR DEPOSITION

16   NOTICES AND THEY AGREED TO MAKE THEM AVAILABLE.  SO WHERE WAS

17   THE NECESSITY TO GO THROUGH THE HAY?

18        AND THERE'S ANOTHER THING GOING ON HERE THAT THE COURT

19   SHOULD BE AWARE OF.  YOU KNOW, EMBLAZE LIKES TO TURN ON THE

20   SPIGOT OF WHEN THEY HAVE CONTROL AND WHEN THEY DON'T.  BUT THEY

21   ARE DESIGNATING ALL OF THIS TESTIMONY AS 30(B)(6) TESTIMONY.

22        SO YOU ARE GOING TO SAY YOU HAVE NO CONTROL OVER THEM,

23   YET THEY ARE YOUR CORPORATE REPRESENTATIVES AND YOU WANT TO USE

24   THE TESTIMONY AT TRIAL?

25        I MEAN, I DON'T KNOW, YOUR HONOR, THAT SEEMS TO BE A BIT

1    OF A STRETCH.

2         LIKE THEY DID US A FAVOR BY PRODUCING THE INVENTORS FOR

3    DEPOSITIONS.  I MEAN, SERIOUSLY.

4              THE COURT:  ANY FINAL POINT, MR. DECARLO?

5              MR. DECARLO:  WELL, I WOULD LIKE TO TALK ABOUT THE

6    RALLY PATENT AND THE GUEDALIA REFERENCES AGAIN.

7              THE COURT:  GO AHEAD.

8              MR. DECARLO:  VERY BRIEFLY.

9         THE RTSP PATENT REFERENCE.  HE'S RIGHT.  WHY WAS IT IN

10   MR. CARMEL'S FILES AND WHY WOULDN'T WE HAVE THE RIGHT TO

11   INTERROGATE HIM ABOUT THAT.  WE HAVE BEEN ASKING FOR THE FILES

12   SINCE THE BEGINNING OF THE CASE.

13        YOU KNOW WHY WE DON'T HAVE THEM, BECAUSE THE NEW YORK LAW

14   FIRM THAT PROSECUTED THESE PATENTS DESTROYED THE PATENT FILES

15   AFTER THE CASE BEGAN.

16             MR. PAVANE:  DON'T POINT AT ME WHEN YOU SAY THAT.

17   I'M NOT THE NEW YORK LAW FIRM THAT DESTROYED THE PATENT FILES.

18             MR. DECARLO:  I'M POINTING TO THE PLAINTIFF'S SIDE OF

19   THE TABLE, YOUR HONOR, WHICH IS ALL WRAPPED UP IN A NICE, NEAT

20   LITTLE BALL, AND THEY DEFENDED THEM IN THEIR DEPOSITIONS.

21        SO, YOU KNOW, THIS HAS BEEN A CONSTANT STRUGGLE TO GET

22   THESE DOCUMENTS.  WE MADE THREE MOTION TO COMPEL.  WE HAD TO

23   COMPEL THE FIRM THEY REPRESENTED, THE PROSECUTION FIRM IN NEW

24   YORK, WE HAD TO COMPEL THEM IN NEW YORK AND FIGHT MULTIPLE SEAL

25   MOTIONS -- BECAUSE I DON'T KNOW IF YOU EVER TRIED TO FILE

1    SOMETHING UNDER SEAL UNTIL IN THE SOUTHERN DISTRICT OF NEW YORK

2    --

3            THE COURT:  I HAVE HAD THAT EXPERIENCE.

4            MR. DECARLO:  BEFORE JUDGE HELLERSTEIN.

5        THEIR SEAL SAFE IS BURSTING AT THE SEAMS AND THEY FIGHT

6    EVERY SEAL MOTION.

7            SO THEY ARE MOVING TO SEAL DOCUMENTS THAT REVEALED THEIR

8    DOCUMENT RETENTION POLICIES.  WE HAD TO MOVE TO COMPEL THE

9    DOCUMENT RETENTION POLICIES THAT WERE ENFORCED AT THE FIRM AT

10   THE TIME OF THEIR MAKING THE DECISION TO DESTROY THESE FILES,

11   AND THAT TOOK ANOTHER BUNCH OF MONTHS.

12           SO IT'S JUST BEEN A CONSTANT SERIES OF TRYING TO PULL

13   TEETH.

14           SO YEAH, WE ARE ENTITLED TO INTERROGATE THOSE.

15           AND WITH RESPECT TO RE DEPOSING MR. CARMEL, I'M NOT SEEKING

16   TO -- READ OUR BRIEF.  IT'S TARGETED.  I WANT TO DEPOSE HIM ON

17   THE CREATOR.  I WANT TO DEPOSE HIM ON THE SOFTWARE, DEPOSE HIM

18   ON THE DOCUMENTS THAT WE GOT IN ISRAEL.

19           AND WE WERE TOLD AND THE COURT WAS TOLD THAT EMBLAZE HAD

20   REQUESTED DOCUMENTS FROM THE INVENTORS IN CONNECTION WITH OUR

21   MOTION TO COMPEL WHETHER THEY WERE ARGUING TO THE COURT, THIS

22   IS BURDENSOME, WE ASKED FOR ALL THIS STUFF ALREADY WE GAVE THIS

23   ALL THIS STUFF ALREADY, REMEMBER THE ARGUMENTS THEY MADE

24   VIGOROUSLY, AND WE HAD WEEKS AND WEEKS OF MEET AND CONFERS AND

25   LETTERS AND HARD FOUGHT MOTION TO COMPEL.

1        WE HAVE BEEN ASKING FOR THOSE DOCUMENTS, THEY WERE

2   TELLING THE COURT THEY HAD PRODUCED THEM ALREADY.

3        AGAIN, THIS IS NOT A MOTION SEEKING TO ACCUSE ANYBODY OF

4   MISCONDUCT, IT'S JUST A SITUATION WE ARE IN.  WHY ARE WE NOT

5   ENTITLED TO NOW DEPOSE MR. CARMEL ON THOSE DOCUMENTS THAT WE

6   NEVER GOT AND THAT WE DIDN'T HAVE AN OPPORTUNITY TO DEPOSE HIM

7   ON IN ISRAEL WHETHER HE WAS PRODUCED VOLUNTARILY OR NOT, AND

8   YOU DON'T THINK THEY ARE GOING TO BRING MR. CARMEL TO TRIAL?

9        I TELL YOU WHAT, FINE, WE WON'T DEPOSE HIM.  HE DOESN'T

10  COME TO TRIAL EITHER BY DEPOSITION OR BY LIVE TESTIMONY.  AND

11  I'M FINE WITH THAT.

12       LET HIM TELL YOU RIGHT NOW THAT HE'S NOT GOING TO HAVE

13  ANY ROLE IN THE CASE.  IT'S NOT GOING TO HAPPEN.

14          THE COURT:  ALL RIGHT.

15     YOU'VE GIVEN ME MUCH TO THINK ABOUT.  I WILL GET AN ORDER

16  OUT AS SOON AS I CAN ON THE PENDING MOTIONS.

17     I APPRECIATE THE ARGUMENTS HERE THIS MORNING.

18     HAVE A GOOD DAY.

19          MR. FINEMAN:  THANK YOU, YOUR HONOR.

20          MR. PAVANE:  THANK YOU, YOUR HONOR.

21          MR. DECARLO:  THANK YOU.

22     (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185            DATED: 9/19/13