SARAH BARROWS (SBN 253278)
barrowss@gtlaw.com
William Sloan Coats (SBN 94864)
coatsw@gtlaw.com
Stephen Ullmer (SBN 277537)
ullmers@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

James J. DeCarlo (Admitted *Pro Hac Vice*)
decarloj@gtlaw.com
Michael A. Nicodema (Admitted *Pro Hac Vice*)
nicodemam@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

***Attorneys for Defendant,***
***Apple Inc.***

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| EMBLAZE LTD.,<br><br>    Plaintiff;<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>    Defendant. | Case No.   5:11-CV-01079 PSG<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,389,473**<br><br>Date: April 1, 2014<br>Time: TBD<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF ARGUMENT ...............................................................................2

III. BRIEF STATEMENT OF FACTS RELEVANT TO APPLE'S MOTION FOR
     SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT ...........................3

     A.   Pre-Litigation Communications Between Apple And Emblaze ...................3

     B.   Apple's Proposed Claim Constructions Were Supported By Intrinsic Evidence
          And Objectively Reasonable ......................................................................5

     C.   In The Final Month Of Discovery, Emblaze Conceded That Only "Live"
          Streams Broadcasted Using HLS Are Accused Of Infringement.................5

     D.   Emblaze Abandoned Its Doctrine Of Equivalents And Contributory
          Infringement Theories After The Close Of Discovery .................................5

     E.   Emblaze Intends To Assert Willfulness Based On Inflammatory Snippets From
          Biographies About Steve Jobs And Non-Fiction Accounts Of Apple ..........6

IV.  ARGUMENT ........................................................................................................7

     A.   Legal Standard For Summary Judgment.....................................................7

     B.   Legal Standard For Willful Infringement ...................................................7

     C.   Apple's Pre-Litigation Communications With Emblaze Raise The Same
          Defenses Apple Has Consistently Relied Upon Throughout The Litigation And
          Demonstrate Apple's Objectively Reasonable Position That HLS Does Not
          Infringe The '473 Patent...........................................................................10

     D.   In The Face Of Apple's Defenses, Emblaze Has Abandoned Nearly All Of Its
          Theories Of Infringement, Adopted An Inducement Theory That Departs From
          Its Infringement Contentions And Now Accuses Only Streams That Broadcast
          "Live" Video Using HLS ..........................................................................12

     E.   Claim Construction Precludes A Finding Of Objective Recklessness Because
          Apple's Claim Constructions Were Supported By Intrinsic Evidence And
          Adopted In Part By The Court....................................................................13

     F.   Apple's Summary Judgment Motions Regarding Invalidity And Non-
          Infringement Are Well Supported By The Undisputed Facts And Objectively
          Reasonable ...............................................................................................14

     G.   Emblaze Should Not Be Permitted To Present Highly Inflammatory
          Allegations To The Jury In The Guise Of A Willfulness Argument............15

V.   CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Fiber Techs. Tr. v. J & L Fiber Servs., Inc.*,
  674 F.3d 1365 (Fed. Cir. 2012) ............................................................... 14, 15

*Advanced Fiber Techs. Tr. v. J & L Fiber Servs., Inc.*,
  751 F. Supp. 2d 348 (N.D.N.Y. 2010) ......................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................... 7

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs. Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012) ....................................................... 8, 9, 15

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
  260 Fed. App'x 284 (Fed. Cir. 2008) ............................................................ 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................... 7

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008) ................................................................. 14

*Gustafson, Inc. v. InterSystems Indus. Prods., Inc.*,
  897 F.2d 508 (Fed. Cir. 1990) ..................................................................... 9

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  585 F. Supp. 2d 636 (D. Del. 2008) ............................................................. 9

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ..................................................................... 9

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) (*en banc*) .................................... 1, 8, 12

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  2013 WL 2920478 (D. Del. June 14, 2013) ............................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................... 7

*Olsen v. Idaho State Bd. of Med.*,
  363 F.3d 916 (9th Cir. 2004) ....................................................................... 7

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ................................................................... 8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  2009 WL 2742750 (D. Del. Aug. 26, 2009) ............................................... 15

*Solvay, S.A. v. Honeywell Specialty Materials LLC*,
  827 F. Supp. 2d 358 (D. Del. 2011) ............................................................. 9

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010) ................................................................... 8

*Surrell v. Cal. Water Serv. Co.*,
  518 F.3d 1097 (9th Cir. 2008) ..................................................................... 7

*Tarkus Imagining, Inc. v. Adobe Sys., Inc.,*
    867 F. Supp. 2d 534 (D. Del. 2012) ..................................................................... 8

*TechSearch LLC v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002) ........................................................................... 7

# NOTICE OF MOTION AND MOTION

TO PLAINTIFF EMBLAZE LTD. ("EMBLAZE") AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2014, Defendant Apple Inc. ("Apple") shall and hereby does move for an order granting Apple summary judgment of no willful infringement of U.S. Patent No. 6,389,473 ("the '473 patent"). This motion is based on this notice of motion, the accompanying memorandum of points and authorities in support thereof, the February 14, 2014 Declaration of Sarah E. Barrows in Support of Apple's Motion for Summary Judgment of No Willful Infringement ("Barrows Decl.") and exhibits attached thereto, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

# RELIEF REQUESTED

Emblaze accuses Apple of willfully and intentionally inducing the infringement of the asserted claims in conscious disregard of Emblaze's rights under the '473 patent. Pursuant to Federal Rule of Civil Procedure 56, Apple seeks an order granting summary judgment of no willful infringement of the Asserted Claims of the '473 patent.

# STATEMENT OF ISSUES TO BE DECIDED

1. Whether Apple is entitled to summary judgment of no willful infringement in light of Apple's objectively reasonable defenses to Emblaze's allegations of infringement, as evidenced by the pre-suit communications between the parties, Emblaze's conduct of abandoning and changing its theories of infringement, and the other Apple motions filed concurrently herewith.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

To prove its claim of willful infringement, Emblaze carries the heavy burden of showing by clear and convincing evidence that Apple acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and that "this objectively-defined risk … was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). Emblaze cannot meet this burden because the only fact adduced to support Apple's alleged willful infringement is that Apple declined to

take a license under the '473 patent after Emblaze notified Apple that HTTP Live Streaming ("HLS") infringes the '473 patent. (*See* D.E. 143 (Second Amended Complaint ("SAC") at ¶¶ 34-37)).[1]

Standing alone, this is not clear and convincing evidence that Apple's actions have been "objectively reckless"—the high threshold of behavior needed to support a claim of willful infringement—and no other facts are presented by Emblaze. Indeed, the facts prove the opposite is true. Apple has maintained consistent and objectively reasonable defenses to Emblaze's various claims of infringement, even in the face of Emblaze's continued changes to its infringement theories. The facts confirm Apple's objectively reasonable position as a matter of law and warrant summary judgment of no willful infringement.

## II.   SUMMARY OF ARGUMENT

(1)   Apple continues to maintain essentially the same non-infringement and invalidity positions it presented to Emblaze after receiving Emblaze's first notice of infringement (and has bolstered these positions with additional prior art and evidence);[2]

(2)   Apple's non-infringement and invalidity defenses forced Emblaze to abandon its claim for contributory infringement pursuant to 35 U.S.C. § 271(c) (initially made and dismissed (in response to Apple's motion) in the First Amended Complaint, and now set forth in ¶¶ 34-37 of the SAC);

(3)   In response to Apple's Motion to Strike (D.E. 304) ("Apple's Motion to Strike") Emblaze agreed to drop its theory of infringement under the doctrine of equivalents (D.E. 310 at 20 n.4 ("Emblaze will not rely on the doctrine of equivalents to support its infringement claims.")

---

[1]  *See also* February 14, 2014 Declaration of Sarah E. Barrows in Support of Apple's Motion for Summary Judgment of No Willful Infringement ("Barrows Decl.") at ¶ 2 (Counsel for Emblaze confirmed during the February 6, 2014 telephonic meet and confer regarding summary judgment motions that the basis for their claim of willful infringement rests on the allegations set forth in the SAC); *see also* Ex. 1 at 7 (Emblaze's Patent Disclosures (the "FPDs") served on Apple on October 21, 2011); Ex. 2 at 6-7 (Emblaze Revised Patent Disclosures ("RPDs") served on Apple on January 31, 2012). Unless otherwise noted, the Exhibits referenced in this Motion are identified in the Barrows Declaration and attached thereto.

[2]  *See, e.g.*, Apple's concurrently-filed Motions for Summary Judgment for (1) Non-Infringement as to All Accused Streams; (2) Non-Infringement as to Specific Accused Content Providers; (3) Invalidity Pursuant to 35 U.S.C. §§ 102 & 103.

(4)  Emblaze abandoned its position that video-on-demand ("VOD") streams using HLS infringe the '473 patent after three years of litigation where Emblaze had accused all HLS streams regardless of whether they were broadcast "live"[3] or via VOD.

(5)  Emblaze's "shifting sands" infringement theories have changed throughout the course of its pleadings (three Complaints), patent disclosures (initial and revised), expert report on infringement and, finally, expert deposition testimony regarding infringement.  Given the difficulty in divining what actions Emblaze even accuses of infringement (including the type of HLS streams Emblaze claims to be infringing), Apple cannot be found to be objectively reckless.

(6)  Apple's concurrently-filed summary judgment motions for non-infringement and invalidity present reasonable, credible defenses against the '473 patent that preclude any finding of willfulness under the objective prong of *Seagate*.

## III.  BRIEF STATEMENT OF FACTS RELEVANT TO APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT

### A.  Pre-Litigation Communications Between Apple And Emblaze

The undisputed facts demonstrate that Apple was not aware of the '473 patent until on or after the date that Emblaze first sent Apple a letter stating that Apple's HTTP Live Streaming protocol allegedly infringed its '473 patent.  (Ex. 3 (October 29, 2009 letter from then-counsel for Emblaze, Cohen Pontani Lieberman Pavane LLP)).  That letter sets forth the opinion that "Apple's HTTP Live Streaming application reads on one or more claims" of the '473 patent and included a chart that generally compared claim 1 of the '473 patent to a description of HLS from Apple's developer webpage.  (*Id.*)  The parties then exchanged at least seven letters and held an in-person meeting in New York in an effort to reach resolution over Emblaze's accusations.  (*See, e.g.*, Exs. 3-10).

At the parties' meeting, Apple presented its initial non-infringement positions (including the fact that Apple did not generate content or act as a server for real-time streaming of content).  (Ex. 9 (Apple's Analysis of Emblaze's Patent Presentation made to Emblaze on June 16, 2010) at

---

[3]  For purposes of this Motion, Apple adopts Emblaze's definition of "live" set forth by named inventor and Emblaze CEO Naftali Shani in his 30(b)(6) deposition.  (Ex. 12, Shani Dep. at 210:23-212:7) (testifying that "live video streaming is when you process in realtime live, like when you broadcast an event that happens now, that occurs now, when you broadcast at the time.")).

APPLE042014-20). In addition, Apple presented its initial theories as to why the '473 patent was invalid. (*Id.* at APPLE042021-30). Following the in-person meeting, Apple informed Emblaze that it believed a "detailed technical dialog on the merits of [Apple's] positions" would be important to "any potential resolution with a common understanding" and invited Emblaze to continue those technical discussions at an in-person meeting at Apple's headquarters. (Ex. 8).

Emblaze declined to engage in the technical dialog; after several weeks it responded with a new theory of infringement (inducement) and demanded Apple contact it within 10 days "to discuss licensing terms." (Ex. 10 (July 15, 2010 letter from Emblaze's counsel)). Approximately two weeks after that communication, Emblaze filed its original Complaint against Apple for infringement of the '473 patent on July 28, 2010. (D.E. 1).

Significantly, a central point of disagreement on the issue of infringement evidenced by the pre-litigation communications and Apple's presentation to Emblaze during the in-person meeting is whether HLS requires the data rate of the upload and download streams to be "generally equal"—as required by all the Asserted Claims of the '473 patent. As discussed further in Section IV.C, and in Apple's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,389,473 as to All Accused Streams ("Apple's All Accused Streams Motion"), Apple has consistently maintained its positions, *inter alia*, that the "generally equal" limitation of the Asserted Claims precludes a finding of infringement and that Emblaze incorrectly asserts that the "generally equal" limitation is "inherent." (*See* Section IV. C (detailing the history of Apple and Emblaze's consistent dispute on these issues)).

Further, Apple's pre-litigation communications set forth Apple's initial position that the '473 patent is invalid, citing three prior art patents—U.S. Patent No. 5,434,860, U.S. Patent No. 6,138,147, and U.S. Patent No. 6,014,694—that Apple continues to assert in its invalidity defense. (*See* Section IV. C). On these facts alone the Court can and should find that Apple was not then, nor has it ever been, "objectively reckless."

**B.** **Apple's Proposed Claim Constructions Were Supported By Intrinsic Evidence And Objectively Reasonable**

Apple's claim construction positions were well-supported by the specification and intrinsic evidence within the '473 patent and resulted in the Court's adoption of some of its terms. At the Markman Hearing this Court indicated that the parties had given him much to think about. (Ex. 11, Markman Hearing Tr. at 162:19-21 ("I will congratulate both sides, you've given me enough to think about that I want to sleep on this before I publish my construction.")). There is no evidence that Apple's proposed constructions, whether adopted or not, were in any way unreasonable.

**C.** **In The Final Month Of Discovery, Emblaze Conceded That Only "Live" Streams Broadcasted Using HLS Are Accused Of Infringement**

It took approximately three years of litigation for Emblaze to concede to Apple that only "live" streams of video are accused of infringement as opposed to both the "live" and "video-on-demand" ("VOD") streams originally alleged. (Ex. 12, Shani Dep. at 267:11-14 (testifying that someone using HLS for VOD would not need to take a license under the '473 patent)).

According to data identified by Emblaze's damages expert Catharine Lawton, ninety-five percent (95%) of the content CDNs deliver is VOD content. (Ex. 18, Lawton Damages Report at 251-252, ¶ 471)).[4] Thus, at best, only 5% of all streaming activity could even be eligible to be accused of infringement. In contrast to Emblaze's initial allegations accusing HLS generally, and Emblaze's infringement contentions accusing live and VOD streams, Emblaze no longer believes that the vast majority of HLS-compliant streams actually infringe.

**D.** **Emblaze Abandoned Its Doctrine Of Equivalents And Contributory Infringement Theories After The Close Of Discovery**

As set forth in Apple's Motion to Strike (D.E. 303) and Reply in support of that Motion (D.E. 313) (together, "Apple's Strike Motion"), Emblaze has tried out several different theories of infringement in over three years of litigation—filing three Complaints, two versions of infringement contentions, and an expert report that Apple moved to strike because it introduced entirely new theories of infringement not set forth in Emblaze's Revised Patent Disclosures ("RPDs"). (*See, e.g.*,

---

[4] Citing Siglin, Tim, "The Economics of Live Events," Streaming Media, April/May 2010, (http://www.streamingmedia.com/Articles/ReadArticle.aspx?ArticleID=66648&PageNum=l).

Ex. 15, Motion to Strike Hearing Tr. at 32:12-33:4)).  In fact, in response to Apple's Motion to Strike, Emblaze agreed to drop the doctrine of equivalents.  (D.E. 310 at 20 n.4).

Emblaze's most recent Complaint—the Second Amended Complaint—accuses Apple of direct, indirect, contributory, and willful infringement.  (D.E. 143).  However, during the January 21, 2014 hearing on Apple's Motion to Strike, counsel for Emblaze explained that its lone remaining claim of infringement against Apple is via the theory of inducement under 35 U.S.C. § 271(b), and it was confirmed at a meet and confer among the parties on Feburary 6, 2014 that contributory infringement is also no longer being asserted.  (Ex.15 at 25:18-26:10 (responding to the Court's question asking "[i]s it correct, Mr. Pavane, that at this point only a § 271(b) theory is being pursued?" Counsel for Emblaze agreed, "yes, it's an inducement claim."); *see also* Barrows Decl. ¶ 2.[5]

**E.**     **Emblaze Intends To Assert Willfulness Based On Inflammatory Snippets From Biographies About Steve Jobs And Non-Fiction Accounts Of Apple**

Emblaze's expert Catharine Lawton served a 528-page report containing hundreds of direct quotations from different biographies of Steve Jobs and purported non-fiction books about Apple as a company.[6]  Ms. Lawton's damages report includes numerous descriptions of alleged unauthorized copyright and trademark violations committed by Apple as well as past lawsuits involving copyright and trademark violations.  (Ex. 18 at 377, ¶765 (listing some of the books Ms. Lawton reviewed) & 403-407 (summarizing irrelevant past lawsuits involving Apple and alleged acts of copyright and/or trademark violations)).  Her report also recites a number of inflammatory (and irrelevant) comments

---

[5]  Notwithstanding this admission to Judge Grewal, Emblaze refuses to drop its claim of direct infringement pursuant to 35 U.S.C. § 271(a) during the parties meet and confer on summary judgment motions.  (Barrows Decl. at ¶ 2).  Apple now moves for summary judgment of no direct infringement.  (*See* Apple's concurrently-filed All Accused Streams Motion at 18-19).

[6]  Ms. Lawton quotes heavily from the following books:  *Steve Jobs*, by Walter Isaacson (2013); *Inside Apple, How America's Most Admired—and Secretive—Company Really Works*, by Adam Lashinsky (2012); *Apple Confidential 2.0 – The Definitive History of the World's Most Colorful Company,* by Owen W. Linzmayer (2008); *Apple – The Inside Story of the Intrigue, Egomania, and Business Blunders,* by Jim Carlson; "*19. Magicians: Steve Jobs' Reality Distortion Field and Apple Computer(1976-2010)*" *A History of Silicon Valley* (2010) (excerpts).  Ms. Lawton also referenced several dozen blogs and articles about Apple and Steve Jobs.  (Ex. 18 at Ex. C (Documents reviewed).

attributed to Steve Jobs.[7]  (*Id.* at 87-89, ¶ 184).  Apple intends to file *Daubert* Motions and Motions *in Limine* to preclude those highly inflammatory allegations.  However, neither Ms. Lawton nor Emblaze should be permitted to present those highly prejudicial, inflammatory, and wholly irrelevant allegations to the jury under the guise of "subjective" evidence of willfulness because Emblaze cannot meet the first objective prong of the *Seagate* willfulness test.

## IV.  ARGUMENT

### A.  Legal Standard For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  Although it is well established that all reasonable inferences must be drawn in the light most favorable to the nonmoving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  Unsupported conjecture or conclusory statements cannot defeat summary judgment.  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008); *TechSearch LLC v. Intel Corp.*, 286 F.3d 1360, 1371-72 (Fed. Cir. 2002).  Where the nonmoving party bears the burden of proof at trial, the moving party may also prevail at summary judgment merely by pointing out that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B.  Legal Standard For Willful Infringement

To establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and, next, that "this objectively-defined risk … was either known or so obvious that it

---

[7]  There is no evidence that Steve Jobs had any involvement with any aspect of this case, further evidencing the fact that any quotations allegedly accredited to him are irrelevant.

should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. Consequently, willfulness requires proof by clear and convincing evidence of both an objective <u>and</u> a subjective prong. *Id.*

In *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates Inc.*, the Federal Circuit clarified that the threshold question of whether the objective prong of *Seagate* is met is one for the Court to decide, not the jury. 682 F.3d 1003, 1008 (Fed. Cir. 2012) ("The ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.") (internal citations omitted). If the objective prong of *Seagate* is not satisfied, there is no need to consider the subjective prong and the question of willfulness <u>cannot</u> be presented to the jury. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong.") (internal citations omitted).

An accused infringer is generally not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *accord Bard* 682 F.3d at 1005–06 ("[T]he question ... often posed is whether a defense or noninfringement theory was 'reasonable.'"). Therefore, legitimate defenses to infringement and credible invalidity arguments will demonstrate that the accused infringer was not objectively reckless. *See, e.g., Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. App'x 284, 291 (Fed. Cir. 2008) ("[B]oth legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."); *see also Tarkus Imagining, Inc. v. Adobe Sys., Inc.*, 867 F. Supp. 2d 534, 538 (D. Del. 2012) (concluding that the first objective prong of *Seagate* could not be satisfied and granting summary judgment of no willful infringement where Adobe's assertion of reasonable claim construction positions and credible non-infringement theories demonstrated reasonable defenses even under the Court's different claim constructions).

Thus, the question for the Court is whether a defense or non-infringement position is reasonable. *Bard*, 682 F.3d at 1007 (internal citations omitted). This determination entails an objective assessment of potential defenses based on the risk presented by the patent, including questions of infringement and validity. *See Spine Solutions*, 620 F.3d at 1319 ("Medtronic raised a substantial question as to the obviousness of the '071 patent…. Medtronic was not objectively reckless in relying on this defense."); *see also Solvay, S.A. v. Honeywell Specialty Materials LLC*, 827 F. Supp. 2d 358, 366 (D. Del. 2011) ("Honeywell's invalidity contentions are 'substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon.'") (quoting *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 636, 644 (D. Del. 2008))).

As set forth in detail herein, Emblaze has no evidence of willfulness and the only operative facts demonstrate the objective reasonableness of Apple's defenses. Emblaze's allegation of willfulness rests on the single contention that Emblaze gave notice that Apple was infringing Emblaze's '473 patent several months after Apple announced the HLS feature but, "to date, Apple has declined to take a license under the '473 patent, [and] it continues to infringe the '473 [p]atent as alleged." (D.E. 143 (SAC) at ¶¶ 34-37).[8]

However, there is no "universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit." *Gustafson, Inc. v. InterSystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). Rather, "[i]nfringement is willful when the infringer was aware of the asserted patent, but nonetheless acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) (citing *Seagate*, 497 F.3d at 1371). All the evidence demonstrates Apple's objectively reasonable defenses to Emblaze's charges of infringement and renders summary judgment of no willful infringement appropriate as a matter of law.

---

[8] *See also* Barrows Decl. ¶ 2.

### C. Apple's Pre-Litigation Communications With Emblaze Raise The Same Defenses Apple Has Consistently Relied Upon Throughout The Litigation And Demonstrate Apple's Objectively Reasonable Position That HLS Does Not Infringe The '473 Patent

Apple's non-infringement and invalidity defenses set forth throughout this litigation track the defenses that Apple has always maintained. This is clear evidence of Apple's objectively reasonable position that should defeat Emblaze's claim of willful infringement on summary judgment.

As stated briefly in Section III.A, both the non-infringement and invalidity positions presented to Emblaze prior to this litigation continue to be among the core defenses to Emblaze's present case.

First, with respect to Apple's non-infringement positions, Apple's first communications to Emblaze explained that HLS "does not require the broadcast data to be 'generally equal' to the upload data rate. Apple has no control over what data rate the content provider selects for streaming transmission." (Ex. 4 (January 11, 2010 letter from Apple's Senior Patent Counsel, Ms. Lisa Marie Schull, to Emblaze's counsel) at 2; *see also* Ex. 6 (February 19, 2010 letter from Apple's Ms. Schull to Emblaze's counsel explaining that the "generally equal" limitation precludes infringement and disagreeing with Emblaze' assertion that the claim limitation is "inherent") and Ex. 9 at APPLE042014-20 (Apple's presentation to Emblaze at the June 16, 2010 meeting setting forth its non-infringement positions)).

Apple's non-infringement defenses throughout this litigation have continued to include these initial points made to Emblaze. By way of brief example, Apple's All Accused Streams Motion sets forth how the undisputed upload rate evidence shows that the Accused Streams are not uploaded at an upload rate generally equal to the data rate of the stream. (*See, e.g.*, Apple's All Accused Streams Motion at 7-11). Further, in Apple's Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent 6,389,473 as to Specific Accused Content Providers ("Apple's Specific Providers Motion"), Apple continues to maintain its position that compliance with the Apple's HLS Protocol does not place requirements on how content providers select data rates and upload rates for their streams. (*E.g.*, Apple's Specific Providers Motion, filed concurrently herewith, at 2-3). In addition, Apple has continued to challenge Emblaze's assertion that the "generally equal" limitation of the

Asserted Claims is "inherent" in the practice of HLS.  (*See, e.g.*, Ex. 16, Madisetti Dep. at 270:10-272:3 (deposing Emblaze's expert Dr. Vijay Madisetti on the basis of his assertion that Apple's HLS satisfies the generally equal limitation of Claim 1); *see also* Ex. 17 (at Interrogatory 17); *see also* Apple's All Accused Streams Motion at 7-11)).  There is simply no question that Apple's defenses have been consistent and unwavering.

Next, Apple's pre-litigation positions regarding invalidity continue to form the basis of its invalidity defenses.  For example, in the first correspondence from Apple's Senior Patent Counsel to Emblaze, Apple explained, "we have not had an opportunity to conduct an extensive prior art search" but identified U.S. Patent No. 5,434,860 as initial prior art located.  (Ex. 4 at 2).  That letter also points out that the "step of splitting data into slices before streaming [is] well known in the prior art" and identifies at least one method of streaming constant-sized "chunks" of data across HTTP.  (*Id.*). In response to Emblaze's next correspondence on the issue, Apple identified two additional prior art patents—U.S. Patent No. 6,138,147 and U.S. Patent No. 6,014,694—and provided a chart mapping these patents to the claims Emblaze asserted.  (Ex. 6 at 1-2; Ex. 6A).  This letter also explained Apple's belief that claims 11 and 12 are invalid due to being "irreconcilable with independent claim 1, which requires that the upload rate and download rate be 'generally equal' to the data rate of the raw stream."  (Ex. 6 at 2).  These same positions were presented at the parties' in-person meeting on June 16, 2010.  (Exs. 8 & 9).

After Emblaze commenced this lawsuit, Apple continued to rely on the same prior art references initially identified and described to Emblaze (while naturally further developing its case and bolstering its invalidity claims with additional art).  Both Apple's initial and amended Invalidity Contentions assert that the respective '860 patent, '147 patent, and '694 patents invalidate the suit patent.  (Ex. 13 (Apple's December 6, 2011 Invalidity Contentions), Ex. 14 (Apple's September 30, 2013 Invalidity Contentions).

Likewise, the expert report of Apple's invalidity expert Dr. Michael Orchard details his invalidity analysis and includes a discussion of the '860 patent, '147 patent, and '694 patent.  (*See* February 14, 2014 Declaration of Dr. Michael Orchard in Support of Apple's Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. §§ 102 & 103 ("Orchard Decl.") at Ex. A at 68-70)).  In

addition, Dr. Orchard's invalidity report discusses in more detail the position Apple raised with Emblaze prior to litigation regarding the invalidity of claims 11 and 12 of the '473 patent. Specifically, on page 49 (Section X.A.iii) of Dr. Orchard's report, he details why claims 11 and 12 are not enabled. (*Id.* at 49).

As the Federal Circuit sitting *en banc* in *Seagate* explained:

> [I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b).

*Seagate*, 497 F.3d at 1374.

The facts in this case undisputedly show that Apple investigated Emblaze's claims of infringement and found them meritless in the face of numerous non-infringement and invalidity positions that Apple continues to pursue today. Apple not only explained these various defenses to Emblaze in written communications and an in-person meeting, but expressed its belief that a detailed dialog with Emblaze would be necessary to explain the merits of Apple's defenses. (Ex. 8). Emblaze rebuffed Apple's good faith efforts by declining further technical discussions, demanding a meeting on licensing terms, raising a new basis of infringement (inducement), and filing suit against Apple rather than engaging in further discussions. (Ex. 10). Against this backdrop of pre-litigation conduct, Emblaze has no evidence sufficient to establish that Apple disregarded an objectively-defined risk of infringement.

> **D.**  **In The Face Of Apple's Defenses, Emblaze Has Abandoned Nearly All Of Its Theories Of Infringement, Adopted An Inducement Theory That Departs From Its Infringement Contentions And Now Accuses Only Streams That Broadcast "Live" Video Using HLS**

While events after infringement commences may change the circumstances and undermine the basis for the infringer's initial good faith belief in invalidity or non-infringement,[9] here the opposite is true. Confronted with Apple's defenses, Emblaze has abandoned its contributory infringement claim against Apple and its allegations of infringement under the doctrine of

---

[9] 7-20 Chisum on Patents § 20.03 (explaining, "Events after infringement commences may change the circumstances and undermine the basis for the infringer's initial good faith belief in invalidity or noninfringement.").

equivalents. (Barrows Decl. ¶ 2; and D.E. 320 at 20 n.4; *see also* Ex.15 at 25:18-26:10 (in response to the Court's question asking "[i]s it correct, Mr. Pavane, that at this point only a § 271(b) theory is being pursued?" Counsel for Emblaze agreed, "yes, it's an inducement claim.")).

In addition, despite contending in its Infringement Contentions that both "live" and VOD streams conforming to the HLS specification are infringing, the 30(b)(6) testimony of Emblaze's CEO unequivocally proves that Emblaze now only accuses "live" streams as infringing. (Ex. 12, Shani Dep. at 267:11-14 (stating that someone using HLS to stream video on demand would not need a license under the '473 patent). In short, after years of litigation where Emblaze claimed to accuse any stream using HLS, Emblaze has now been forced to whittle back its case to only "live" streams using HLS—the overwhelmingly *minority* of all streaming.[10]

Last, Emblaze's revolving door infringement theories detailed in Apple's Motion to Strike and concurrently-filed Non-Infringement SJ demonstrate that Apple could not have been on notice as to Emblaze's theories of infringement in order to have acted with the objectively high likelihood that its actions constituted infringement of the '473 patent. Put simply, Apple cannot have disregarded an objectively high risk that its actions constitute infringement because Emblaze has continually changed what actions it believes constitute infringement.

**E. Claim Construction Precludes A Finding Of Objective Recklessness Because Apple's Claim Constructions Were Supported By Intrinsic Evidence And Adopted In Part By The Court**

Apple's claim construction positions and the Court's subsequent constructions provide additional support for Apple's objectively reasonable belief that HLS does not infringe the '473 patent. First, Apple's proposed claim constructions were well supported by the specification and intrinsic evidence. (*See* D.E. 118).[11] Next, although the Court accepted close variations of a number of Emblaze's claim construction positions, Apple moved for reconsideration on the "predetermined data size" term. (D.E. 207). The Court granted that reconsideration. (D.E. 214). The Court's constructions directly support two of Apple's non-infringement theories, as described fully in Apple's

---

[10] Ex. 18 at 251, ¶471).
[11] This fact alone demonstrates the objectively reasonableness of its constructions. *See, e.g.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2013 WL 2920478, at *3 (D. Del. June 14, 2013).

All Accused Streams Motion regarding the "uploading" and "predetermined data size" limitations, filed concurrently herewith. (Apple's All Accused Streams Motion at 7-14).

As the Court's mixed adoption of Apple's constructions, Emblaze's constructions, and other hybrid constructions demonstrates, the claim construction in this matter was "a sufficiently close question to foreclose a finding of willfulness." *See, e.g., Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 n.4 (Fed. Cir. 2008) (determining that "because [disputed claim term] was susceptible to a reasonable construction under which [defendant's] products did not infringe, there was not an objectively high likelihood that [defendant's] actions constituted infringement."); *see also Advanced Fiber Techs. Tr. v. J & L Fiber Servs., Inc.*, 751 F.Supp.2d 348, 381 (N.D.N.Y. 2010), *aff'd as to no willful infringement*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012) (granting summary judgment of no willful infringement since the accused infringer had a reasonable belief in its claim construction supporting non-infringement and invalidity). The Court has recognized during numerous hearings that the parties' positions are often close, far from frivolous or baseless. Apple's conduct before this Court is another evidentiary fact the Court can and should consider in determining whether Apple's conduct has been objectively reckless.

> **F.  Apple's Summary Judgment Motions Regarding Invalidity And Non-Infringement Are Well Supported By The Undisputed Facts And Objectively Reasonable**

Apple's concurrently-filed summary judgment motions for invalidity and non-infringement[12] explain the merits of Apple's invalidity and non-infringement defenses and demonstrate Apple has numerous strong defenses.

Even if the Court declines to grant all or some of Apple's summary judgment motions, each motion raises substantial questions of non-infringement and invalidity pursuant to specific, articulated theories (*i.e.* anticipation, obviousness, and non-infringement). Both standing alone and read together, Apple's many defenses to Emblaze's claim for infringement preclude a finding as a matter of law that Apple has disregarded an "objectively high likelihood that its actions constituted

---

[12]  *See* Apple's All Accused Streams Motion; Apple's Specific Accused Content Providers Motion; and Apple's Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. §§ 102 & 103 ("Apple's Invalidity Motion").

infringement of a valid patent." *See, e.g.*, *Multimedia Patent Tr. v. Apple Inc.*, 2012 WL 6863471 (S.D. Cal. Nov. 9, 2012) (granting summary judgment of no willful infringement and observing that defendants "have presented objectively reasonable non-infringement arguments in their expert reports . . . [and] although the Court has denied Apple and LG's motion for summary judgment on invalidity, their invalidity argument based on written description and enablement . . . were objectively reasonable."); *see also Advanced Fiber Techs Tr.*, 674 F.3d at 1377–78 (affirming district court's summary judgment of no willfulness where the "facts show[ed] that [the defendant's] assertions of invalidity and noninfringement were, at minimum, objectively reasonable defenses to [the plaintiff's] charge of infringement").

**G.**   **Emblaze Should Not Be Permitted To Present Highly Inflammatory Allegations To The Jury In The Guise Of A Willfulness Argument.**

Willfulness is an "an intrusive and inflammatory issue to discover and try." *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 2009 WL 2742750 at *2 n.2 & n.3 (D. Del. Aug. 26, 2009) (also noting the "hyperbole that can accompany claims of willfulness"). Accordingly, it is particularly well-suited for resolution on summary judgment where, as here, no evidence can support a finding of Apple's objectively reckless disregard of the likelihood of infringing a valid patent.

As set forth in *Bard*, the Court, not the jury, must <u>always</u> determine whether the objective prong of willfulness has been satisfied. *Bard*, 682 F.3d at 1007. Because there is not clear and convincing evidence to support the threshold objective prong, no evidence purporting to support the subjective prong of willfulness should be presented to the jury. Apple should not have to devote its resources (and the Court's) to warding off Emblaze's attempts to prove the subjective prong of willfulness via unrelated and prejudicial accounts of Apple's past alleged mis-deeds.

Apple's concerns are well grounded. It is clear from the report authored by Emblaze's damages expert, Catharine Lawton, that Emblaze intends to present an inflammatory case of willfulness based on books and blogs that discuss Steve Jobs' and Apple's past behavior. As discussed briefly in Section III.E, Ms. Lawton's 528-page expert report includes hundreds of direct quotes from various biographies of Steve Jobs and purportedly non-fiction accounts of Apple as a company. (Ex. 18). Ms. Lawton's report also includes dozens of inflammatory comments attributed

to Steve Jobs, including the comment, "Picasso had a saying—'good artists copy, great artists steal'—and we have always been shameless about stealing great ideas." *Id.* at 89 (in fact Ms. Lawton repeatedly placed her own emphasis on these "quotes" by using bold or underlined font).

Although Apple's intends to seek to preclude such inflammatory and prejudicial testimony from Emblaze's damages expert's testimony through *Daubert* motions and motions *in limine*, both the Court and Apple can be expected to be devote significant resources to motion practice and objections during trial that seek to manage the prejudice inherent in trying a case of willful infringement. This hardship can and should be mitigated against now by granting summary judgment on the objective prong in light of all of the evidence supporting Apple's objectively reasonable behavior in defending against Emblaze's allegations of infringement.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Apple's Motion for No Willful Infringement.

Dated: February 14, 2014

GREENBERG TRAURIG, LLP


By: /s/ Sarah Barrows
    SARAH BARROWS (SBN 253278)
    barrowss@gtlaw.com
    William Sloan Coats (SBN 94864)
    coatsw@gtlaw.com
    Stephen Ullmer (SBN 277537)
    ullmers@gtlaw.com
    GREENBERG TRAURIG, LLP
    4 Embarcadero Center, Suite 3000
    San Francisco, CA 94111-5983
    Telephone: (415) 655-1300
    Facsimile: (415) 707-2010

    James J. DeCarlo (Admitted *Pro Hac Vice*)
    decarloj@gtlaw.com
    Michael A. Nicodema (Admitted *Pro Hac Vice*)
    nicodemam@gtlaw.com
    GREENBERG TRAURIG, LLP
    MetLife Building
    200 Park Avenue, 34th Floor
    New York, New York 10166
    Tel.: (212) 801-9200
    Fax: (212) 801-6400

    *Attorneys for Defendant Apple Inc.*