1  SARAH BARROWS (SBN 253278)
   barrowss@gtlaw.com
2  William Coats (SBN 94864)
   coatsw@gtlaw.com
3  Stephen Ullmer (SBN 277537)
   ullmers@gtlaw.com
4  GREENBERG TRAURIG, LLP
5  4 Embarcadero Center, Suite 3000
   San Francisco, CA 94111-5983
6  Telephone: (415) 655-1300
   Facsimile: (415) 707-2010
7
8  James J. DeCarlo (Admitted *Pro Hac Vice*)
   decarloj@gtlaw.com
9  Michael A. Nicodema (Admitted *Pro Hac Vice*)
   nicodemam@gtlaw.com
10 GREENBERG TRAURIG, LLP
   MetLife Building
11 200 Park Avenue, 34th Floor
12 New York, New York 10166
   Telephone: (212) 801-9200
13 Facsimile: (212) 801-6400

14 ***Attorneys for Defendant,***
   ***Apple Inc.***
15

16

17          **UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
18                 **SAN JOSE DIVISION**

19
   EMBLAZE LTD.,                          Case No.   5:11-CV-01079 PSG
20
              Plaintiff;                   **DEFENDANT APPLE INC.'S NOTICE**
21                                         **OF MOTION AND MOTION FOR**
              v.                           **SUMMARY JUDGMENT OF NON-**
22                                         **INFRINGEMENT OF U.S. PATENT NO.**
   APPLE INC., a California corporation,   **6,389,473 AS TO ALL ACCUSED**
23                                         **STREAMS [PUBLIC VERSION]**
              Defendant.
24
                                           Date: April 1, 2014
25                                         Time: TBD
                                           Place: Courtroom 5, 4th Floor
26                                         Judge: Hon. Paul S. Grewal
27
                                           **ORAL ARGUMENT REQUESTED**
28

# **Table of Contents**

Table of Authorities .................................................................................................. iii

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 2

II.  FACTUAL BACKGROUND ................................................................................. 5

    A.  The Patent-in-Suit ....................................................................................... 5

    B.  The Accused Streams ................................................................................... 5

III.  ARGUMENT .......................................................................................................... 6

    A.  Summary Judgment: Legal Standard ............................................................ 6

    B.  Because Emblaze Cannot Show That The Accused Streams Upload The Claimed Sequence At An Upload Rate Generally Equal To The Data Rate Of The Stream, Summary Judgment Of Non-Infringement Is Appropriately Granted For The Asserted Claims .......................................................................................................... 7

        1.  The undisputed upload rate evidence shows that the Accused Streams are not uploaded at an upload rate generally equal to the data rate of the stream .......................... 7

        2.  Whether the Accused Streams meet the "uploading" limitation is ripe for summary judgment .............................................................................................................. 8

        3.  The "upload rate" is the transmission rate of a file during the time in which the file is actually being uploaded .............................................................................................. 9

    C.  Because Emblaze Cannot Show That The Accused Streams Meet The "Predetermined Data Size" Limitation, Summary Judgment Of Non-Infringement Of The Asserted Claims Is Appropriately Granted ........................................................................................ 11

        1.  Slice sizes for the Accused Streams vary in size with no predictable pattern ............. 11

        2.  A close enough data size is not a "predetermined data size" ...................................... 13

    D.  Partial Summary Judgment Should Be Granted To The Extent Emblaze Alleges Infringement Other Than By The Accused Streams, Such As "Some Memorial Speeches" Or Any Other Unidentified Stream .................................................................... 14

    E.  Because Emblaze Has Failed To Allege A Single Direct Infringer Or Present Evidence Showing That Any Single Direct Infringer Meets The Limitations Of The Asserted Apparatus Claims, Summary Judgment Is Appropriately Granted With Respect To Such Claims ........................................................................................................... 15

        1.  Emblaze does not identify a direct infringer of the Asserted Apparatus Claims. ........ 15

        2.  Emblaze new theory that "the last party who completes the invention is [] the direct infringer" of the Asserted Apparatus Claims—which Emblaze raised for the first time on February 11, 2014 at the oral argument for Apple's Motion to Stay—goes beyond the scope of its infringement contentions and expert report of infringement ........................................................................................................ 17

        3.  Absent a direct infringer, Apple cannot induce infringement of the Asserted Apparatus Claims .................................................................................................. 18

**F.** Because Emblaze Offers No Evidence That Apple Directly Infringes The Asserted Claims, Apple Should Be Granted Summary Judgment As To Emblaze's § 271(A) Direct Infringement Claim For The Accused Apple Keynote Stream ............................... 18

**IV.** CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    692 F. 3d 1301 (Fed. Cir. 2012)............................................................................... 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................... 7

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)............................................................................... 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................... 6, 7

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
    2013 WL 4537838 (N.D. Cal. Aug. 22, 2013)........................................................ 13

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)................................................................................ 7

*Intellectual Science & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009)............................................................................. 13

*Overhead Door Corp. v. Chamberlain Group, Inc.*,
    194 F.3d 1261 (Fed. Cir. 1999)............................................................................. 13

**Federal Rules**

Fed. R. Civ. P. 56 ....................................................................................................... 6

**Statutes**

35 U.S.C. § 271 ...................................................................................... 15, 16, 18, 19

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF EMBLAZE LTD. ("EMBLAZE") AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, there will be a hearing on the motion of Defendant Apple Inc. ("Apple") for summary judgment of non-infringement of Claims 1, 2, 8-14, 21, 23-29, 36-38, & 40-41 ("Asserted Claims") of U.S. Patent No. 6,389,473 ("the '473 patent").

This motion is based on this Notice of Motion, the Points and Authorities below, the February 14, 2014 Declaration of Douglas R. Weider ("Weider Decl.")1 in support of this motion and the exhibits attached thereto, the complete record in this action, all matters of which the Court may take judicial notice, and such other written or oral argument as may be presented at or before the time this motion is taken under consideration by the Court.

## RELIEF REQUESTED

Emblaze accuses Apple of inducing the infringement of the Asserted Claims when the following accused video streams are played on the accused Apple devices: (1) CBS broadcasts of PGA tour events ("the Accused PGA Stream"); (2) ABC News broadcasts ("the Accused ABC News Stream"); (3) ESPN broadcasts of sporting events ("the Accused ESPN Stream"); (4) Neulion.com's production of NFL preseason games ("the accused NFL Preseason Stream"); (5) live MLB games ("the Accused MLB Stream"); (6) Apple iTunes London 2013 ("the Accused iTunes London 2013 Stream") and (7) two Apple Keynote streams ("the Accused Apple Keynote Stream") (collectively, "the Accused Streams"). Apple respectfully requests a finding of non-infringement as to the Accused Streams and, based on such finding, that this Court grant Apple summary judgment of non-infringement on Emblaze's induced infringement claims.

---

[1] Exhibits cited herein are exhibits to the Weider Decl. unless otherwise noted. The '473 patent is Exhibit 1 to the Weider Decl., but for convenience is referred to as the "'473 patent" throughout.

## STATEMENT OF ISSUES TO BE DECIDED

**A.    Issues Directed to Undisputed Facts Showing That No Combination of Parties Directly Infringes the Asserted Claims**

1.    Whether Apple is entitled to summary judgment as to all the Accused Streams where Emblaze offers no evidence that any of the Accused Streams meet the "upload rate generally equal to the data rate of the stream" limitation contained in every Asserted Claim and where the only evidence regarding upload rates is undisputed testimony showing that the Accused Streams are uploaded at a rate that is many times faster than their respective data rates.

2.    Whether Apple is entitled to summary judgment as to all the Accused Streams where the undisputed facts show that, even if the data Emblaze's expert collected at the Apple client devices were treated as representing slice sizes created at the transmitting computer, the Accused Streams do not have slices that meet the "predetermined data size" limitation contained in every Asserted Claim.

3.    To the extent the Second Amended Complaint's allegations of induced direct infringement are not confined to the Accused Streams, whether Apple is entitled to partial summary judgment of non-infringement where the only evidence Emblaze offers to show direct infringement is with respect to the Accused Streams.

4.    Whether Apple is entitled to summary judgment that it has not induced the infringement of Asserted Claims 25-29, 36-38 & 40-41 ("Asserted Apparatus Claims") of the '473 patent with respect to the Accused Streams where Emblaze offers no evidence of a single direct infringer of the Asserted Apparatus Claims.

5.    Whether Apple is entitled to summary judgment where Emblaze offers no evidence showing that Apple is a direct infringer pursuant to § 271(a) with respect to the Accused Apple Keynote Stream.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In a concurrently-filed motion for summary judgment of non-infringement, Apple shows that the Accused ABC News and PGA Streams were prepared according to an architecture developed by Akamai Technologies ("the Akamai RTMP architecture").  The Akamai RTMP architecture used for

those Accused Streams contains no transmitting computer steps (i.e., no slicing, forming of files, or uploading of files from a transmitting computer to a server), much less any steps that meet the specific limitations of the Asserted Claims. Emblaze's refusal to drop its claims with respect to the Accused ABC News and PGA Streams necessitated a separate summary judgment motion by Apple directed specifically to the Akamai RTMP architecture issue.

Apple's Akamai RTMP architecture motion completely debunks Emblaze's theory that mere compliance with Apple's HTTP Live Streaming protocol (HLS Protocol) in delivering streams to Apple devices infringes the Asserted Claims. It also shows that summary judgment with respect to the Accused ESPN and NFL Preseason Streams is warranted because Emblaze offers no evidence showing the transmitting computer steps for those streams.

This motion is broader than Apple's separately-filed Akamai RTMP architecture motion. In this motion, Apples shows that even if Emblaze could prove that the transmitting computers associated with the Accused Streams perform some transmitting computer steps, Emblaze still cannot show that the Accused Streams meet all of the required transmitting computer limitations. For example, the transmitting computer step of "dividing" a stream into slices requires that the stream be divided "into a sequence of slices, each slice having a predetermined size associated therewith."

The Court has construed this limitation to mean "each slice having a data size, which may be established by setting a time duration of the slice, assigned in advance of the stream being divided." Assuming, for purposes of this motion, that the data sizes of the HLS Protocol-compliant segments that Emblaze's expert captured at the Apple devices for each Accused Stream reflect slice sizes at the transmitting computer, the undisputed facts show that the slices do not have data sizes "assigned in advance of the stream being divided." Rather, the sizes vary 20% or more for particular streams, and the variations follow no predictable pattern.

Emblaze's argument that the slice sizes are sufficiently "predetermined" because dividing the Accused Streams produces slice sizes that are "generally equal" in size misses the point. "Generally equal" is a term of degree that is part of an entirely different claim term (the "upload rate" term discussed below). A term of degree cannot be used to meet a limitation requiring "**a** data size …

assigned in advance of the stream being divided." These facts are undisputed; accordingly, summary judgment is warranted based on this issue alone.

In addition, after the stream is divided into a sequence of slices and those slices have been encoded into a sequence of files, the transmitting computer limitations require "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream." The Court construed this term to mean "transmitting the files from the transmitting computer to the server at an upload rate generally equal to the data rate of the stream." The claim language, the Court's construction, and the specification of the '473 patent all firmly support that the "upload rate" refers to the transfer rate of the file as measured over the time period in which the file(s) is actually being transmitted to a server. The '473 patent expresses the time to upload in terms of the time to transmit a slice from the transmitting computer to the server ("$T_{SL}$" for short).[2] This upload characteristic can be expressed as a rate by dividing the amount of data in a slice by $T_{SL}$. If $T_{SL}$ is used as the interval of time for calculating upload rate, it is plain that the Accused Streams are not uploaded at a rate that is generally equal to the data rate of the stream.

In attempting to prove infringement, Emblaze does not use the time interval $T_{SL}$ to calculate the upload rate. Instead, Emblaze contends that the time interval for calculating the upload rate in a live implementation should be the time in which the file (assuming the slice was formed as one) is actually being uploaded (i.e., $T_{SL}$) plus the waiting time until the next file begins to be uploaded. For example, Emblaze calculates the upload rate for a live stream sliced into 10-second files by dividing the file size by 10 seconds even if the file takes only three seconds to upload to a server. Thus, according to Emblaze, the upload rate is always merely the time duration of the segment—a conclusion that is not even suggested in the '473 patent. No facts are in dispute here; Emblaze's

---

[2] The '473 patent uses the terms "slices" and "files" interchangeably, sometimes referring to the time to upload "slices" and other times referring to the time to upload "files." (*E.g.*, '473 patent at 11:65-12:17 & 12:59-13:25). In either case the '473 patent is referring to the time to upload data associated with a particular chunk of a stream, which, in the context of the claims as construed, means a "file."

formula for "calculating" the upload rate is simply wrong. Accordingly, summary judgment is warranted.[3]

## II. FACTUAL BACKGROUND[4]

### A. The Patent-in-Suit

Emblaze alleges that Apple has induced third parties to directly infringe 22 claims in the '473 patent. Claims 1 and 25 are independent claims. With the limitations subject to this motion underlined, Claim 1 reads:

> 1. A method for real-time broadcasting from a transmitting computer to one or more client computers over a network, comprising:
>
> providing at the transmitting computer a data stream having a given data rate;
>
> dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith;
>
> encoding the slices in a corresponding sequence of files, each file having a respective index; and
>
> <u>uploading the sequence to a server at an upload rate generally equal to the data rate of the stream</u>, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

Although Claim 25 is written in apparatus form, it contains the same limitations as Claim 1 and was analyzed in the same way as method Claim 1 by Emblaze's expert. (*See* '473 patent at Claim 25; Ex. 2 at ¶ 190).[5]

### B. The Accused Streams

Emblaze's expert accuses Apple of inducing various combinations of named and unnamed third parties to directly infringe the Asserted Claims when live content associated with the Accused Streams is played on Apple devices such as Apple iPhones or iPads. Because Emblaze's

---

[3] Summary judgment of non-infringement is also warranted as to the additional issues set forth in the Statement of Issues to Be Decided because, as shown below, no genuine issue of material fact exists as to such issues.

[4] This section contains undisputed background facts only. Undisputed facts specific to the issues raised in this motion are presented in the sections addressing these issues.

[5] In fact, the Madisetti Report treats all apparatus claims the same as method claims. No separate allegations are made with reference to any Asserted Apparatus Claim.

infringement theories are ever-changing, Apple is not entirely sure what combinations of parties Emblaze alleges directly infringe the Asserted Claims.  In addition, Emblaze does not distinguish between infringement of method claims and infringement of apparatus claims even though the law governing the inducement of infringement of such claims is different.  With that caveat, the various third parties that Emblaze has identified as possibly having played some role in alleged direct infringement are set forth below:

| Accused Stream | 3rd Party | Citation |
|---|---|---|
| MLB AT BAT | MLB Advanced Media LP | (Ex. 2 at ¶¶ 97 & 189; Ex. 8 at 278:20-279:6) |
|  | Akamai | (Ex. 2 at ¶ 109; Ex. 8 at 278:20-279:6; 283:14-22) |
|  | Verizon | (Ex. 8 at 278:20-279:6) |
|  | Cisco Media Processor | (Ex. 2 at ¶ 105; Ex. 8 at 278:20-279:6) |
|  | AT&T | (Ex. 8 at 281:15-283:12) |
|  | Kulabyte | (Ex. 8 at 278:20-279:6) |
| NFL Preseason Live | NFL | (Ex. 2 at ¶ 208; Ex. 8 at 412:1-10) |
|  | NeuLion | (Ex. 2 at ¶ 205; Ex. 8 at 412:1-10) |
|  | Akamai | (Ex. 8 at 412:11-18) |
| CBS's Live Streaming of PGA Events | CBS/PGA | (Ex. 2 at ¶ 223; Ex. 8 at 418:6-14) |
|  | Akamai | (Ex. 8 at 418:6-14) |
| ABC's Live Streaming of News | ABC | (Ex. 2 at ¶ 231; Ex. 8 at 420:10-18) |
|  | Akamai | (Ex. 2 at ¶ 231; Ex. 8 at 420:10-18) |
| ESPN | ESPN | (Ex. 2 at ¶ 232; Ex. 8 at 424:25-425:12) |
|  | Unnamed CDN | (Ex. 8 at 424:25-425:12) |
| iTunes Festival 2013 | Unnamed Third Parties | (Ex. 2 at ¶ 216) |
| Apple Keynote Presentations | Unnamed Third Parties | (Ex. 2 at ¶ 228) |

## III.    ARGUMENT

### A.    Summary Judgment: Legal Standard

Summary judgment is proper when the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine

1    only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

2    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).

3         The issue of infringement is especially susceptible to summary judgment when facts

4    pertaining to the operation of the accused device are undisputed, as the question of infringement

5    collapses into a pure question of law. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981

6    (Fed. Cir. 1997). The moving party may also prevail where the nonmoving party bears the burden of

7    proof at trial merely by pointing out that there is an absence of evidence to support the nonmoving

8    party's case. *Celotex*, 477 U.S. at 322-23.

9         **B.    Because Emblaze Cannot Show That The Accused Streams Upload The Claimed
            Sequence At An Upload Rate Generally Equal To The Data Rate Of The Stream,**
10          **Summary Judgment Of Non-Infringement Is Appropriately Granted For The
            Asserted Claims**
11

12              **1.    The undisputed upload rate evidence shows that the Accused Streams are
                     not uploaded at an upload rate generally equal to the data rate of the**
13                   **stream**

14         Every Asserted Claim includes the limitation "uploading the sequence to a server at an upload

15    rate generally equal to the data rate of the stream." ('473 Patent at Claims 1 & 25). The Court

16    construed this limitation to mean "transmitting the files from the transmitting computer to the server

17    at an upload rate generally equal to the data rate of the stream." (D.E. 169). The upload rate is the

18    rate at which the files are uploaded from the transmitting computer to the server, and it must be

19    generally equal to the data rate of the stream. Thus, a 10-second slice of a stream having a constant

20    data rate of 90 kilobits per second would have a segment size of 900 kilobits. If this slice were

21    uploaded to the server in three seconds, it would have a three-second upload time. Expressing this as

22    an    upload    rate    in    kilobits    per    second    results    in    the    formula

23    $\frac{900 \ kilobits \ (segment \ size)}{3 \ seconds \ (time \ to \ upload)} = 300 \ kilobits \ per \ second$. In this example, the upload rate is 300 kilobits

24    per second, but the data rate is 90 kilobits per second. Emblaze offers no evidence to support its

25    assertion that the Accused Streams upload the files at an upload rate anywhere close to the data rate

26    of the stream, much less "generally equal to" the data rate of the stream, as the claims require.

27         Indeed, undisputed witness testimony confirms that this limitation is not met. For example,

28    the MLB witness testified that segments are sent from MLB to the CDN server at a rate that "is

probably on the order of ten to 100 times realtime." (Ex. 10, MLB Dep. at 85:5-86:13). The MLB witness provided a concrete example: "at a [segment size of a] megabit at a five-second duration, [the transmission time is] probably 100 milliseconds, 200 milliseconds." (Ex. 10, MLB Dep. at 86:12-13). Similarly, witnesses for the ████████ and Apple all testified that the upload rate is as fast as the available network permits and is not bound to the data rate of the stream. (*See, e.g.,* ████████████████████████████████████████████████████████; Ex. 11, May Dep. at 112:10-14).

> **2.      Whether the Accused Streams meet the "uploading" limitation is ripe for summary judgment**

Emblaze's expert collected data for the segments (i.e., slices) of the Accused Streams that were <u>downloaded from a server</u> to Apple devices. Dr. Madisetti did no testing of streams that were <u>uploaded from a server</u> but nonetheless contends that such data reflects the upload rate and that such rate is generally equal to the data rate of the stream. (Ex. 2, Madisetti Report at ¶ 134 ("[T]he amount of data produced over a given period of time is necessarily equal . . . the amount of data transferred over a period of time.")). The "given period of time" Emblaze selects is the segment duration. Thus, if the segment duration is 10 seconds, Emblaze's rate calculation has an upload time of 10 seconds even if the entire segment was transmitted to the server in much less than 10 seconds.

Put another way, Emblaze's $T_{SL}$ is the time to upload the slice <u>plus</u> the waiting time until the next 10 seconds of live content is produced, sliced and formed as a file and starts to be uploaded.

Emblaze characterizes this property as "inherent." (D.E. 304-6 at Exhibit A, pp. 5-6) ("It is inherent that the data rate of Apple's stream for 'live' streaming would result in uploading at generally the same rate as downloading to maintain the 'live' aspect of the broadcast.")).[6] The flaw in Emblaze's theory can be seen using the same example above (a 900-kilobit, 10-second segment of a live video stream). If the upload rate includes the actual time to upload (e.g., three seconds) plus

---

[6]



the waiting time to begin uploading the next segment (e.g., seven seconds), then the time to upload and the segment duration are both 10 seconds. Thus, the upload rate and the data rate of the stream both become 900 kilobits divided by 10 seconds, or 90 kilobits per second. In a live implementation, Emblaze's use of the segment duration for the time to upload renders the claim's "generally equal to" requirement meaningless because the upload rate and data rate must necessarily be the same value if $T_{SL}$ includes waiting or "dead" time.

Emblaze agrees that resolving the parties' dispute regarding the upload rate limitation involves no disputed issues of fact. During the Markman hearing, Apple called attention to the fact that Emblaze intended to use dead time in its upload rate calculation. Emblaze's counsel responded that Apple was making an infringement argument that should be decided on summary judgment. (*See* Ex. 5, Markman Hearing Tr. at 76:23-25 ("That's an infringement argument. I guess they're free to make that down the road. I think it's, frankly, subject to a summary judgment ruling[.]")). Apple agrees and so moves.

### 3. The "upload rate" is the transmission rate of a file during the time in which the file is actually being uploaded

The literal language of the claim limitation and the Court's construction of the "uploading" limitation ("transmitting the files . . .") are clear. Uploading is a property associated with the transmission of a file. A file stops uploading once it has been fully transmitted to a server. Thus, the "upload rate" in the claim limitation refers to the amount of data in the file being transmitted divided by the amount of time required to transmit that file from the transmitting computer to the server, or $\frac{Segment\ Size}{Time\ To\ Upload}$. The data rate of the stream, on the other hand, is a property of the stream itself. It is calculated as the size of the segment divided by the entire duration of the segment, or $\frac{Segment\ Size}{Segment\ Duration}$. The claim language inextricably ties the verb "uploading" to the term "upload rate." No plausible rationale exists for redefining that active verb to mean a combination of "uploading" and waiting, as Emblaze's interpretation requires.

To the extent any ambiguity could arguably exist as to the proper application of upload rate to the Accused Streams, the specification resolves the issue in Apple's favor. The '473 patent is unequivocal in this regard. $T_{SL}$ includes <u>only</u> the time it takes to upload the slice; therefore, the

1  upload rate must necessarily be the size of the slice divided by the actual time it takes to upload the

2  slice.  Specifically, the '473 patent teaches: "computer 34 [the transmitting computer] measures <u>a

3  slice Transmission $T_{SL}$ corresponding to the time required to transmit the entire file to server 36</u>."

4  ('473 patent at 12:63-64 (emphasis added)).  This is an important aspect of the '473 patent given that

5  the objects of the invention include managing low bandwidth links and maintaining live streaming

6  between the transmitting computer ("a conventional personal computer") and a standard server as

7  commonly used by ISPs.  (*E.g.*, '473 patent at 6:38-40, 1:55-67).  Accordingly, the '473 patent

8  contains extensive discussion defining upload rate as the time to upload a slice or a file and making

9  adjustments to maintain a generally equal relationship between upload rate and the data rate of the

10 stream.  The following are examples:

11 • Col. 2:51-59: "the transmitting computer … monitor[s] the uploading … to
   determine <u>the amount of time required to convey each slice</u> and to verify that
12   the slices are conveyed at a sufficient rate."  (emphasis added).

13 • Col. 9:32-44: "Preferably computer 34 monitors <u>the rate of the data being
   transmitted over each of the links</u> …, and allocates files …., according to the
14   data rates …. [and adjusts the number of links] depending on the available
   data rates of the open links compared with the rate of data in stream 40."
15   (emphasis added).

16

17 • Col. 10:6-24: "<u>timing the transfer of the respective files</u> being transmitted over
   the link" and making adjustments based on timing including dropping files or
18   changing compression rate.  (emphasis added).

19 • Cols. 11:65-12:17: because upload rates "will fluctuate … <u>the time required to
   upload file 42 is measured</u>" and compared to the slice duration and if the time
20   "is substantially shorter than [the slice duration], … <u>the compression ratio
   may be decreased, so as to take better advantage of available bandwidth</u>"
21   (emphasis added).

22
   • Cols. 12:59-13:25: the transmitting computer "<u>measures slice transmission
   time $T_{SL}$</u>" and adjusts the compression ratio and slice durations depending on
23   whether the slice is being uploaded faster or slower than the slices duration.

24
        Noticeably absent from the '473 patent is <u>any</u> suggestion that upload rate is equal to the entire
25
   duration of a segment (i.e., $T_{SL}$ + $T_{Waiting\ Time}$).  Indeed, Emblaze's construction of upload rate
26
   eviscerates the '473 patent's teaching that "the compression ratio may be decreased, so as to take
27
   better advantage of available bandwidth" when the time to upload a slice is less than the slice
28

duration. ('473 patent at 11:65-12:17). No matter how much slice duration exceeds slice upload time, Emblaze's construction can never trigger any adjustments since, under Emblaze's construction, upload rate equals data rate of the stream regardless of how much bandwidth is available. Because neither the claim, the Court's construction, nor the '473 patent support treating $T_{SL}$ to mean $T_{SL}$ + $T_{Waiting\ Time,}$ the Court should grant Apple summary judgment of non-infringement.

**C. Because Emblaze Cannot Show That The Accused Streams Meet The "Predetermined Data Size" Limitation, Summary Judgment Of Non-Infringement Of The Asserted Claims Is Appropriately Granted**

**1. Slice sizes for the Accused Streams vary in size with no predictable pattern**

Every Asserted Claim requires that "each slice h[ave] a predetermined data size associated therewith." ('473 Patent at Claims 1 & 25). The Court construed this limitation to mean "each slice having a data size, which may be established by setting a time duration of the slice, assigned in advance of the stream being divided." (D.E. 169). Thus, the Court's construction requires that the size of each slice be assigned in advance. (D.E. 169 & 214).

Emblaze's expert produced data for the Accused Streams showing that the slices within each stream differ in size. ██████████████████████████████████████ ███████ Assuming, for the purposes of this argument, that the observed slices also existed at a transmitting computer for the Accused Streams, excerpts from Dr. Madisetti's MLB and ESPN stream captures using the data rate, size, name, and target durations that he identified show that the slices vary in size with no predictable pattern:

| MLB Stream (Ex. 13) Data Rate: 1200K Target Duration: 5 seconds | | ESPN Stream (Ex. 12) Data Rate: 2200K Target Duration: 5 seconds | |
|---|---|---|---|
| Name | Size | Name | Size |
| 1200K/23/35/59.ts | 827216 | 2200K/02/25/55.ts | 1289872 |
| 1200K/23/36/05.ts | 792800 | 2200K/02/26/00.ts | 1595760 |
| 1200K/23/36/10.ts | 803712 | 2200K/02/26/05.ts | 1441776 |
| 1200K/23/36/15.ts | 813680 | 2200K/02/26/10.ts | 1448176 |
| 1200K/23/36/20.ts | 854096 | 2200K/02/26/15.ts | 1502688 |
| 1200K/23/36/25.ts | 840560 | 2200K/02/26/20.ts | 1404176 |
| 1200K/23/36/30.ts | 827024 | 2200K/02/26/25.ts | 1451936 |
| 1200K/23/36/35.ts | 843568 | 2200K/02/26/30.ts | 1484832 |
| 1200K/23/36/40.ts | 815936 | 2200K/02/26/35.ts | 1481632 |
| 1200K/23/36/45.ts | 835664 | 2200K/02/26/40.ts | 1363760 |
| 1200K/23/36/50.ts | 805216 | 2200K/02/26/45.ts | 1388208 |

| 1200K/23/36/55.ts | 855792 | | 2200K/02/26/50.ts | 1648576 |
|---|---|---|---|---|

According to Emblaze, the "data size" of a slice is assigned in advance through a simple rate equation involving a known, given data rate and a known slice time duration:

> We all know the basic equation, rate equals data per unit of time. So if you know the rate, you've given yourself a given rate as the claim calls for, and you know the duration of the slice, then by definition, you fixed the – you fix the amount of bits in that slice because there's only three variables in that equation and now you've set two of them.

(*See* Ex. 5, Markman Hearing Tr. at 62).

Dr. Madisetti's test data, however, shows that the above equation does not apply to Accused Streams. The slices all have a five-second duration but vary in size, and Emblaze offers no evidence showing that any of these sizes were assigned in advance. (*See, e.g.*, Ex. 2 at ¶¶ 122, 202-03, 214, 215; Exs. 12-14).

Nor could Emblaze offer such evidence. In contrast to uncompressed streams having a constant data rate (e.g., broadcast television feeds) or certain compressed audio streams having a constant data rate (e.g., audio streams compressed using GSM 6.10 compression software as described in the '473 patent), where dividing by time duration results in a data size assigned in advance (*See* February 14, 2014 Declaration of Dr. Nathaniel Polish, Ph. D., in Support of Apple's Motion for Summary Judgment of Non-Infringement, filed concurrently herewith ("Polish Decl.") at ¶¶ 6-9) the Accused Streams do not have a constant data rate. Depending on the activity level of the uncompressed video input stream, video encoders output a greater number of bits per second of video during periods where the video input stream has a higher activity level (e.g., scene changes, motion), and they output fewer bits per second of video during periods where the video input stream has lower activity levels (e.g., steady background, minimal movement). (*Id.* at ¶ 8; *see also* Ex. 4, Madisetti Invalidity Rebuttal Report at 30 (admitting that video encoders result in bit variations based on the variability in the input stream)). Dr. Madisetti's data illustrates exactly the variability that is associated with video encoders. The output of the Accused Streams have data rates that continuously vary based on the activity level in the video that is unknown in advance of slicing the stream, and

thus setting a time duration cannot predetermine the data size prior to the slice being formed as required by the claim.

Given the variations and lack of predictable pattern in the segment data sizes, Emblaze cannot show that the slice sizes for the Accused Streams have "a data size … assigned in advance of the stream being divided."

### 2.   A close enough data size is not a "predetermined data size"

Emblaze bears the burden of showing that the "predetermined data size" limitation is met <u>exactly</u> by the Accused Streams. *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999) (affirming summary judgment of no literal infringement where accused software program did not "read on the accused device exactly").  Unable to show that the "predetermined data size" limitation is met <u>exactly</u>, Emblaze tries to argue that "close enough" is sufficient. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

Clearly, a claim limitation requiring "<u>**a**</u> data size … assigned in advance of the stream being divided" (emphasis added) cannot be satisfied by an amorphous "close enough" or "influenced by" argument.  Nor can Emblaze create an issue of fact out of Dr. Madisetti's contrary claim construction. *See Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013) (excluding expert testimony and noting that "any expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions").

Emblaze claims that a "target" duration may be set in advance.  Even if that were true, it would not create a triable issue of fact because merely setting a target duration with an admittedly constantly-fluctuating data rate does not mean that a predetermined data size will ever be established. *Intellectual Science & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1185 (Fed. Cir. 2009) (affirming summary judgment of non-infringement where plaintiff's expert had no evidentiary support for his theory that all multiplexers are necessarily the claimed "intelligent time division

multiplexer").  Dr. Madisetti's postulate only works in certain constant data rate conditions not met by any Accused Stream in this case.

Because Emblaze offers no evidence showing that the Accused Streams meet the "predetermined data size" limitation, summary judgment in favor of Apple should be granted.

**D.      Partial Summary Judgment Should Be Granted To The Extent Emblaze Alleges Infringement Other Than By The Accused Streams, Such As "Some Memorial Speeches" Or Any Other Unidentified Stream**

During the pendency of this case, Emblaze has only accused certain specific live streaming applications of infringement.  While the Second Amended Complaint alleges that Apple has induced the infringement of the '437 patent by a number of third-party content providers (D.E. 143 at ¶¶ 21, 30 (accusing infringement by "content providers, such as the NFL, Major League Baseball, CNN, Fox News, Fox Sports, CBS Sports, ABC News, NBC")), actual evidence of alleged infringement has only been put forward for the specific Accused Streams identified by Emblaze's expert.  Apple should be granted summary judgment that no other streams other than the Accused Streams infringe since there is no evidence of infringement under any theory for such other, unidentified streams.

For example, just three days ago, Emblaze argued that it was also "pursuing [direct infringement] claims against Apple with respect to . . . some memorial speeches."  (Ex.15, Motion to Stay (D.E. 317) Hearing Tr. at 17:6-12).  Inasmuch as neither Emblaze nor Dr. Madisetti have attempted to show that any other streams or acts directly infringe or are induced to infringe the Asserted Claims, Apple should be granted partial summary judgment dismissing all infringement claims, under any theory, other than those theories based on actual evidence, namely the Accused Streams.

**E.    Because Emblaze Has Failed To Allege A Single Direct Infringer Or Present Evidence Showing That Any Single Direct Infringer Meets The Limitations Of The Asserted Apparatus Claims, Summary Judgment Is Appropriately Granted With Respect To Such Claims[7]**

**1.    Emblaze does not identify a direct infringer of the Asserted Apparatus Claims.**

All of the Asserted Apparatus Claims depend from Claim 25, which claims:

Apparatus for real-time broadcasting of a data stream having a given data rate over a network, comprising:

a transmitting computer, which divides the stream into a sequence of slices, each slice having a predetermined data size associated therewith, and encodes the slices in a corresponding sequence of files, each file having a respective index, and

which uploads the sequence to a server at an upload rate generally equal to the data rate, such that one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

Emblaze failed to identify, either in its expert report of infringement or its infringement contentions, a person or entity that is making, using, selling, offering for sale, or importing into the United States an apparatus meeting the limitations of claim 25 (or any of the other Asserted Apparatus Claims) in violation of 35 U.S.C. § 271(a).

With respect to Emblaze's infringement contentions, if inducement is being asserted, Patent Local Rule 3-1(d) required Emblaze to provide, "[f]or each claim which is alleged to have been indirectly infringed, an <u>identification of any direct infringement</u> and a description of the acts of the alleged indirect infringer that . . . induce that direct infringement." (*See* Ex. 3, Revised Patent Disclosures at 4.)   In response, Emblaze alleged the asserted claims are directly infringed only through the actions of multiple parties.

Specifically, Emblaze contended that Apple induced infringement by "[c]lients, i.e., end users . . . [that] perform[] or account for the following limitations [of certain dependent claims]" _and_ "[t]he remainder of the limitations [of the asserted claims] are performed by or incorporated in devices

---

[7]  Emblaze dropped its method claims for the Accused iTunes London 2013 Stream based on Apple's contention that method steps were performed outside the United States.  (Weider Decl. at ¶ 2). Because only the Asserted Apparatus Claims remain, granting summary judgment on those claims will resolve all of Emblaze's infringement claims with respect to the Accused iTunes London 2013 Stream.

operated by the following third parties… [(1) Akamai Technologies, Inc., (2) Brightcove, Inc., and (3) Limelight Networks, Inc.]." (*Id.* at 4-5 (emphasis added).)[8]  This allegation only recites the combined acts of multiple parties and cannot possibly be construed as identifying a single person or entity that makes, uses, sells, or offers for sale an infringing apparatus, much less a single end user that "completes" the alleged claimed invention, as further discussed below.

Following its revised infringement contentions, Emblaze changed its infringement theories yet again in its Second Amended Complaint.  (D.E. 143).  Specifically, in alleging induced infringement under § 271(b), Emblaze alleged that Apple induced "third parties . . . , for example, the NFL, Major League Baseball, CNN, Fox News, Fox Sports, CBS Sports, ABC News, and NBC Sports" to "commit acts of direct infringement."  (*Id.* at ¶ 21.)  The Second Amended Complaint further alleged with respect to all claims that "end user's use of products that support Apple's HTTP Live Streaming together with the acts of other third parties as identified [above], constitutes direct infringement." (*Id.* at ¶ 25 (emphasis added).)  There is no distinction made between method or apparatus claims in the Second Amended Complaint.

While the Second Amended Complaint is further evidence of Emblaze's ever-changing infringement theories, the Second Amended Complaint clearly does not identify a single party that is making, using, selling, or offering for sale an apparatus embodying each limitation of any of the Asserted Apparatus Claims.  Rather it explicitly recites that the conduct of end users together with other third parties is the conduct that Apple is allegedly inducing.  (*Id.*)

Emblaze's infringement expert, Dr. Madisetti, does not cure this deficiency, either in his expert report or by his deposition testimony.  Indeed, Dr. Madisetti opines only that the Asserted Apparatus Claims are infringed "for the same reasons" as the asserted method claims containing similar limitations.  There is no separate expert analysis of the apparatus claims.  (Ex. 2, Madisetti Report at ¶¶ 190-200; *see also* ███████████████████████

---

[8]  These three entities are CDNs, not Content Providers.  Emblaze also argued that, "[u]pon information and belief, there are additional third parties, unknown to Plaintiff due to defendant's incomplete document production at this time, that also . . . make, use or sell apparatus recited in the asserted claims of the '473 Patent."  (Ex. 3 at 5.)

It is undisputed that all of Dr. Madisetti's infringement positions identify <u>multiple parties</u> whose <u>combined actions</u> (e.g., "providing," "dividing," "encoding," and "uploading" etc.) read on the claimed methods—not a single entity that is making, using, selling, or offering for sale an apparatus embodying each limitation of any of the Asserted Apparatus Claims, much less a single end user. (*See, e.g.,*

In sum, while Emblaze's revised infringement contentions, Second Amended Complaint, and expert report of infringement all set forth different infringement theories, none of those disparate theories identify a single party that is making, using, selling, or offering for sale an apparatus embodying each limitation of any of the Asserted Apparatus Claims.

**2. Emblaze new theory that "the last party who completes the invention is [] the direct infringer" of the Asserted Apparatus Claims—which Emblaze raised for the first time on February 11, 2014 at the oral argument for Apple's Motion to Stay—goes beyond the scope of its infringement contentions and expert report of infringement**

At the February 11, 2014 hearing on Motion to Stay (D.E. 317), Emblaze introduced another new infringement theory, this time arguing that "under the Federal Circuit precedent it's the last party who, the final party <u>who completes the claim</u> . . . is the direct infringer." (Ex. 15, Motion to Stay Hearing Tr. at 17:15-18:3 (emphasis added)).

At the Court's request for the identification of a direct infringer under this theory, Counsel for Emblaze argued that "some of the dependent claims require the user download the . . . streams. So in that situation, it would be the user." (*Id.* at 18:6-17.) But as set forth in detail above, Emblaze's infringement contentions and its infringement expert never identify a single, direct infringer of the

Asserted Apparatus Claims, let alone allege or offer any evidence that an end user (or any other single entity for that matter) has been induced by Apple to directly infringe the Asserted Apparatus Claims by "completing" the claimed invention.

> **3. Absent a direct infringer, Apple cannot induce infringement of the Asserted Apparatus Claims**

Prior to the Federal Circuit's *en banc* decision in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F. 3d 1301 (Fed. Cir. 2012) it had been a well-settled principle of patent law that "in order for a party to be liable for induced infringement, some other single entity must be liable for direct infringement." *Id.* at 1306 (citing to *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007)). Emblaze concedes that *Akamai* did not change the law with respect to induced infringement of apparatus claims. (D.E. 325 at 1, 4.) Having failed to properly identify a single direct infringer of the Asserted Apparatus Claims that has been induced by Apple, Emblaze's claims that Apple has induced infringement of the Asserted Apparatus Claims must also fail, including any claims under the "end user" theory unveiled for the for the first time at oral argument on February 11, 2014.

> **F. Because Emblaze Offers No Evidence That Apple Directly Infringes The Asserted Claims, Apple Should Be Granted Summary Judgment As To Emblaze's § 271(A) Direct Infringement Claim For The Accused Apple Keynote Stream**

Inasmuch as Emblaze's expert's infringement report discusses no direct infringement by Apple, Apple asked Emblaze to drop its § 271(a) direct infringement claim. In a February 6, 2014 meet-and-confer call, Emblaze agreed to drop its § 271(a) claims against Apple except with respect to the Accused Apple Keynote Stream. (Weider Decl. at ¶ 3).

Emblaze has no evidence to support a direct infringement claim against Apple regarding the Accused Apple Keynote Stream. Dr. Madisetti's expert report provides no explanation regarding how it is that Apple allegedly directly infringes the Asserted Claims or offers any evidence supporting the alleged direct infringement of <u>any</u> asserted claim. In fact, such a contention goes directly counter to Dr. Madisetti's expert report, which states that "Apple <u>induced the direct</u>

infringement by third parties of each of the Asserted Claims of the '473 patent that occurred when Apple live streamed the October 22, 2013 Keynote Presentation." Report ¶ 228 (emphasis added).

Emblaze's refusal to drop this claim also runs counter to what it has told this Court. Asked by the Court whether § 271(a) was at issue in this case, Emblaze's counsel represented that Emblaze is only pursuing § 271(b) theories:

> THE COURT: Is it correct, Mr. Pavane, that at this point only a 271(b) theory is being pursued?
>
> MR. PAVANE: You know, you ask that and I'm going over in my mind whether that's accurate. I believe that's accurate, although I'm not a hundred percent sure. I really have to go back and look at the report. It may be that Major League Baseball -- the reason I'm hesitating is only because claim one doesn't expressly require participation by the device owner, the person with the iPhone. It talks about uploading so that it can be downloaded. And so MLB is performing all those steps as we learned in the deposition conducted in 2013, MLB maybe is in fact probably identified in the Madisetti as directly --
>
> THE COURT: But of course MLB is not a defendant in this case.
>
> MR. PAVANE: That's true, yes. That was your question, I'm sorry, yes, it's an inducement claim, of course. You are right.

(Ex. 6, Motion to Strike Hearing at 25:18-26:10).

Given Emblaze's failure to offer any factual basis for a § 271(a) claim against Apple with respect to the Accused Apple Keynote Stream (and given its statement in open court that it was not pursuing § 271(a) claims), Apple should be granted summary judgment on the Accused Apple Keynote Stream.

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests a finding of non-infringement as to the Accused Streams and, based on such finding, grant Apple summary judgment on Emblaze's induced infringement claims.

Dated: February 14, 2014          GREENBERG TRAURIG, LLP


                                  By:/s/ Sarah Barrows
                                     SARAH BARROWS (SBN 253278)
                                     barrowss@gtlaw.com
                                     William Coats (SBN 94864)
                                     coatsw@gtlaw.com
                                     Stephen Ullmer (SBN 277537)
                                     ullmers@gtlaw.com
                                     GREENBERG TRAURIG, LLP
                                     4 Embarcadero Center, Suite 3000
                                     San Francisco, CA 94111-5983
                                     Telephone: (415) 655-1300
                                     Facsimile: (415) 707-2010

                                     James J. DeCarlo (Admitted *Pro Hac Vice*)
                                     decarloj@gtlaw.com
                                     Michael A. Nicodema (Admitted *Pro Hac Vice*)
                                     nicodemam@gtlaw.com
                                     GREENBERG TRAURIG, LLP
                                     MetLife Building
                                     200 Park Avenue, 34th Floor
                                     New York, New York 10166
                                     Tel.: (212) 801-9200
                                     Fax: (212) 801-6400

                                     *Attorneys for Defendant Apple Inc.*