SARAH BARROWS (SBN 253278)
barrowss@gtlaw.com
William Coats (SBN 94864)
coatsw@gtlaw.com
Stephen Ullmer (SBN 277537)
ullmers@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

James J. DeCarlo (Admitted *Pro Hac Vice*)
decarloj@gtlaw.com
Michael A. Nicodema (Admitted *Pro Hac Vice*)
nicodemam@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

***Attorneys for Defendant,***
***Apple Inc.***

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| EMBLAZE LTD., <br><br> Plaintiff; <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | Case No.   5:11-CV-01079 PSG <br><br> **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS TO SPECIFIC ACCUSED CONTENT PROVIDERS** <br><br> **[PUBLIC VERSION]** <br><br> Date: April 1, 2014 <br> Time: TBD <br> Place: Courtroom 5, 4th Floor <br> Judge: Hon. Paul S. Grewal <br><br> **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... ii

**I.**   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 2

**II.**   STATEMENT OF FACTS ................................................................................... 4

    **A.**   The Patent-in-Suit ..................................................................................... 4

    **B.**   Apple's HLS Protocol. .............................................................................. 7

    **C.**   Emblaze's Infringement Accusations ....................................................... 8

    **D.**   Stream Preparation And Delivery Of Accused ABC News And PGA Streams Over The Akamai RTMP Architecture ........................................ 9

        **1.**   Akamai And Its RTMP Architecture ............................................. 9

        **2.**   The Accused ABC News And PGA Streams Are Delivered Using The Akamai RTMP Architecture ............................................ 12

    **E.**   Emblaze Has No Evidence Of Stream Preparation For Accused ESPN And NFL Streams ........................................................................ 13

**III.**   ARGUMENT ................................................................................................... 14

    **A.**   Summary Judgment: Legal Standards ..................................................... 14

    **B.**   Summary Judgment Of Non-Infringement Is Appropriately Granted For The Accused ABC News And PGA Streams, Which Are Delivered Over The Non-Infringing Akamai RTMP Architecture. ........ 15

    **C.**   Summary Judgment Of Non-Infringement Is Appropriately Granted For The Accused ESPN And NFL Streams, As Emblaze Cannot Show That Such Streams Meet The Asserted Claims. ............................... 17

**IV.**   CONCLUSION ................................................................................................ 18

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

**Federal Cases**

*Akamai Tech. v. Limelight Networks,*
    692 F.3d 1301 (Fed. Cir. 2012) .................................................................................... 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................... 14, 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................... 14, 17

*General Mills, Inc. v. Hunt-Wesson, Inc.,*
    103 F.3d 978 (Fed. Cir. 1997) .................................................................................... 14

*Intellectual Science and Tech., Inc. v. Sony Elecs., Inc.,*
    589 F.3d 1179 (Fed. Cir. 2009) .................................................................................. 17

**Federal Rules**

Fed. R. Civ. P. 56 ....................................................................................................... 14

### NOTICE OF MOTION AND MOTION

To Plaintiff Emblaze Ltd. ("EMBLAZE") and their counsel of record:

PLEASE TAKE NOTICE that, on April 1, 2014, Defendant Apple Inc. ("Apple") shall, and hereby does, move for an order granting Apple partial summary judgment of non-infringement of claims 1, 2, 8-14, 21, 23-29, 36-38, & 40-41 ("the Asserted Claims") of U.S. Patent No. 6,389,473 ("the '473 patent") as to specific accused content providers.  This motion is based on this notice of motion, the accompanying memorandum of points and authorities in support thereof, the Declaration of Stephen Ullmer[1] ("Specific Provider Ullmer Decl.") and exhibits attached thereto, the Declaration of Dr. Nathaniel Polish ("Polish Decl.") and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

### RELIEF REQUESTED

Emblaze accuses Apple of inducing a combination of parties to infringe the Asserted Claims when certain accused video streams play live content on Apple devices including:  (1) CBS broadcasts of PGA tour events ("the Accused PGA Stream"); (2) ABC news broadcasts ("the Accused ABC News Stream"); (3) ESPN broadcasts of sporting events ("the Accused ESPN Stream"); and (4) Neulion.com's production of NFL preseason games ("the Accused NFL Preseason Stream") (all four streams collectively, "the Accused Streams").  Pursuant to Federal Rule of Civil Procedure 56, Apple seeks an order granting partial summary judgment of non-infringement of the Asserted Claims with respect to each of these Accused Streams.[2]

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Apple is entitled to summary judgment of non-infringement as to the Accused PGA and ABC News Streams where the undisputed facts show that these streams are prepared and delivered to Akamai Technologies, Inc.'s ("Akamai") servers for download to Apple devices using an Akamai architecture wherein the content providers do not divide the streams into slices or encode the slices into files before uploading the streams to the Akamai servers.

---

[1]  Unless otherwise noted, references to exhibits herein are attached to Specific Provider Ullmer Declaration.
[2]  This motion is for partial summary judgment because, in addition to the four Accused Streams addressed herein, Emblaze also accuses three other streams of infringing.  In a separate motion for summary judgment, Apple addresses grounds for non-infringement that apply to all the accused streams.

2.     Whether Apple is entitled to summary judgment of non-infringement as to the Accused ESPN and NFL Preseason Streams where Emblaze offers no evidence of how these streams are prepared at the transmitting computer and/or server for download to Apple devices.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

The Asserted Claims consist of both method and apparatus claims, all of which recite a specific manner of preparing a media stream for upload to a server such that the stream can be downloaded by client computers.  Specifically, every Asserted Claim describes a method or system whereby a transmitting computer divides a media stream into slices of a predetermined size, encodes those slices into a sequence of files, and uploads that sequence of files at an upload rate that is generally equal to the data rate of the media stream ("the transmitting computer steps").  In placing this functionality at the transmitting computer, the Asserted Claims allow a standard Internet server (i.e., a server without specialized hardware or software) to make the uploaded files available for download to client computers.

The Accused Streams do not practice the transmitting computer steps.  The Accused Streams are delivered to Apple devices in accordance with Apple's HLS Protocol.  The HLS Protocol defines the data structures that must be downloaded by a server to an Apple device when that device requests a media stream from a server.  The HLS Protocol does not require that a transmitting computer perform any particular stream preparation steps prior to upload to a server for download to Apple devices.  Content providers and their content delivery network partners prepare their streams in any manner they desire.

Infringement does not occur simply because an HLS-compliant stream is delivered to an Apple device.  Emblaze must come forward with proof that the Accused Streams meet all of the limitations of the Accused Claims.  Lacking such proof, Emblaze relies on data collected by its expert (Dr. Vijay Madisetti) regarding the characteristics of the Accused Streams at the time they are *received* by the Apple devices.  Based on such data, Dr. Madisetti concludes without proof of any kind that some party or parties associated with each of the Accused Streams must have practiced the transmitting computer steps.  Indeed, at his deposition Dr. Madisetti went so far as to claim that the

mere fact that a stream complies with the HLS Protocol constitutes an infringement of the Asserted Claims. Dr. Madisetti's unsupported infringement analysis ignores the undisputed facts that demonstrate his error.

For example, the deposition testimony of Akamai's witness and exhibits thereto describe an Akamai-developed architecture ("the Akamai RTMP architecture") that is used to deliver the Accused ABC News and PGA Streams.[3] In the Akamai RTMP architecture, the transmitting computer does not divide the stream into slices, encode the slices into files, or upload a sequence of files to the Akamai servers. Rather, content providers (e.g. ABC) simply upload a continuous data stream in RTMP format. Content providers do not segment the stream before uploading because

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

Thus, the RTMP architecture permits content providers to upload a continuous data stream by using ████████████████████████████████████████ By contrast, the Asserted Claims facilitate streaming using <u>unspecialized</u> servers based on a transmitting computer that uploads the data stream to those generic web servers as a "sequence of files" so that the content can be delivered without further server processing.

Accordingly, summary judgment is warranted as to the Accused ABC News and PGA Streams because the undisputed facts show that streams delivered to Apple devices over the Akamai RTMP architecture cannot infringe the Asserted Claims because:

- All of the Asserted Claims require "dividing the stream into a sequence of slices" at the transmitting computer prior to being uploaded to the server. (*See* '473 patent at Claims 1 & 25). The transmitting computers in the RTMP architecture encode the live content into an RTMP stream that is <u>not</u> divided into a sequence of slices before being uploaded to the server. (*See* Statement of Facts ("SOF"), *infra*).

- All of the Asserted Claims require "encoding the slices in a corresponding sequence of files," which this Court has construed to mean "forming each slice as a file, wherein a file includes

---

[3] RTMP, which stands for "real-time messaging protocol," is a streaming format commonly used by live-streaming encoders to compress an incoming live feed into a streaming output at various compression rates. (Ex. 1, Akamai Dep. at 203:8-13; 53:6-11).

compressed data from the slice and a file descriptor, and wherein the sequence of files corresponds to the sequence of slices." (*See* '473 patent at Claims 1 & 25; D.E. 169). The uploaded RTMP stream is <u>neither sliced nor formed into files</u>. (*See* SOF, *infra*).

- All of the Asserted Claims require "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream," which the Court construed to mean "transmitting files from the transmitting computer to the server at an upload rate generally equal to the data rate of the stream." (*See* '473 patent at Claims 1 & 25; D.E. 169). In the RTMP architecture, <u>no files</u> are transmitted from the transmitting computer to the server at all—<u>nor is there an "upload rate" of the files</u>, given that an RTMP stream has no files associated with it. (*See* SOF, *infra*).

As to the accused ESPN and NFL Preseason streams, Emblaze has not come forward with any evidence regarding the steps that actually occur at the transmitting computer. Although Emblaze noticed ESPN's deposition, it never took the deposition and, thus, has no evidence to show how the transmitting computer (if there is one) functions with respect to the Accused ESPN Stream. And while Emblaze deposed an NFL witness, the notice was not directly related to the NFL Preseason Stream. Indeed, the NFL witness testified that ███████████████████████████
████████████████████████████████████████████████
██████████████████

Summary judgment is warranted for the Accused ESPN and NFL Preseason Streams because Emblaze can offer no evidence as to how these streams were prepared for delivery to Apple devices.

## II.    STATEMENT OF FACTS

### A.    The Patent-in-Suit

The '473 patent depicts Fig. 1 as the prior art.



FIG. 1
PRIOR ART

The stated motivation for the system and method claimed in the '473 patent relates to the purported shortcomings of Fig. 1:

> Encoder 24 and server 26 typically comprise high-cost dedicated computer systems, such as a Sun Station … or a Windows NT server, running suitable RealSystem 5.0 software . . . .  These dedicated systems are required in order to ensure that the data stream is distributed and received by clients 30 in real time.  Similarly, host 22 must typically be connected directly to encoder 24 by a high-speed data link or LAN, and not via the Internet or other narrowband network.  ('473 patent at 1:34-43).

To overcome the purported high-cost of the dedicated encoder 24 and server 26 and the need for a high-speed data link from the input devices and the encoder 24, the '473 patent identifies, *inter alia*, three objects of the claimed invention (emphasis added below):

> Provide substantially continuous, high-bandwidth data streaming over a network using <u>common, existing server and network infrastructure</u>.  ('473 patent at 1:51-53);
>
> Provide data broadcasting capability, particularly for multimedia data, <u>without the need for a dedicated broadcast computer system</u>.  ('473 patent at 1:55-57);
>
> <u>Enable a personal computer to remotely broadcast a multimedia program through an Internet service provider (ISP)</u> using common, universally-supported Internet communication protocols.  ('473 patent at 1:64-67).

In place of Fig. 1, the '473 patent proposes the system of Fig. 2 as a media broadcasting system to practice the claimed invention.



FIG. 2

In Fig. 2, a "conventional personal computer"—preferably equipped with "suitable software for preparing and compressing the multimedia sequence"—replaces the high-cost encoder 24 of Fig. 1.  ('473 patent at 6:37-39 & 6:62-63).  In addition, a "standard network server 36" replaces the

dedicated broadcast server 26. "Server 36 may comprise any suitable type of computer … as are commonly used by Internet Service Providers (ISPs)." ('473 patent at 6:40-43). Server 36 uses standard Internet protocols (FTP and HTTP) to upload data from the transmitting computer and to download data to clients. To support HTTP file accesses between Server 36 and Clients 30, the '473 patent describes formatting each slice as a file and uploading this sequence of files from the transmitting computer 34 to the server 36. ('473 patent at 2:1-15).

Emblaze inventor Sharon Carmel testified that Emblaze's "regular web server" solution was motivated in part by ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Accordingly, the purported '473 patent invention as detailed in the two independent claims (1 and 25) recite, *inter alia*, the idea of dividing the stream into slices (i.e. segments or chunks of a stream) and forming the slices into file so that they can be delivered using a "regular web server."

Claim 1 reads:

1.  A method for real-time broadcasting from a transmitting computer to one or more client computers over a network, comprising:

providing at the transmitting computer a data stream having a given data rate;

dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith;

encoding the slices in a corresponding sequence of files, each file having a respective index; and

uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

Although Claim 25 is written in apparatus form, it contains the same transmitting computer limitations as Claim 1 and was analyzed in the same way by Emblaze's expert.  (*See* '473 patent at Claim 25; Madisetti Report at ¶ 190).

## B.      Apple's HLS Protocol.

The HLS Protocol is a draft submission to the Internet Engineering Task Force ("IETF") on the informational track as opposed to the standards track.  (Ex. 4, Pantos Dep. at 163:8-14).  Thirteen iterations of the document describing this protocol have been made publicly available on the tools.ietf.org website.  The current version (version 6 of the protocol, and the 13th iteration of the document) is publicly available at http://tools.ietf.org/html/draft-pantos-http-live-streaming-12 and attached as exhibit 5 to the Ullmer Declaration.  The citations herein are to the 13th iteration of the HLS Protocol.

The HLS Protocol describes how unbounded streams of multimedia data are to be transferred, and it specifies the format of multimedia data and the actions to be taken by the server (sender) and clients (receivers) of the streams.  (HLS (Abstract)).  The HLS Protocol does not dictate how media streams are captured, digitized, encoded, created, modified or otherwise produced prior to reaching a server computer.  Indeed, the HLS Protocol makes clear that production of the stream is outside its scope; the HLS Protocol simply presumes that a continuous encoded media stream exists on a server. (HLS § 6.2.1).  In short, no particular mechanism is required for delivering HLS-compliant streams.

A client device wishing to play an HLS compliant stream must first obtain a Playlist from the server. (HLS (Summary)). Playlists come in two varieties: Media Playlists and Master Playlists. Master Playlists are used when "variant" streams, i.e. streams encoded at differing quality levels, are provided. A server may make available variant streams in order to provide different encodings of the same media presentation. (HLS § 6.2.4).

A Media Playlist is an ordered listing of Uniform Resources Indicators ("URIs"). (HLS, Summary). The URIs are what client devices use to request a particular media segment of the media presentation from the server. Client devices play a media presentation by obtaining the Playlist, obtaining each media segment in the Playlist, and then playing each of those media segments in the Playlist in the order reflected in the Playlist. (HLS (Summary)).

While media segments are specified by URIs, the HLS Protocol does not require each media segment to be a file, nor does a media segment need to be specified by a unique URI. (*See, e.g.*, Ex. 6, Biderman Dep. at 63:13-65:20). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ The HLS URI simply permits the client to request a "resource" from the server. The client device using the HLS Protocol is agnostic to the implementation choices at the server with respect to where the information necessary to respond to the URI is maintained and to what steps, if any, the server must perform before the requested segment data is returned to the client device.

A client device implementing HLS retrieves Playlists and media segments from the server using the common HTTP protocol, specifically through the use of HTTP requests known as "GET requests." To request media segments, the client device creates GET requests using the URIs in the Playlist. GET requests for Playlists and media segments are illustrated in the data Emblaze's expert Dr. Madisetti collected. (*See, e.g.*, Ex. 2, Madisetti Report, ¶ 130 (showing example GET requests for Playlists (.m3u8 data) and media segments (.ts data)).

**C.      Emblaze's Infringement Accusations**

Emblaze's expert accuses Apple of inducing various combinations of named and unnamed third parties to directly infringe the Asserted Claims when live content associated with the Accused

Streams is played on Apple devices such as Apple iPhone or iPads. Because Emblaze's infringement theories are ever-changing, Apple is not entirely sure what combination of parties Emblaze alleges directly infringe the Asserted Claims. With that caveat, the various third parties that Emblaze has identified as possibly having played some role in the direct infringement of the Accused Streams addressed in this Motion are set forth below:

| Accused Stream | 3rd Party | Citation |
|---|---|---|
| ABC News | ABC | (Ex. 2 at ¶ 231; Ex. 8 at 420:10-18) |
| | Akamai | (Ex. 2 at ¶ 231; Ex. 8 at 420:10-18) |
| PGA | CBS/PGA | (Ex. 2 at ¶ 223; Ex. 8 at 418:6-14) |
| | Akamai | (Ex. 8 at 418:6-14) |
| ESPN | ESPN | (Ex. 2 at ¶ 232; Ex. 8 at 424:25-425:12) |
| | Unnamed Content Delivery Network (CDN) | (Ex. 8 at 424:25-425:12) |
| NFL Preseason | NFL | (Ex. 2 at ¶ 208; Ex. 8 at 412:1-10) |
| | NeuLion | (Ex. 2 at ¶ 205; Ex. 8 at 412:1-10) |
| | Akamai | (Ex. 8 at 412:11-18) |

**D.      Stream Preparation And Delivery Of Accused ABC News And PGA Streams Over The Akamai RTMP Architecture**

**1.      Akamai And Its RTMP Architecture**

As one of the largest CDNs (content delivery networks) in the world, Akamai estimates that it delivers 15-30% of all worldwide Web traffic. (Ex. 7).

In or around 2009, Akamai developed the Akamai RTMP Architecture that enables content developers to upload to Akamai live content streams in RTMP format. (*See* n.2, *supra* (explaining that RTMP ("real-time messaging protocol") is a streaming format commonly used by live-streaming encoders to compress an incoming live feed into a streaming output at various compression rates).

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

The present version of Akamai's RTMP architecture supports streaming live content over HTTP to devices that can receive three different formats: HD Flash 1.0, HDS, and Apple's HLS.

Both HD Flash 1.0 and HDS are non-Apple formats that are not supported on Apple devices.



---

4 The Akamai document containing Figure 2.1 was produced in the truncated manner shown. (Ex. 9 at 5).

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED



2.   **The Accused ABC News And PGA Streams Are Delivered Using The Akamai RTMP Architecture**

The Akamai RTMP Architecture customizes the incoming RTMP format to an HLS-compliant format; thus, Akamai is responsible for

(Ex. 9 at 7).

The accused ABC News and PGA streams conform to this format. The captured data Dr. Madisetti relies upon to prove alleged induced infringement show that the HLS response bodies for

the ABC News and PGA streams are delivered from the ███████████ and are requested

from ████████████████████████████████████████████████████████████████

(Ex. 2, Madisetti Report at 104-105 & 113-114).  Exemplary URIs for the PGA Stream (Ex. 2 at 105)

and the ABC News Stream (Ex. 2 at 114) are shown below:

/thebaclaysday3_simulcast@92710/segment137738051_2500_av-p.ts

/abc_live1@136237/segment138306851_1200_av-p.ts

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

Finally, as a point of comparison, Dr. Madisetti's captured data for other Accused Streams use

entirely different URI naming conventions.  For example, the URI format for the NFL Preseason Live

stream was:

nlds134.cdnak.neulion.com/nlds/nfl/lions/as/live/lions_hd_3000_2013082223402a.ts

(Ex. 2, Madisetti Report at 95).

**E.    Emblaze Has No Evidence Of Stream Preparation For Accused ESPN And NFL Streams**

Although Emblaze noticed ESPN's deposition (Ex. 11), it never took that deposition. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████  In short, Dr. Madisetti provided no

information whatsoever regarding how the Accused ESPN Stream is prepared at the transmitting

computer and uploaded to a server, as required by the Asserted Claims.

With respect to the Accused NFL Preseason Stream, Emblaze deposed the NFL; however, the

notice of deposition did not identify NFL Preseason Live as a stream of interest.  (Ex. 12).  When

[5] Wireshark is a commonly used tool that permits data coming over a network to be captured and analyzed.

deposed, the NFL witness testified that he was aware of certain NFL subscription products but that

they were handled, ████████████████████████████████████████████████

████████████ █ ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Emblaze did not seek additional deposition time from the NFL, nor did it seek to depose Neulion.com

in connection with the Accused NFL Preseason Stream.   When asked about his analysis of the

Accused NFL Preseason Stream, ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

## III.    ARGUMENT

### A.    Summary Judgment: Legal Standards

Summary judgment is proper when the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute regarding a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).   The issue of infringement is particularly susceptible to summary judgment when facts pertaining to the operation of the accused device are undisputed, as the question of infringement collapses into a pure question of law.  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).  Where the nonmoving party bears the burden of proof at trial, the moving party may prevail merely by pointing out an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Emblaze's claims against the Accused Streams in this motion are inducement claims.  But an inducement claim nonetheless requires proof of some direct infringement.  *Akamai Tech. v. Limelight*

[6] ████████████████████████████████████████████████     ██████████████

*Networks*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (direct infringement of an induced method claim still requires a showing that some combination of parties performs each of the steps). Thus, where a plaintiff asserting an induced infringement claim has failed to establish a genuine issue of fact as to existence of any direct infringement, summary judgment is warranted. *See Anderson*, 477 U.S. at 258.

> **B.** **Summary Judgment Of Non-Infringement Is Appropriately Granted For The Accused ABC News And PGA Streams, Which Are Delivered Over The Non-Infringing Akamai RTMP Architecture.**

Emblaze noticed the deposition of Akamai and obtained the testimony regarding the function of the RTMP architecture described above. (*See* Statement of Facts ("SOF") at Section II.D). The manner in which the Akamai RTMP architecture prepares and delivers the Accused ABC News and PGA Streams (which is undisputable) does not infringe. Indeed, a specialized and complex server infrastructure such as ████████████████████████████ is directly contrary to stated objectives of the '473 patent's purported invention. Yet even if one could ignore the stated object of the alleged invention, live content delivered over the Akamai RTMP Architecture cannot infringe the Asserted Claims with respect to the Accused Streams because:

- All of the Asserted Claims require "dividing the stream into a sequence of slices" at the transmitting computer prior to being uploaded to the server. (*See* '473 patent at Claims 1 & 25). The encoders (the transmitting computers) in the RTMP architecture encode the live content into an RTMP stream that is <u>not</u> divided into a sequence of slices before being uploaded to the server. (*See* SOF at II.D.1).

- All of the Asserted Claims require "encoding the slices in a corresponding sequence of files," which the Court construed to mean "forming each slice as a file, wherein a file includes compressed data from the slice and a file descriptor, and wherein the sequence of files corresponds to the sequence of slices." (*See* '473 patent at Claims 1 & 25; D.E. 169). The uploaded RTMP stream is <u>neither sliced nor formed into files</u>. (*See* SOF at II.D.1).

- All of the Asserted Claims require "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream," which the Court construed to mean "transmitting files from the transmitting computer to the server at an upload rate generally equal to the data rate of the stream." (*See* '473 patent at Claims 1 & 25; D.E. 169). In the RTMP architecture, <u>no files</u> are transmitted from the transmitting computer to the server at all—<u>nor is there an "upload rate" of the files</u>, given that an RTMP stream has no files associated with it. (*See* SOF at II.D.1).

Dr. Madisetti's expert report on infringement does not even address the Akamai RTMP architecture. ███████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

First, the specification provides no basis for construing a "transmitting computer" in the Asserted Claims to include computers at both the client computer and the server. In fact, the '473 patent expressly teaches away from such an understanding because the entire purpose of the invention is to enable real-time streaming using a personal computer as the claimed transmitting computer and a standard HTTP server as the server that receives the files containing slices of the stream. (*See, e.g.,* '473 patent at 1:34-67). A person of ordinary skill in the art reading the '473 patent would not understand a transmitting computer to be the complex structure of elements of both the RTMP encoders and numerous special purpose computers at the server. (February 14, 2014 Declaration of Dr. Nathaniel Polish in Support of Apple's Motions for Summary Judgment at ¶ 15, filed concurrently herewith). The Court's claim construction comports with this understanding and makes clear that the transmitting computer must segment the stream and encode the segments into files before they can be uploaded to the server.

Second, even if, *arguendo*, Dr. Madisetti were allowed to rewrite the definition of a transmitting computer for purposes of the Asserted Claims, no possible "big box" drawing can yield a method or structure that reads on the Asserted Claims. Referring to the above Figure 2.1 showing the Akamai RTMP architecture, ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ██████████████████████████

8     Finally, even if the real time creation of the segment could be construed as dividing a stream

9  into a sequence of slices that is uploaded to a server such that client computers can download the

10 sequence, "forming each slice as a file" simply does not occur in the Akamai architecture. ████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████

13  **C.  Summary Judgment Of Non-Infringement Is Appropriately Granted For The Accused ESPN And NFL Streams, As Emblaze Cannot Show That Such Streams Meet The Asserted Claims.**

14

15     Emblaze offers no evidence showing how either the Accused ESPN Stream or the NFL

16 Preseason Stream is implemented.  Accordingly, Emblaze cannot meet its burden to show that those

17 streams infringe the Asserted Claims.  *Celotex*, 477 U.S. at 322-23.

18     Dr. Madisetti's conclusory statements that the Accused Streams infringe because they are

19 available as HLS Protocol-compliant streams must be rejected. ████████████████████

20 ████████████████████████████████████████████████  On this issue,

21 the Federal Circuit's decision in *Intellectual Science and Technology, Inc. v. Sony Elecs., Inc.*, 589

22 F.3d 1179 (Fed. Cir. 2009) is squarely on point.  In that case, plaintiff's expert asserted that a

23 particular multiplexer infringed a claim limitation that required the use of an intelligent time-division

24 multiplexer ("ITDM") in a specific way.  *Id.* at 1181, 1185.  The court found the expert's "opaque

25 identification" of a multiplexer "[was] not enough to permit any reasonable juror to make that leap.

26 The record simply does not allow this court to accept the reasoning that all multiplexers are ITDMs."

27 *Id.* at 1185.

28

Dr. Madisetti's analysis fails for the same reasons that plaintiff's expert's analysis failed in *Intellectual Science and Technology*. Just as that expert could not, without evidentiary support, assume that all multiplexers were infringing ITDMs, Dr. Madisetti cannot assume that all HLS Protocol-compliant streams (including the Accused ESPN and NFL Preseason Streams) are infringing streams.[7] Indeed Dr. Madisetti has presented no evidence of how those streams are created at all.

## IV. CONCLUSION

Because the Akamai RTMP architecture used to deliver the Accused ABC News and PGA Streams is non-infringing and Emblaze has no evidence regarding the architecture used to prepare and deliver the Accused ESPN and NLF Preseason Streams, Apple respectfully requests that the Court grant partial summary judgment with respect to the Accused Streams.

---

[7] The Akamai RTMP Architecture used for the Accused ABC News and PGA Streams shows that it is possible to implement HLS Protocol-compliant ESPN and NFL Preseason Streams in non-infringing ways**.**

Dated:  February 14, 2014

GREENBERG TRAURIG, LLP

By: /s/ Sarah Barrows
SARAH BARROWS (SBN 253278)
barrowss@gtlaw.com
William S. Coats (SBN 094864)
coatsw@gtlaw.com
Stephen Ullmer (SBN 277537)
ullmers@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

James J. DeCarlo (Admitted *Pro Hac Vice*)
decarloj@gtlaw.com
Michael A. Nicodema (Admitted *Pro Hac Vice*)
nicodemam@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400

***Attorneys for Defendant, Apple Inc.***