MARTIN L. FINEMAN (CA State Bar Number 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:    (415) 276-6575
Facsimile:    (415) 276-6599
Email:martinfineman@dwt.com

MARTIN B. PAVANE *(admitted pro hac vice)*
LISA A. FERRARI *(admitted pro hac vice)*
ANDREW NEMIROFF *(admitted pro hac vice)*
MARILYN NEIMAN *(admitted pro hac vice)*
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Telephone:    (212) 883-4900
Facsimile:    (212) 986-0604
Email: mpavane@cozen.com
        lferrari@cozen.com
        anemiroff@cozen.com
        mneiman@cozen.com

*Attorneys for Plaintiff Emblaze Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| EMBLAZE LTD., <br><br>       Plaintiff, <br><br>       v. <br><br> APPLE INC., a California Corporation, <br><br>       Defendant. | CASE NO.  5:11-cv-01079-PSG <br><br> **PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY PURSUANT TO 35 U.S.C. §§ 102 & 103** <br><br> **DATE:    April 8, 2014** <br> **TIME:    10:00 AM** <br> **PLACE:  Courtroom 5, 4th Floor** <br><br> Before: Hon. Paul S. Grewal |

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

i

LEGAL\18426609\2

**TABLE OF CONTENTS**

PAGE

I.  Statement of Facts ................................................................................................................ 1

   A.  Cohen Does Not Disclose All Of The Limitations of Claim 1 Or Claim 25 ........................... 1

     1.  Cohen Does Not Disclose A Data Stream Having "A Given Data Rate" ........................... 1

   B.  Cohen Does Not Disclose The Limitation Of Claim 23 or Claim 37 ..................................... 8

   C.  Claims 11, 12, and 40 ................................................................................................... 9

II.  Argument .......................................................................................................................... 11

   A.  Legal Standard ............................................................................................................ 11

     1.  Anticipation ............................................................................................................. 12

     2.  Obviousness ............................................................................................................. 13

   B.  Cohen Does Not Anticipate Claims 1 and 25 .................................................................. 14

   C.  Cohen Does Not Anticipate Dependent Claims 2, 8, 9, 10, 13, 14, 21, 23, 24, 26, 27, 28, 29, 36, 37, 38, Or 41 ....................................................................................... 17

     1.  Cohen Does Not Anticipate Claims 23 and 37 For The Additional Reason That Cohen Does Not Teach The Limitation Of Those Claims ................................................... 17

   D.  Claims 11, 12, And 40 Are Not Obvious From Cohen In View Of Ferriere ......................... 18

III.  CONCLUSION ................................................................................................................. 20

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

ii

LEGAL\18426609\2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................11, 12

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004)......................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................12

*Cheese Sys., Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*,
725 F.3d 1341 (Fed. Cir. 2013)......................................................13

*First Nat'l Bank of Arizona v. Cities Service Co.*,
391 U.S. 253 (1968)......................................................................11

*In re Aoyama*,
656 F.3d 1293 (Fed. Cir. 2011)......................................................12

*In re Montgomery*,
677 F.3d 1375 (Fed. Cir. 2012)......................................................13

*Leo Pharma. Products, Ltd. v. Rea*,
726 F.3d 1346 (Fed. Cir. 2013)......................................................14

*Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................12

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012)......................................................13

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008)......................................................12

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012)................................................14, 20

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013)......................................................13

*Ryko Mfg. Co. v. Nu--Ryko Mfg. Co.*, 950 F.2d 714, 716 (Fed. Cir. 1991) ...................11

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG

iii

LEGAL\18426609\2

*Schering Corp. v. Geneva Pharma,, Inc.*,
339 F.3d 1373 (Fed. Cir. 2003)...................................................................................13

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002) .............12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
593 F.3d 1325 (Fed. Cir. 2010).............................................................................13, 16

*Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*,
602 F.3d 1325 (Fed. Cir. 2010).....................................................................12, 13, 16

*Wilkerson v. McCarthy*,
336 U.S. 53 (1949)...................................................................................................11

**STATUTES**

35 U.S.C. § 102...............................................................................................................1, 12

35 U.S. C.103...................................................................................................................10

35 U.S.C. § 112, ¶4..........................................................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .......................................................................................................11

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG

iv

LEGAL\18426609\2

Defendant Apple, Inc. ("Apple") has moved for summary judgment that all asserted claims, except claims 11, 12, and 40 of Plaintiff Emblaze Ltd.'s ("Emblaze") U.S. Patent No. 6,389,473 ("the '473 patent") are invalid for anticipation under 35 U.S.C. § 102 in view of U.S. Patent No. 5,751,968 ("Cohen"), and that claims 11, 12, and 40 are invalid for obviousness under 35 U.S.C. § 103 from Cohen in view of U.S. Patent No. 5,835,495 ("Ferriere"). (Defendant Apple Inc.'s Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. §§ 102 and 103 ("Apple's Motion") (D.E. 350), pp. 1, 16, 23). Because there are genuine issues of material fact in dispute concerning the teachings of the Cohen and Ferriere patents that preclude summary judgment, Apple's Motion should be denied.[1]

## I.    STATEMENT OF FACTS

### A.    Cohen Does Not Disclose All Of The Limitations of Claim 1 Or Claim 25

Asserted claims 1 and 25 are the only two independent claims in the '473 patent. (Ex. 1,[2] '473 patent, 14:18-32, 15:63 – 16:8).[3] Apple's Motion argues that claims 1 and 25 are anticipated by Cohen. (Apple's Motion, pp. 16-17).

#### 1.    Cohen Does Not Disclose A Data Stream Having "A Given Data Rate"

Pointing to the similarity of the limitations in claim 1 (a method claim) and claim 25 (a system claim), Apple only applies Cohen to claim 1 and argues that the same analysis applies to claim 25. (D.E. 350, Apple's Motion, p. 16, n. 11). For purposes of this motion Emblaze accepts Apple's position that its arguments for anticipation of claim 1 by Cohen are equally applicable to claim 25.

Claim 1 of the '473 patent reads as follows:

---

[1] At trial Emblaze reserves the right to assert additional reasons why the references relied upon by Apple in its present motion do not anticipate or render obvious the claims of the '473 patent.
[2] Unless otherwise noted, all Exhibits referenced herein are attached to the accompanying Declaration of Martin Pavane.
[3] All patent citations are in the format "column:line."

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

1

1. A method for real-time broadcasting from a transmitting computer to one or more client computers over a network, comprising:

   providing at the transmitting computer a data stream having a given data rate;
   dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith;

   encoding the slices in a corresponding sequence of files, each file having a respective index; and

   uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

(Ex. 1, '473 patent, 14:18-32).

In its Markman Order, the Court construed "providing at the transmitting computer a data stream having a given data rate" to mean "the transmitting computer provides a data stream having a given amount of data per unit of time," and the Court construed "data stream having a given data rate" to mean "a data stream having a given amount of data per unit of time." (D.E. 169, p. 2).

Unlike Cohen, the '473 patent recognizes, and claims, the necessity of "providing . . . a data stream having a given data rate," which is required if, as also required by claim 1, the files are to be "upload[ed] to a server at an upload rate generally equal to the data rate of the stream" such that "one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate." (*See* accompanying Declaration of Dr. Vijay Madisetti ("Madisetti Decl.") ¶ 7).

Apple's Motion cites to Cohen at 4:33-36 and 7:45-52 as teaching the limitation of "providing at the transmitting computer a data stream having a given data rate." (D.E. 350, Apple's Motion, p.16). However, a review of those passages shows that they do not teach the limitation of "providing at the transmitting computer a data stream having a given data rate." The first passage, at 4:33-36, only states that the feeding unit 12 in Cohen may include a Sound Blaster card for capturing an audio signal, but says nothing about assigning a "given data rate" to the audio stream. (Ex. 2,

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

2

LEGAL\18426609\2

Cohen, 4:33-36).  In fact, and as Apple concedes, the Sound Blaster card only serves to capture an audio signal and convert it to a digital signal; it does *not* "provid[e] at the transmitting computer a data stream having a given data rate" as required by claim 1 of the '473 patent.  (D.E. 350, Apple's Motion, p. 6).  The second passage at 7:45-52 states only that "the data fed by the feeding unit may be compressed and subsequently decompressed by the [user operated device].  Similarly, the data files . . . may be compressed in the HTTP server and subsequently decompressed in the [user operated device]." (Ex. 2, Cohen, 7:45-52).  Here too there is no mention of assigning a "given data rate" to the data stream.  Nor is assigning a "given data rate" to the stream inherent in "compression." (Madisetti Decl.,¶ 8).  For example, and as explained in the accompanying Declaration of Dr. Vijay Madisetti, variable bit rate compression without restraint will *not* result in a stream having a given data rate. (Madisetti Decl., ¶ 8, Ex. 1).

Moreover, the passage in Cohen at 7:45-52 demonstrates that Cohen's reference to compression is not a recognition of the need to assign a given data rate to the data stream, much less a disclosure of that step.  This is evident from the fact that Cohen teaches that compression can be applied to the already-formed files on the server ("Similarly, the data files . . . may be compressed in the HTTP server and subsequently decompressed in the [user operated device].") (Ex. 2, Cohen, 7:47-50).  However, applying compression to the already-formed files on the server necessarily means that the stream had been sliced, formed as files, and uploaded to the server before compression was applied.  That would be antithetical to the invention of the '473 patent, which requires providing a data stream having a given data rate at the transmitting computer, then dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith, then encoding the slices in a corresponding sequence of files, and only then uploading the sequence to a server. (Ex. 1, '473 patent, 14:18-33).  That is, the method of claim 1 insures that the upload rate of the sequence of files to the server and the download rate of the sequence of files to the client device will both be generally equal to the data rate of the stream, whereas if Cohen's teaching is followed and compression is first applied to the already-formed files on the server, the upload and

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

3

LEGAL\18426609\2

download rates will not be generally equal. . Thus, it is clear that Cohen's reference to compression is not a teaching or suggestion to assign to the data stream a given data rate; indeed, this passage in Cohen demonstrates that Cohen did not even recognize the problems that would result from failing to do so. (Madisetti Decl., ¶ 9).

In addition to citing the foregoing two passages in Cohen, Apple's Motion also cites to "Sect. II(F)" of its Motion in support for its argument that Cohen teaches "providing . . . a data stream having a given data rate" as required by claim 1 of the '473 patent. (D.E. 350, Apple's Motion, p. 16). However, that Section of Apple's Motion (at pp. 11-14) addresses only claims 11, 12, and 40 of the '473 patent and the Ferriere prior art patent; it has no additional citations to Cohen that allegedly teach "providing . . . a data stream having a given data rate." Apple's final evidentiary support for the proposition that Cohen teaches "providing . . . a data stream having a given data rate," is a citation to Exhibit B to the Declaration of one of Apple's experts, Dr. Michael Orchard. (D.E. 350, Apple's Motion, p. 16). In Exhibit B, Dr. Orchard cites to Cohen at 4:28-45 as allegedly teaching "providing . . . a data stream having a given data rate." (D.E. 350-14, Orchard Decl., Ex. B, p. 1 (unnumbered)). This citation overlaps with the above-discussed citation at 4:33-36 in Apple's Motion, and like that citation, says nothing about assigning a "given data rate" to the audio stream in Cohen. (Madisetti Decl., ¶ 10)

As far back as the Markman hearing in this case and the tutorial that preceded it, Emblaze explained to the Court the necessity of providing a data stream having a given data rate for successful real-time streaming. (D.E. 181, pp. 18-23). Without the relationship taught in the '473 patent and required in claim 1 among the given data rate of the stream, the upload rate to the server, and the download rate to the users, real-time streaming is not feasible. Take for example a video stream of a live baseball game. A data stream of that event will have different amounts of data per unit of time depending on the amount of action occurring at any given time. If there is a large amount of data in a very short time, e.g., during an action packed sequence, transmitting that

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

4

LEGAL\18426609\2

segment will require a high bandwidth connection both between the transmitting computer and the server, and between the server and the users. Conversely, when there is far less data over the same amount of time, e.g., when there is no action on the field, far less bandwidth will be required. (Madisetti Decl., ¶ 12).

If a given data rate is not assigned to the stream, such that there is a given amount of data per unit of time, it is not possible to live stream to users with varying bandwidths. For example, today, multimedia events are streamed to a variety of hand-held devices, such as iPads and iPhones. These devices may be connected to the internet in a variety of ways, such as by a cellular or wireless connection. The bandwidth of these connections varies widely, but typically cellular connections have limited bandwidths. If the live data stream is not provided with a given data rate, then during times when the data rate is very high, e.g., during an action-packed sequence, the bandwidth available to the user may not be sufficient to receive the data in real time, in which event either the data will be dropped or corrupted if real time viewing is to be maintained, or the user's screen may "freeze" until the data from that segment is fully downloaded. Either way the real time experience is destroyed. (Madisetti Decl., ¶ 13).

The only specific parameter taught in Cohen for dividing the stream into slices is according to data size. (Ex. 2, Cohen, 5:29-41). As explained above, slices of equal data size may have different time durations based on the level of activity of the event being streamed when a particular slice is being formed. So following the teaching of Cohen, take a stream with three segments of equal data size.

Segment 1: Duration four seconds - data size 200 kilobits ("kbits")

Segment 2: Duration two seconds - data size 200 kbits

Segment 3: Duration two seconds - data size 200 kbits

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

5

LEGAL\18426609\2

Now assume an available uplink bandwidth (from the transmitting computer to the server) to be 800 kbits per second, and the downlink bandwidth (from the server to the client device) to be 60 kbits per second. It will be apparent that there is sufficient bandwidth in the uplink to accommodate real time transmission of all three segments, as each segment has less than 800 kilobits per second of data. However, while the downlink can accommodate transmission of the first segment in real time (the first segment has a data rate of 50 kbits/second, i.e., close to but less than the downlink bandwidth), the second and third segments cannot be transmitted over the downlink in real time, as each of those segments has a data rate of 100 kbits/second, which is greater than the bandwidth of the downlink. In that event the client's receipt of the second and third segments will be corrupted, lost or delayed, destroying the real-time experience. Yet this is precisely what will happen with Cohen's method which places no constraints of the data rate of the stream. (Madisetti Decl., ¶¶ 14-15).

By providing a data stream having a given data rate as taught and claimed in the '473 patent, this problem -- which Cohen does not even recognize much less solve -- is elegantly resolved. By assigning the stream a given data rate, the amount of data being transmitted per unit of time is established and known in advance, regardless of the bit rate of the raw stream which, as noted, can vary widely. Considering that the range of uplink and downlink bandwidths is also known, it is possible to assign the stream with a given data rate that is less than the lowest available bandwidth connection. If the sequence of files is then "upload[ed] . . . to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate," as also required by claim 1 of the '473 patent (Ex. 1, '473 patent, 14:28-32), real time transmission of the sequence of files to the client devices is assured. That is, the '473 patent insures optimal real time streaming by maintaining the triumvirate of assigning a data rate to the data stream, uploading the sequence of files at a data rate generally equal to the data rate of the stream, and downloading the sequence at a download rate generally equal to the data rate of the stream. Indeed, that is why,

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

6

LEGAL\18426609\2

despite the fact that Emblaze first applied for the '473 patent in 1998, its technology has been adopted by many other companies, including Apple, and is still in use today. (Madisetti Decl., ¶ 16).

Take the example given above of a stream having three segments. According to Emblaze's invention, the first step is to provide the data stream with a given data rate. Now, if the downlink (60 kbits/second) is the limiting, i.e., lowest, bandwidth in the system between the transmitting computer and the client device, then the data rate of the stream can be set, e.g., at 50 kbits/second. If the stream is then sliced into segments of equal duration, as taught and preferred in the '473 patent (Ex. 1, '473 patent, 3:40-42), the amount of data per unit of time is fixed, regardless of the fluctuations in the amount of data in the raw data stream at any given time. So, in the example under consideration, if the data rate of the stream is set at 50 kbits/second, and each segment is 5 seconds in duration (or any other duration), the client is assured that all of the segments can be received in real time since the data rate of the segments will never exceed about 50 kbits/second, whereas the bandwidth of the downlink to the client device is 60 kbits/second, i.e., greater than the given data rate of the stream. Therefore, as long as the other conditions of claim 1 are met, i.e., that the upload rate of the sequence of files is generally equal to the given data rate of the stream and the download rate of the sequence of files is also generally equal to the data rate of the stream (Ex. 1, '473 patent, 14:28-32), the client is assured of an optimal real-time experience.[4] (Madisetti Decl., ¶ 17).

Providing the data stream with a given data rate also makes live adaptive bit rate streaming possible, i.e., streaming to users at different bit rates depending on available bandwidth. That is, and as taught in the '473 patent (Ex. 1, '473 patent, 10:64 – 11:22), by assigning the stream different given data rates, such that there are now multiple streams, each with a different given data rate, the user can select the stream that most closely matches his/her available bandwidth, thereby insuring an optimal viewing experience. (Madisetti Decl., ¶ 18).

---

[4] These claim limitations are also essential to the method because if the upload rate or the download rate of the sequence is slower than the given data rate of the stream, the client will fall behind the real time experience, resulting in stalls on the client's device while it waits for the next file.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

7

LEGAL\18426609\2

**B.    Cohen Does Not Disclose The Limitation Of Claim 23 or Claim 37**

Cohen does not teach the limitation in claim 23 of "dividing the stream into a sequence of time slices, each having a predetermined duration associated therewith," or the corresponding limitation in claim 37.[5] (Madisetti Decl., ¶ 19).

Claim 23 is dependent on claim 1.  Claim 23 reads:

> 23.  A method according to claim 1, wherein dividing the stream into the sequence of slices comprises dividing the stream into a sequence of time slices, each having a predetermined duration associated therewith.

(Ex. 1, '473 patent, 15:57-60).

The Court's claim construction order construed the limitation in claim 23 to mean "the steam is divided into a sequence of slices, wherein the predetermined data size of the slices is established by setting the time duration of the slices." (D.E. 169, pp. 2-3).

Cohen discloses that the defining characteristic of the data segments "may be any suitable characteristics of the segment data files.  Non limiting examples include the size of the data file . . ." (Ex. 2, Cohen, 5:39-43).  According to Apple, this teaching is sufficient to anticipate the limitation of claims 23 and 37.  Specifically, Apple argues that if the stream has a constant bit rate, i.e., if the stream is assigned a given data rate, then dividing a segment by data size "will also result in dividing a stream by time duration." (D.E. 350, Apple's Motion, p. 20).  The fallacy of this argument, of course, is that it assumes that Cohen teaches assigning a given data rate (what Apple refers to here as a constant bit rate) to the stream, and as demonstrated above, there is no such teaching in Cohen. (Madisetti Decl., ¶ 21).

A teaching that the defining characteristic of the segment data files may be "any suitable characteristic" is not a teaching to divide the stream into slices based on time duration.  Cohen's

---

[5] In its Motion, Apple treats claims 23 and 37 together.  For purposes of this motion, Emblaze likewise will address only claim 23 and accept Apple's implicit acknowledgement that if claim 23 is not anticipated by Cohen, claim 37 also is not anticipated by Cohen.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

8

LEGAL\18426609\2

specific example of a suitable characteristic is "the size of the data file." (Ex. 2, Cohen, 5:40-41). In the '473 patent, claim 1 recites that each slice (and hence each file) has "a predetermined data size associated therewith". Claim 23, which depends from claim 1, does not recite a new characteristic of the slices, but rather sets forth a method by which the data size of the slices may be predetermined, a step that is only significant because the method of claim 1 provides a data stream having a given data rate, such that setting the time duration of the slices predetermines the data size of the slices. Nowhere does Cohen teach providing a data stream having a given data rate, and nowhere does Cohen suggest the additional step in claim 23 of establishing the predetermined data size of the slices by dividing the stream into a sequence of time slices, each slice having a predetermined time duration. (Madisetti Decl., ¶ 22).

Dividing the slices by time duration is a significant aspect of the invention of the '473 patent. In the case of multiple quality streams, providing data files of equal time duration insures that when a user switches from one stream to the next, the transition will be seamless to the user. For example, if there are three video streams available, each at a different given data rate and therefore each of a different quality, adaptive streaming contemplates that the user will be able to switch to the highest quality stream available at any given time depending on the bandwidth of the user's connection to the server. If the slices in all three streams are of equal time duration, say 5 seconds, then as long as the system keeps track of the slice number, transitioning away from one stream at the end of a slice to the beginning of the next slice in another stream insures that the transition is transparent to the user, as all three streams are always "in sync." (Madisetti Decl., ¶ 23). Indeed, Apple agrees that Emblaze's use of "time duration" slicing allows switching between different quality level streams to "be done 'seamlessly.'" (D.E. 350, Apple's Motion, p. 22).

C. **Claims 11, 12, and 40**

Claims 11 and 12 are ultimately dependent on claim 1, and claim 40 is dependent on claim 25. Apple does not argue that claims 11, 12, and 40, the so-called "multiple quality level" claims,

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

9

LEGAL\18426609\2

are anticipated by Cohen, or that claims other than 11, 12, and 40 are rendered obvious by Cohen in combination with Ferriere. Rather, Apple argues that, as a matter of law, claims 11, 12, and 40 are obvious from Cohen in view of Ferriere. As Apple explains: "In this motion, Apple offers the Ferriere patent only to show that it, in combination with the Cohen patent, renders obvious the Asserted Multiple Quality Level Claims under 35 U.S.C. § 103." (D.E. 350, Apple's Motion, p. 11). This is also evident in Exhibit C to the Declaration of Michael Orchard submitted with Apple's Motion (D.E. 350-15, Orchard Decl., Ex. C), where Dr. Orchard relies solely on Cohen for all of the elements of claim 1, and relies on Ferriere for the additional limitations found in claims 11, 12, and 40. As explained above, however, Cohen does not teach all of the elements of claim 1. (Madisetti Decl., ¶ 26).

Furthermore, unlike the invention of the '473 patent, Ferriere relies on a controlled-server solution to stream audio to multiple clients, the very solution which the Emblaze patent avoids. (Ex. 1, '473 patent, 1:54-67). For example, in Ferriere's system the server streams audio only when the server receives a request from a client for a specific audio file. If, while the audio is being streamed, that client device signals to the server that it can accept a higher quality stream, the Ferriere system stops generating the original stream and now switches to generating a new stream for that client device at the higher bit rate. (Ex. 3, Ferriere, 16:1-9). As Ferriere explains:

> It is noted that the computing units of FIG. 1 and the communication units of FIG. 6 can be configured to query the connection speed of their corresponding modems on routine occasions to continually update that information. *If the [bandwidth] conditions have improved whereby a modem connection speed increases, the codec might scale the next series of frames to a higher quality which can now be handled by the modems.*

*Id.* (emphasis added). In other words, Ferriere is not streaming all quality level streams at all times, but rather must maintain a separate point-to-point network connection with each client device and generate a new stream for each client device based on the bandwidth conditions between that server and that client device. This is exactly the solution avoided by the '473 patent, wherein server-based

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

10

LEGAL\18426609\2

control is not required and point-to-point connections need not be maintained. (Madisetti Decl. ¶ 27). When the method of claim 1 of the '473 patent is carried out with multiple quality level streams in accordance with claims 11, 12, and 40, all levels are streamed at all times and the client device can select from among the various quality levels and adapt to the changing bandwidth conditions without requiring server-based control, e.g., without generating a new stream at the server. (*Id.*).

## II.    ARGUMENT

### A.    Legal Standard

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not proper. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968). "All that is  required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 288-89.  If reasonable minds could differ as to the import of the evidence, summary judgment is not proper.  *See Anderson*, 477 U.S. at 250-251, citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949).

On a motion for summary judgment, the Court reviews the evidence in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255.  "[A] district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries . . . present no genuine issue of material facts."  *Ryko Mfg. Co. v. Nu--Ryko Mfg. Co.*, 950 F.2d 714, 716 (Fed. Cir. 1991).  However, "[t]he burden of proving invalidity on summary judgment

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

11

LEGAL\18426609\2

is high," *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002), and "[t]o overcome th[e] presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity *by clear and convincing evidence." Id*. at 1315 (emphasis added).

The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Moreover, the party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can only satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All doubts as to the existence of a material fact must be resolved in favor of the non-movant. *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 585-88 (1986).

### 1.    Anticipation

"Determining whether claims are anticipated involves a two-step analysis. The first step involves construction of the claims of the patent at issue." *In re Aoyama*, 656 F.3d 1293, 1296 (Fed. Cir. 2011). "The second step [of an anticipation analysis] involves comparing the claims to the prior art." *Id.*

"For a prior art reference to anticipate a patent, it must disclose each and every limitation of the claimed invention." *Verizon Services Corp. v. Cox Fibernet Virginia, Inc*., 602 F.3d 1325, 1336-1337 (Fed. Cir. 2010). In addition, "unless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008).

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

12

LEGAL\18426609\2

"[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharma.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). *See also Verizon Services*, 602 F.3d at 1337 (internal quotations omitted) (stating that a reference may anticipate inherently only if a claim limitation that is not expressly disclosed "is necessarily present, or inherent, in the single anticipating reference"). The "inherent result must inevitably result from the disclosed steps; inherency . . . may not be established by probabilities or possibilities." *In re Montgomery*, 677 F.3d 1375, 1380 (Fed. Cir. 2012) (internal citations omitted). *See also Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (quotations omitted) ("Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.")

### 2.    Obviousness

"Whether the claimed subject matter would have been obvious to an ordinarily skilled artisan at the time of the invention is a question of law based on underlying questions of fact." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353 (Fed. Cir. 2013) (quotation omitted). "The underlying factual inquiries include: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) relevant objective considerations, including commercial success, long felt but unsolved needs, [and] failure of others . . . ." *Id.* (quotations omitted).

Because what seems obvious once an invention is known may not have been obvious at the time of the invention, it is important to avoid the use of hindsight in the obviousness analysis. *Cheese Sys., Inc. v. Tetra Pak Cheese and Powder Sys., Inc.,* 725 F.3d 1341, 1352 (Fed. Cir. 2013) (quotation omitted) ("Among the difficult challenges of applying the doctrine of obviousness is avoidance of even a hint of hindsight. Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention.") *Mintz v. Dietz & Watson, Inc.,* 679 F.3d 1372, 1377-1378 (Fed. Cir. 2012) ("Th[e district court's]

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

13

LEGAL\18426609\2

statement of the problem represents a form of prohibited reliance on hindsight. The district court has used the invention to define the problem that the invention solves. Often the inventive contribution lies in defining the problem in a new revelatory way. In other words, when someone is presented with the identical problem and told to make the patented invention, it often becomes virtually certain that the artisan will succeed in making the invention. Instead, PCM must prove by clear and convincing evidence that a person of ordinary skill in the meat encasement arts at the time of the invention would have recognized the adherence problem recognized by the inventors and found it obvious to produce the meat encasement structure disclosed in the '148 patent to solve that problem.")

In the same vein, it is well established that the inventor's own path to the invention is not the measure of obviousness; rather, obviousness is measured by what the person of ordinary skill would have done. *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012) ("The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art.")

It is also well established that "an invention can often be the recognition of a problem itself," even though the solution would have been obvious once the problem was recognized. *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1353 (Fed. Cir. 2013); *see also Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1377 (Fed. Cir. 2004) ("There can of course arise situations wherein identification of the problem is itself the invention.").

**B.      Cohen Does Not Anticipate Claims 1 and 25**

Apple's sole argument for anticipation of independent claims 1 and 25 is that these claims are anticipated by Cohen.[6]  As noted above, for a prior art reference to anticipate a claim, the

---

[6] As noted above, for purposes of this motion, Emblaze accepts Apple's position that its arguments for anticipation of independent method claim 1 apply equally to independent system claim 25.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

14

LEGAL\18426609\2

reference must disclose each and every limitation of the claim, either expressly or inherently. If even one claim element is missing from the reference, the reference does not anticipate the claim.

As explained in detail above, Cohen does not teach the limitation in claim 1 of "providing at the transmitting computer a data stream having a given data rate." None of the evidence that Apple cites supports that Cohen teaches this limitation. To support its argument that Cohen teaches this limitation, Apple cites to two passages in Cohen, one that references Cohen's use of a Sound Blaster card to capture an audio signal, and Cohen's reference to the option of compressing files on the server. (D.E. 350, Apple's Motion, p. 16; Ex. 2, Cohen, 4:33-36, 7:45-52). But nowhere do these passages in Cohen teach, or even suggest, providing the data stream with a given data rate. At several places in Apple's Motion, Apple juxtaposes Cohen, the Sound Blaster capture card, and a compression scheme known as GSM 6.10, an audio compression scheme for assigning a fixed data rate to an audio data stream. (D.E. 350, Apple's Motion, pp. 6, 10). But use of the Sound Blaster capture card with the GSM compression scheme is not disclosed in Cohen; it is only disclosed in the '473 patent, which relies on a data stream having a given data rate (Ex 1, '473 patent, 6:62-65, 11:28-31, 14:12-14).[7] And simply because Cohen suggests that "any suitable compression and decompression algorithm known in the art may be used," (Ex. 2, Cohen, 7:45-52), that is not a sufficient teaching for an anticipation where there are compression schemes that do not result in a data stream having a given data rate. (Madisetti Decl., ¶¶ 8-10). Moreover, as explained above, Cohen's suggestion that compression can be applied to already-formed files on the server demonstrates that Cohen's suggestion of compression is not a teaching or suggestion to provide a data stream having a given data rate. (Madisetti Decl., ¶ 9)

The Federal Circuit has explained that anticipation cannot result from "probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not

---

[7] The GSM 6.10 standard is also disclosed in the secondary reference, Ferriere, that Apple relies upon in combination with Cohen to argue that claims 11, 12, and 40 are obvious. But Apple has not relied upon Ferriere to anticipate any claim of the '473 patent, no doubt because Ferriere is lacking most of the limitations of independent claims 1 and 25 of the '473 patent.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

15

LEGAL\18426609\2

sufficient." *Therasense,* 593 F.3d at 1332; *see also Verizon Services*, 602 F.3d at 1337 (reference inherently anticipates only if a claim limitation that is not expressly disclosed "is necessarily present, or inherent, in the single anticipating reference")(internal quotations omitted). This is especially relevant here, where Cohen's failure to teach or suggest assigning a given data rate to the data stream is the very reason that Emblaze's claimed method and system ensures an optimal real time streaming experience, whereas Cohen's scheme does not.

"[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *VeriSign, Inc*., 545 F.3d at 1371. Here, because Cohen not teach the step of assigning a given data rate to the data stream, Cohen does not anticipate claim 1. (Madisetti Decl., ¶ 9).

At pages 20-22 of Apple's Motion (D.E. 350), Apple introduces a new, circuitous, and fallacious argument as to why Cohen must be "providing a data stream at the transmitting computer having a given data rate." Essentially, Apple argues that because Cohen discloses that his invention is suitable for live streaming, Cohen "must" be providing a stream having a given data rate. Of course, however, just because Cohen states that his system can broadcast in real time does not mean that his invention anticipates Emblaze's invention of claim 1, nor does it mean that Cohen in fact discloses the necessary steps to live stream, much less to do so effectively. Indeed, Apple has submitted no evidence that Cohen's system was ever implemented. In fact, Apple concedes in its Motion that Cohen does *not* provide a data stream having a given data rate, which, as noted, the Court construed as "a data stream having a given amount of data per unit of time." (Claim Construction Order, D.E. 169, p. 1). Specifically, Apple argues that providing a data stream having a given amount of data per unit of time "requires nothing more" than a data stream that at all times is less than the available bandwidth, even if the amount of data per unit of time varies widely over the

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

16

LEGAL\18426609\2

duration of the stream. (D.E. 350, Apple's Motion, p. 21).  However, that argument runs directly afoul of the Court's claim construction order requiring that a data stream provided with a given data rate must have a "a given amount of data per unit of time," and would also result in a very inefficient system incapable of taking full advantage of the available bandwidth. (Madisetti Decl., ¶ 11).

Because Apple has not established by clear and convincing evidence that each and every limitation of claims 1 and 25 is present in Cohen, and because there is a genuine issue of material fact in dispute as to whether Cohen teaches each and every limitation of claims 1 and 25 (Madisetti Decl., ¶ 24), Apple's motion for summary judgment that claims 1 and 25 are anticipated by Cohen should be denied.

**C.**     **Cohen Does Not Anticipate Dependent Claims 2, 8, 9, 10, 13, 14, 21, 23, 24, 26, 27, 28, 29, 36, 37, 38, Or 41**

Apple also argues that claims 2, 8, 9, 10, 13, 14, 21, 23, 24, 26, 27, 28, 29, 36, 37, and 41 are anticipated by Cohen.  All of these claims depend directly or indirectly from independent claims 1 or 25.  As such, they incorporate all of the limitations of these claims. 35 U.S.C. § 112, ¶4.  It follows, therefore, that if independent claims 1 and 25 are not anticipated by Cohen, then the dependent claims are likewise not anticipated by Cohen.

Accordingly, for the same reasons that Apple's motion for summary judgment that claims 1 and 25 are anticipated by Cohen should be denied, Apple's motion that claims 2, 8, 9, 10, 13, 14, 21, 23, 24, 26, 27, 28, 29, 36, 37, 38, and 41 are anticipated by Cohen should also be denied (Madisetti Decl., ¶ 25).

**1.**     **Cohen Does Not Anticipate Claims 23 and 37 For The Additional Reason That Cohen Does Not Teach The Limitation Of Those Claims**

As explained above, Cohen does not teach the limitation in claim 23 of "dividing the stream into a sequence of time slices, each having a predetermined duration associated therewith."[8]  Rather,

---

[8] As noted above, for purposes of this motion Emblaze accepts Apple's position that its arguments for anticipation of method claim 23 are equally applicable to system claim 37.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

17

LEGAL\18426609\2

Cohen only discloses that a defining characteristic of the data segments "may be any suitable characteristics of the segment data files. Non limiting examples include the size of the data file . . ." (Ex. 2, Cohen, 5:39-41). But Cohen's teaching that the defining characteristic of the segment data files may be "any suitable characteristic[]" is not a teaching to divide the stream into slices based on time duration. Indeed, claim 1 already recites that each slice (and hence each file) has "a predetermined data size associated therewith." So claim 23, which depends from claim 1, does not recite a *different* characteristic of the slices, but rather sets forth a method by which the data size of the slices may be predetermined, a step that is only significant because the method of claim 1 provides a data stream having a given data rate, such that setting the time duration of the slices predetermines the data size of the slices. Nowhere does Cohen teach or suggest this additional step of establishing the predetermined data size of the slices by the step of dividing the stream into a sequence of time slices, each slice having a predetermined time duration. (Madisetti Decl., ¶¶ 21-22).

In fact, Apple's anticipation argument for claims 23 and 37 expressly acknowledges that Cohen only anticipates these claims if Cohen teaches assigning to the data stream a given data rate. (D.E. 350, Apple's Motion, p. 20). As demonstrated above, there is no such teaching in Cohen.

Because Apple has not established by clear and convincing evidence that each and every limitation of claims 23 and 37 is present in Cohen, and because there is a genuine issue of material fact in dispute as to whether Cohen teaches each and every limitation of claims 23 and 37 (Madisetti Decl., ¶ 25), for this additional reason Apple's motion for summary judgment that claims 23 and 37 are anticipated by Cohen should be denied.

**D.**   **Claims 11, 12, And 40 Are Not Obvious From Cohen In View Of Ferriere**

Apple does not argue that claims 11 and 12, which ultimately depend from claim 1, and claim 40, which depends from claim 25, are anticipated by Cohen. Rather, Apple argues that these claims are invalid for obviousness as a matter of law from Cohen in view of Ferriere.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

18

LEGAL\18426609\2

As noted above, Apple relies on Cohen for all of the elements of claims 1 and 25, and relies on Ferriere solely for the additional limitations found in claims 11, 12, and 40. But as demonstrated above, not all of the elements of claims 1 and 25 are present in Cohen, and therefore the combination of Cohen and Ferriere does not render obvious the claims 11, 12, and 40 inasmuch as combining the two references would not result in a method or system having all of the elements of these claims. For this reason alone, Apple's motion for summary judgment that claims 11, 12, and 40 are obvious should be denied. (Madisetti Decl., ¶ 26).

Furthermore, and contrary to Apple's assertion, there is a genuine issue of material fact as to whether a person of ordinary skill would even combine Ferrier with Cohen without the benefit of hindsight. As explained above, Ferriere is a server-controlled system that requires maintaining a point-to-point connection with each client device. Cohen, on the other hand, is not a server-controlled system. Rather, and as Apple itself points out, Cohen's system streams multimedia files for deliver to a "HTTP server WWW server 20 . . . [that] is operative to distribute them to any number of . . . users of the network." (Ex. 2, Cohen, 5:5-10; D.E. 350, Apple's Motion, p. 9). Because Cohen and Ferriere are based on different streaming technologies (broadcasting vs. server-based control), there is a genuine issue of material fact as to whether a person of ordinary skill in the art would have looked to Ferriere to modify Cohen's broadcasting system for streaming multiple quality level streams as required by claims 11, 12, and 40, and for this additional, independent reason, Apple's motion for summary judgment that claims 11, 12, and 40 are obvious should be denied. (Madisetti Decl., ¶¶ 27-28).

Nor do Apple's citations to the inventor testimony of Sharon Carmel and Dror Ginzberg support its invalidity arguments with respect to claims 11, 12, and 40. Apple points to Dror Ginzberg's testimony acknowledging that he had worked with adaptive bit rate streaming at his prior employer, VDONet, before coming to Emblaze, and that he brought that knowledge with him to Emblaze (D.E. 350, Apple's Motion, p. 7). But Apple fails to mention Mr. Ginzberg's testimony

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

19

LEGAL\18426609\2

that the VDONet adaptive bit rate streaming required special servers, just like Ferriere's system. (Pavane Decl., Ex. 4, dep. tr. of Dror Ginzberg, pp. 16, 112-113). Regarding Sharon Carmel, who Apple acknowledges as the "lead inventor" (D.E. 350, Apple's Motion, p. 4), Apple points to his deposition testimony that adaptive bit rate streaming was a "natural evolution . . . Would we have come with that idea regardless of Dror Ginzberg? We probably would." (*Id.* pp. 7-8). Apple thinks so much of this testimony that it cites it again in the last paragraph of its brief for the proposition that it demonstrates "[t]he requisite motivation to combine [Cohen and Ferriere]." (*Id.* p. 25). However, obviousness is judged not by what would have been obvious – or a "natural evolution" – *to the inventors*, but rather what would have been obvious to one of ordinary skill in the art. *Sandoz, Inc.*, 678 F.3d at 1296 ("The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art.") Apple's reliance on the testimony of inventor Sharon Carmel to establish obviousness is therefore misplaced.

III.  **CONCLUSION**

Because there are genuine issues of material fact in dispute, Apple's motion for summary judgment that claims 1, 2, 8, 9, 10, 13, 14, 21, 23, 24, 25, 26, 27, 28, 29, 36, 37, 38, and 41 are anticipated by Cohen and that claims 11, 12, and 40 are obvious from Cohen in view of Ferriere should be denied. A Proposed Order is submitted herewith.

Respectfully submitted,

Dated:   March 13, 2014           DAVIS WRIGHT TREMAINE LLP
                                  COZEN O'CONNOR


                                  By:  /s/ Martin B. Pavane
                                      Martin B. Pavane (*admitted pro hac vice*)

                                  *Attorneys for Plaintiff Emblaze Ltd.*

PLAINTIFF EMBLAZE'S OPPOSITION TO                          *Emblaze Ltd. v. Apple, Inc.,*
DEFENDANT APPLE'S MOTION FOR SUMMARY                       Case No. 5:11-CV-01079-PSG
JUDGMENT OF INVALIDITY PURSUANT TO
35 U.S.C. §§ 102 & 103

LEGAL\18426609\2

20