MARTIN L. FINEMAN (CA State Bar Number 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:    (415) 276-6575
Facsimile:    (415) 276-6599
Email: martinfineman@dwt.com

MARTIN B. PAVANE *(admitted pro hac vice)*
LISA A. FERRARI *(admitted pro hac vice)*
ANDREW NEMIROFF *(admitted pro hac vice)*
MARILYN NEIMAN *(admitted pro hac vice)*
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Telephone:    (212) 883-4900
Facsimile:    (212) 986-0604
Email: mpavane@cozen.com
       lferrari@cozen.com
       anemiroff@cozen.com
       mneiman@cozen.com

*Attorneys for Plaintiff Emblaze Ltd.*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| EMBLAZE LTD.,<br><br>            Plaintiff,<br><br>     v.<br><br>APPLE INC., a California Corporation,<br><br>            Defendant. | CASE NO.  5:11-cv-01079-PSG<br><br>**PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT [PUBLIC VERSION]**<br><br>**DATE:** April 8, 2014<br>**TIME:** 10:00 a.m.<br>**PLACE:** Courtroom 5, 4th Floor<br><br>Before: Hon. Paul S. Grewal |

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

**TABLE OF CONTENTS**

Page

I.   STATEMENT OF FACTS ................................................................................................1

II.  LEGAL ARGUMENT ....................................................................................................5

    A.   The Applicable Legal Principles .........................................................................6

    B.   *Seagate* Does Not Require Resolution of The Objective Prong at the Summary Judgment Stage....................................................................................7

    C.   Apple's Defenses Are Neither Reasonable Nor Consistent ...................................9

    D.   A Reasonable Fact-Finder Could Conclude That Apple Acted Willfully..........12

    E.   That Emblaze Has Refined Its Theories of Infringement During Discovery is Not Relevant to Apple's Pre-Litigation Conduct .............................................12

    F.   Apple's Premature Motion in Limine Concerning Emblaze's Expert Damages Report Should be Ignored ..................................................................14

III. CONCLUSION..............................................................................................................16

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

i

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*AIA Engineering Ltd. v. Magotteaux Intern. S/A,*
   2012 WL 4442665 (M.D. Tenn. 2012) ................................................................................8, 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................................6

*Apple v. Samsung,*
   C-11-01846 LHK (N.D.Cal.) ...................................................................................................2

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,*
   682 F.3d 1003 (Fed. Cir. 2012) ............................................................................................7, 8

*Black & Decker, Inc. v. Robert Bosch Tool Corp.,*
   260 Fed. App'x 284 (Fed. Cir. 2008) ......................................................................................8

*Bosch v. Pylon Manufacturing Corp.,*
   Civ. No. 08-542-SLR, 2009 WL 2742750 (D.Del. Aug. 26, 2009) .......................................15

*Broadcom Corp. v. Qualcomm Inc.,*
   543 F.3d 683 (Fed. Cir. 2008) ................................................................................................15

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.,*
   2013 WL 5332108 (W.D. Pa. 2013) ............................................................................8, 10, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................................6

*Cohesive Techs., Inc. v Waters Corp.,*
   543 F.3d 1351 (Fed. Cir. 2008) ................................................................................................9

*Dynetix Design Solutions, Inc., v. Synopsis, Inc.,*
   Case No. C11-5973 PSG, 2013 WL 4537838 (N.D.Cal. Aug. 22, 2013) ................................9

*First National Bank of Arizona v. Cities Service Co.*,
   391 U.S. 253 (1968) ..................................................................................................................6

*HTC Corp. v. Technology Properties Ltd.,*
   Case No. 5:08-cv-00882-PSG, 2013 WL 5225043 (N.D.Cal. Sept. 17, 2013) ...............7, 8, 10

*i4i Limited Partnership v. Microsoft Corp.,*
   598 F.3d 831 (Fed. Cir. 2010) ..................................................................................................8

*i4i Limited Partnership v. Microsoft Corp.,*
   670 F.Supp.2d 568 (E.D.Tex. 2009) .......................................................................................11

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

ii

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

*In re Seagate Tech., LLC,*
   497 F.3d 1360 (Fed.Cir. 2007) (*en banc*) ........................................................................ passim

*Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ....................................................................................................................6

*Powell v. The Home Depot U.S.A.,*
   663 F.3d 1221 (Fed. Cir. 2011) ..................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .........................................................................................................................6

Patent L.R. 3-7 .................................................................................................................................4

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

iii

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

This Memorandum is submitted on behalf of plaintiff Emblaze Ltd. ("Emblaze") in opposition to Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment ("Apple Motion") of No Willful Infringement of U.S. Patent No. 6,389,473 ("the '473 Patent"). As set forth herein, Apple has failed to establish that the undisputed facts show that it is entitled, as a matter of law, to a judgment of no willfulness. Apple's conduct in continuing to infringe, despite the objectively high risk that its actions constituted infringement of Emblaze's '473 Patent, warrants the submission of Emblaze's willfulness claim to the fact-finder. Apple's motion for summary judgment should be denied.

## I.  STATEMENT OF FACTS

Apple first incorporated the accused HTTP Live Streaming technology (also referred to generally herein as "HLS") in Apple products in mid-June 2009, when it introduced the iPhone iOS version 3.0. Ex. A[1] (Excerpt of Deposition of Dennis Backus), at 82:24-83:1; Ex. B (Excerpts of Expert Report of Catharine M. Lawton ("Lawton Expert Report")) ¶ 588. At the time of the introduction, there had not yet been widespread adoption of HLS, with Microsoft not announcing support for HTTP Live Streaming until December 2009, and other companies following thereafter. *See id.,* Ex. B (Lawton Expert Report) ¶ 381 n.727, ¶ 398.

Nonetheless, internal Apple documents described HTTP Live Streaming as nothing short of "revolutionary." *Id.,* Ex. C (Apple "QuickTime X Feature Brief"), at APPLE262633. As Apple software engineer Roger Pantos explained, "[t]he ability to watch something in progress such as a sports game makes our devices more valuable." *Id.,* Ex. D (Excerpts of Deposition of Roger Pantos ("Pantos Dep.")), at 27:13-15. In addition, the economics of the computer industry are well-documented, *i.e.,* that software products are subject to "`network effects': the idea that a product will become more valuable as its user base expands." *Id.*, Ex. B (Lawton Expert Report) ¶ 603. Network effects result in a potential "winner-take-all" outcome for businesses such as Apple's, and Apple has

---

[1] Unless otherwise stated, all exhibits referenced herein are attached to the accompanying Declaration of Lisa A. Ferrari in Opposition to Apple's Motion for Summary Judgment of No Willfulness ("Ferrari Dec.").

| PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,389,473 LEGAL\18281795\2 | 1 | *Emblaze Ltd. v. Apple, Inc.,* Case No. 5:11-CV-01079-PSG |
|---|---|---|

long been aware of the winner-take-all possibilities associated with the introduction of new software products. *See, e.g., id.*, Ex. E (Excerpt of P. Schiller Testimony in *Apple v. Samsung,* C-11-01846 LHK (N.D.Cal.), at 852:24-853:1 ("[W]e all were trying to get customers into SmartPhones, and then we know that they like to stay with those ecosystems and influence their family and friends as well").

In May 2009, just before Apple's public launch of HTTP Live Streaming, Apple submitted a draft proposal to the informational track of the Internet Engineering Task Force (the "IETF"), an internet standards-setting group, setting forth Apple's HTTP Live Streaming protocol. *See id.,* Ex. F (Apple's Response to Interrogatory No. 9). Apple subsequently submitted thirteen revisions of the draft to the IETF. *See id.,* Ex. G (Excerpts of Deposition of Catharine M. Lawton Deposition ("Lawton Dep."), at 28:12-21. Apple's submission of its HLS specification to the IETF's "informational track" was and is intended to obtain for Apple the benefits of network effects and the "winner-take-all" outcome offered by the ability to stream live events as they unfold. *See id.* at 26:17-28:21. ████████████████████████████████
████████████████ ████████████████████████
████████████████████████████

On October 29, 2009, only four months after the public launch of HTTP Live Streaming, Emblaze notified Apple that its HTTP Live Streaming technology infringed Emblaze's '473 Patent. *See* Declaration of Sarah E. Barrows in Support of Apple's Motion for Summary Judgment of No Willful Infringement ("Barrows Dec."), Ex. 3 [D.E. 343-5] (Oct. 29, 2009 Letter from E. Weisz to Apple Inc.); Ferrari Dec., Ex. I (Apple's Response to Interrogatory No. 4.).

Apple had long been aware of Emblaze and its technology. David Singer, an Apple technical employee involved in Apple's preparation and submission of Apple's HTTP Live Streaming protocol to the IETF, and other Apple employees had participated with Emblaze in industry group meetings, events and email correspondence dating back to as early as 2001 concerning the adoption of RTP/RTSP streaming by standards-setting bodies. *See* Ferrari Dec., Ex. J (Excerpts of Deposition of David Singer, at 47:16-52:1), Ex. K (Nov. 26, 2001 Email from Emblaze's N. Duvdevani to

| PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,389,473 LEGAL\18281795\2 | 2 | *Emblaze Ltd. v. Apple, Inc.,* Case No. 5:11-CV-01079-PSG |

Apple's D. Singer), APPLE007756, Ex. L (Aug. 5, 2002 email from Emblaze's A. Plaut to industry working group), APPLE007990-92, Ex. M (2004 emails between Emblaze's Amir Wolf and Apple employees), APPLE007481-85, █████████████████████████████████████ ████████████████████████████████████████████████████████████████ In addition, Emblaze's unveiling of its live streaming technology in a cybercast of the 1998 White House Easter Egg Roll received extensive media coverage, as did Emblaze's 1999 introduction of WebRadio.com, an internet broadcasting site. *See id.,* Ex. O (news articles and press releases), EMB000025, EMB000096-99, EMB000092-94.

Emblaze's October 29, 2009, letter to Apple referenced an Apple document titled "HTTP Live Streaming Overview" that Apple published to software developers. Emblaze's letter asserted that the instructions in Apple's HTTP Live Streaming Overview for implementing HLS demonstrated Apple's infringement of the '473 Patent. *See* Barrows Dec., Ex. 3 [D.E. 343-5] (Oct. 29, 2009 Letter from E. Weisz to Apple Inc.); Ferrari Dec., Ex. P (HTTP Live Streaming Overview). Throughout this litigation, Emblaze has maintained the critical importance of the HTTP Live Streaming Overview document as evidence of Apple's infringement, relying on it in Emblaze's initial Patent Disclosures, Revised Patent Disclosures, and elsewhere. *See* Barrows Dec., Ex. 1 [D.E. 343-3] (Emblaze's Patent Disclosures with accompanying Claim Chart), Ex. 2 [D.E. 343-4] (Emblaze's Revised Patent Disclosures incorporating Claim Chart).

Following Emblaze's October 29, 2009, letter, Apple engaged in a nine-month period of back and forth letters with Emblaze concerning Emblaze's infringement claims. *See* Barrows Dec., Exs. 4-10 [D.E. 343-6-343-13]. During this time, Apple raised non-infringement and invalidity claims that had little merit, and continued to assert them despite Emblaze's explanations showing them to be demonstrably incorrect. For example, Apple repeatedly asserted prior art patents related to server-side solutions for controlling data streaming, but the '473 Patent relates to real-time broadcasting that does not require a server-side solution. Apple cited its own '860 patent, but as Emblaze made clear, the '860 patent – in addition to being irrelevant for multiple other reasons – was directed to a system for communication between a single transmitter and a single receiver (*i.e.,* a

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

3

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

videophone connection), and not to a real-time data broadcast to multiple users, as in the case of the '473 Patent. *See* Barrows Dec., Ex. 5 [D.E. 343-7] (Feb. 1, 2010 Letter from E. Weisz to L. Schull). Apple also cited to unspecified "streaming technologies" developed by certain companies in the mid-1990s, but gave no specific information showing how these technologies invalidated Emblaze's '473 Patent. *See* Barrows Dec., Ex. 4 [D.E. 343-6] (Letter from L. Schull to E. Weisz), at 2.

Apple claims that Emblaze's later correspondence raised an inducement claim as a new theory of infringement (Apple Motion [D.E. 343], at 4), but that is incorrect; nothing in Emblaze's earlier letters limited Emblaze's claims to direct infringement. Barrows Dec., Exs. 3, 5 [D.E. 343-5, 343-7]. Apple claims that Emblaze rejected Apple's invitation to come to Cupertino for a "technical dialog" (Apple Motion [D.E. 343], at 4), but that is highly misleading. When Emblaze declined Apple's invitation, the parties had been having technical discussions for nine months, including an in-person meeting, yet Apple continued to raise the same meritless non-infringement and invalidity arguments.

Apple now claims that it had available multiple non-infringing alternatives that would have been easy and cost-efficient to implement in lieu of HTTP Live Streaming (something that Apple never raised in the pre-litigation correspondence, and a claim that Emblaze disputes). *See* Ferrari Dec., Ex. Q (Excerpts of Deposition of James Malackowski ("Malackowski Dep."), at 189:24-190:18. Despite the supposed availability of these alleged alternatives, there is no evidence that Apple ever investigated or tested any of them, and Apple never moved to implement any of them in response to Emblaze's infringement allegations.

Having detailed multiple times the reasons for its allegations, and seeing no movement from Apple, Emblaze finally filed suit against Apple on July 28, 2010 [D.E. 1]. Despite the minimal cost of obtaining an opinion of counsel (relative to the risk of a willfulness judgment), there is no evidence that Apple obtained such an opinion at any time, an opinion Apple would need to have produced on June 10, 2013 (50 days after the Court's Claim Construction Ruling) under this Court's Patent Local Rules. Patent L.R. 3-7.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

4

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

The Court's April 19, 2013 claim construction Order [D.E. 169] overwhelmingly favored Emblaze, as Apple's counsel conceded. Ferrari Dec., Ex. R (Excerpt of Aug. 20, 2013, Transcript of Hearing), at 4-5 ("They say sometimes you eat the bear and sometimes the bear eats you"). Apple subsequently made a motion to supplement its invalidity contentions, seeking to defend against Emblaze's infringement allegations with newly located prior art. Indeed, Apple's current motion for summary judgment of invalidity relies upon that new art, and not anything that Apple cited to Emblaze when it elected to continue infringing Emblaze's patent. Similarly, Apple's motion for summary judgment of non-infringement as to specific accused content providers relies upon facts developed during discovery and not anything known to Apple at the time it determined to continue its infringing conduct.

## II. LEGAL ARGUMENT

Contrary to Apple's argument, *Seagate* and its progeny do not require that the objective prong of willfulness be determined on summary judgment. Moreover, even if Apple's defenses to infringement were reasonable, which they are not, that does not establish that Apple is entitled to summary judgment.

Viewing the evidence in the light most favorable to Emblaze, as this Court must, there is compelling evidence of willfulness which the fact-finder should hear. Emblaze notified Apple of its infringement allegations in a letter providing a detailed analysis of why Apple's HTTP Live Streaming infringed Emblaze's '473 patent. Although this notice was mere months after Apple introduced HTTP Live Streaming, and although Apple claims that there were multiple non-infringing alternatives available, Apple pushed forward with its infringing HLS technology, all while having Apple's lawyers engage in a drawn-out discussion with Emblaze about prior art that had limited relevance or was not specific enough for Emblaze to address. Meanwhile, Apple forged ahead with the development, use and promotion of HLS, including supplemental submissions to IETF, despite Emblaze's infringement allegations. Even when this Court ruled overwhelmingly against Apple's claim construction positions, affirming the lack of merit in Apple's defenses premised on its wrong contentions, Apple still pressed ahead with its infringing technology.

PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

5

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

1  On these facts, a jury could certainly reach the conclusion that Apple willfully infringed
2  Emblaze's patent. Accordingly, Apple's motion for summary judgment of no willfulness should be
3  denied.

### A. The Applicable Legal Principles

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not proper. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288 (1968). "All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 288-89. If reasonable minds could differ as to the import of the evidence, summary judgment is not proper. *Anderson,* 477 U.S. at 250-51, citing *Wilkerson v. McCarthy,* 336 U.S. 53, 62 (1949).

On a motion for summary judgment, the Court reviews the evidence in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. The judge's function is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249. Moreover, the party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can only satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All doubts as to the existence of a material fact must be resolved in favor of the non-movant. *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

To establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

6

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG

of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir. 2007) (*en banc*). Once the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*

"The ultimate question of willfulness has long been treated as a question of fact." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,* 682 F.3d 1003, 1006 (Fed. Cir. 2012). However, the objective recklessness prong of the willfulness inquiry "entails an objective assessment of potential defenses based on the risk presented by the patent." *Id.* Objective recklessness is "predicated on underlying mixed questions of law and fact." *Id.* at 1007.

As the party moving for summary judgment, Apple "'must do more than persuade [the Court] that its defenses were reasonable.'" *HTC Corp. v. Technology Properties Ltd.,* Case No. 5:08-cv-00882-PSG, 2013 WL 5225043, *8 (N.D.Cal. Sept. 17, 2013) (Grewal, M.J.) (quoting *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC,* Case No. 1:09-cv-1685, 2013 WL 1465403, *2 (M.D.Pa. Apr. 11, 2013)). On summary judgment, Apple "'must establish that 'there is no genuine dispute as to any material fact' and that [Apple] 'is entitled to judgment as a matter of law' – in other words, that *no reasonable fact-finder* could find willful infringement." *HTC Corp.,* 2013 WL 5225043, at *8 (quoting *Kimberly-Clark Worldwide, Inc.,* 2013 WL 1465403, at *2) (emphasis in original). This, Apple cannot do.

> **B. *Seagate* Does Not Require Resolution of The Objective Prong at the Summary Judgment Stage**

Apple oversimplifies the analysis of when the Court determines whether the objective prong of *Seagate* has been met, suggesting that because the objective prong is a question of law, the issue must be resolved in a pretrial motion for summary judgment. Apple Motion [D.E. 343], at 7-9. As the Federal Circuit in *Bard,* 682 F.3d at 1007 (internal citations omitted), made clear:

> When a defense or noninfringement theory asserted by an infringer is purely legal (*e.g.,* claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge. When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

7

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury.

*See also Powell v. The Home Depot U.S.A.,* 663 F.3d 1221, 1236 (Fed. Cir. 2011) (in circumstances where separate issues of fact and law are presented as defenses to willful infringement, "the objective recklessness inquiry may require analysis by both the court and the jury"); *i4i Limited Partnership v. Microsoft Corp.,* 598 F.3d 831, 860 (Fed. Cir. 2010) (affirming district court's denial of JMOL of no willfulness because "the jury was free to decide for itself whether Microsoft reasonably believed there were any substantial defenses to a claim of infringement"); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.,* 2013 WL 5332108, *39 (W.D. Pa. 2013) ("invalidity of the patents-in-suit was a factual determination to be made in this case. As such, the reasonableness of reliance on such invalidity defense was also the prerogative of the jury").

Indeed, the jury verdict is typically a critical part of the legal determination as to whether the objective prong of *Seagate* has been satisfied. *See HTC Corp.,* 2013 WL 5225043, at *8 (Grewal, M.J.) ("where factfinding is necessary, trial courts generally reserve willfulness until after a full presentation of the evidence on the record to the jury"); *see also Bard,* 682 F.3d at 1008 (depending on defense asserted, court may "allow the jury to determine the underlying facts relevant to the defense in the first instance"); *AIA Engineering Ltd. v. Magotteaux Intern. S/A,* 2012 WL 4442665, *5 (M.D. Tenn. 2012) (*"Bard* contemplates a decision on the objective prong *after* the jury has deliberated on other aspects of willfulness") (emphasis in original); *see, e.g., Black & Decker, Inc. v. Robert Bosch Tool Corp.,* 260 Fed. App'x 284, 291 (Fed. Cir. 2008) (noting, in connection with consideration of objective prong, that "the jury found two claims invalid as obvious, showing that the appellant also made a credible invalidity argument").

Not surprisingly, therefore, in most of the willfulness cases relied upon by Apple, the Federal Circuit did not consider willfulness in the context of a motion for summary judgment, but instead, on appeal from the denial of a JMOV motion following a jury verdict. *See, e.g., Powell,* 663 F.3d 1221; *Black & Decker, Inc.,* 260 Fed. App'x 284. In those cases, the issue of willfulness was submitted to the jury and not disposed of pre-trial as Apple proposes. The trial and appellate courts considered

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

8

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

whether the objective prong of *Seagate* had been met with the benefit of discovery, a trial, and a jury verdict.

This Court too has recognized the value of a jury verdict to the legal determination of willfulness. In response to a motion brought by defendant Synopsis to have the plaintiff proffer its evidence supporting the objective prong of willfulness before trial, this Court stated:

> Synopsis suggests that Dynetix should have to prove the objective prong of willfulness before the jury is empaneled and before it can present any evidence on either subjective or objective willfulness. This flies in the face of both the case law and common sense. The *Bard* court noted that although the ultimate question of objective willfulness should be made by the judge, it is not error to allow the jury to determine the underlying facts to inform the court's objective willfulness finding. The parties may present evidence on both prongs of willfulness and the court will structure an appropriate set of jury instructions and verdict form.

*Dynetix Design Solutions, Inc., v. Synopsis, Inc.,* Case No. C11-5973 PSG, 2013 WL 4537838, *2 (N.D.Cal. Aug. 22, 2013) (Grewal, M.J.).

Apple's similar attempt to deprive Emblaze of its right to present its willfulness claim to the jury should be rejected. Apple's defenses to Emblaze's infringement claim include non-infringement, anticipation and obviousness theories, all of which require factual determinations. Those defenses should be sent to the jury, after which this Court will be in the best position to rule on the reasonableness of Apple's defenses.

C. **Apple's Defenses Are Neither Reasonable Nor Consistent**

Apple argues that Emblaze cannot meet *Seagate's* objective prong because Apple's defenses are reasonable and have not changed throughout the litigation. Not so.

The Court's claim construction ruling demonstrates the unreasonableness of Apple's original positions. That ruling was not "a sufficiently close question to foreclose a finding of willfulness", *Cohesive Techs., Inc. v Waters Corp.,* 543 F.3d 1351, 1374 n.4 (Fed. Cir. 2008); it was an Order that overwhelmingly favored Emblaze. As Apple itself acknowledged, "of the sixteen claim terms construed, only the construction of 'decode the sequence' was largely consistent with Apple's construction. As to the other fifteen terms, the Court either adopted Emblaze's construction or adopted its own construction that differed from both parties' constructions." Defendant Apple Inc.'s

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

9

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

Motion For Leave To Supplement Invalidity Contentions [D.E. 216], at 1-2. The Court's Order on reconsideration clarified a potential ambiguity in one of the constructions (*see* D.E. 214); it hardly demonstrates the reasonableness of Apple's claim constructions. If "favorable court rulings can support the objective reasonableness of . . . [a party's] non-infringement positions," *HTC Corp.,* 2013 WL 5225043, at *8 (Grewal, M.J.), the converse must also be true; *i.e.,* unfavorable rulings undermine such reasonableness.

Apple also claims that it has been consistent in its defenses, but close scrutiny disproves that assertion or, at a minimum, presents a dispute of fact that precludes summary judgment. Apple's motion for summary judgment of invalidity is based on two prior art references, Cohen and Ferriere. There is no evidence that the Ferriere reference was known to anyone at Apple until approximately May 2013, nearly three years into the litigation and almost *four* years after Emblaze's notice letter. *See* Declaration of James DeCarlo in Support of Defendant Apple Inc.'s Motion For Leave to Supplement Invalidity Contentions [D.E. 216-3] ¶ 10. Likewise, there is no evidence that the Cohen reference, which was not mentioned in any of Apple's pre-litigation correspondence with Emblaze, was known to or relied upon by Apple until its disclosure in Apple's December 6, 2011 Invalidity Contentions; that is, eighteen months after Emblaze filed its Complaint and more than two years after Emblaze's notice letter. Thus, these Johnny-come-lately references – the crux of Apple's current invalidity defense - do not support a non-willfulness argument. *See, e.g., Carnegie Mellon University,* 2013 WL 5332108, at *39 ("[T]here needs to be some proof that the basis for such invalidity defense was known to the infringers or even the person having ordinary skill in the art. . . . Marvell proffered no evidence that anyone at Marvell knew of the Worstell Patent from 2001 until this litigation began in 2009. Therefore, Marvell did not have any basis to believe that it could reasonably invoke such a defense to infringement prior to this infringement").

Apple makes much of the patents it mentioned in its pre-litigation correspondence with Emblaze, saying that Apple has continued to rely upon them, citing to Apple's Invalidity Contentions and the positions set forth in Dr. Orchard's invalidity expert report. Apple Motion [D.E. 343], at 11-12. Yet "[t]he mere existence of a defense cannot preclude the possibility of an

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

10

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

objectively high likelihood of infringement. Indeed, those who knowingly infringe a patent presumably attempt to manufacture defenses, however contrived and unavailing they may prove." *AIA Engineering Ltd.,* 2012 WL 4442665, at *5; *see also i4i Limited Partnership v. Microsoft Corp.,* 670 F.Supp.2d 568, 582 (E.D.Tex. 2009) (the "number of creative defenses that Microsoft is able to muster in an infringement action after years of litigation and substantial discovery is irrelevant to the objective prong of the *Seagate* analysis").

At this stage, all that is known is that Apple has proffered numerous invalidity defenses, the typical response of a defendant confronted with compelling evidence of infringement. Moreover, Dr. Orchard's invalidity report includes a mere two-page discussion, in a 70-page report, of the three patents (the '860 patent, the '147 patent, and the '694 patent) supposedly relied upon by Apple from the beginning, and they are now relied upon in combination with other prior art patents and not by themselves as Apple previously alleged. And notably, Apple relies on some of these prior art references in its concurrently filed Motion for Summary Judgment of Invalidity. [D.E. 350]. Thus, the reasonableness of Apple's reliance on these defenses remains in dispute, and it cannot be said as a matter of law that simply because Apple has raised them, it is entitled to a judgment of no willfulness.

As for the alleged consistency of the claim constructions put forth by Apple, that point is moot in light of the Court's claim construction ruling rejecting nearly all of Apple's proposed constructions. [D.E. 169]. Irrespective of claim construction, Apple must still demonstrate that no reasonable fact-finder could conclude that Apple's non-infringement defenses were not reasonable. To support that argument, Apple cites to its Motion for Summary Judgment of Non-Infringement as to All Accused Streams. [D.E. 346]. Emblaze disputes that Apple's motion demonstrates that its non-infringement positions are reasonable, and refers the Court to Emblaze's Opposition to that motion, filed concurrently herewith, for a full explanation as to why Apple's non-infringement arguments are meritless and unreasonable.

There is, at a minimum, a factual dispute as to the reasonableness of Apple's defenses.

PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

11

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

### D. A Reasonable Fact-Finder Could Conclude That Apple Acted Willfully

Viewing the evidence in the light most favorable to Emblaze, a reasonable fact finder could find facts sufficient to support willfulness. Apple knew about Emblaze and its technology at least as early as 2001-02, and knew that Emblaze was a serious participant in the high-tech industry. Apple knew about the '473 patent and Emblaze's claim of infringement of that patent as of October 29, 2009, only a few months after Apple introduced HTTP Live Streaming in its products, and at a time when live streaming had not yet achieved the dominance it would later have. Emblaze's infringement arguments were strong, and Apple's defenses were all over the map. Apple claims to have believed that there were multiple, non-infringing alternatives to HTTP Live Streaming, but there is no evidence that Apple ever pursued any of them.

In short, a reasonable fact-finder could find that Apple acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent", and that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate,* 497 F.3d at 1371. Apple has not met its summary judgment burden, and its motion should be denied.

### E. That Emblaze Has Refined Its Theories of Infringement During Discovery is Not Relevant to Apple's Pre-Litigation Conduct

Apple harps on Emblaze's supposed changes in theories during the case, but Emblaze's refinement of its theories of infringement – to eliminate claims such as doctrine of equivalents and contributory infringement -- does not mean that Apple acted reasonably. Emblaze's core litigation theory – that Apple's HTTP Live Streaming Overview induces third parties to infringe – has not changed from Emblaze's initial communications with Apple. That Emblaze has narrowed its claims as discovery has proceeded should be lauded, not criticized, and in any event, that has no impact on the objective likelihood that Apple's actions constituted infringement of a valid patent.

Apple claims that "[i]t took approximately three years of litigation" for Emblaze to concede that only live streams are accused of infringement rather than live streams and video-on-demand. Apple Motion [D.E. 343], at 5. But Apple did not serve discovery directed to this issue until July 30, 2013 (*see* Ferrari Dec., Ex. S (Apple's Interrogatory No. 18)). Then, in an attempt to convince the

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

12

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG   Document387   Filed03/13/14   Page17 of 20
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1   Court that any infringement through live streaming is *de minimis,* Apple misleadingly states that
2   "[a]ccording to data identified by Emblaze's damages expert Catharine Lawton, ninety-five percent
3   (95%) of the content CDNs deliver is VOD content." Apple Motion [D.E. 343], at 5.  Yet, the
4   "data" that Apple cites was to a single line from "an informal survey" in which the author reported
5   that "CDNs routinely state that 95% of what they deliver is on-demand content." Barrows Dec., Ex.
6   18 [D.E. 343-22] ¶ 471; *cf.* Ferrari Dec., Ex. G (Lawton Dep.), at 57:11-21, 125:19-127:12 (stating
7   that "live streaming is a much greater proportion than certainly 5 percent"; referencing Akamai real-
8   time data); *id.*, Ex. B (Lawton Expert Report) ¶ 493 (showing screenshot of Akamai real-time
9   streams).
10      As both parties' experts testified, the rate of usage of live streaming increases dramatically at
11  times of breaking news and sporting events such as the Michael Jackson memorial service, the Royal
12  Wedding, and the Olympics. *See id.*, Ex. G (Lawton Dep.), at 56:13-16 ("we know at the point in
13  time of key news events that the traffic on the Internet is sometimes completely dominated by live");
14  Ex. Q (Malackowski Dep.), at 126:14-18 ("If there is an event of interest, such as Michael Jackson's
15  funeral, all else being equal you would expect the incidence of the accused live streaming to spike").

16  [REDACTED]
17  [REDACTED]
18  [REDACTED]
19  [REDACTED]
20  [REDACTED]
21  [REDACTED]

22      To be sure, the impetus for the development of HTTP Live Streaming was the ability to live
23  stream. *Id.,* Ex. D (Pantos Dep.), at 10:5-13:25.  Live-streaming functionality makes Apple's
24  products more valuable. *Id.* at 27:6-15.  Indeed, the value to Apple was overwhelming – it
25  catapulted Apple to a leadership position in video, a goal that had eluded Apple for years, and it put
26  Apple in a "winner-take-all" position in the handset industry. *Id.,* Ex. G (Lawton Dep.), at 19:18-
27  20:3 ("Apple was the winner who took all with respect to the general category of video . . . [T]he

28  PLAINTIFF EMBLAZE'S OPPOSITION TO                     13                      *Emblaze Ltd. v. Apple, Inc.,*
    DEFENDANT APPLE'S MOTION FOR SUMMARY                                          Case No. 5:11-CV-01079-PSG
    JUDGMENT OF NO WILLFUL INFRINGEMENT OF
    U.S. PATENT NO. 6,389,473
    LEGAL\18281795\2

objective of Apple was to be the leader in video, an objective that Apple had had for more than a decade and had eluded Apple up until that point"), at 55:9-55:13 ("we're looking at the benefit that Apple achieved as a result of its infringement, which begins with its ability to catapult itself into the leadership position in video"), at 198:20-22 ("the objective [was] to make HLS a de facto standard to catapult itself into a leadership position in . . . video").

In short, Apple's characterization of live streaming as a drop in the bucket – *i.e.,* so that its decision to infringe was a reasonable one -- should be rejected.

F. **Apple's Premature Motion in Limine Concerning Emblaze's Expert Damages Report Should be Ignored**

Apple hypothesizes a parade of horribles if the jury is allowed to consider willfulness, in particular, the subjective prong of Emblaze's willfulness claim. Emblaze will bring in "inflammatory allegations" concerning Apple and Steve Jobs. *See* Apple Motion [D.E. 343], at 15. According to Apple, these unsubstantiated possibilities warrant a grant of summary judgment on objective willfulness. Apple's speculative and unjustified assertions – apparently intended to color this Court's view of Emblaze's damages expert – should be rejected.

Emblaze's damages expert, Catharine Lawton, is one of the most respected experts working in the field today. *E.g., Carnegie Mellon Univ.,* 2013 WL 5332108, at *37 n. 113 (stating that "[d]espite . . . last minute changes and extra scrutiny, Ms. Lawton, in this Court's estimation, was remarkable as a witness. In the Court's thirty years of private trial practice and over six years on the bench, there have not been many witnesses (fact or expert) who have had such a grasp on all the facts and figures of a case, possessed the ability to answer thoroughly, succinctly, and convincingly, as well as communicate in a direct yet amicable manner").

Moreover, Apple has misread and misconstrued Ms. Lawton's report. That report does not disparage Apple; it sets forth publicly available information concerning Apple's well-documented business history. Apple's own damages expert cites the biography of Steve Jobs in his report, just as Ms. Lawton does, because it is a thorough discussion of Apple and is relevant to the circumstances of the hypothetical negotiation.

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

14

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

Ms. Lawton's extensive discussion of outside sources was in response to Apple's paltry production of documents. Ms. Lawton appropriately turned to the public record to fill the gap. Apple faults Ms. Lawton for discussing other Apple litigations, but that discussion was in the context of developing facts regarding Apple's "licensing in" and how Apple has conducted itself in such transactions. That information is clearly relevant to the hypothetical negotiation, but even if it were not, Apple has appropriate remedies at trial. Apple's speculative assertions are not a basis for granting summary judgment on *Seagate's* objective prong.

As for the comment in *Bosch v. Pylon Manufacturing Corp.,* Civ. No. 08-542-SLR, 2009 WL 2742750, *1 n.3 (D.Del. Aug. 26, 2009), that willfulness is "an intrusive and inflammatory issue to discover and try" (see Apple Motion [D.E. 343], at 15), Judge Robinson made that comment when granting a motion for bifurcation of damages, not on a motion for summary judgment, where the legal standard is whether there is a reasonable dispute of material fact. Having never sought bifurcation, Apple should not be heard now to complain that this "inflammatory" issue will be heard by the same jury that considers infringement.

Apple seeks to block the door at the objective prong because of the compelling subjective evidence of willfulness. The evidence is undisputed that Apple forged ahead with its attempts to make HTTP Live Streaming the dominant standard, although it had been presented with evidence of Emblaze's patent and alleges it could have switched to a non-infringing alternative, but tellingly never did. Apple did not obtain an opinion of counsel concerning the '473 Patent – or at least, has not produced one – despite the relatively low cost of doing so. Nor is there evidence that Apple sought such an opinion even after Emblaze sued Apple, *see Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 699 (Fed. Cir. 2008) ("[I]t would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe"), and even after receiving a claim construction unfavorable to its position. The record demonstrates that Apple forged ahead with HTTP Live Streaming because it knew that the potential rewards associated with the "network

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

15

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

effects" and "winner-take-all" dynamics of the computer industry were enormous and worth the risk despite Apple's infringement of Emblaze's '473 Patent.

### III. CONCLUSION

For the reasons stated herein, Apple's motion for summary judgment of no willfulness [D.E. 343] should be denied. A Proposed Amended Order is submitted herewith.

Respectfully submitted,

DATED: March 13, 2014

DAVIS WRIGHT TREMAINE LLP
COZEN O'CONNOR

By: /s/ Martin B. Pavane
Martin B. Pavane *(admitted pro hac vice)*

*Attorneys for Plaintiff Emblaze Ltd.*

PLAINTIFF EMBLAZE'S OPPOSITION TO
DEFENDANT APPLE'S MOTION FOR SUMMARY
JUDGMENT OF NO WILLFUL INFRINGEMENT OF
U.S. PATENT NO. 6,389,473
LEGAL\18281795\2

16

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG