MARTIN L. FINEMAN (CA State Bar Number 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:     (415) 276-6575
Facsimile:     (415) 276-6599
Email: martinfineman@dwt.com

MARTIN B. PAVANE *(admitted pro hac vice)*
LISA A. FERRARI *(admitted pro hac vice)*
ANDREW P. NEMIROFF *(admitted pro hac vice)*
MARILYN NEIMAN *(admitted pro hac vice)*
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Telephone:     (212) 883-4900
Facsimile:     (212) 986-0604
Email: mpavane@cozen.com
           lferrari@cozen.com
           mneiman@cozen.com

*Attorneys for Plaintiff Emblaze Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| EMBLAZE LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., a California Corporation, <br><br> Defendant. | CASE NO.  5:11-cv-01079-PSG <br><br> **PLAINTIFF EMBLAZE'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS TO ALL ACCUSED STREAMS** <br><br> **DATE:  April 8, 2014** <br> **TIME:  10:00 a.m.** <br> **PLACE: Courtroom 5, 4th Floor** <br><br> Before: Hon. Paul S. Grewal |

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT OF
U.S. PATENT NO. 6,389,473 AS TO ALL ACCUSED
STREAMS

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

**TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION....................................................................................................................1

II.    STATEMENT OF FACTS.....................................................................................................3

       A.    Patent in Suit ...............................................................................................................3

       B.    Claim Construction......................................................................................................4

       C.    HLS Protocol...............................................................................................................4

       D.    Emblaze's Infringement Contentions..........................................................................5

       E.    Emblaze's Expert Report.............................................................................................6

III.   ARGUMENT ..........................................................................................................................6

       A.    Legal Standard.............................................................................................................6

       B.    Because Emblaze Has Shown That The Accused Streams Upload the Claimed
             Sequence At An Upload Rate Generally Equal To The Data Rate Of The Stream,
             Apple's Motion for Summary Judgment Should Be Denied ........................................7

             1.    Apple Ignores The Court's Claim Construction .............................................7

       C.    The Accused Streams Meet The "Predetermined Data Size" Limitation ...........................9

             1.    Apple Ignores The Court's Claim Construction .............................................9

       D.    Apple's Motion For Partial Summary Judgment Of Non-Infringement For Streams
             Other Than The Exemplary Streams Should Be Denied.............................................12

       E.    Emblaze Has Identified A Single Direct Infringer With Respect To Its Allegations Of
             Infringement Of The Asserted Apparatus Claims ......................................................13

             1.    Emblaze Identifies A Single Direct Infringer For The Apparatus Claims..................13

             2.    Emblaze Did Not Introduce a New Theory of Infringement At The Motion
                   To Stay Hearing .........................................................................................15

       F.    Emblaze Offered Evidence That Apple Directly Infringes The Asserted Claims By
             Streaming The Keynote ..............................................................................................15

IV.    CONCLUSION .....................................................................................................................17

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

i

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.*
692 F.3d 1301 (Fed. Cir. 2012) (*en banc*) .......................................................................14, 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................7

*First Nat'l Bank of Arizona v. Cities Service Co.*,
391 U.S. 253 (1968) .......................................................................................................7

*Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......................................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) .......................................................................................................6

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

ii

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

1    This Memorandum is submitted on behalf of plaintiff Emblaze Ltd. ("Emblaze") in

2    opposition to Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment ("Apple's Motion"

3    or "Motion") of Non-Infringement of U.S. Patent No. 6,389,473 ("473 Patent") as to All Accused

4    Streams. (D.E. 346).

5    **I.      INTRODUCTION**

6         Apple's Motion is fundamentally flawed.  Initially, Apple argues that the claim limitation

7    "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream"

8    is not met by the accused HLS streams.  The Court construed this limitation to mean "transmitting

9    the *files* from the transmitting computer to the server at an upload rate generally equal to the data

10   rate of the stream."  Apple argues that the upload rate of a <u>single file</u> (within the sequence) can never

11   be generally equal to the data rate of the stream.  However, this is irrelevant.  The language of the

12   claim, and the Court's claim construction, requires that the upload rate of the "sequence" of files be

13   equal to the data rate of the stream.  There is no requirement that the upload rate of a single file be

14   generally equal to the data rate of the stream.  Apple's argument fails since its understanding of the

15   limitation is based on a fundamental misreading of the claim and a disregard for the Court's claim

16   construction.

17        Apple next argues that the "predetermined data size" limitation is not met by the accused

18   HLS streams.  To support this argument, Apple again ignores the Court's claim construction.  Apple

19   argues that the "predetermined data size" can only be set in "bits."  This is the same argument that

20   Apple made during claim construction and this Court rejected.  This Court, agreeing with Emblaze,

21   held that a "predetermined data size" may be "established by setting a *time duration* of the slice."

22   This is the case in the accused streams; the data size of each slice within a sequence is established by

23   setting a time duration (*e.g.*, 10 seconds) for that slice in advance, a fact demonstrated by Emblaze's

24   expert in his expert report of infringement.  Indeed, Apple concedes this fact in its Motion, yet still

25   argues that the claim limitation is not met.  Although Apple may not be happy with this Court's

26   claim constructions, it cannot ignore them.

27   PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
     FOR SUMMARY JUDGMENT OF NON-                              1              *Emblaze Ltd. v. Apple, Inc.,*
28   INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS                          Case No. 5:11-CV-01079-PSG
     TO ALL ACCUSED STREAMS
     LEGAL\18313551\3

Apple also argues that partial summary judgment should be granted as to Emblaze's accusations directed to "memorial speeches" and other "unidentified" streams since there is allegedly no explicit support for such accusations in the expert report or elsewhere. Emblaze's expert, Dr. Vijay Madisetti, captured and included in his report several data streams for each of six different content providers (including Apple). Using that data (and other evidence), Dr. Madisetti explained how the content providers' use of HLS infringes the asserted claims. The data streams captured and included in Dr. Madisetti's report were exemplary; indeed, it would have been impossible for Dr. Madisetti to include data for every possible HLS stream for each content provider. There are literally hundreds if not thousands of streams that are transmitted via HLS every day by content providers. Dr. Madisetti could not provide data for every stream; nor was he required to do so. Emblaze's use of exemplary data streams combined with a detailed analysis for each content provider is sufficient to support Emblaze's infringement contentions as to that content provider's use of HLS.

With respect to the apparatus claims, Apple argues that partial summary judgment should be granted since Emblaze allegedly fails to identify any single direct infringer. Apple admits that Emblaze does identify direct infringers, but takes issue with the fact that Emblaze identifies multiple parties (*e.g.*, "content providers," "users or clients" and "additional third parties"). However, for certain dependent claims, Emblaze must identify multiple parties since these claims are practiced by multiple parties. For other claims practiced by only one party, Emblazes identifies one direct infringer. Regardless, it is a matter of law that the entity that completes an infringing apparatus is the direct infringer. For the dependent apparatus claims, Emblaze identifies that entity.

Finally, Apple argues that Emblaze offers no evidence that Apple directly infringes the asserted claims by its keynote streams and therefore partial summary should be granted as to those streams. To support its assertion, Apple points to one citation in Emblaze's expert report on infringement and commentary by Emblaze's counsel from a hearing on Apple's motion to strike.

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

2

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

Despite these cherry-picked citations (which are ambiguous at best), there is sufficient evidence to support Emblaze's allegations of direct infringement against Apple.

Accordingly, and for the reasons discussed below, Apple's motion for summary judgment of non-infringement as to all accused streams should be denied in its entirety.

## II.      STATEMENT OF FACTS

### A.      Patent in Suit

The '473 patent claims methods and corresponding systems for live streaming of media over the internet.  There are 22 asserted claims ("Asserted Claims").  Of those 22 claims, 12 are method claims and 10 are apparatus claims. Claim 1 reads as follows:

> 1. A method for real-time broadcasting from a transmitting computer to one or more client computers over a network, comprising:
>
> providing at the transmitting computer a data stream having a given data rate;
>
> dividing the stream into a sequence of slices, <u>each slice having a predetermined data size associated therewith;</u>
>
> encoding the slices in a corresponding sequence of files, each file having a respective index; and
>
> <u>uploading the sequence to a server at an upload rate generally equal to the data rate of the stream,</u> such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate.

(Ex. 1, '473 patent at 14:18-32) (emphasis added).

The above underlined terms in Claim 1, which are at issue in Apple's Motion, were construed by this Court on April 19, 2013 (D.E. 169) and July 2, 2013 (D.E. 216).

Dependent claim 2, which depends from claim 1, reads:

> 2. A method according to claim 1, and comprising downloading the sequence using an Internet protocol over the network from the server to the one or more client computers.

(Ex. 1, '473 patent at 14:33-35).

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

3

## B. Claim Construction

The parties submitted claim construction briefs in May through July, 2012, and a claim construction hearing was held on April 17, 2013. Apple proposed that the Court construe "each slice having a predetermined data size associated therewith" to mean "each slice has an amount of data <u>measured in bits</u>, that is assigned in advance of the stream being divided." (D.E. 118, p. 12) (emphasis added). Emblaze proposed that the term mean "each slice having an assigned data size which may be an assigned <u>time duration</u>." (D.E. 111, p. 11) (emphasis added). After considering the parties' arguments and reviewing the evidence, the Court agreed with Emblaze that "data size" could be set by a time duration (D.E. 169), and following a further hearing on Apple's motion for reconsideration (D.E. 207), the Court construed this term to mean "each slice having a data size, which may be established by setting a <u>time duration</u> of the slice, assigned in advance of the stream being divided." (D.E. 214) (emphasis added).

Apple's proposed construction for "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream" was "transmitting the files from the transmitting computer to the server at a speed, as measured in bits per second, that closely matches 'the data rate'." (D.E. 118, p. 17). Emblaze proposed that the Court construe this term to mean "uploading files in the sequence from the transmitting computer to a server at an upload rate generally equal to the data rate of the stream." (D.E. 111, p. 16). Here too the Court rejected Apple's proposed construction and agreed with Emblaze. The Court construed the term to mean "transmitting the files from the transmitting computer to the server at an upload rate generally equal to the data rate of the stream." (D.E. 169, p. 2).

All 22 of the Asserted Claims include both of the above limitations.

## C. HLS Protocol

Apple devices, such as iPhones and iPads, include software that enables live streaming of media over the internet to the devices for viewing by clients. Apple developed its HLS protocol as the preferred format for streaming media to its devices, and has made available to the public,

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

4

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

including app developers, documentation explaining how HLS may be implemented, including, *e.g.*, Apple's HTTP Live Streaming Overview. It is Emblaze's contention that the use of Apple's HLS protocol to live stream media to Apple devices directly infringes the Asserted Claims of the '473 patent, and that Apple has induced such infringement by, *e.g.*, distributing literature instructing third parties on the implementation of HLS. In addition, Emblaze contends that Apple itself directly infringes the Asserted Claims through its use of HLS for certain events.

### D.    Emblaze's Infringement Contentions

Emblaze served its Revised Patent Disclosures ("RPDs") on Apple on January 31, 2012. In the RPDs, Emblaze identified three categories of entities who were induced by Apple to directly infringe the Asserted Claims of the '473 patent: 1) three "CDNs," *i.e.*, Akamai, Brightcove, and Limelight Networks; 2) "clients", *i.e.*, people using Apple devices; and 3) "additional third parties, unknown to Plaintiff." (Ex. 2. at 4-5). As to the two independent Asserted Claims (claims 1 and 25), Emblaze identified only categories 1 (the three CDNs) and 3 ("additional third parties, unknown to Plaintiff"). With respect to category 2—the clients, *i.e.*, the users of Apple devices—Emblaze also identified the specific dependent claims that required their participation and identified the limitations in those claims performed by the clients. (*Id.* at 4.) As an example, for dependent claim 2, the RPDs explained that "[c]lients…through devices that support Apple's HTTP Live Streaming…perform[] or account[] for the following limitations…: 'downloading the sequence using an Internet protocol over the network from the server to the one or more client computers' in claim 2." (*Id.*).

On December 18, 2012, Emblaze filed a Second Amended Complaint ("SAC"), providing, *inter alia*, additional detail concerning Emblaze's allegations of infringement. With respect to indirect infringement, Emblaze alleged that Apple induced direct infringement of certain content providers. (D.E. 143 at ¶ 21). With respect to direct infringement, Emblaze alleged that Apple directly infringed the Asserted Claims by its use of HLS to stream content to users of Apple devices. (D.E. 143 at ¶ 16). Under the section labeled "Direct Infringement," Emblaze provided an example

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

5

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

of such direct infringement: "For example, using HTTP Live Streaming, Apple has streamed Apple-sponsored events, including keynote announcements of new Apple products, and such streaming constitutes infringement of at least one or more of claims 1, 21, 23, 24, 25, 26, 27, 28, 29, 36, 37, 38, 40, and 41 of Emblaze's '473 Patent." (*Id.* at p. 4).

### E. Emblaze's Expert Report

On November 8, 2013, Emblaze served Dr. Vijay Madisetti's Expert Report of Infringement ("Expert Report"). The Expert Report identified infringement by six different content providers: the MLB, NFL, CBS, ABC, ESPN and Apple (collectively, "Content Providers"). Using an industry standard tool called Wireshark, Dr. Madisetti captured exemplary HLS data streams ("Exemplary Streams")[1] for the six Content Providers. All of the Exemplary Streams were included in the Expert Report. Using the Exemplary Streams, Dr. Madisetti then explained how each of the Content Providers infringe the Asserted Claims through their use of Apple's HLS protocol.

Dr. Madisetti explains in his Expert Report how Apple induces the Content Providers to infringe by "encourag[ing] third parties [such as MLB Advanced Media] to practice all of the limitations" of the Asserted Claims "by distributing literature, such as the Apple Overview and the IETF Specification, which explains how to implement Apple's HLS, by selling Apple client devices that can play multimedia live streamed using Apple's HLS protocol, and by encouraging app developers to develop apps for Apple client devices that facilitate the live streaming of multimedia to Apple client devices." (*See, e.g.,* Ex. 3 at ¶ 208).

## III. ARGUMENT

### A. Legal Standard

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one

---

[1] The "Exemplary Streams" include data streams from MLB AT BAT, NFL Preseason Live, CBS' Live Streaming of PGA Events, ABC's Live Streaming of News, ESPN App, iTunes Festival 2013 and Apple Keynote Presentations.

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

6

that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not proper. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968). "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 288-89. If reasonable minds could differ as to the import of the evidence, summary judgment is not proper. *See Anderson,* 477 U.S. at 250-51 *(*citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

On a motion for summary judgment, the Court reviews the evidence in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, the judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249. Moreover, the party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can only satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All doubts as to the existence of a material fact must be resolved in favor of the non-movant. *See Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986).

**B.** **Because Emblaze Has Shown That The Accused Streams Upload the Claimed Sequence At An Upload Rate Generally Equal To The Data Rate Of The Stream, Apple's Motion for Summary Judgment Should Be Denied**

**1.** **Apple Ignores The Court's Claim Construction**

There are 22 Asserted Claims. Each Asserted Claim includes the limitation: "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream." (Ex. 1 at 14:18-16:64). Apple argues that Emblaze offers no evidence to support its assertion that the Accused Streams[2] "upload the files at an upload rate anywhere close to the data rate of the stream." (Apple's Motion at 7). To support its argument, Apple provides a formula for determining the upload rate of

---

[2] Throughout this brief, Emblaze uses the term "Accused Streams" as Apple defines that term in its Motion. (*See* Apple's Motion at p. 1). As discussed herein, the "Accused Streams" are exemplary.

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

7

a single segment (segment size/time to upload), and then takes issue with Emblaze's calculation of the upload rate because "Emblaze's $T_{SL}$ [time to transmit a slice from the transmitting computer to the server] is the time to upload the slice <u>plus</u> the waiting time until the next 10 seconds of live content is produced." (Apple's Motion at 8) (emphasis in original).

Apple's argument is erroneous because the claims require using the entire time (including the waiting time) to calculate the upload rate. (Madisetti Dec. at ¶ 4).[3] The claims recite "uploading *the sequence* to a server…" (Ex. 1 at 14:28) (emphasis added). The "*sequence"* is defined in the claims as a "sequence of *files.*" (*Id*. at 14:26-27) (emphasis added). Accordingly, to calculate the upload rate, one must calculate the time for transmitting the sequence of *files* to the server. (Madisetti Dec. at ¶ 4). Emblaze's inclusion of the waiting time from one file to the next file within the sequence is thus necessary to properly calculate the upload rate. (*Id.*).

Apple's proposed calculation only takes into account the time to upload a <u>single</u> file within the sequence. But as discussed above, the claims refer to the upload rate of *the sequence*, not the upload rate of *a single file within the sequence*. Indeed, this Court's claim construction makes this clear. The Court construed "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream" to mean "transmitting *the files* from the transmitting computer to the server at an upload rate generally equal to the data rate of the stream." (D.E. 169 at p. 2) (emphasis added). The Court's construction makes clear that the upload rate must be based on the transmission of the *files* (plural) to the server, and not transmission of a single *file*.

The data in a single 10-second file may take only .1 seconds to upload, but the encoder must wait the remaining 9.9 seconds ("Wait Time") before it can begin uploading the second file, and so on for each successive file in the sequence. (Madisetti Dec. at ¶ 5). Therefore, to calculate the upload rate for the sequence, one must include the total time, including "Wait Time," since the second 10-second file (and third and fourth, etc.) will not be available for the full 10-second interval.

---

[3] References to "Madisetti Dec. ___" are to the Declaration of Dr. Vijay Madisetti, submitted herewith.

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

8

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

(*Id.*).  Since the claims explicitly require a determination of the upload rate of the "sequence" (and not a single file within the sequence), Apple's calculation (and argument) is flawed.   (*Id*).

Apple's argument that "Emblaze's use of the segment duration for the time to upload renders the claim's 'generally equal' requirement meaningless because the upload rate and data rate must necessarily be the same value if $T_{SL}$ includes waiting or 'dead' time" is also wrong. (Apple's Motion at 9). For example, if the upload (or download) rate is too slow, the "live" stream will fall behind, and the client's display will eventually stall while it waits for the next segment to be uploaded and transmitted.   Accordingly, the two rates must be "generally equal" to maintain a live implementation.

Accordingly, Apple's motion for summary judgment of non-infringement as to all Accused Streams premised on the "upload rate" limitation should be denied.

## C.    The Accused Streams Meet The "Predetermined Data Size" Limitation

### 1.    Apple Ignores The Court's Claim Construction

Every Asserted Claim requires that "each slice hav[e] a predetermined data size associated therewith." (Ex. 1 at 14:24-25).  During claim construction, Apple argued that this term should be construed as "each slice has an amount of data, measured in bits, that is assigned in advance of the stream being divided." (D.E. 118, p. 12).  Relying on the intrinsic evidence, Emblaze argued that the predetermined data size could be an "assigned time duration." (D.E. 111, p. 11).  This Court rejected Apple's proposed construction (D.E. 169, p.2), and following Apple's motion for reconsideration (D.E. 207), the Court construed this term to mean "each slice having a data size, which may be established by setting a time duration of the slice, assigned in advance of the stream being divided." (D.E. 214) (emphasis added).

In its Motion, Apple re-hashes its rejected arguments, and asserts that the predetermined data size means that each slice must have the exact same number of bits.  Apple includes the following chart in its Motion from the Accused Streams documented by Emblaze's expert, Dr. Madisetti:

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

9

| MLB Stream (Ex. 13) Data Rate: 1200K Target Duration: 5 seconds | | ESPN Stream (Ex. 12) Data Rate: 2200K Target Duration: 5 seconds | |
|---|---|---|---|
| Name | Size | Name | Size |
| 1200K/23/35/59.ts | 827216 | 2200K/02/25/55.ts | 1289872 |
| 1200K/23/36/05.ts | 792800 | 2200K/02/26/00.ts | 1595760 |
| 1200K/23/36/10.ts | 803712 | 2200K/02/26/05.ts | 1441776 |
| 1200K/23/36/15.ts | 813680 | 2200K/02/26/10.ts | 1448176 |
| 1200K/23/36/20.ts | 854096 | 2200K/02/26/15.ts | 1502688 |
| 1200K/23/36/25.ts | 840560 | 2200K/02/26/20.ts | 1404176 |
| 1200K/23/36/30.ts | 827024 | 2200K/02/26/25.ts | 1451936 |
| 1200K/23/36/35.ts | 843568 | 2200K/02/26/30.ts | 1484832 |
| 1200K/23/36/40.ts | 815936 | 2200K/02/26/35.ts | 1481632 |
| 1200K/23/36/45.ts | 835664 | 2200K/02/26/40.ts | 1363760 |
| 1200K/23/36/50.ts | 805216 | 2200K/02/26/45.ts | 1388208 |

(Apple's Motion at pp. 11-12).

The "Size" column is a measure of the size in bytes[4] of the slices of the stream. Pointing to that column, Apple argues that because the slices "vary in size" (Apple's Motion at 12), the predetermined data size limitation is not met and, therefore, there is no infringement. However, there is no requirement in the claims that all of the slices have the same number of bytes. (Madisetti Dec. at ¶ 7). Instead, the claim only requires that "each slice hav[e] a data size, which may be established by setting a time duration of the slice, assigned in advance of the stream being divided." (D.E. 214; Madisetti Dec. at ¶ 7). That is the case for both streams in Apple's chart. Each slice in each stream has a data size established by setting a time duration for each slice (in both streams the time duration of each slice is 5 seconds), assigned in advance of the stream being divided. The MLB Stream, at a nominal 1200Kbps (the "given data rate"), combined with an audio stream having a "given data rate" of 64Kbps, and a slice duration of 5 seconds, yields about 800,000 bytes per slice (or 800 Kbytes).

---

[4] There are 8 "bits" in 1 "byte."

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

10

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

1   Claim 1 also requires "providing . . . a data stream having a given data rate." (*Id.*) A person

2   of ordinary skill would understand that the stream may be provided with a given data rate by

3   encoding the stream using constant bit rate encoding ("CBR"), or a VBR with a maximum rate

4   constraint, for example. (*Id.*) *See also, e.g.,* Madisetti Dec., Ex. 1 (illustrating CBR encoding for a

5   stream encoded at a CBR of 1000 Kbps, or a VBR with a constraint of 1000 Kbps, which results in a

6   stream having a data rate that at all times is close to 1000 Kbps). By providing a data stream having

7   a given data rate, and then establishing a time duration for each slice in advance of the stream being

8   divided, all of the resulting slices will have data sizes that are approximately equal, which is the case

9   for all of the Accused Streams. (Madisetti Dec. at ¶ 8). One of ordinary skill would understand that

10  in the context of compressed multimedia streams, IP packetization overhead and the requirement to

11  include key frames in the video and/or audio stream results in small percentage deviations from a

12  nominal value. (Madisetti Dec. at ¶ 8). In all the experimental results captured by Dr. Madisetti, all

13  the Accused Streams are close (within a few percentage points) to the target rates, which is

14  consistent with what one of ordinary skill in the art would understand a CBR or VBR (with a

15  maximum rate constraint) compression scheme would provide, both at the time of the invention and

16  even now. (*Id.*)

17      All of the slices listed in Apple's chart are 5 seconds in duration, and this 5-second duration

18  was assigned in advance of the stream being divided. (*See* Ex. 3 at ¶¶ 118-123; *see also* Ex. 4,

19  Deposition of J. Inzerillo at 73:21-74:10, 93:6-18, 178:24-179:5; Madisetti Dec. at ¶ 7). Indeed,

20  Apple admits as much in its Motion. (*See* Apple's Motion at 12) ("The slices all have a five-second

21  duration…"). Therefore, and consistent with this Court's claim construction, each slice has "a data

22  size, … established by setting a time duration of the slice, assigned in advance of the stream being

23  divided" (D.E. 214; D.E. 111, p. 11). As that is all the claim requires, this limitation is met by the

24  Accused Streams.

25      Apple argues that "Emblaze bears the burden of showing that the 'predetermined data size'

26  limitation is met <u>exactly</u> by the Accused Streams." (Apple's Motion at 13) (emphasis in original).

Emblaze has done so.  For example, as explained above, every MLB data slice is five seconds in duration, as Apple concedes.  Since the data size of each slice is established by assigning a five-second duration in advance, the limitation is satisfied *exactly*.  (Madisetti Dec. at ¶ 9).  This is also the case for the other Content Providers, who similarly use a time duration assigned in advance of the stream being divided.  (Ex. 3 at pp. 90-116; Madisetti Dec. at ¶ 9).

Accordingly, Apple's motion for summary judgment as to all Accused Streams based on the "predetermined data size" limitation should be denied.

### D.      Apple's Motion For Partial Summary Judgment Of Non-Infringement For Streams Other Than The Exemplary Streams Should Be Denied

Apple argues that partial summary should be granted because Emblaze has only accused certain streams of infringement.  Apple alleges that "actual evidence of alleged infringement has only been put forward for the specific Accused Streams identified by Emblaze's expert" and, therefore, partial summary should be granted "since there is no evidence of infringement under any theory for such other, unidentified streams."  (Apple's Motion at p. 14).  By way of example, Apple asserts that Emblaze has not provided sufficient evidence to support its allegations of infringement directed to Apple's memorial speech.[5]

Dr. Madisetti's Expert Report included Exemplary Streams for six different Content Providers.  For example, with respect to the MLB AT BAT app, Dr. Madisetti included an HLS stream for a baseball game played on September 28, 2013, between the Atlanta Braves and the Los Angeles Dodgers.  Dr. Madisetti used that stream (and other evidence) to demonstrate that MLB infringes the Asserted Claims.  During the regular season, MLB streams live games via the MLB AT BAT app for virtually every baseball game played every single day of a six-month season.  There are likely thousands of streams transmitted using HLS via the MLB AT BAT app over the course of the season, and MLB's witness testified that they are all streamed using the same HLS format.  (Ex. 4,

---

[5] The Steve Jobs memorial which was streamed using HLS. (See Ex. 5; Dep Tr. of May, 177:8-178:1; Ex. 6, Malackowski, 124:24-125:8).

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

12

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

1   Inzerillo Dep. Tr. at 201:6-24).   It would be impossible (and not required) for Dr. Madisetti to

2   include the data streams for all of those games in his Expert Report.

3          With respect to Apple, Dr. Madisetti's Expert Report includes exemplary streams for Apple's

4   iTunes Festival and Keynote events.  Using these exemplary streams, Dr. Madisetti explains how

5   Apple's use of HLS to stream these events infringes the Asserted Claims.   The fact that Dr.

6   Madisetti did not include every Apple HLS stream (including streams related to its "Steve Jobs

7   Memorial"[6]) should not preclude Emblaze from asserting infringement as to other events streamed

8   using the same protocol.

9          Accordingly, Apple's Motion for partial summary judgment premised on streams other than

10  exemplary streams should be denied.

11              **E.      Emblaze Has Identified A Single Direct Infringer With Respect To Its
                          Allegations Of Infringement Of The Asserted Apparatus Claims**
12

13              **1.      Emblaze Identifies A Single Direct Infringer For The Apparatus Claims**

           Apple argues that it is entitled to partial summary judgment because Emblaze has failed to
14
     identify a single direct infringer of the asserted apparatus claims, and that absent a direct infringer
15
     Apple cannot induce infringement of those claims.[7]
16
           In its Revised Patent Disclosures ("RPDs"), Emblaze identified three categories of entities
17
     induced by Apple to directly infringe the dependent Asserted Claims (including the dependent
18
     apparatus claims): 1) three CDNs; 2) "clients", *i.e.*, people using Apple devices; and 3) "additional
19
     third parties, unknown to Plaintiff."  (Ex. 2 at 4-5).  With respect to clients, *i.e.*, the users of Apple
20
     devices, Emblaze identified the dependent claims that require their participation and identified the
21
     limitations they perform in those claims.   (*Id.* at 4).  For example, for dependent claim 2, the RPDs
22
     explained that "[c]lients…through devices that support Apple's HTTP Live Streaming…perform[]
23
     or account[] for the following limitations…: 'downloading the sequence using an Internet protocol
24

25  [6] The Steve Jobs Memorial Speech took place in 2011.  Thus, it would have been impracticable for Dr. Madisetti to
     capture the live stream for this event to be included in his Expert Report served in 2013.
26  [7] Under the Patent Local Rules and case law, Emblaze was not required to identify direct infringers by name. *See*
     *Creagri, Inc. v. Pinnaclife Inc*., *LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, *5 (N.D. Cal. Nov. 2, 2012)
     (Grewal, M.J.).
27  PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION                                          *Emblaze Ltd. v. Apple, Inc.,*
     FOR SUMMARY JUDGMENT OF NON-                         13                           Case No. 5:11-CV-01079-PSG
28  INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
     TO ALL ACCUSED STREAMS
     LEGAL\18313551\3

over the network from the server to the one or more client computers." (*Id.*) For the two independent claims (1 and 25), Emblaze only identified categories 1 (Akamai Technologies, Inc.; Brightcove, Inc.; and Limelight Networks, Inc.) and 3 ("additional third parties, unknown to Plaintiff") (*Id.*), because those claims do not require acts by end users (claim 1) or client devices (claim 25). In addition, Emblaze identified several direct infringers in its Second Amended Complaint filed on December 18, 2012. (D.E. 143 at ¶¶ 13-16 and 21). Emblaze alleged that Apple induced direct infringement of certain content providers, including "the NFL, Major League Baseball, CNN, Fox News, Fox Sports, CBS Sports, ABC News and NBC Sports" (D.E. 143 at ¶ 21), and that Apple by itself directly infringed the Asserted Claims by its use of HLS to stream content to users of Apple products. (D.E. 143 at ¶ 16). Under the section labeled "Direct Infringement," Emblaze provided an example of such direct infringement: "For example, using HTTP Live Streaming, Apple has streamed Apple-sponsored events, including keynote announcements of new Apple products, and such streaming constitutes infringement of at least one or more of claims 1, 21, 23, 24, 25, 26, 27, 28, 29, 36, 37, 38, 40, and 41 of Emblaze's '473 Patent." (*Id.*). Dr. Madisetti also states in his report that Apple as well as content providers (*e.g.*, ESPN, ABC, CBS, NFL) are each individually direct infringers of the apparatus (and method) claims. (Ex. 3 at pp 44-116.)

Apple's argument that Emblaze has not identified a single direct infringer because it has identified multiple parties that together directly infringe (*e.g.*, CDNs, clients and "additional third parties") makes no sense. For many of the dependent claims, multiple parties perform the steps together, so identification of additional parties for those claims is required to establish infringement, *i.e.*, that all of the claim elements are met. For the two independent claims, Emblaze lists Akamai, Brightcove, Limelight and "additional third parties," each of which is a potential direct infringer. Regardless, it is well-established that the party who completes the system of an apparatus claim is the direct infringer. *See Akamai Techs., Inc. v. Limelight Networks, Inc.* 692 F.3d 1301, 1305-1306 (Fed. Cir. 2012) (*en banc*). For the dependent apparatus claims, Emblaze identified in the RPDs the

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

14

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

entity that completes the system.  For example, the final step of dependent claim 2 is "downloading the sequence using an Internet Protocol over the network from the server to one or more client computers."  The RPDs state that the "clients" perform this step.

Accordingly, Apple's Motion for partial summary judgment premised on Emblaze's failure to identify a single infringer for the apparatus claims should be denied.

### 2. Emblaze Did Not Introduce a New Theory of Infringement At The Motion To Stay Hearing

Apple argues that Emblaze introduced a "new infringement theory" during the motion to stay hearing on February 11, 2014, and that the "new theory" should be rejected.  (*See* Motion at 17).  Apple asserts that Emblaze now argues that "under the Federal Circuit precedent, it's the…final party who completes the claim …[that] is the direct infringer."  As noted above, that correctly states the law.  *See Akamai Techs., Inc.*, 692 F.3d at 1305 ("When claims are directed to a product or apparatus, direct infringement is always present, because the entity that installs the final part and thereby completes the claimed invention is a direct infringer.")  But this is not a new infringement theory.  It is the law.  Simply annunciating the holding of a Federal Circuit decision during a motion to stay hearing is not a new "theory" of infringement.

### F. Emblaze Offered Evidence That Apple Directly Infringes The Asserted Claims By Streaming The Keynote

Finally, Apple argues that "Emblaze has no evidence to support a direct infringement claim against Apple regarding the Accused Apple Keynote Stream." (Apple's Motion at 18).  Apple asserts that Dr. Madisetti's  Expert Report "provides no explanation regarding how it is that Apple allegedly directly infringes the Asserted Claims or offers any evidence supporting the alleged direct infringement of <u>any</u> asserted claim." (Apple's Motion at 18) (emphasis in original).  Apple then points to one citation in the Expert Report and commentary by counsel for Emblaze from the motion to strike hearing which it believes "runs counter" to Emblaze's direct infringement claims as to the Keynote Streams.

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS TO ALL ACCUSED STREAMS LEGAL\18313551\3

15

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

THE COURT: Is it correct, Mr. Pavane, that at this point only a 271(b) theory is being pursued?

MR. PAVANE: You know, you ask that and I'm going over in my mind whether that's accurate. I believe that's accurate, although I'm not a hundred percent sure. I really have to go back and look at the report. It may be that Major League Baseball -- the reason I'm hesitating is only because claim one doesn't expressly require participation by the device owner, the person with the iPhone. It talks about uploading so that it can be downloaded. And so MLB is performing all those steps as we learned in the deposition conducted in 2013, MLB maybe is in fact probably identified in the Madisetti as directly –

THE COURT: But of course MLB is not a defendant in this case.

MR. PAVANE: [1] That's true, yes. [2] That was your question, I'm sorry, yes, it's an inducement claim, of course. You are right.

(Ex. 8, Motion to Strike Hearing at 25:18-26:10) (emphasis added).

The final comment by counsel, which Apple presumably relies on to suggest that Emblaze is not asserting any direct infringement claims against Apple, does not support Apple's position. Rather, the comment establishes the following: 1) The first part—"[t]hat's true, yes"—is in response to the Court's comment that "MLB is not a defendant in this case," which is indeed true, and 2) the second part—"[t]hat was your question, I'm sorry yes, it's an inducement claim, of course. You are right,"—refers to the fact that Emblaze's claim against Apple premised on MLB's live streaming of baseball games is an inducement claim. Nowhere does Emblaze's counsel state or suggest that Emblaze is not pursuing direct infringement claims against Apple, let alone with respect to the keynote streams. Emblaze's counsel stated only that he is not "a hundred percent sure" whether there are direct infringement claims, and that he "really ha[s] to go back and look at the report."

Dr. Madisetti's Expert Report provides a detailed analysis of Apple's keynote event which is streamed via HLS and explains how streaming of that event infringes the Asserted Claims. Also, Emblaze's Second Amended Complaint, under the heading "Direct Infringement," states: "For example, using HTTP Live Streaming, Apple has streamed Apple-sponsored events, including *keynote announcements* of new Apple products, and such streaming constitutes infringement of at

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

16

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

least one or more of claims 1, 21, 23, 24, 25, 26, 27, 28, 29, 36, 37, 38, 40, and 41 of Emblaze's '473 Patent." (D.E. 143 at ¶ 16) (emphasis added).

Because Emblaze's assertion of direct infringement against Apple with respect to the keynote streams is included in Dr. Madisetti's Expert Report, Apple's motion for partial summary judgment concerning Apple's keynote streams should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Apple's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,389,473 as to All Accused Streams (D.E. 346) should be denied in its entirety. A Proposed Order is submitted herewith.

Respectfully Submitted,

DATED:  March 13, 2014

DAVIS WRIGHT TREMAINE LLP
COZEN O'CONNOR

By:  /s/ Martin B. Pavane
     Martin B. Pavane *(admitted pro hac vice)*

*Attorneys for Plaintiff Emblaze Ltd.*

PLAINTIFF EMBLAZE'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT OF U.S. PATENT NO. 6,389,473 AS
TO ALL ACCUSED STREAMS
LEGAL\18313551\3

17

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG