MARK FOWLER (Bar No. 124235)
mark.fowler@dlapiper.com
ROBERT BUERGI (Bar No. 242910)
robert.buergi@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA  94303-2214
Tel:  650.833.2000
Fax:  650.833.2001

JOHN ALLCOCK (Bar No. 98895)
john.allcock@dlapiper.com
ERIN GIBSON (Bar No. 229305)
erin.gibson@dlapiper.com
ROBERT C. WILLIAMS (Bar. No. 246990)
robert.williams@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101
Tel:  619.699.2700
Fax:  619.699.2701
Attorneys for Defendant
APPLE INC.

SARAH BARROWS (Bar No. 253278)
barrowss@gtlaw.com
WILLIAM SLOAN COATS (Bar No. 94864)
coatsw@gtlaw.com
STEPHEN ULLMER (Bar No. 277537)
ullmers@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA  94111-5983
Tel.: 415.655.1300
Fax: 415.707.2010

JAMES J. DECARLO (*Pro Hac Vice*)
decarloj@gtlaw.com
MICHAEL A. NICODEMA (*Pro Hac Vice*)
nicodemam@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York  10166
Tel: 212.801.9200
Fax: 212.801.6400

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMBLAZE LTD.,<br><br>Plaintiff;<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO.  5:11-CV-01079 PSG<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DAVID TEECE**<br><br>Date: June 17, 2014<br>Time: 10 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

# TABLE OF CONTENTS

|  | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. LEGAL STANDARD FOR DAUBERT MOTIONS | 3 |
| III. ARGUMENT | 4 |
|     A. Professor Teece's Abstract, Irrelevant Opinions Will Not Help The Trier Of Fact Understand Any Relevant Evidence Or Determine A Fact In Issue In This Case. | 4 |
|     B. Professor Teece Does Not Reliably Apply His Principles To The Particular Facts Of The Case. | 7 |
| IV. CONCLUSION | 8 |

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   No. 11-cv-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) .................................. 5

*Daubert v. Merrell Dow Pharms. Inc.*,
   509 U.S. 579 (1993) ............................................................................................... 1, 2, 3, 5

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................ 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ............................................................................................ 3, 8

*Multimedia Patent Trust v. Apple Inc.*,
   No. 10-cv-2618-H (KSC), 2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ..................... 2, 3, 6

*Riles v. Shell Exploration & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) ........................................................................................... 3

*Stilwell v. Smith & Nephew, Inc.*,
   482 F.3d 1187 (9th Cir. 2007) ............................................................................................. 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................ 3, 7

*United States v. Downing*,
   753 F.2d 1224 (3rd Cir. 1985) ............................................................................................. 3

**Other Authorities**

Federal Rule of Evidence 702 ....................................................................................... 1, 2, 3, 4, 7, 8

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF EMBLAZE LTD. ("EMBLAZE") AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 17, 2014, Defendant Apple Inc. shall and hereby does move for an order granting the motion to strike the expert report of Plaintiff Emblaze Ltd.'s "digital convergence expert" David Teece and to preclude Prof. Teece from testifying at trial. This motion is based on this notice of motion, the accompanying memorandum of points and authorities in support thereof, the Declaration of Erin Gibson and exhibits attached thereto, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

1. That the Court issue an order striking Prof. David Teece's opinions in their entirety, and precluding Prof. Teece from testifying at trial.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Prof. Teece's admittedly "general," "primarily at the level of principle" and not "case-specific" opinions directed to digital industry theories "will help the trier of fact to understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702(a).

2. Whether Prof. Teece's abstract opinions concerning digital industry theories, which rely on general familiarity with trade articles rather than actual consideration of the specific facts in the case, "reliably applied the principles and methods to the facts of the case" as required by Federal Rule of Evidence 702(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff Emblaze Ltd.'s ("Emblaze") "digital convergence expert," Professor David Teece, should be precluded from testifying at trial because his abstract, irrelevant opinions about "digital convergence" and "network externalities" do not comply with the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms. Inc.* Prof. Teece's opinions fail to meet the standards for expert testimony dictated by that controlling authority in two important respects.

First, Prof. Teece's opinions do not comply with the requirement under Federal Rule of Evidence 702(a) that the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." As the Court is well aware, this patent case is about a particular way of live streaming to certain Apple products, such as the iPhone, iPad, and Mac. Yet Prof. Teece's opinions have nothing to do with live streaming, even less to do with the asserted patent, and only superficially reference the accused Apple products. Prof. Teece's opinions are deliberately limited to abstract explanations of general cause and effect theories in digital industries (i.e., "digital convergence" or "network externalities"), which are not relevant to the particular issues in this case. Even if Prof. Teece's theories were somehow relevant to this case—and they are not—his opinions are not "sufficiently tied to the facts of the case that [they] will aid the jury in resolving a factual dispute." *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 591 (1993). Indeed, Prof. Teece admits that his opinions attempted to "address issues at a more general level" as opposed to a "fully granular case-specific analysis." Thus, the Court should do what the Southern District of California did with similarly generic industry opinions from Prof. Teece in the *Multimedia Patent Trust v. Apple Inc.* case and strike Prof. Teece's irrelevant opinions.

Second, Prof. Teece's opinions do not comply with the related requirement under Federal Rule of Evidence 702(d) that "the expert has reliably applied the principles and methods to the facts of the case." Prof. Teece does not attempt to connect his abstract "digital convergence" or "network externalities" theories to the few facts relating to Apple identified in his report. Nor does Prof. Teece attempt to apply his theories to the particular facts of this case, which he studiously ignores. He never read the patent, never spoke to any fact witnesses, never read a single document produced in the case, and never bothered to review any materials relating to live streaming. Apparently, Emblaze did not ask Prof. Teece to address "the specific facts in this case" at all. Precisely because Prof. Teece limited his opinions to "speaking mainly to general principles"—without applying those principles to the relevant facts in this case—his opinions do not comply with Rule 702(d) and *Daubert* and should be stricken.

/////

/////

## II. LEGAL STANDARD FOR *DAUBERT* MOTIONS

Trial courts have been instructed to exercise vigilance in assessing the admissibility of expert testimony because of its potentially misleading and powerful influence on untrained jurors. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 595 (1993). Federal Rule of Evidence 702 governs the admissibility of expert testimony and states that a witness may testify as an expert if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 589-90. Thus, the trial judge must ensure that the testimony "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. "An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)).

With respect to a patent case, an expert's opinions must be based on "sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)). The Federal Circuit has further explained that the expert's opinions "must be tied to the relevant facts and circumstances of the particular case at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *see also Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618-H (KSC), 2012 WL 5873711, at *9 (S.D. Cal. Nov. 20, 2012) (excluding Prof. Teece's "expert testimony to the extent it relies on or is based on generic industry data as part of their damages analysis"). Therefore, a damages expert's testimony should not be based on "an arbitrary, general rule, unrelated to the facts of this case." *Uniloc USA, Inc.*, 632 F.3d at 1318. The proponent of the expert has the burden of establishing the admissibility of the expert's testimony. *Daubert*, 509 U.S. at 592 n.10; *see also*

1 *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (a court may exclude testimony that is either irrelevant or unreliable).

## III. ARGUMENT

### A. Professor Teece's Abstract, Irrelevant Opinions Will Not Help The Trier Of Fact Understand Any Relevant Evidence Or Determine A Fact In Issue In This Case.

Prof. Teece's opinions read like article excerpts reciting high-level digital industry theories, rather than something from an expert report directed to patent claims against the live streaming functionality on certain Apple devices. Prof. Teece's report evidences no understanding of the actual issues in this case. For example, Prof. Teece considers the stakes to be "very high" but cannot articulate the specific reason for that, because he does not know it. *See* Ex. 1, Expert Report of David J. Teece ("Teece Report"), ¶ 58.[1] The degree of abstraction and imprecision of Prof. Teece's opinions renders them useless to the trier of fact, and therefore inadequate under Rule 702(a).

Despite its centrality to this case, Prof. Teece mentioned "live streaming" in only a single paragraph of his report. *See id.*, ¶ 54. Prof. Teece devoted the rest of his report to discussing abstract opinions regarding his digital convergence and network externalities theories. *See id.*, ¶¶ 15-53, 55-58. The only possible connection between those theories and Apple is Apple's presence in digital industries—an unremarkable distinction that Apple shares with thousands of other companies. *See id.*, ¶¶ 18, 49. Thus, it is unclear how—if at all—his industry theories relate to Apple's accused live streaming functionality or warrant consideration in this case.

Each of the six "conclusions" that purportedly "follow from the combination of digital convergence and network externalities" is equally hopelessly broad and unilluminating (*id.*, ¶ 49):

- "First, from an economic perspective, the stakes are especially high in digitally-converging industries with network externalities." (*id.*, ¶ 50);
- "Second, the 'positive feedback' nature of network externalities means that incumbents often have a significant advantage over new-entrant rivals that offer 'similar' or 'comparable' products." (*id.*, ¶ 51);

---

[1] Unless otherwise indicated, all exhibits cited herein are attached to the Declaration of Erin Gibson ("Gibson Decl."), filed with this motion.

- "Third, in the digital distribution industry, by 2007-2008 digital convergence was in full swing, in an industry subject to network externalities." (*id.*, ¶ 53);
- "Fourth, as I have written about extensively in my academic work, commercial success requires access not only to an innovative idea, but also to the complementary assets and capabilities needed to commercialize that idea, including the right to use any necessary intellectual property." (*id.*, ¶ 55);
- "Fifth, as noted above, industry participants are not averse to using patented technology in industry standards, whether formal interoperability standards adopted by an SSO or informal *de facto* standards, so long as licenses are available." (*id.*, ¶ 56).
- "Sixth, licensing negotiations for key IP inputs during high-stakes industry transitions that have the potential for spawning new product categories, new business opportunities, or major industry shifts can result in significant royalties, as without licenses to key IP, firms risk losing out on major opportunities." (*id.*, ¶ 57).

Conspicuously absent from all six of these abstract industry conclusions is any mention of Apple, the patent, live streaming or something relevant to those issues. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 2571332, at *10 (N.D. Cal. June 30, 2012) (granting *Daubert* motion because expert's potential "testimony about the appeal and 'museum worthiness' of Apple products generally is not tied to any specific asserted intellectual property in this case"). Thus, notwithstanding Prof. Teece's assertion that his conclusions have "implications for licensing the '473 patent" (Ex. 1, Teece Report, p. 16), Prof. Teece's opinions do not have a meaningful nexus to the parties, the patent, the accused products or the at-issue live streaming functionality.

Indeed, the lack of any meaningful nexus appears to have been Prof. Teece's (and Emblaze's) intent. Prof. Teece made clear he was "looking at the background and … speaking mainly to general principles" in his report. Ex. 2, Transcript of David Teece Deposition ("Teece Depo. Tr.") at 69:15-23; *see also id.* at 72:23-73:23 (confirming he was "trying to address issues at a more general level"); *id.* at 211:5-25 (his "focus is primarily at the level of principle"). When asked to respond to the

/////

on-point critique offered by Apple's damages expert that "Mr. Teece's report is entirely devoid of case-specific facts that would enable such an analysis," Prof. Teece could only respond that:

> "I don't think that's entirely true. There is reference to Apple. There's reference to some case-specific facts. But he's right if he means that I'm not doing a fully granular case-specific analysis. That's what Cathy Lawton is doing."

*Id.* at 211:8-22, emphasis added. Thus, Prof. Teece's abstract and unhelpful opinions were the result of a conscious effort to provide only "general" information.[2]

Prof. Teece further admitted that he did not analyze the impact of live streaming in connection with his "digital convergence" theories; nor has he ever performed any analysis of live streaming. *Id.* at 24:11-17. Instead, Prof. Teece based his opinions on his being "somewhat familiar with the trade press because I do follow it to some extent" (*id.* at 43:1-22), the fact that "Apple is one of the companies that I follow," and that "[t]he mobile telephony space is one that I pay attention to" (*id.* at 101:1-11). Prof. Teece also testified that "I am familiar with the evolution of -- of streaming to some degree." *Id.* at 73:11-13. In short, Prof. Teece apparently learned about Apple and live streaming by following the news. Distilling the news will not help the jury in this case.

This is not the first time that Prof. Teece has inappropriately offered irrelevant opinions based on generic information with no connection to the case. In *Multimedia Patent Trust v. Apple Inc.*, Apple successfully established that Prof. Teece—as he does here—"improperly rel[ied] on generic industry data that has no nexus to the parties, the patents, or the accused products." 2012 WL 5873711, at *9.[3] The court stated that "[t]his generic industry data is not tethered to the relevant facts and circumstances of the present case," and "exclude[d] … Prof. Teece's expert testimony to the extent it relies on or is based on generic industry data as part of their damages analysis." *Id.* The same result is warranted here, because Prof. Teece's general opinions will not help the jury decide

---

[2] Prof. Teece's unfamiliarity with the relevant facts in the case is not surprising because he was not retained as an expert until October or November 2013, and Prof. Teece served his expert report on November 9, 2013. Ex. 2, Teece Depo. Tr. at 63:23-64:16. Emblaze appears to have retained Prof. Teece on the eve of the opening expert report deadline in an attempt to corroborate opinions of its damages expert, Catharine Lawton, concerning "general industry competitive parameters." *See id.* at 114:7-115:1; *see also id.* at 54:25-55:9 ("[A] jury will need to understand to properly appreciate the context of any future or any hypothetical licensing negotiation.").

[3] In *Multimedia Patent Trust v. Apple Inc.*, Prof. Teece had based his opinions on industry surveys and royalty rates—rather than on information tethered to the accused video-compression technology. *Multimedia Patent Trust*, 2012 WL 5873711, at *9.

any issues in this case. The Court should strike Prof. Teece's opinions because they do not comply with Rule 702(a).

### B. Professor Teece Does Not Reliably Apply His Principles To The Particular Facts Of The Case.

In addition to being irrelevant, Prof. Teece's opinions are not reliable. As discussed above, Prof. Teece's opinions were deliberately "general," "primarily at the level of principle" and not "case-specific." Ex. 2, Teece Depo. Tr. at 72:23-73:23 and 211:5-25. In fact, Prof. Teece testified that he was not asked to address "the specific facts in this case." *Id.* 127:8-15. Thus, by his own admission, Prof. Teece did not attempt to apply his opinions concerning digital convergence and network externalities to the particular facts of this case. *Id.*; *see* Ex. 1, Teece Report, ¶ 54 (mentioning "live streaming" for the first and only time in his report). As a result, even if the Court concludes that Prof. Teece's abstract opinions comply with Rule 702(a), the Court should strike Prof. Teece's opinions based on Rule 702(d) since Prof. Teece did not apply the particular facts of this case to the principles he identified. *See Uniloc USA, Inc.*, 632 F.3d at 1318 (expert opinions "must be tied to the relevant facts and circumstances of the particular case at issue").

Nor could Prof. Teece have done so. Prof. Teece did not review a single document produced by either party (including the patent), did not review any deposition transcripts and did not confer with any fact witnesses in this case. *See* Ex. 2, Teece Depo. Tr. at 45:25-46:4, 48:23-25, 49:18-24, 118:12-20. Prof. Teece also testified that he did not review any materials concerning live streaming in connection with this case because the materials he has considered are "usually at a higher level of generality than that." *Id.* at 71:16-20. Prof. Teece further admitted that he did not know or had not considered many fundamental issues at the intersection of live streaming and his "digital convergence" theories:

- he could not opine as to the "importan[ce] and the distinction between live and other forms of streaming" (*id.* at 103:23-25);
- he was not sure how frequently live streaming was used by consumers (*id.* at 87:19-88:10, 93:12-24);

/////

---

APPLE'S MOTION TO PRECLUDE TEECE TESTIMONY    - 7 -    CASE NO. 5:11-CV-01079 PSG

- he did not know and had never investigated the portion of apps on the App Store that are capable of live streaming (*id.* at 102:17-103:5); and

- he was not asked to consider the availability of non-infringing alternatives to Apple (*id.* at 115:11-15).

Indeed, at his deposition, Prof. Teece testified regarding the Emblaze "patents" when only one patent is asserted (*id.* at 47:2-7, 55:24-56:1, 46:20-22)[4] and was "not entirely sure" as to all of the Apple devices that Emblaze had accused of infringement in this case (*id.* at 137:13-19). Without having reviewed or considered the fundamental facts and circumstances in this case, Prof. Teece could not possibly have applied his abstract principles to those facts.[5] Thus, Prof. Teece's opinions do not comply with Rule 702(d) and should be stricken.

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant Apple's motion and strike Prof. Teece's irrelevant and unreliable opinions in their entirety and preclude Prof. Teece from testifying at trial.

Dated: May 20, 2014                                   DLA PIPER LLP (US)

By: */s/ Mark Fowler*
Mark Fowler (Bar No. 124235)
mark.fowler@dlapiper.com
Robert Buergi (Bar No. 242910)
robert.buergi@dlapiper.com

---

[4] Prof. Teece's repeated references to the Emblaze "patents" suggests that he believes that Emblaze has asserted multiple patents against Apple in this case. *See* Ex. 2, Teece Depo. Tr. at 47:2-7 (recalling conversations with counsel for Emblaze that "Apple was accused of infringing Emblaze – Emblaze's patents or some of Emblaze's patents in its streaming technologies, its HTTP-based streaming technologies), 55:24-56:1 (testifying that he learned from Ms. Lawton "the obvious points that this -- that the patents at issue implicated streaming"), 46:20-22 ("I was just simply aware that there was a patent litigation going on around certain Emblaze patents.").

[5] Prof. Teece's apparent reliance on conversations with Ms. Lawton—which "helped shaped the <u>content and the scope</u> of -- of my report"—is equally unavailing. Ex. 2, Teece Depo. Tr. at 53:5-18 (emphasis added); *see also id.* at 57:14-16 (testifying that his conversations with Ms. Lawton were "primarily to get an understanding of issues that would be appropriate for building the relevant background"). That Prof. Teece was apparently told by Ms. Lawton what "content" he should include in his report hardly constitutes the "sound economic and factual predicates" for expert opinions required by the Federal Circuit (*LaserDynamics, Inc.*, 694 F.3d at 67), especially because Ms. Lawton claims to have relied on Prof. Teece's opinions in forming her own opinions in this case. *See* Ex. 3, Transcript of Catharine Lawton Deposition at 64:23-65:12.

| | |
|---|---|
| 1 | DLA PIPER LLP (US) |
| 2 | 2000 University Avenue |
|   | East Palo Alto, California 94303 |
| 3 | T: 650.833.2000 |
|   | F: 650.833.2001 |
| 4 | |
| 5 | John Allcock (Bar No. 98895) |
|   | john.allcock@dlapiper.com |
| 6 | Erin Gibson (Bar No. 229305) |
|   | erin.gibson@dlapiper.com |
| 7 | Robert Williams (Bar No. 246990) |
|   | robert.williams@dlapiper.com |
| 8 | DLA PIPER LLP (US) |
|   | 401 B Street, Suite 1700 |
| 9 | San Diego, California 92101 |
| 10 | T: 619.699.2862 |
|    | F: 619.764.6662 |
| 11 | |
| 12 | GREENBERG TRAURIG, LLP |
| 13 | Sarah Barrows (SBN 253278) |
|    | barrowss@gtlaw.com |
| 14 | William Coats (SBN 94864) |
|    | coatsw@gtlaw.com |
| 15 | Stephen Ullmer (SBN 277537) |
|    | ullmers@gtlaw.com |
| 16 | GREENBERG TRAURIG, LLP |
| 17 | 4 Embarcadero Center, Suite 3000 |
|    | San Francisco, CA 94111-5983 |
| 18 | Telephone: (415) 655-1300 |
|    | Facsimile: (415) 707-2010 |
| 19 | |
| 20 | James J. DeCarlo (Admitted *Pro Hac Vice*) |
|    | decarloj@gtlaw.com |
| 21 | Michael A. Nicodema (Admitted *Pro Hac Vice*) |
|    | nicodemam@gtlaw.com |
| 22 | GREENBERG TRAURIG, LLP |
|    | MetLife Building |
| 23 | 200 Park Avenue, 34th Floor |
|    | New York, New York 10166 |
| 24 | Tel.: (212) 801-9200 |
|    | Fax: (212) 801-6400 |
| 25 | |
| 26 | *Attorneys for Defendant Apple Inc.* |
| 27 | |
| 28 | |