1  MARK FOWLER (Bar No. 124235)
   *mark.fowler@dlapiper.com*
2  ROBERT BUERGI (Bar No. 242910)
   *robert.buergi@dlapiper.com*
3  DLA PIPER LLP (US)
   2000 University Avenue
4  East Palo Alto, CA  94303-2214
   Tel:  650.833.2000
5  Fax:  650.833.2001

6
   JOHN ALLCOCK (Bar No. 98895)
7  *john.allcock@dlapiper.com*
   ERIN GIBSON (Bar No. 229305)
8  *erin.gibson@dlapiper.com*
   ROBERT C. WILLIAMS (Bar. No. 246990)
9  *robert.williams@dlapiper.com*
   DLA PIPER LLP (US)
10 401 B Street, Suite 1700
   San Diego, CA  92101
11 Tel: 619.699.2700
   Fax: 619.699.2701
12

SARAH BARROWS (Bar No. 253278)
*barrowss@gtlaw.com*
STEPHEN ULLMER (Bar No. 277537)
*ullmers@gtlaw.com*
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA  94111-5983
Tel.:  415.655.1300
Fax:  415.707.2010

JAMES J. DECARLO (*Pro Hac Vice*)
*decarloj@gtlaw.com*
MICHAEL A. NICODEMA (*Pro Hac Vice*)
*nicodemam@gtlaw.com*
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York  10166
Tel:  212.801.9200
Fax:  212.801.6400

13 Attorneys for Defendant
   APPLE INC.
14

15

16                 UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

                      SAN JOSE DIVISION
18

19

20 EMBLAZE LTD.,

21          Plaintiff,

   v.
22
   APPLE INC., a California corporation,
23
            Defendant.
24

25

CASE NO.  5:11-CV-01079 PSG

**DEFENDANT APPLE INC.'S MOTIONS
*IN LIMINE***

Date:  June 17, 2014
Time:  10 a.m.
Place:  Courtroom 5, 4th Floor
Judge:  Hon. Paul S. Grewal

26

27

28

APPLE'S MOTIONS *IN LIMINE*                                    CASE NO. 5:11-CV-01079 PSG

**TABLE OF CONTENTS**

**Page**

I.      APPLE'S MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO
        APPLE'S TOTAL REVENUES, PROFITS, CASH, EARNINGS AND SIMILAR
        FINANCES. .................................................................................................................. 1

II.     APPLE'S MOTION IN LIMINE NO. 2 TO EXCLUDE REFERENCE TO
        UNRELATED LITIGATIONS, INVESTIGATIONS, ACCUSATIONS,
        SETTLEMENTS AND/OR PRIOR ALLEGED BAD ACTS INVOLVING
        APPLE OR STEVE JOBS. ........................................................................................ 3

III.    APPLE'S MOTION IN LIMINE NO. 3 TO EXCLUDE ANY EVIDENCE OR
        ARGUMENT REGARDING APPLE OR STEVE JOBS COPYING OTHERS. ............... 6

IV.     APPLE'S MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO ANY
        DISCOVERY DECISIONS OR DISPUTES, AND PURPORTED DISCOVERY
        FAILURES OF APPLE. ............................................................................................. 6

V.      APPLE'S MOTION IN LIMINE NO. 5 TO EXCLUDE EXPERT TESTIMONY
        BEYOND THE SCOPE OF EXPERT REPORTS, AND ANY OTHER
        EVIDENCE OR ARGUMENT REGARDING NON-INFRINGING STREAMS. ........... 8

VI.     APPLE'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OR
        ARGUMENT THAT APPLE DIRECTLY INFRINGES OR THAT ANYONE
        INFRINGES UNDER THE DOCTRINE OF EQUIVALENTS. .................................... 11

VII.    APPLE'S MOTION IN LIMINE NO. 7 TO EXCLUDE ANY EVIDENCE OR
        ARGUMENT REGARDING EXPERT TESTIMONY PREVIOUSLY
        EXCLUDED IN UNRELATED LITIGATION. ............................................................ 11

VIII.   APPLE'S MOTION IN LIMINE NO. 8 TO EXCLUDE ANY EVIDENCE OR
        ARGUMENT REGARDING APPLE'S ALLEGED COPYING OF EMBLAZE
        OR OTHER SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS
        THAT EMBLAZE INTENTIONALLY WITHDREW IN THIS CASE. ........................ 12

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Burke v. Deere & Co.*,
    6 F.3d 497 (8th Cir. 1993)............................................................................................... 1

5

6

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
    418 F. Supp. 2d 1021 (S.D. Ind. 2006), *aff'd* 576 F.3d 1348 (Fed. Cir. 2009)...................... 10

7

*Cimino v. Raymark Indus., Inc.*,
    No. 86-cv-0456, 1989 WL 253889 (E.D. Tex. Sept. 23, 1989).................................................. 1

8

9

*Edwards v. ATRO SpA*,
    891 F. Supp. 1074 (E.D.N.C. 1995)............................................................................... 6

10

*Fujitsu v. Netgear*,
    620 F.3d 1321 (Fed. Cir. 2010).................................................................................. 8, 9

11

12

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006).................................................................................. 10

13

14

*Guzik Tech. Enters., Inc. v. Western Digital Corp.*,
    No. 5:11-cv-03786-PSG, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013)................................ 5

15

*Igo v. Coachmen Indus., Inc.*,
    938 F.2d 650 (6th Cir. 1991)....................................................................................... 1

16

17

*Imagexpo, L.L.C. v. Microsoft Corp.*,
    284 F. Supp. 2d 365 (E.D. Va. 2003)........................................................................... 10

18

19

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)....................................................................................... 2

20

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)................................................................................... 5

21

22

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
    No. 08-cv-04990 JW, 2012 WL 2339762 (N.D. Cal. June 7, 2012) ...................................... 7

23

24

*Oak Indus., Inc. v. Zenith Electronics Corp.*,
    726 F. Supp. 1525 (N.D. Ill. 1989) .............................................................................. 10

25

26

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir. 1988)........................................................................................ 6

27

*ResQNet Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)..................................................................................... 5

28

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3   *State Farm Mut. Auto. Ins. Co. v. Campbell,*

4        538 U.S. 408 (2003) ........................................................................................ 1

5   *Uniloc USA, Inc. v. Microsoft Corp.,*
         632 F.3d 1292 (Fed. Cir. 2011) ................................................................ 1, 2, 5

6

7   *United HealthCare Corp. v. American Trade Ins. Co.,*
         88 F.3d 563 (8th Cir. 1996) ........................................................................... 6

8   *Wordtech Sys. v. Integrated Networks Solutions, Inc.,*
         609 F.3d 1308 (Fed. Cir. 2010) ..................................................................... 5

9

10   **STATUTES**

11   35 U.S.C. § 284 .................................................................................................. 9

12   **OTHER AUTHORITIES**

13   Fed. R. Evid. 401 .............................................................................................. 6

14   Fed. R. Evid. 402 ...................................................................................... passim

15   Fed. R. Evid. 403 ...................................................................................... passim

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I. APPLE'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCE TO APPLE'S TOTAL REVENUES, PROFITS, CASH, EARNINGS AND SIMILAR FINANCES.

Emblaze should be precluded from introducing evidence or argument on Apple's U.S. and worldwide gross revenues, gross margins, profits, earnings, cash, investments, income and income projections, including total profits or revenues from Apple products. These financial figures have no place in this case, which is limited to seven accused content provider streams viewed on accused iPhones, iPads, iPod touches, AppleTVs, and Macs. Emblaze has indicated it will try to introduce this irrelevant and prejudicial evidence in an improper attempt to argue that Emblaze is entitled to damages because Apple is a wealthy company that has made a lot of cash, revenue and profits, and to make Emblaze's inflated damages claim appear more palatable to the jury.

Any of these multi-million to multi-billion dollar figures threaten to "skew the damages horizon for the jury" and must be excluded. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320-21 (Fed. Cir. 2011). Evidence of a party's net worth and wealth is "totally irrelevant to the issue of compensatory damages." *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993). The "presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003), internal quotations omitted. Indeed, the admission of arguments about a party's wealth, size, and corporate status in an effort to bias the jury constitutes prejudicial error. *Igo v. Coachmen Indus., Inc.*, 938 F.2d 650, 653 (6th Cir. 1991); *see Cimino v. Raymark Indus., Inc.*, No. 86-cv-0456, 1989 WL 253889, at *13 (E.D. Tex. Sept. 23, 1989) ("If [net worth] testimony is allowed before the Jury decides liability or compensatory damages, there is the significant hazard that the Jury's determination on the amount of actual damages (and arguably other findings) might be influenced.").

Furthermore, evidence of entire profits or revenues earned from sales of accused products are irrelevant and highly prejudicial in cases where the patented invention does not create the basis for customer demand. *Uniloc*, 632 F.3d at 1320 (the "$19 billion cat was never put back

1    into the bag" and neither cross-examination nor a jury instruction could offset resulting

2    prejudice); *see LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012)

3    ("Admission of such overall revenues, which have no demonstrated correlation to the value of the

4    patented feature alone, only serve to make a patentee's proffered damages amount appear modest

5    by comparison, and to artificially inflate the jury's damages calculation beyond that which is

6    adequate to compensate for the infringement."), internal quotation marks omitted.

7          Here, Emblaze's damages expert Catharine Lawton explicitly concedes that the Emblaze

8    patent is not the basis for consumer demand for Apple products, yet she continually references

9    Apple's wealth and product revenues.  Ex. A,[1] Expert Report of Catharine M. Lawton ("Lawton

10   Report"), at 503 (live streaming "clearly is not the basis for customer demand related to

11   smartphones"), internal quotation marks omitted.  Ms. Lawton cites Apple's net sales from

12   worldwide business operations, gross margin, share price, total market capitalization, total cash

13   and cash equivalents, total investments, worldwide revenue by product, total sales, total profits,

14   worldwide market share, operating income, valued acquisitions, total store revenue, and earnings.

15   *See, e.g.*, D.E. 430-2, Redacted Excerpts of Expert Report of Catharine M. Lawton ("Redacted

16   Lawton Report"), at 467; Ex. A, Lawton Report, at 73-76, 83-84, 91, 98, 119-21, 134-36, 179,

17   193, 382-83, 385, 408-09, 435, 442 and 444.  Many of these figures come from a 33-year span

18   that far exceeds the liability period.  Ms. Lawton never performs any form of apportionment of

19   these figures, either.  They are totally irrelevant to the proper measure of damages, if any, in this

20   case.

21          The effect of this irrelevant and prejudicial evidence of Apple's wealth, overall revenues,

22   profits, cash and earnings would only be to encourage the jury to evaluate damages based on

23   Apple's ability to pay a large judgment.  This irrelevant and prejudicial evidence also could lead

24   to jury confusion about the appropriate revenue base for damages.  The Court should exclude

25   such evidence under *Uniloc*, *LaserDynamics* and Federal Rules of Evidence 402 and 403.

26   /////

27   _____

[1] Unless otherwise indicated, all exhibits identified herein are attached to the Declaration of Erin
28   Gibson.

II.     **APPLE'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCE TO UNRELATED LITIGATIONS, INVESTIGATIONS, ACCUSATIONS, SETTLEMENTS AND/OR PRIOR ALLEGED BAD ACTS INVOLVING APPLE OR STEVE JOBS.**

The Court should preclude Emblaze from offering evidence or argument regarding alleged past misconduct and the alleged poor character of Apple and Steve Jobs, as well as any prior unrelated litigations, investigations, accusations, or settlements involving Apple or Mr. Jobs. Such evidence would confuse and mislead the jury, and is entirely irrelevant to the issues in this lawsuit. Because this evidence serves no legitimate purpose other than to prejudice the jury against Apple, the Court should exclude it from trial under Federal Rules of Evidence 402 and 403.[2]

Apple is a large, publicly traded company. Thus, Apple is often named as a defendant in lawsuits, such as patent infringement and consumer lawsuits, which have nothing to do with the live streaming technology at issue in this case. From time to time, Apple also has been subject to government investigations that have nothing to do with this case. Apple also has filed patent infringement lawsuits against its competitors, seeking damages for infringement of Apple patents that, again, have nothing to do with this case. Apple's former Chief Executive Officer Steve Jobs has been the subject of many unauthorized books and articles published by third parties, several of which attack Mr. Jobs' leadership and character. Those attacks have nothing to do with this case.

---

[2] Apple is willing to live by the same approach. For example, Eli Reifman, Emblaze's co-founder and former director and president, was convicted of fraud and forgery, and sentenced to four years in jail in Israel. Globes, Israel's Business Arena, "Eli Reifman sentenced to four years jail," http://www.globes.co.il/en/article-1000683806; Haaretz, "Reifman creditors seek NIS 86m in lawsuit filed against Emblaze," http://www.haaretz.com/business/reifman-creditors-seek-nis-86m-in-lawsuit-filed-against-emblaze-1.440051. Various articles suggest connections exist between Mr. Reifman and Israeli organized crime, in particular based on several attempts on Mr. Reifman's life. Globes, "Shots fired at Emblaze chairman Eli Reifman's car," http://www.globes.co.il/en/article-1000499521; The Jerusalem Post, "Reifman gets 4 years for fraud," http://www.jpost.com/National-News/Reifman-gets-4-years-for-fraud. Based on the anticipated scope of testimony and witnesses at trial, Apple does not intend to offer this evidence, even though it is arguably more relevant than accusations that Apple's deceased co-founder was "an assaholic."

1    As set forth in Apple's motion to exclude the testimony of Emblaze's damages expert

2    Catharine Lawton (D.E. 430), Ms. Lawton devoted hundreds of pages in her expert report to

3    bashing Apple and Mr. Jobs.  These "opinions" primarily are in the form of extensive quotations

4    from books and articles, are irrelevant to reasonable royalty damages, and amount to nothing

5    more than unfair and prejudicial mudslinging.  D.E. 430, Apple Motion to Exclude Opinions and

6    Testimony of Catharine Lawton ("Lawton *Daubert* Motion"), at 7-8, 24-25.  Exclusion of these

7    "opinions" is particularly appropriate given this Court's grant of summary judgment of no willful

8    infringement.  D.E. 424 ("MSJ Order") at 27-29.  Emblaze's and Ms. Lawton's hundreds of pages

9    of accusations—characterizing Apple as an "unusually secretive" company of "paranoid security

10   Nazis" run by a "pathological" "assaholic" that has "always been shameless about stealing great

11   ideas"—have no place in this lawsuit.  *See* D.E. 430, Lawton *Daubert* Motion, at **Section II.C**,

12   collecting exemplary citations.

13   Ms. Lawton also references many prior, unrelated lawsuits involving Apple or Mr. Jobs in

14   her report.  And Ms. Lawton makes continual reference to the Apple litigation against Samsung,

15   as well as litigation and disputes between Apple and others, such as Motorola, Cisco, Bob Dylan,

16   Mirror Worlds, VirnetX, and Microsoft.  *See, e.g.*, Ex. A, Lawton Report, at 87-89, 403-07, 413-

17   417.  Many of these disputes involve allegations that Apple stole trademarks or used copyrighted

18   material without permission, among other things.  *Id.* at 392-407.  Ms. Lawton further opines

19   regarding various litigation settlements involving Apple—such as a 33-year-old settlement

20   agreement resolving a trademark dispute with Apple Corps.  *Id.* at 403.  None of these lawsuits,

21   disputes or accusations have anything to do with this case or the live streaming technology at

22   issue.

23   Only two Apple licenses arising from settlement agreements (with Burst.com and Multi-

24   Format, Inc.), which are cited by Apple's expert James Malackowski, have been alleged to be

25   technologically and economically comparable to the technology at issue in this case.  Ex. B,

26   Expert Rebuttal Report of James E. Malackowski ("Malackowski Report"), at 98-99.  By contrast,

27   Ms. Lawton did not opine that any of the Apple settlements she collects in her expert report are

28   technologically or economically comparable, because they are not.  *See, e.g.*, Ex. A, Lawton

1    Report, at 392-407.  Thus, with the exception of the Burst.com and Multi-Format, Inc. agreements,

2    no other licenses arising from Apple settlements can be relevant to a reasonable royalty in this

3    case.  *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)

4    ("[C]omparisons of past patent licenses to the infringement must account for 'the technological

5    and economic differences' between them."), quoting *ResQNet Inc. v. Lansa, Inc.*, 594 F.3d 860,

6    873 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009)

7    (an expert may not rely on license agreements that are "radically different from the hypothetical

8    agreement under consideration" to determine a reasonable royalty); *see also Uniloc*, 632 F.3d at

9    1318 ("[E]vidence purporting to apply to [the Georgia-Pacific factors], must be tied to the relevant

10   facts and circumstances of the particular case at issue and the hypothetical negotiations that would

11   have taken place in light of those facts and circumstances at the relevant time.").  Even for the

12   Burst.com and Multi-Format, Inc. license agreements, reference to those license agreements as

13   "settlements" of a prior lawsuit or to the underlying litigation is unnecessary, more prejudicial

14   than probative, and thus improper under Federal Rule of Evidence 403.

15        In sum, not only should Ms. Lawton be precluded from offering her far flung "opinions"

16   bashing Apple and Steve Jobs, as set forth in Apple's pending *Daubert* motion (D.E. 430),

17   Emblaze also should be precluded from offering any similar evidence or argument at trial.  At the

18   very least, such evidence or argument is more prejudicial than probative under Federal Rule of

19   Evidence 403.  As this Court has noted, the "probative value of evidence pertaining to [a party's]

20   past acts is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

21   and misleading the jury."  *Guzik Tech. Enters., Inc. v. Western Digital Corp.*, No. 5:11-cv-03786-

22   PSG, 2013 WL 6227626, at *2-3 (N.D. Cal. Nov. 22, 2013) (precluding defendant from

23   introducing evidence that the inventor often got angry and screamed).  In *Guzik*, the Court also

24   noted that "[t]he relevance of Mr. Guzik's temperament is dampened by the court's order that

25   willfulness will not be submitted to the jury."  *Id.* at *3.

26        Here, Emblaze's planned anti-Apple testimony is much more inflammatory and

27   prejudicial than the potential evidence at issue in *Guzik*, and its relevance is also dampened based

28   on the Court's grant of summary judgment of no willful infringement.  D.E. 424, MSJ Order, at

APPLE'S MOTIONS *IN LIMINE*                    -5-                      CASE NO. 5:11-CV-01079 PSG

27-29.  Such evidence has no place before the jury at trial.  *See United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 573 (8th Cir. 1996) (evidence of other lawsuits did not make the existence of any fact in issue more or less probable, and was properly excluded under Federal Rule of Evidence 401); *Outley v. City of New York*, 837 F.2d 587, 595 (2d Cir. 1988) (introducing other litigation "invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues"); *Edwards v. ATRO SpA*, 891 F. Supp. 1074, 1082 (E.D.N.C. 1995) (excluding evidence of other lawsuits to avoid prejudice and confusion).

**III.    APPLE'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE OR ARGUMENT REGARDING APPLE OR STEVE JOBS COPYING OTHERS.**

The Court should preclude Emblaze from offering any evidence or argument regarding Apple or Steve Jobs copying third parties' products, ideas or inventions.  Emblaze's damages expert Ms. Lawton has opined at great length regarding Apple's purported history of copying others' products, inventions or ideas.  Among other things, she opines that Apple copied the Rio music player to create the iPod.  *See, e.g.*, Ex. A, Lawton Report, at 112-13.  She further opines that Apple has "always been shameless about stealing great ideas" (*id.* at 89, emphasis omitted) and that Apple repeatedly has been alleged to take or copy others' intellectual property without permission (*id.* at 403-07).  This Court has granted summary judgment of no willful infringement, dampening any potential relevance of this evidence.  D.E. 424, MSJ Order, at 27-29.  Moreover, Emblaze has not shown that Apple's alleged copying of any third parties' products, ideas, or inventions has anything to do with the technology at issue in this case.  Because this evidence is just as inflammatory as it is irrelevant, any allegations that Apple or Mr. Jobs copied third parties' products, ideas or inventions should be excluded as more prejudicial than probative under Federal Rules of Evidence 402 and 403.

**IV.    APPLE'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCE TO ANY DISCOVERY DECISIONS OR DISPUTES, AND PURPORTED DISCOVERY FAILURES OF APPLE.**

The Court should preclude Emblaze from any argument or testimony regarding any prior discovery decisions in this case, discovery disputes and purported discovery failures of Apple. The Court has resolved all discovery motions brought by Emblaze, and Apple has complied with

1    all discovery orders.  Despite this, Apple expects that Emblaze will try to patch holes in its case

2    by blaming Apple for Emblaze's many failures of proof on infringement and damages.  Such

3    testimony is irrelevant and may lead the jury to conclude that Apple has tried to gain a litigation

4    advantage by suppressing evidence, or that a lack of documents somehow excuses Emblaze's

5    burden of proof.

6         For example, when Emblaze moved to compel production of license agreements, trial

7    transcripts and exhibits from the *Apple v. Samsung* case, additional licensing Rule 30(b)(6)

8    deposition testimony, and internal marketing valuations of HLS, the Court ruled against Emblaze.

9    D.E. 294.  Nevertheless, Emblaze's damages expert Catharine Lawton claimed in her expert

10   report and deposition that she could not perform a complete damages analysis because Apple did

11   not produce that information, among many, many other things.  *See, e.g.*, Ex. A, Lawton Report,

12   at 4-5, 264, 270, 289, 377, 386, 410, 415-17, 421, 425, 431-32, 435, 436, 442-43, 465, 485-86;

13   D.E. 430-2, Redacted Lawton Report, at 261, 387, 500; D.E. 430-3, Deposition Transcript of

14   Catharine Lawton, at 38 ("I'm not here to say his opinion's right or wrong.  I'm here to tell you in

15   30 years of practice in this field, I have never seen more limited information produced.").  Indeed,

16   Ms. Lawton's expert report repetitively points to documents that she purports Apple has not

17   produced—each time apparently acknowledging her analysis is deficient.  She goes so far as to

18   opine: "Given that Apple is unusually secretive, this may explain Apple's failure to provide these

19   basic business records.  … Apple has a '**playbook**,' that it keep[s] secret; '**Secrecy is a central**

20   **facet of life there**.'"  Ex. A, Lawton Report, at 425, emphasis in original.  Ms. Lawton even

21   contests Apple's attorneys' arguments filed in an opposition brief to a discovery motion Emblaze

22   lost.  D.E. 430-2, Redacted Lawton Report, at 387.  As set forth in Apple's *Daubert* motion,

23   Apple did nothing to preclude Ms. Lawton from performing a proper damages analysis in this

24   case.  D.E. 430, Lawton *Daubert* Motion, at 9-15.  She simply chose not to do so.  *Id.*

25        "Evidence of the parties' discovery disputes are not relevant to the questions of patent

26   validity or infringement, and thus should not be presented to the jury."  *Mformation Techs., Inc. v.*

27   *Research in Motion Ltd.*, No. 08-cv-04990 JW, 2012 WL 2339762, at *2 (N.D. Cal. June 7,

28   2012).  Emblaze and its experts should not be permitted to claim at trial that Apple was secretive,

1    suppressed evidence, or failed to produce documents or deposition testimony, or that a lack of

2    discovery excuses any of Emblaze's many failures of proof on infringement and damages. These

3    false arguments would only serve to confuse and mislead the jury to believe that Apple has tried

4    to gain an advantage by suppressing evidence, which Apple has not done.

5    **V.    APPLE'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EXPERT TESTIMONY
         BEYOND THE SCOPE OF EXPERT REPORTS, AND ANY OTHER EVIDENCE
6        OR ARGUMENT REGARDING NON-INFRINGING STREAMS.**

7           The Court should preclude Emblaze from offering expert testimony beyond the scope of

8    its expert reports, in particular as ordered by the Court in its summary judgment order, and should

9    preclude any other evidence or argument that non-infringing content provider streams practice the

10   asserted patent claims or otherwise create liability for Apple.

11          In ruling upon Apple's summary judgment motions, the Court made several issue-

12   conclusive rulings that should limit the scope of evidence and argument at trial.

13          First, the Court granted partial summary judgment of non-infringement as to any

14   unanalyzed content provider streams. D.E. 424, MSJ Order, at 17. As a result, Emblaze should

15   not be permitted to introduce evidence or argument at trial that these unanalyzed, non-infringing

16   streams practice the asserted patent claims. Specifically, in seeking summary judgment, Apple

17   argued and established that Emblaze carried, but failed to meet, an obligation with respect to each

18   of the unanalyzed streams to show both that they use HLS and that HLS necessarily practices the

19   asserted claims. *Id.*, citing *Fujitsu v. Netgear*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010) (an

20   accused product operating according to a standard is not a basis for infringement absent a

21   comparison of the standard to the asserted claims to show that compliance with the standard

22   necessarily infringes); Ex. C, April 8, 2014 Hr'g Tr. ("Hr'g Tr."), at 33:19-35:12. Emblaze failed

23   to rebut Apple's summary judgment showing on this issue. D.E. 407, Apple Reply In Supp. Mot.

24   for Sum. J., at 9-10. Indeed, Emblaze did not even contest Apple's showing at the hearing. The

25   Court thus correctly found that:

26          Emblaze concedes it did not analyze certain streams – e.g. CNN,
            Fox News, NBC and Fox Sports – nor did it opine that HLS
27          necessarily practices the asserted claims. Emblaze also conceded at
            oral argument that it is not accusing unanalyzed content streams.
28          Based on these concessions the court grants partial summary

1    judgment of non-infringement as to the unanalyzed content
     provider streams.

2

3    D.E. 424, MSJ Order, at 17.

4         Emblaze very clearly made these concessions at the hearing, stating "our position is this,

5    with respect to streams we did not analyze, I'm talking about content providers we did not

6    analyze, we are not accusing those streams." Ex. C, Hr'g Tr., at 55:11-15; *see id.* at 55:17-20

7    (Court clarifying, and Emblaze agreeing, that CNN and NBC streams are "not in the case"), 56:1-

8    3 ("So with that understanding, I don't have a problem saying that the content providers that we

9    didn't address we are not accusing.  I agree with that.").

10        Several weeks after the Court's ruling, Emblaze sent a letter to the Court apparently

11   attempting to undo the Court's summary judgment order, without seeking reconsideration of that

12   order. D.E. 427, May 19, 2014 Letter from Pavane.  In its letter, Emblaze claims Apple wrongly

13   stated at the hearing that HLS is not generally accused of infringement in this case even though

14   Emblaze expressly conceded at the hearing that unanalyzed content streams are not accused of

15   infringement. *Compare* D.E. 427 at 1 *with* Ex. C, Hr'g Tr., at 55:9-16.  Notably, Emblaze did not

16   establish on summary judgment that the seven specifically accused, analyzed content provider

17   streams that currently remain in the case are representative of the unanalyzed streams—nor could

18   it, because not all content provider streams operate the same way. *See* D.E. 424, MSJ Order, at

19   19-23.  Content providers and their content delivery network partners can prepare their streams at

20   the transmitting computer and upload them to a server in different ways. D.E. 348-8, HTTP Live

21   Streaming, at § 6.2.1.  Nor did Emblaze argue on summary judgment that the unaccused HLS

22   streams comply with the HLS protocol and that the HLS protocol necessarily infringes the

23   asserted claims. *See* D.E. 424, MSJ Order, at 17.  Thus, citing *Fujitsu,* the Court properly granted

24   partial summary judgment of non-infringement as to unanalyzed streams. *Id.*

25        With summary judgment of non-infringement having been entered as to unanalyzed

26   streams, Emblaze cannot introduce evidence or argument at trial that these non-infringing streams

27   practice the asserted patent claims.  Moreover, because patent damages are intended to

28   compensate the patentee for the alleged actual infringement (35 U.S.C. § 284), Emblaze also

APPLE'S MOTIONS *IN LIMINE*                    -9-                    CASE NO. 5:11-CV-01079 PSG

1   cannot introduce evidence or argument at trial that Apple is liable for damages for induced

2   infringement based upon the unanalyzed, non-infringing streams.  *See, e.g.*, *Cardiac Pacemakers,*

3   *Inc. v. St. Jude Medical, Inc.*, 418 F. Supp. 2d 1021, 150 (S.D. Ind. 2006), *aff'd* 576 F.3d 1348

4   (Fed. Cir. 2009) ("Absent proof that St. Jude's devices were programmed for and actually

5   executed the claimed method, CPI may not recover damages for the sales of devices merely

6   capable of infringing."); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1372-73

7   (Fed. Cir. 2006) (damages award must be reduced by number of units returned without being

8   assembled into infringing product); *Imagexpo, L.L.C. v. Microsoft Corp.*, 284 F. Supp. 2d 365,

9   369-70 (E.D. Va. 2003) (where not every sale leads to direct infringement, plaintiff must establish

10   the connection between sales and direct infringement to establish damages for indirect

11   infringement); *Oak Indus., Inc. v. Zenith Electronics Corp.*, 726 F. Supp. 1525, 1543-44 (N.D. Ill.

12   1989) (damages must be apportioned between infringing and non-infringing uses).

13          Second, while the Court declined to grant summary judgment of non-infringement as to

14   the asserted apparatus claims, the Court stated that it would not permit Emblaze's technical

15   expert, Vijay Madisetti, to stray beyond the very narrow "incorporation by reference" opinion set

16   forth in his expert report that the apparatus claims allegedly are infringed for the same reasons the

17   method claims are infringed.  D.E. 424, MSJ Order, at 18.  Specifically, the Court correctly noted

18   that Dr. Madisetti's expert report "concludes by reference that Apple induces MLB Advanced

19   Media, which offers MLB AT BAT, to infringe the asserted apparatus claims of the '473 patent

20   'for the same reasons discussed above' for the related asserted method claims."  *Id*.  The Court

21   ruled that while it would "not speculate whether this incorporation by reference strategy will

22   succeed at trial," it also "would not permit Madisetti to stray from opinions disclosed in his

23   report… ."  *Id.*  In accordance with the Court's order, Emblaze and Dr. Madisetti should be

24   precluded from offering evidence or argument at trial beyond Dr. Madisetti's extremely thin

25   "incorporation by reference" opinion regarding alleged infringement of the apparatus claims.

26          Third, the Court declined to grant summary judgment of non-infringement as to the

27   accused ESPN and NFL Preseason streams, but recognized that Dr. Madisetti's analysis of those

28   streams "is hardly a model of clarity, or disclosure" and "appears to be just enough to squeak by

APPLE'S MOTIONS *IN LIMINE*                          -10-                          CASE NO. 5:11-CV-01079 PSG

1    under Ninth Circuit law." D.E. 424, MSJ Order, at 23.  As the Court found, Dr. Madisetti merely

2    "bootstraps" his infringement arguments regarding these streams "onto his more fulsome analysis

3    of MLB AT BAT." *Id.*  Emblaze and Dr. Madisetti should be precluded from offering evidence

4    or argument at trial regarding alleged infringement involving ESPN and NFL Preseason streams

5    beyond Dr. Madisetti's existing extremely thin "bootstrap" opinion.

6    **VI.    APPLE'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE OR
           ARGUMENT THAT APPLE DIRECTLY INFRINGES OR THAT ANYONE
7           INFRINGES UNDER THE DOCTRINE OF EQUIVALENTS.**

8            The Court should preclude Emblaze from offering evidence or argument that Apple

9    directly infringes the asserted claims, or that any third party directly infringes under the doctrine

10   of equivalents, including arguments to that effect even if not labelled as such.

11           Emblaze conceded at the summary judgment hearing that it is not accusing Apple of direct

12   infringement, and Dr. Madisetti only opined that Apple induced infringement of the asserted

13   claims.  D.E. 424, MSJ Order, at 18.  Thus, the Court granted summary judgment that Apple is

14   not a direct infringer.  *Id.*  Emblaze is not asserting infringement under the doctrine of

15   equivalents, either.  D.E. 310, Emblaze Opp. to Mot. to Exclude, at 20 n.4 ("Emblaze will not rely

16   on the doctrine of equivalents to support its infringement claims.").  Thus, the Court should

17   exclude any evidence or argument that Apple directly infringes the asserted claims, or that

18   allegedly infringing products or uses that do not meet the literal claim limitations are nonetheless

19   close enough to find infringement.

20   **VII.   APPLE'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE ANY EVIDENCE OR
           ARGUMENT REGARDING EXPERT TESTIMONY PREVIOUSLY EXCLUDED
21          IN UNRELATED LITIGATION.**

22           The Court should preclude any evidence or argument regarding either party's expert's

23   testimony being stricken in a prior, unrelated litigation on positions unrelated to those he or she is

24   taking in this case.  Apple's damages expert James Malackowski has been an expert for both

25   plaintiffs and defendants in hundreds of lawsuits, including testifying at trial in more than 30

26   patent lawsuits.  As a result, Mr. Malackowski's expert testimony has been challenged several

27   times.  The fact that motions to strike his expert opinions previously were granted in whole or in

28   part has no bearing on his testimony in this case involving different parties, different facts and

APPLE'S MOTIONS *IN LIMINE*                     -11-                    CASE NO. 5:11-CV-01079 PSG

1   different expert opinions.  Because evidence or argument regarding Mr. Malackowski's opinions

2   having been stricken in a prior, unrelated lawsuit has no bearing on any issue to be decided for the

3   jury, this evidence should be excluded as more prejudicial than probative under Federal Rules of

4   Evidence 402 and 403.

5   **VIII.   APPLE'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE ANY EVIDENCE OR
         ARGUMENT REGARDING APPLE'S ALLEGED COPYING OF EMBLAZE OR**

6   **OTHER SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS THAT
       EMBLAZE INTENTIONALLY WITHDREW IN THIS CASE.**

7

8          The Court should preclude any evidence or argument regarding Apple's alleged copying

9   of Emblaze or other secondary considerations of non-obviousness that Emblaze intentionally

10   withdrew earlier in this case.  On July 25, 2013, Emblaze's lead counsel Martin Pavane sent an

11   email to Apple's counsel Doug Weider regarding whether Emblaze would produce a witness to

12   testify regarding certain 30(b)(6) topics propounded by Apple.  Regarding whether Emblaze

13   would produce a witness to testify on a topic related to secondary considerations of non-

14   obviousness, Mr. Pavane stated:

15          <u>We are not relying on Emblaze's products or services for
          commercial success</u>. Rather we are relying on Apple's commercial

16          success with HLS, and we will designate that testimony once we
          complete the depositions of the relevant Apple personnel.

17          Regarding long-felt need, we designate the testimony of Sharon
          Carmel.  <u>We are not asserting failure of others or copying</u>.

18

19   Ex. D, July 25, 2013 Pavane Email, emphasis added; Ex. E, Apple Rule 30(b)(6) Notice to

20   Emblaze, Topic 8.  Thus, Emblaze acknowledged that it was not making certain contentions

21   regarding secondary considerations of non-obviousness in this case in order to avoid discovery.

22          As a result of Emblaze's representations, Apple did not move to compel a witness

23   regarding secondary considerations of non-obviousness and did not further pursue this topic in

24   discovery.  Having withdrawn these contentions during discovery, Emblaze cannot make them to

25   the jury at trial.

26          Notably, the Court granted summary judgment of no willful infringement, so that Apple's

27   purported copying of Emblaze cannot relate to any claim or defense of any party other than non-

28   obviousness.  D.E. 424, MSJ Order, at 27-29.  Because Emblaze agrees it is not asserting copying

1    to show secondary indicia of non-obviousness (Ex. D), any evidence regarding Apple's purported

2    copying of Emblaze is irrelevant to any claim or defense of any party remaining for trial.  Such

3    evidence should be excluded as irrelevant under Federal Rule of Evidence 402, or in the very

4    least more prejudicial than probative under Federal Rule of Evidence 403.

5

6    Dated:  June 3, 2014                          DLA PIPER LLP (US)

7                                                 By:  /s/Mark Fowler
                                                      Mark Fowler (Bar No. 124235)
8                                                     mark.fowler@dlapiper.com
                                                      Robert Buergi (Bar No. 242910)
9                                                     robert.buergi@dlapiper.com
                                                      DLA PIPER LLP (US)
10                                                    2000 University Avenue
                                                      East Palo Alto, California 94303
11                                                    T: 650.833.2000
                                                      F: 650.833.2001
12
                                                      John Allcock (Bar No. 98895)
13                                                    john.allcock@dlapiper.com
                                                      Erin Gibson (Bar No. 229305)
14                                                    erin.gibson@dlapiper.com
                                                      Robert Williams (Bar No. 246990)
15                                                    robert.williams@dlapiper.com
                                                      DLA PIPER LLP (US)
16                                                    401 B Street, Suite 1700
                                                      San Diego, California 92101
17                                                    T: 619.699.2862
                                                      F: 619.764.6662
18
                                                      GREENBERG TRAURIG, LLP
19
                                                      Sarah Barrows (SBN 253278)
20                                                    barrowss@gtlaw.com
                                                      Stephen Ullmer (SBN 277537)
21                                                    ullmers@gtlaw.com
                                                      GREENBERG TRAURIG, LLP
22                                                    4 Embarcadero Center, Suite 3000
                                                      San Francisco, CA 94111-5983
23                                                    Telephone: (415) 655-1300
                                                      Facsimile: (415) 707-2010
24
                                                      James J. DeCarlo (Admitted *Pro Hac Vice*)
25                                                    decarloj@gtlaw.com
                                                      Michael A. Nicodema (Admitted *Pro Hac
26                                                    Vice*)
                                                      nicodemam@gtlaw.com
27                                                    GREENBERG TRAURIG, LLP
                                                      MetLife Building
28

APPLE'S MOTIONS *IN LIMINE*                  -13-                    CASE NO. 5:11-CV-01079 PSG

200 Park Avenue, 34th Floor
New York, New York 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Defendant Apple Inc.*