UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| EMBLAZE LTD., | ) | Case No. 5:11-cv-01079-PSG |
| | ) | |
| Plaintiff, | ) | **FINAL JURY INSTRUCTIONS** |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**FINAL INSTRUCTIONS**

**1.      Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.  A copy of these instructions will be sent with you to the jury room when you deliberate.  You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

## 2.    Summary of Contentions

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

As I previously told you, Emblaze seeks money damages from Apple for allegedly inducing others to directly infringe claims 23, 28, 37 and 40 of the '473 patent through live streaming to the following Apple products: iPhone, iPod Touch, iPad, iPad Mini, Apple TV, MacBook, MacBook Pro, MacBook Air and Mac Pro.  The accused live streams are: ABC News, PGA, MLB at Bat, NFL Preseason and ESPN, Apple Keynotes and iTunes Festival.

Apple denies that it has induced others to directly infringe the asserted claims of the patent and argues that, in addition, claims 23, 28, 37 and 40 are invalid.

Your job is to decide whether the asserted claims of the '473 patent have been infringed and whether any of the asserted claims of the '473 patent are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide money damages to be awarded to Emblaze to compensate it for the infringement.

You may have heard evidence that Apple has its own patents.  However, ownership of patents is not a defense to patent infringement and a party can still infringe even if it has its own patents in the same area.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**3.      Interpretation of Claims**

Before you decide whether Apple has infringed the claims of the patent or whether the claims are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**4.      Infringement – Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether Emblaze has proven that Apple has induced others to directly infringe one or more of the asserted claims of the patent.

To prove infringement of claim 23, Emblaze must persuade you that: (1) it is more likely than not that a single third party has directly infringed any claim; and (2) that it is more likely than not that Apple actively induced that third party to directly infringe that claim.

To prove infringement of claims 28, 37 or 40, Emblaze must persuade you that: (1) it is more likely than not that a single third party put an infringing apparatus into service, i.e., controlled the apparatus as a whole and obtained benefit from it; and (2) that it is more likely than not that Apple actively induced that third party to directly infringe that claim.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**5.     Direct Infringement**

A patent's claims define what is covered by the patent.  A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Emblaze alleges that third parties are direct infringers, and that Apple actively induces those third parties to literally and directly infringe.  The content providers' live streams other than the following live streams do not infringe: ABC News, PGA, MLB at Bat, NFL Preseason, ESPN, Apple Keynotes and iTunes Festival.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether a single third party has made, used, sold, offered for sale or imported within the United States a product or method covered by a claim of the '473 patent.  If it has, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether an alleged direct infringer's product or method infringes that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not an alleged direct infringer knew its product or method infringed or even knew of the patent does not matter in determining whether it has directly infringed the patent.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

For purposes of this case, there is only one way in which a patent claim may be directly infringed.  It must be "literally" infringed.  The following instructions will provide more detail on this type of direct infringement.

7

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**6.      Literal Infringement**

To decide whether Emblaze has proven that a third party literally infringes a claim of the '473 patent, you must compare the accused product or method with the patent claim and determine whether every requirement of the claim is included in that product or is practiced by that method. If so, the third party's product or method literally infringes that claim.  If, however, the third party's product or method does not meet every requirement in the patent claim, that product or method does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprises" or "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in an accused product or method.  The fact that an accused product includes additional parts or that an accused method includes additional steps will not avoid infringement, as long as the accused product or method has every requirement in the patent claim.

8

**7.     Inducing Patent Infringement**

Emblaze argues that Apple is liable for infringement by actively inducing others to directly and literally infringe the '473 patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

In order for there to be active inducement of infringement by Apple, a single third party must directly infringe a claim of the '473 patent; if there is no direct infringement by a single third party, there can be no induced infringement.

Apple is liable for active inducement of a claim only if Emblaze proves by a preponderance of the evidence that:

1.     The acts are actually carried out by the alleged direct infringer and directly infringe that claim;

2.     Apple took action intending to cause the infringing acts by the direct infringer;

3.     Apple was aware of the '473 patent and knew that the acts, if taken, would constitute infringement of that patent; and

4.     Apple specifically intended that the alleged direct infringer infringe the patent.

Actively inducing infringement cannot occur unintentionally. In order to establish active inducement of infringement, it is not sufficient that a party other than Apple directly infringes the claim. Nor is it sufficient that Apple was aware of the act by the alleged direct infringer that allegedly constitutes the direct infringement. Rather, you must find that Apple specifically intended the alleged direct infringer to infringe the patent in order to find inducement of infringement.

If you find that Apple had a good-faith, reasonable belief that the acts it encouraged did not infringe the patent or that the patent was invalid, you may find that Apple lacked the required intent for induced infringement and thus is not liable for induced infringement.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 8.      Invalidity Burden of Proof

I will now instruct you on the rules you must follow in deciding whether Apple has proven that claims 23, 28, 37 and 40 of the '473 patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, Apple must persuade you that it is highly probable that the claim is invalid.  This burden of proof is called proof by clear and convincing evidence.

Clear and convincing evidence is a higher standard of proof than proof by a preponderance of the evidence.  Clear and convincing evidence means that the evidence leaves you with a firm belief or clear conviction that the facts are as the party contends.  Nevertheless, the clear and convincing evidence standard is not as high as the burden of proof applied in a criminal case, which is "beyond a reasonable doubt."

During this case, Apple submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '473 patent.  Apple contends that such prior art invalidates certain claims of the '473 patent.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '473 patent.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

### 9.      Anticipation

Apple asserts that claims 23, 28 and 37 of the '473 patent are invalid as anticipated by the prior art.  A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, each and every element in the claim must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.  You may not combine two or more items of prior art to find anticipation.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of live streaming looking at that one reference would be able to make and use the claimed invention.  Evidence outside the prior art reference, such as later publications and later expert testimony, may be used to show that the feature is necessarily implied in the reference itself.

Apple can show that a patent claim was not new by showing:

- the claimed invention was already patented or described in a printed publication anywhere in the world before March 24, 1998.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find; or

- the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before March 24, 1998.

11

**10.**    **Obviousness**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the claimed invention was made.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the relevant field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.  Apple asserts that claims 23, 28, 37 and 40 of the '473 patent are invalid as obvious in view of the prior art.

First, you must decide the level of ordinary skill in the relevant field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  In order to be considered as prior art to the '473 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

(1)     commercial success of a product due to the merits of the claimed invention;

(2)     a long felt need for the solution provided by the claimed invention;

(3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)     copying of the claimed invention by others;

(5)     unexpected and superior results from the claimed invention;

(6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)     other evidence tending to show nonobviousness;

(8)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it and

(9)     other evidence tending to show obviousness.

The presence of any of factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made and the presence of the factors 8-9 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Apple has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination

13

of elements claimed in the patent.  Also, you may consider whether the innovation applies a known

technique that had been used to improve a similar device or method in a similar way.  You may also

consider whether the claimed invention would have been obvious to try, meaning that the claimed

innovation was one of a relatively small number of possible approaches to the problem with a

reasonable expectation of success by those skilled in the art.  However, you must be careful not to

determine obviousness using the benefit of hindsight; many true inventions might seem obvious after

the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the

claimed invention was made and you should not consider what is known today or what is learned from

the teaching of the patent.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**11.** **Damages – Introduction**

If you find that Apple infringed any valid claim of the '473 patent, you must then consider what amount of damages to award to Emblaze. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Emblaze for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Emblaze in approximately the same financial position that it would have been in had the infringement not occurred.

Emblaze has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Emblaze establishes that it more likely than not suffered.

In this case, Emblaze seeks a reasonable royalty. A reasonable royalty is defined as the money amount Emblaze and Apple would have agreed upon as a fee for use of the invention at the time prior to when infringement began. If you find that Emblaze has established infringement, Emblaze is entitled to at least a reasonable royalty to compensate it for that infringement.

I will give more detailed instructions regarding damages shortly.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**12.     Date of Commencement**

If you find that Apple infringed the '473 patent, you may award a lump sum for all damages from October 29, 2009, onward or you may award a running royalty for damages from October 29, 2009, through June 30, 2013.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

### 13.    Reasonable Royalty

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.  These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold.  If you do, the royalty would be that fixed number of dollars times the number of units sold.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

18

### 14.     **Reasonable Royalty – Relevant Factors**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

(15)     The impact of any available noninfringing alternatives to the asserted claims on the royalty negotiated in the hypothetical negotiation.

(16)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee — who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention — would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

You may also rely on past agreements to inform the hypothetical negotiation in this case. You may consider potential differences between the past agreements and the hypothetical negotiation including differences in time, availability of noninfringing alternatives, types of technology, types of rights conveyed (such as exclusive versus non-exclusive licenses, technology transfers versus bare patent licenses), the number of patents involved and the existence of ongoing litigation.  You may find that a prior agreement is sufficiently comparable such that with adjustments it may provide useful information in reaching your damages decision.  You also may find that a prior agreement is so non-comparable to the hypothetical negotiation in this case that it should play no part in the damages calculation.

The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

**15.    Calculating Damages in Cases of Inducement of Infringement**

In order to recover damages for induced infringement, Emblaze must either prove that Apple necessarily infringes the '473 patent or prove acts of direct infringement by others that were induced by Apple.  Because the amount of damages for induced infringement must reflect the number of instances of direct infringement, Emblaze must further prove the number of direct acts of infringement of the '473 patent, for example, by showing individual acts of direct infringement or by showing that a particular class of products or uses directly infringe.  However, Emblaze is not required to demonstrate a one-to-one correspondence between units sold and instances of direct infringement.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

### 16.    Glossary

Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly

22

infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Requirement:  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

1

**IT IS SO ORDERED.**

2

Dated: July 10, 2014

3

4                                   PAUL S. GREWAL
                                    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:11-cv-01079-PSG
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California