1  MARK FOWLER (Bar No. 124235)
   *mark.fowler@dlapiper.com*
2  ROBERT BUERGI (Bar No. 242910)
   *robert.buergi@dlapiper.com*
3  DLA PIPER LLP (US)
   2000 University Avenue
4  East Palo Alto, CA  94303-2214
   Tel:  650.833.2000
5  Fax:  650.833.2001

6

7  JOHN ALLCOCK (Bar No. 98895)
   *john.allcock@dlapiper.com*
8  ERIN GIBSON (Bar No. 229305)
   *erin.gibson@dlapiper.com*
9  ROBERT C. WILLIAMS (Bar No. 246990)
   *robert.williams@dlapiper.com*
10 DLA PIPER LLP (US)
   401 B Street, Suite 1700
11 San Diego, CA  92101
   Tel:  619.699.2700
12 Fax:  619.699.2701

13 Attorneys for Defendant
   APPLE INC.

SARAH BARROWS (Bar No. 253278)
*barrowss@gtlaw.com*
STEPHEN ULLMER (Bar No. 277537)
*ullmers@gtlaw.com*
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA  94111-5983
Tel.:  415.655.1300
Fax:  415.707.2010

JAMES J. DECARLO (*Pro Hac Vice*)
*decarloj@gtlaw.com*
MICHAEL A. NICODEMA (*Pro Hac Vice*)
*nicodemam@gtlaw.com*
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, New York  10166
Tel:  212.801.9200
Fax:  212.801.6400

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                   SAN JOSE DIVISION

18

19 EMBLAZE LTD.,                          CASE NO.  5:11-CV-01079 PSG

20          Plaintiff,                    **DEFENDANT APPLE INC.'S
                                          CONDITIONAL MOTION FOR
21 v.                                     JUDGMENT AS A MATTER OF LAW ON
                                          INVALIDITY**
22 APPLE INC., a California corporation,

23          Defendant.                    Date:     September 30, 2014
                                          Time:     10:00 a.m.
24                                        Place:    Courtroom 5, 4th Floor
                                          Judge:    Hon. Paul S. Grewal
25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARDS...................................................................................... 3

      A.    Judgment As A Matter Of Law.............................................................. 3

      B.    New Trial ............................................................................................... 4

      C.    Invalidity ............................................................................................... 4

III.  APPLE IS ENTITLED TO JMOL OF INVALIDITY, BECAUSE COHEN
      ANTICIPATES AND RENDERS OBVIOUS ASSERTED CLAIMS 23, 28 AND
      37 OF THE '473 PATENT. ............................................................................... 4

      A.    Cohen Is Prior Art to the '473 Patent..................................................... 4

      B.    Cohen Discloses Live Streaming of Multimedia Content Over the Internet
            Using HTTP Servers—Solving the Very Problem Emblaze Sought to
            Solve....................................................................................................... 5

      C.    Cohen Clearly Discloses All Limitations of Claims 23, 28 and 37. ...... 6

            1.    Cohen Anticipates and Renders Obvious Claim 23................... 6

            2.    Cohen Anticipates and Renders Obvious Claim 28................. 14

            3.    Cohen Discloses All Limitations of Claim 37. ....................... 16

IV.   APPLE IS ENTITLED TO JMOL OF INVALIDITY, BECAUSE COHEN
      COMBINED WITH AHARONI RENDERS OBVIOUS CLAIM 40 OF THE '473
      PATENT. ........................................................................................................ 17

      A.    Aharoni Is Prior Art to the '473 Patent. ............................................... 18

      B.    Aharoni Discloses the Multiple Quality Level Limitation of Claim 40.............. 18

      C.    A Person of Ordinary Skill in the Art Would Have Been Motivated to
            Combine Cohen With Aharoni, Rendering Claim 40 Obvious. .......... 19

V.    APPLE IS ENTITLED TO A NEW TRIAL ON INVALIDITY. ................... 20

VI.   CONCLUSION ............................................................................................... 21

CASES

*Abarca v. Franklin Cnty. Water Dist.*,
  813 F. Supp. 2d 1199 (E.D. Cal. 2011)..................................................................... 13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)................................................................................ 12

*Barnard v. Theobald*,
  721 F.3d 1069 (9th Cir. 2013).................................................................................... 3

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)............................................................................................ 3, 13

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938).................................................................................................. 3

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004).................................................................................. 3

*E.E.O.C. v. Go Daddy Software, Inc.*,
  581 F.3d 951, 961 (9th Cir. 2009).............................................................................. 3

*Hagen v. City of Eugene*,
  736 F.3d 1251 (9th Cir. 2013).................................................................................... 3

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  CV-00-20905 RMW, 2008 WL 73681 (N.D. Cal. Jan. 5, 2008).............................. 13

*In re Fulton*,
  391 F.3d 1195 (Fed. Cir. 2004).................................................................................. 8

*Iovate Health Sci., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
  586 F.3d 1376 (Fed. Cir. 2009)............................................................... 3, 13, 14, 17

*Josephs v. Pac. Bell*,
  443 F.3d 1050 (9th Cir. 2005).................................................................................... 3

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007).................................................................................................. 4

*McGinley v. Franklin Sports, Inc.*,
  262 F.3d 1339 (Fed. Cir. 2001).................................................................................. 3

*Medtronic, Inc. v. AGA Med. Corp.*,
  C-07-0567-MMC, 2009 WL 1163976 (N.D. Cal. Apr. 28, 2009).......................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007)...................................................................... 4, 20

*Passantino v. Johnson & Johnson Consumer Prods.*,
212 F.3d 493 (9th Cir. 2000).......................................................................... 4

*Schering Corp. v. Geneva Pharms., Inc.*,
339 F.3d 1373 (Fed. Cir. 2003)....................................................................... 4

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
546 U.S. 394 (2006)......................................................................................... 3

*Z4 Techs., Inc. v. Microsoft Corp.*,
507 F.3d 1340 (Fed. Cir. 2007)....................................................................... 3

**STATUTES**

35 U.S.C. § 102............................................................................................... 1

35 U.S.C. § 102(e)........................................................................................... 4

35 U.S.C. § 103............................................................................................ 1, 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50............................................................................................ 3

Fed. R. Civ. P. 50(a)........................................................................................ 1

Fed. R. Civ. P. 50(b)..................................................................................... 3, 2

Fed. R. Civ. P. 59..................................................................................... 2, 4, 20

Fed. R. Civ. P. 59(a), (e).................................................................................. 4

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 30, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, there will be a hearing on the conditional motion of Defendant Apple Inc. ("Apple") for judgment as a matter of law of invalidity pursuant to 35 U.S.C. §§ 102 and 103 of claims 23, 28, 37 and 40 ("Asserted Claims") of United States Patent No. 6,389,473 ("the '473 patent").

This motion is based upon this Notice of Motion, the Points and Authorities below, the trial testimony and exhibits cited therein, the complete record in this action, all matters of which the Court may take judicial notice, and upon such other written or oral argument as may be presented at or before the time this motion is taken under consideration by the Court.

**RELIEF REQUESTED**

Apple files this JMOL on a conditional basis only. Apple's position is that the jury's verdict and final judgment should not be disturbed. But if the Court grants any motion for judgment as a matter of law or motion for new trial filed by Emblaze, then Apple also requests that the Court grant judgment as a matter of law that the Asserted Claims of the '473 patent are invalid and/or grant a new trial on invalidity. If the Court does not disturb the jury's verdict and the Court's judgment (which it should not), then Apple does not request judgment as a matter of law and/or a new trial on invalidity.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether no substantial evidence supports the jury's verdict that asserted claims 23, 28 and 37 are not invalid as anticipated and/or obvious in light of United States Patent No. 5,751,968 to Cohen ("Cohen").

2. Whether no substantial evidence supports the jury's verdict that asserted claim 40 is not invalid as obvious in light of Cohen combined with United States Patent No. 6,014,694 to Aharoni ("Aharoni").

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(b), defendant Apple Inc. ("Apple") renews its previously made Rule 50(a) motion for judgment as a matter of law ("JMOL") that the

APPLE'S CONDITIONAL MOTION FOR JUDGMENT AS A MATTER OF LAW
5:11-CV-01079 PSG

Asserted Claims of the Emblaze '473 patent are invalid, and in the alternative moves for a new trial on invalidity under Federal Rule of Civil Procedure 59. Apple's renewed motion is conditional. Should the Court grant any motion for judgment as a matter of law or new trial filed by Emblaze, Apple also requests that the Court grant judgment as a matter of law that the Asserted Claims of the '473 patent are invalid and/or a new trial on invalidity. However, if the Court does not disturb the jury's verdict and the Court's judgment, Apple does not request judgment as a matter of law or a new trial on invalidity.

Cohen and the '473 patent are extraordinarily similar and disclose the same invention. The '473 patent describes the prior art problem as the expense of streaming live content over the Internet using high-cost, dedicated computer systems. Both Cohen and the '473 patent identify the same solution—streaming live content over the Internet using inexpensive, standard HTTP servers. However, the Cohen patent application was filed almost two years before Emblaze filed its patent. And the only material difference between the Cohen and Emblaze patents is that Cohen does not disclose streaming multiple quality levels as recited in asserted claim 40. But that concept was ubiquitous when Emblaze filed its patent. For example, streaming multiple quality levels was disclosed in the SuperNOVA article and the Aharoni patent, among many other references. Even the Emblaze lead inventor testified that the use of multiple quality levels was well known, was added to the Emblaze invention only after Emblaze disclosed the invention at the White House Easter egg roll, and that its addition was "a natural evolution." Ex. A, Carmel Depo., Vol. 1 at 157:3-17 (also lodged at Dkt. 611, Ex. A).[1]

Thus, clear and convincing evidence presented at trial established that asserted claims 23, 28, and 37 of the '473 patent are invalid as anticipated and rendered obvious by Cohen, and that claim 40 of the '473 patent is invalid as rendered obvious by Cohen in view of Aharoni. Apple therefore is entitled to judgment under Rule 50(b) because no substantial evidence supports the jury's verdict that the Asserted Claims are not invalid over Cohen and Aharoni, or is entitled to a new trial on invalidity under Rule 59.

---

[1] Unless otherwise noted, all exhibits are attached to the concurrently filed Declaration of Erin Gibson In Support of Apple's Conditional Motion for Judgment as a Matter of Law.

## II. LEGAL STANDARDS

### A. Judgment As A Matter Of Law

Federal Rule of Civil Procedure 50(b) provides that where, "for any reason," the Court does not grant a party's motion for judgment as a matter of law challenging the sufficiency of the evidence prior to submission of the case to the jury, the party may renew its request after judgment, and the party is entitled to judgment as a matter of law on its renewed motion where the evidence is legally insufficient to support an adverse jury verdict. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400-01 (2006). Rule 50 motions are governed by "the law of the regional circuit where the appeal from the district court normally would lie." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1346 (Fed. Cir. 2007).

Judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013), quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005)). "Substantial evidence" must support the jury's express or presumed findings, in order for that verdict to stand. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1350 (Fed. Cir. 2001); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2005). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004), quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). "Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict." *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013) (quotations omitted).

Conclusory expert testimony does not qualify as substantial evidence. *See Iovate Health Sci., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381-82 (Fed. Cir. 2009) (affirming summary judgment despite such contrary testimony). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

-3-

**B.    New Trial**

Federal Rule of Civil Procedure 59 permits the Court to alter or amend a judgment, or order a new trial.  Fed. R. Civ. P. 59(a), (e).  "[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation omitted).

**C.    Invalidity**

A patent claim is invalid if "the invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."  35 U.S.C. § 102(e).  "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention."  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).  A claim is invalid for obviousness if the differences between the claimed subject matter and the prior art would have been obvious to a person having ordinary skill in the art at the time of the claimed invention.  35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007).

**III.    APPLE IS ENTITLED TO JMOL OF INVALIDITY, BECAUSE COHEN ANTICIPATES AND RENDERS OBVIOUS ASSERTED CLAIMS 23, 28 AND 37 OF THE '473 PATENT.**

**A.    Cohen Is Prior Art to the '473 Patent.**

The application for the Cohen patent was filed on May 9, 1996.  Ex. B, DTX-21.  The earliest possible priority date for the '473 patent is March 24, 1998, which is the foreign application priority date.  Ex. C, PTX-1.  Because the filing date of Cohen precedes the earliest filing date of the '473 patent, Cohen is prior art.  Ex. D, Trial Tr. 1549:25-1550:19.  Emblaze did not dispute this at trial.

### B. Cohen Discloses Live Streaming of Multimedia Content Over the Internet Using HTTP Servers—Solving the Very Problem Emblaze Sought to Solve.

The '473 patent relates to live streaming of multimedia content over the Internet using HTTP servers. Ex. D, Trial Tr. 1540:17-20. Many systems for live streaming multimedia over the Internet existed before Emblaze filed its patent application. Ex. D, Trial Tr. 1542:10-1544:1; Ex. E, DTX-43, SuperNOVA. The '473 patent describes those prior art systems as requiring high-cost dedicated servers, and identifies streaming without such high-cost dedicated servers as the solution to the prior art problem. Ex. C, PTX-1, '473 patent at 1:14-40; Ex. D, Trial Tr. at 1548:7-1549:4. But the prior art system described in Cohen did not require high-cost dedicated servers to stream live content over the Internet. Ex. D, Trial Tr. 1553:13-22; Ex. B, DTX-21 at Fig. 1. Indeed, not only did Cohen solve the '473 patent's purported prior art problem first, Cohen solved that problem in exactly the same way. As is demonstrated by comparing '473 patent Figure 2 and Cohen Figure 1, Cohen proposes the same architecture that the '473 patent describes to stream multimedia content over the Internet using HTTP servers. Ex. D, Trial Tr. at 1551:12-1552:2, referring to DDTX-157 (Ex. H).



Both the '473 patent and Cohen have a transmitting computer shown highlighted above in yellow, in accordance with Cohen's alternative embodiment described at column 5:1-4. Ex. D, Trial Tr. 1552:3-21. Both have a standard HTTP server, highlighted in green. Ex. D, Trial Tr. 1553:13-22. Both also have clients, highlighted in purple, for displaying the live stream. Ex. D, Trial Tr. 1553:23-1554:9. Cohen calls these clients "UODs" or "user operated devices." Ex. D, Trial Tr. 1559:13-18. The '473 patent and Cohen patent specifications describe identical functionality for the architecture shown above. Ex. D, Trial Tr. 1554:10-1555:21, comparing Ex. C, PTX-1 at 2:1-15 with Ex. B, DTX-21 at 3:14-28. In sum, Cohen and the '473 patent are not just the same—"they're identical." Ex. D, Trial Tr. at 1551:9-11. Thus, Cohen, not Emblaze, first invented what is claimed in the '473 patent. Ex. D, Trial Tr. 1549:5-12.

**C.      Cohen Clearly Discloses All Limitations of Claims 23, 28 and 37.**

**1.      Cohen Anticipates and Renders Obvious Claim 23.**

Cohen discloses claim 23, which depends from claim 1 and recites "[a] method according to claim 1, wherein dividing the stream into the sequence of slices comprises dividing the stream into a sequence of time slices, each slice having a time duration associated therewith." Cohen discloses all limitations of independent claim 1 and the additional limitation of claim 23.

**a.      Claim 1: Cohen discloses "[a] method for real-time broadcasting from a transmitting computer to one or more client computers over a network."**

Cohen discloses the first limitation of claim 1, which begins "[a] method for real-time broadcasting…," under the Court's construction of that phrase. Ex. D, Trial Tr. 1557:5-1558:8. Cohen discloses that its invention "provide[s] substantially in real time multi-media presentations to a least one user operating a UOD connected to the network." Ex. B, DTX-21 Col. 1:39-41; Ex. D, Trial Tr. 1558:9-1559:1. Cohen further discloses an architecture that feeds a multimedia presentation to a server to be distributed through a network to UODs. Ex. D, Trial Tr. 1559:2-18. Emblaze's technical expert, Dr. Vijay Madisetti, did not dispute that Cohen discloses this claim limitation. Ex. D, Trial Tr. 1742:21-1743:3. Therefore, Cohen discloses this limitation by clear and convincing evidence. Ex. D, Trial Tr. 1559:19-21.

### b. Claim 1: Cohen discloses "providing at the transmitting computer a data stream having a given data rate."

Cohen discloses the second limitation of claim 1 as construed by the Court because Cohen discloses providing an audio data stream, which is a constant bit rate data stream with a given data rate, to the transmitting computer. Ex. D, Trial Tr. 1559:23-1560:10, 1561:25-1562:25. Specifically, Cohen discloses that the feeding unit (unit 12) receives a real time broadcast of a multimedia presentation, for example an audio presentation from a radio station, and feeds its content to the feeding and forming units. Ex. D, Trial Tr. 1560:5-18. Cohen further teaches using "an audio card capable of receiving audio signals, such as Sound Blaster." Ex. D, Trial Tr. 1560:20-25; Ex. B, DTX-21 at 4:28-36. Therefore, it would have been clear to a person of ordinary skill in the art that he or she could use a Sound Blaster card in the transmitting computer to obtain data from a microphone input and provide it to the transmitting computer. Ex. D, Trial Tr. 1561:1-6; Ex. B, DTX-21 at 4:28-36.

Cohen next discloses that "the data fed by the feeding unit can be compressed," so a person of ordinary skill in the art reading Cohen would know that the Sound Blaster data could be compressed. Ex. D, Trial Tr. 1561:10-13; Ex. B, DTX-21 at 7:45-52. Cohen further teaches that "any suitable compression and decompression algorithm" could be used, so a person of ordinary skill in the art also would know that constant bit rate compression could be used. Ex. D, Trial Tr. 1561:14-16; Ex. B, DTX-21 at 7:45-52. Taken together, these passages of Cohen teach a person of ordinary skill "that the Cohen patent is providing detailed guidance on how to get at the transmitting computer a data stream, which is a compressed data stream, of audio." Ex. D, Trial Tr. 1561:17-24. Cohen's audio stream thus has a "given data rate" under the Court's construction of that term. Ex. D, Trial Tr. 1561:25-1562:25.

Emblaze did not offer any credible argument to the contrary. Rather, Dr. Madisetti argued that Cohen did not disclose a given data rate, because the data stream of Cohen could be a variable bit rate data stream. Ex. D, Trial Tr. 1744:22-1746:12. This argument necessarily fails, because Cohen discloses a compressed <u>audio</u> data stream for live streaming, as well as compressed video data streams. Ex. D, Trial Tr. 1561:14-24. Dr. Madisetti argued that both

constant and variable bit rate compression algorithms existed for both audio and video. Ex. D, Trial Tr. 1744:22-1746:12. However, Dr. Madisetti failed to consider, and offered no opinion regarding, whether variable bit rate data streams would be suitable for live streaming audio. *Id.* In fact, one skilled in the art would understand that the only suitable compression algorithms for live streaming audio, as Cohen teaches, would generate a constant bit rate stream. Ex. D, Trial Tr. 1582:14-1583:2. Thus, Apple's invalidity challenge focused on Cohen's disclosure of a compressed <u>audio</u> stream, not a compressed video stream. *Id.* Moreover, the fact that Cohen also discloses a variable bit rate video stream, in addition to a constant bit rate audio stream, does not somehow teach away from its invalidating disclosure of a constant bit rate audio stream. *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004) ("[M]ere disclosure of alternative designs does not teach away" from one alternative.).

As Apple's expert, Dr. Orchard, testified, if Cohen were found not to disclose this limitation, then at the very least it would have been obvious to a person of ordinary skill in the art to practice this limitation because "the most obvious way one would practice any system that operated this [way] would be one that would practice this limitation." Ex. D, Trial Tr. 1563:1-8. Dr. Madisetti did not offer any explanation for why this limitation would not be obvious. Ex. D, Trial Tr. 1746:15. Therefore, Cohen discloses this limitation by clear and convincing evidence. Ex. D, Trial Tr. 1563:9-12.

> **c.** **Claim 1: Cohen discloses "dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith."**

Cohen discloses the third limitation of claim 1 as construed by the Court, because Cohen discloses dividing the stream into "segment data files" based on any "any suitable characteristics of the segment data files," including "the size of the data file." Ex. B, DTX-21 at 5:29-37, Fig. 2.

First, Cohen discloses "dividing the data stream into a sequence of slices." Ex. D, Trial Tr. at 1563:22-1564:23. Figure 2 of Cohen depicts the various functions of the Cohen patented invention, including how to divide the data stream. Box 24 of Figure 2 is titled "provide parameters of segment data files." Ex. B, DTX-21, Fig. 2. The parameters demonstrate how to segment the stream. Ex. D, Trial Tr. at 1564:5-7, 10-14. Cohen further discloses that "the

feeding unit (12) provides the parameters defining the characteristics of the segments of stream of data of the multi-media presentation." *Id.* at 1564:10-13; Ex. B, DTX-21 at 5:29-37. Next, box 26 of Figure 2 is titled "feed stream of data of each segment." DTX-21, Fig. 2. "So by feeding each segment stream, we clearly have segmented it." Ex. D, Trial Tr. at 1564:8-9. Moreover, the '473 patent uses the words "segment" and "slice" interchangeably, making clear that a slice is a segment. *Id.* at 1564:17-23.

Second, Cohen discloses the limitation "each slice having a predetermined data size associated therewith." Ex. D, Trial Tr. 1564:24-1565:15. Cohen describes obtaining a parameter defining the characteristics of the segment, and then describes those characteristics in further detail. *Id.*, citing Ex. B, DTX-21 at 5:30-43. In this regard, Cohen states that "the characteristics provided in step 24 may be any suitable characteristics of the segment data files," and that "[n]on limiting examples include the size of the data file… ." Ex. B, DTX-21 at 5:30-43. Thus, Cohen clearly instructs a person of ordinary skill to divide the stream using characteristics that include the size of the data file. Ex. D, Trial Tr. at 1565:8-15.

Emblaze did not provide any credible testimony to the contrary. Rather, Dr. Madisetti provided conclusory testimony that Cohen does not disclose a "predetermined data size," because dividing a variable bit rate stream by time would not create slices with an equal amount of data. Ex. D, Trial Tr. 1746:23-1747:7. Thus, he testified, "there would be no dividing." Ex. D, Trial Tr. 1747:6-7. Contrary to Dr. Madisetti's testimony, Cohen says that size of the data file can be one of the characteristics used to divide the data stream. Ex. B, DTX-21 at 5:30-43. Therefore, the segment size can be determined in advance by the feeding unit <u>before</u> any slicing occurs. *Id.*; Ex. D, Trial Tr. at 1565:8-15. Dr. Madisetti's hypothetical testimony about how a system potentially could be set up to not have a segment size does not change the fact that Cohen discloses a predetermined data size. Ex. B, DTX-21 at 5:30-43; Ex. D, Trial Tr. at 1565:8-15.

In sum, Cohen discloses this limitation by clear and convincing evidence. Ex. D, Trial Tr. 1565:16-19.

\\\\\

\\\\\

**d. Claim 1: Cohen discloses "encoding the slices in a corresponding sequence of files, each file having a respective index."**

Cohen discloses the fourth limitation of claim 1 as construed by the Court, because it discloses that the file forming manager "forms files of the data segments" of the multimedia presentation and that those files have indexes. Ex. B, DTX-21 at 5:1-3, 5:35-38; Fig. 4; & 6:10. First, Cohen discloses "encoding the slices in a corresponding sequence of files." Ex. D, Trial Tr. 1565:20-1566:24. Notably, the Court's construction requires "forming each slice as a file." Ex. D, Trial Tr. 1566:1-7. Cohen uses the same language to describe box 28, "Form Segment Data Files," in Figure 2. Ex. D, Trial Tr. 1566:8-13. Cohen discloses that "the file forming manager forms the files of the data segments of the multi-media presentation (step 28)." Ex. B, DTX-21 at 5:30-38; Ex. D, Trial Tr. 1566:16-24.

Second, Cohen discloses "each file having a respective index." Ex. D, Trial Tr. 1566:25-1567:9. Cohen Figure 4 and the related description in the specification discloses that "the plurality of files may be formed in a sequential mode, i.e. as a string of data files 4A-4N representing the content of the entire multi-media presentation." Ex. B, DTX-21 at 6:6-10 & Fig. 4; Ex. D, Trial Tr. at 1567:9-20. 4A through 4N "are the indices" and "would be recognized as indices labeling… ." Ex. D, Trial Tr. at 1567:21-1568:4. In this regard, they are described "in a way that shows a sequential order." *Id.* Thus, Cohen discloses this limitation by clear and convincing evidence, and Emblaze did not dispute this at trial. Ex. D, Trial Tr. 1568:5-9.

**e. Claim 1: Cohen discloses "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate."**

Cohen discloses the fifth and final limitation of claim 1 as construed by the Court, because it discloses "uploading" and "downloading" the sequence at upload and download rates "generally equal to the data rate of the stream." First, Cohen discloses "uploading the sequence to a server." Ex. D, Trial Tr. 1569:12-1570:5. Specifically, Cohen discloses that the feeding and forming unit, which is part of the transmitting computer in the alternative embodiment of Cohen (Ex. B, DTX-21 at 5:1-4), is connected to an "HTTP server distributing unit" (20). Ex. D, Trial

-10-

1  Tr. 1569:16-1570:5; Ex. B, DTX-21 at Fig. 1. That "distribution unit is preferably an HTTP

2  WWW server 20 which receives the files including segments of the multi-media presentation."

3  Ex. B, DTX-21 at 5:5-11; Ex. D, Trial Tr. at 1569:16-1570:1. Thus, Cohen clearly instructs to

4  send the files with the segments of the multimedia presentation from the transmitting computer to

5  the server. Ex. D, Trial Tr. at 1570:2-5. The connection from the transmitting computer to the

6  HTTP server, with the instruction that the server is receiving files, is understood to be an upload,

7  as depicted by the arrow between boxes 18 and 20 in Figure 1. Ex. D, Trial Tr. at 1570:6-14; Ex.

8  B, DTX-21, Fig. 1. Further, Cohen's description of the transmitting computer as a "feeding unit"

9  that generates and feeds data to the server demonstrates that the files are uploaded to the server—

10  and not downloaded from the server. Ex. D, Trial Tr. at 1615:20-1616:16.

11  Second, Cohen discloses "that the one or more client computers can download the

12  sequence over the network from the server." Ex. D, Trial Tr. 1570:22-1571:10. Figure 1

13  discloses an "HTTP server distributing unit" (20) and a "displaying unit (UOD)" (18), and Cohen

14  states that the HTTP server "is operative to distribute [the files] to any number of UODs of users

15  of the network." *Id.*; Ex. B, DTX-21 at 5:5-11, Fig. 1. Thus, Cohen clearly describes that the

16  HTTP server provides the files to clients over the network, meaning clients can download them

17  from the HTTP server. Ex. D, Trial Tr. 1571:8-10.

18  Third, Cohen discloses that the upload and download rates will be "generally equal to the

19  data rate of the stream" under Emblaze's interpretation of the claim as used in Emblaze's

20  infringement case. Ex. D, Trial Tr. 1571:11-1572:6. At trial, Dr. Orchard testified correctly that

21  the same interpretation of the claims must apply to both infringement and invalidity analyses. Ex.

22  D, Trial Tr. 1572:7-17. Emblaze wrote in its infringement contentions that "to maintain 'live'

23  streaming, Apple's HTTP Live Streaming must have an upload rate 'generally equal to' a data

24  rate of the stream and a download rate also 'generally equal to' the data rate." Ex. D, Trial Tr.

25  1572:22-1573:12. Moreover, Emblaze's expert testified at trial that for purposes of infringement,

26  the upload and download rates <u>must</u> be "generally equal to the data rate of the stream" in any live

27  streaming system. Ex. D, Trial Tr. 1573:13-1574:23, citing Trial Tr. 563:10-23 (Dr. Madisetti:

28  "And so that shows that because it's a live, continuously flowing stream that is working currently

-11-

APPLE'S CONDITIONAL MOTION FOR JUDGMENT AS A MATTER OF LAW
5:11-CV-01079 PSG

working correctly, the rate of the upload would be understood to be equal to that of the data rate."); Ex. D, Trial Tr. 1574:24-1575:18, citing Trial Tr. 563:24-564:7 (Q. "So is the fact that you are seeing a continuous stream in real time indicates that the upload rate had to be equal to the download rate?" A. "Yes. … and since they're moving in one sequence, the measured download rate is equal to the data rate, which is also equal to the upload rate.").

In Emblaze's rebuttal case, Dr. Madisetti attempted to explain away his testimony by saying that the "generally equal" limitation only would be inherent in a working live stream and the Cohen system would not work. Ex. D, Trial Tr. at 1748:15-1749:19. This testimony was inconsistent with other testimony by Dr. Madisetti and Emblaze's infringement contentions in this case. *Compare id. with* Trial Tr. at 563:24-564:7. Moreover, prior art such as Cohen is presumed valid and thus enabled, meaning a person of ordinary skill in the art reading Cohen could make and use the Cohen live streaming system. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003) ("We hold that an accused infringer should be similarly entitled to have the district court presume the enablement of unclaimed (and claimed) material in a prior art patent defendant asserts against a plaintiff."); *Medtronic, Inc. v. AGA Med. Corp.*, C-07-0567-MMC, 2009 WL 1163976, at *3 (N.D. Cal. Apr. 28, 2009) (same). Other than Dr. Madisetti's rebuttal testimony, Emblaze offered no proof (let alone clear and convincing evidence) to support that Cohen was not enabled or that the patented Cohen system would not work for live streaming. Ex. D, Trial Tr. at 1748:15-1750:21.

Furthermore, Dr. Madisetti's self-serving testimony that the Cohen system would not work for live streaming is directly contrary to the numerous disclosures in Cohen of a working live streaming system. Ex. D, Trial Tr. at 1579:1-1581:1; Ex. B, DTX-21 at 4:52-59 ("the system is operating to provide substantially in real time the multi-media presentation to the users"), 1:39-41 ("substantially in real time"), 6:62-67 ("substantially real time presentation"), 3:3-6 ("substantially in a real time"), 5:44-53 ("display the multi-media presentation substantially simultaneously with its feeding and forming"), 6:43-50 ("real time presentation"), 6:55-61 ("If a substantially real time display is of interest a minimal lag time will be selected…"). Self-serving expert testimony that contradicts all other evidence in the record is not "substantial evidence"

sufficient to support the jury's verdict. *Abarca v. Franklin Cnty. Water Dist.*, 813 F. Supp. 2d 1199, 1204 (E.D. Cal. 2011) ("[W]hen indisputable record facts contradict or otherwise render the [expert] opinion unreasonable, it cannot support a jury's verdict."), quoting *Brooke Group*, 509 U.S. at 242; *see Hynix Semiconductor Inc. v. Rambus Inc.*, CV-00-20905 RMW, 2008 WL 73681, at *5 (N.D. Cal. Jan. 5, 2008) ("A reasonable jury cannot credit testimony that fails to reflect reality."). Cohen unquestionably discloses a live streaming system by clear and convincing evidence. Ex. D, Trial Tr. 1580:24-1581:1.

Dr. Orchard testified that, if Cohen were found not to disclose this limitation, at the very least the practice of this limitation would be obvious to a person of ordinary skill in the art because "the most obvious [way] to follow Cohen's instructions would be practicing this…limitation." Ex. D, Trial Tr. 1581:16-23. Dr. Madisetti did not dispute that this limitation would be obvious except to offer a conclusory statement that "Cohen does not anticipate or render obvious claim 23." Ex. D, Trial Tr. 1742:21-1743:3; *see id.* 1747:15-1750:25. Such conclusory expert testimony does not qualify as substantial evidence that could support the jury's invalidity verdict. *Iovate Health*, 586 F.3d at 1381-82. Therefore, Cohen discloses this limitation by clear and convincing evidence. Ex. D, Trial Tr. 1581:2-15 ("It's inescapable that this limitation is clearly practiced by Cohen.").

        **f.**     **Claim 23: Cohen discloses "[a] method according to claim 1, wherein dividing the stream into the sequence of slices comprises dividing the stream into a sequence of time slices, each slice having a time duration associated therewith."**

Cohen discloses claim 23 as construed by the Court, because Cohen discloses a constant bit rate compressed audio stream, and dividing a constant bit rate audio stream by size equates with dividing it by time. Cohen teaches that a transmitting computer (*i.e.*, the feeding unit) provides parameters for dividing a stream that "may be any suitable characteristics of the segment data files" including "the size of the data file." Ex. D, Trial Tr. 1582:14-1583:2; Ex. B, DTX-21 at 5:30-43. A person of ordinary skill in the art would understand that Cohen discloses a fixed data rate audio stream of compressed data. Ex. D, Trial Tr. 1582:14-1583:2. Because it is a fixed or constant data rate stream, the instructions to segment it according to a fixed or predetermined

size would equate to segmenting the stream into fixed time segments. *Id.* Put another way, dividing a constant bit rate audio stream by "size of the data file" necessarily equates to dividing it by "time duration." *Id.*

Dr. Madisetti's only rebuttal analysis was that Cohen does not disclose a "given data rate" because it does not disclose a constant bit rate data stream, and thus time duration cannot be used to divide the stream equally. Ex. D, Trial Tr. 1751:19-1572:12. However, as set forth above in **Sections II.C.b. and c.**, Cohen indisputably discloses a compressed audio stream, which is a constant bit rate stream and thus has a "given data rate." Ex. B, DTX-21 at 4:28-36; Ex. D, Trial Tr. 1560:20-25, 1561:14-24. Therefore, Dr. Madisetti's rebuttal testimony necessarily fails.

Dr. Orchard further testified that, if Cohen were found not to disclose this limitation, at the very least it would be obvious to a person of ordinary skill in the art because "the most obvious way to practice [Cohen's] instructions" would be to practice the limitation of claim 23. Ex. D, Trial Tr. 1591:8-18 (testifying as to the limitation of claim 37, which is the same as claim 23). Dr. Madisetti did not dispute that this limitation would be obvious except to offer a conclusory statement that "Cohen does not anticipate or render obvious claim 23" (Ex. D, Trial Tr. 1742:21-1743:3; 1752:22-24), which is not substantial evidence that could support the jury's invalidity verdict. *Iovate Health*, 586 F.3d at 1381-82. Cohen therefore discloses claim 23 by clear and convincing evidence. Ex. D, Trial Tr. 1583:5-9.

### 2. Cohen Anticipates and Renders Obvious Claim 28.

Cohen discloses all limitations of claim 28 and claims 25, 26, and 27 from which it depends.

#### a. Claim 25: Cohen discloses all limitations of claim 25 for the same reasons it discloses all limitations of claim 1.

Claim 25 is an independent apparatus claim that includes all limitations of method claim 1, only in apparatus form. Ex. D, Trial Tr. 1584:1-3. The only difference between claim 25 and claim 1 is their apparatus or method form. Ex. D, Trial Tr. 1584:4-25. Therefore, the analysis of claim 1 also applies to claim 25, and Cohen discloses each limitation of claim 25 for the same reasons it discloses the limitations of claim 1. *Id.*

-14-

**b. Claim 26: Cohen discloses an "[a]pparatus according to claim 25, wherein the one or more client computers decode the sequence and play back the data stream responsive to the indices thereof, at a data replay rate generally equal to the data rate."**

Cohen discloses claim 26 as construed by the Court. Ex. D, Trial Tr. 1585:5-23. Cohen discloses that "the data fed by the feeding unit can be compressed and subsequently decompressed by the UOD," which is the client. Ex. B, DTX-21 at 7:45-47. That corresponds directly to one or more client computers decoding the sequence. Ex. D, Trial Tr. 1586:13-22. Cohen further discloses that, after decoding the data, the client could "display the multi-media presentation substantially in real time." Ex. B, DTX-21 at 5:44-47. As set forth in **Section II.C.1.e.** above, displaying the data substantially in real time would require a data replay rate that is generally equal to the data rate of the stream. Ex. D, Trial Tr. at 1586:23-1587:4. Therefore, Cohen discloses this limitation by clear and convincing evidence. Ex. D, Trial Tr. 1587:5-7.

**c. Claim 27: Cohen discloses an "[a]pparatus according to claim 26, wherein the one or more client computers download the sequence using an Internet download protocol."**

Cohen discloses claim 27 because it discloses client computers (UODs) that download using the HTTP protocol. Ex. D, Trial Tr. 1587:8-1588:11. Cohen Figure 1 discloses an "HTTP server distributing unit" (20), which a person of ordinary skill in the art would understand to support the HTTP protocol and allow clients to access its content using HTTP. Ex. B, DTX-21, Fig. 1; Ex. D, Trial Tr. 1587:21-1588:1. Figure 1 also shows the HTTP server as connected to box 16, which is the "displaying unit (UOD)" or client computer. Ex. B, DTX-21, Fig. 1; Ex. D, Trial Tr. 1587:21-1587:23. Cohen confirms that "the communication between the UOD 16, the HTTP server 20, and the feeding unit 12 is via a TCP/IP communication protocol." Ex. B, DTX-21 at 6:16-19; Ex. D, Trial Tr. 1589:2-5. "IP" stands for "Internet protocol." Ex. D, Trial Tr. 1588:3-4. A person of ordinary skill in the art would know client computers are downloading using an Internet protocol because the HTTP server, which supports the HTTP protocol and is connected to UODs as shown in Figure 1, makes its contents available to the client computers via a GET instruction. Ex. D, Trial Tr. 1588:5-9. Thus, Cohen discloses this limitation by clear and convincing evidence, and Emblaze did not dispute this at trial. Ex. D, Trial Tr. 1588:10-11.

**d.** **Claim 28: Cohen discloses an "[a]pparatus according to claim 27, wherein the Internet download protocol is selected from a group consisting of HTTP, UDP and RTP."**

Cohen discloses claim 28 because it discloses use of the HTTP Internet protocol. Ex. D, Trial Tr. 1588:14-1589:9. Cohen Figure 1 discloses an "HTTP server distributing unit" (20), which a person of ordinary skill in the art would understand to distribute data using the HTTP protocol. Ex. B, DTX-21, Fig. 1; Ex. D, Trial Tr. 1588:21-1589:1. Cohen confirms that "the communication between the UOD 16, the HTTP server 20, and the feeding unit 12 is via a TCP/IP communication protocol." Ex. B, DTX-21 at 6:16-19; Ex. D, Trial Tr. 1589:2-5. Therefore, Cohen discloses this limitation by clear and convincing evidence, and Emblaze did not dispute this at trial. Ex. D, Trial Tr. 1589:6-9.

**3.** **Cohen Discloses All Limitations of Claim 37.**

Cohen discloses claim 37, which depends from claims 25 and 36, and recites an "[a]pparatus according to claim 36, wherein the predetermined data size of each of the slices corresponds to a time duration of the slice." Specifically, Cohen discloses all limitations of independent claim 25, as well as the limitations of dependent claims 36 and 37.

**a.** **Claim 25: Cohen discloses all limitations of claim 25.**

As set forth in **Section II.C.2.a.** above, Cohen discloses each limitation of claim 25 for the same reasons it discloses the limitations of claim 1. Ex. D, Trial Tr. 1584:4-25, 1589:14-18.

**b.** **Claim 36: Cohen discloses an "[a]pparatus according to claim 25, wherein the data stream comprises multimedia data."**

Cohen discloses claim 36, because Cohen discloses a data stream comprising multimedia data. Ex. D, Trial Tr. 1589:21-1590:9. "Cohen, throughout, makes it clear that the presentations that are being streamed are multimedia presentations." Ex. D, Trial Tr. 1590:1-2. In Figure 1, Cohen shows a "multi-media presentation feeding unit" (10). Ex. D, Trial Tr. 1590:2-4. Cohen also states that an "object of the present invention is to provide substantially in real time multi-media presentations to at least one user UOD connected to the network." Ex. B, DTX-21 at 1:39-41; Ex. D, Trial Tr. 1590:4-7. Therefore, Cohen makes clear that its data streams are multimedia data streams, and Cohen discloses this limitation by clear and convincing evidence. Ex .D, Trial

Tr. 1590:8-9.  Emblaze did not dispute that Cohen discloses the limitation of claim 36 at trial.

        **c.**      **Claim 37:  Cohen discloses an "[a]pparatus according to claim 36, wherein the predetermined data size of each of the slices corresponds to a time duration of the slice."**

The limitation of claim 37 is the same limitation of claim 23, worded in a slightly different but immaterial way.  Ex. D, Trial Tr. 1590:14-22.  Therefore, Cohen discloses claim 37 for the same reasons Cohen discloses claim 23.  Ex. D, Trial Tr. 1590:23-1591:7.  Dr. Orchard testified that, if Cohen were found not to disclose this limitation, at the very least the practice of the limitation would be obvious to a person of ordinary skill in the art because "the most obvious way to practice [Cohen's] instructions" would be to practice the limitation of claim 37.  Ex. D, Trial Tr. 1591:8-18.   Dr. Madisetti did not dispute that this limitation would be obvious, except to incorporate his prior testimony about claim 23, during which he made conclusory statements that claim 23 was not obvious (Ex. D, Trial Tr. 1753:3-14; *see id.* at 1742:21-1743:3, 1752:22-24), which is not substantial evidence that could support the jury's invalidity verdict. *Iovate Health*, 586 F.3d at 1381-82.   Therefore, Cohen discloses this limitation by clear and convincing evidence.  Ex .D, Trial Tr. 1590:23-1591:18.

## IV.    APPLE IS ENTITLED TO JMOL OF INVALIDITY, BECAUSE COHEN COMBINED WITH AHARONI RENDERS OBVIOUS CLAIM 40 OF THE '473 PATENT.

Emblaze did not invent live streaming over the Internet.  Techniques for live streaming existed at the time Emblaze filed the '473 patent, as Dr. Orchard testified and as the '473 patent itself discloses.  Ex. D, Trial Tr. 1542:10-1543:10; Ex. C, PTX-1 at 1:14-40.  Emblaze did not invent streaming multiple quality levels either.  An August 1997 article called "SuperNOVA Project - DSTC Technical Report TR97" was one of many references to describe the numerous commercially available live streaming systems in the prior art, including systems that streamed multiple quality levels.  Ex. E, DTX-43 at 3 and Table 2 at 5-6; Ex. D, Trial Tr. 1543:16-1545:20.

Another reference to disclose streaming multiple quality levels is Aharoni.  Aharoni teaches making data streams of multiple quality levels available to clients over the Internet.  Ex. D, Trial Tr. 1595:21-24.  Figure 15 of Aharoni discloses sending different levels of compressed video (214) to different video servers (216), and that all of those levels would be available to a

-17-

video client (220) through the Internet (218). Ex. F, DTX-246, Fig. 15; Ex. D, Trial Tr. 1595:25-1596:18. Cohen does not disclose the limitation of claim 40, which requires encoding slices of the data stream "as a plurality of different quality levels." However, Cohen discloses all limitations of claim 25, from which claim 40 depends, and Aharoni discloses the extra limitation of claim 40. Thus, combining Cohen with Aharoni renders claim 40 obvious. Ex. D, Trial Tr. 1600:11-22.

### A. Aharoni Is Prior Art to the '473 Patent.

The application for the Aharoni patent was filed on June 26, 1997. Ex. F, DTX-246. The earliest priority date for the '473 patent is March 24, 1998, which is the foreign application priority date. Ex. B, PTX-1. Because the filing date of Aharoni precedes the earliest filing date of the '473 patent, Aharoni is prior art. Ex. D, Trial Tr. 1595:6-20. Emblaze did not dispute this at trial.

### B. Aharoni Discloses the Multiple Quality Level Limitation of Claim 40.

Emblaze did not dispute at trial that Aharoni discloses forming slices at more than one quality level, in accordance with the Court's construction of the limitation of claim 40. Ex. D, Trial Tr. 1597:2-6; Ex. F, DTX-246. Figure 5 of Aharoni discloses five different quality levels. Ex. D, Trial Tr. 1597:7-18; Ex. F, DTX-246, Fig. 5. Those five different quality levels go into the system described in Aharoni Figure 15. Ex. D, Trial Tr. 1597:8-12. The Abstract of Aharoni further discloses that "[d]epending on the channel bandwidth, the system adjusts the compression ratio" and that "[e]ach frame type is further comprised of multiple levels of data representing varying degrees of quality." Ex. F, DTX-246, Abstract; Ex. D, Trial Tr. 1597:13-18. In yet another disclosure, Aharoni describes that Figure 5 shows a "sample Key frame," which is a frame of video, and shows "each of its five levels of data of varying resolution and quality… ." Ex. F, DTX-246 at 10:50-57; Ex. D, Trial Tr. 1597:22-1598:7. Thus, Aharoni discloses the limitation of claim 40, which requires forming slices at more than one quality level. Ex. D, Trial Tr. 1597:19-21.

/////

/////

**C. A Person of Ordinary Skill in the Art Would Have Been Motivated to Combine Cohen With Aharoni, Rendering Claim 40 Obvious.**

Apple proved by clear and convincing evidence at trial—including the testimony of the Emblaze patent inventors—that a person of ordinary skill in the art would have been motivated to combine Cohen with Aharoni, rendering claim 40 obvious. Ex. D, Trial Tr. 1598:8-1600:22. Dr. Orchard identified at least two motivations to combine Cohen with Aharoni, neither of which was effectively disputed by Emblaze.

The first motivation to combine identified by Dr. Orchard was the testimony by '473 patent inventor Sharon Carmel that "the idea of adaptive bit rate, you know, was pretty much straightforward" and "a natural evolution." Ex. D, Trial Tr. 1598:20-1599:11, quoting Ex. A, Carmel Depo. Vol. 1 at 157:8-17 (also lodged at Dkt. 611, Ex. A). Mr. Carmel further testified that, "You know, why we didn't came – we did before, I don't know," explaining why Emblaze did not add multiple quality levels to its invention any earlier than it did. Ex. D, Trial Tr. 1599:11-14, quoting Ex. A, Carmel Depo. Vol. 1 at 157:8-17 (also lodged at Dkt. 611, Ex. A).

Indeed, Emblaze inventor Dror Ginzberg brought the idea of multiple quality levels with him from his work on a live streaming system at his prior employer, VDONet, between 1996 and 1998. Ex. G, Ginzberg Depo. at 10:3-20, 12:25-13:3 (also lodged at Dkt. 611, Ex. B). Mr. Ginzberg testified that, at VDONet, "the stream was encoded in multiple levels and transmitted to a server" and "the server could, in real time, transmit a different stream based on the estimated bandwidth of the client connected to it." *Id.* at 15:5-11; *see id.* at 16:7-11 (agreeing that, "out of the encoder, there were multiple streams at different bit rates").

Because Mr. Ginzberg did not come to Emblaze until June 1998, Emblaze's original live streaming prototype used at the White House Easter egg roll in April 1998 did not have multiple quality levels. Ex. A, Carmel Depo. at 114:25-115:11, 115:18-20 (also lodged at Dkt. 611, Ex. A). Notably, although Mr. Ginzberg's use of multiple quality levels travelled with him from his former employer to Emblaze after the Easter egg roll and was quickly combined with the existing Emblaze "invention," Mr. Carmel did not believe that Mr. Ginzberg's arrival was necessary to Emblaze's adoption of the prior art multiple quality level technique. Mr. Carmel testified,

"Would we have come up with that idea regardless of Dror Ginzberg? We probably would." Ex. D, Trial Tr. 1599:15-21, quoting Ex. A, Carmel Depo. Vol. 1 at 157:8-17 (also lodged at Dkt. 611, Ex. A). The idea of multiple quality levels was a "natural evolution" for the Emblaze invention—an obvious next step. Ex. D, Trial Tr. 1599:15-21.

The second motivation to combine identified by Dr. Orchard was that the Cohen patent describes that the data fed from the feeding unit can be compressed, and that the compression and decompression steps can be performed by any suitable compression algorithm. Ex. D, Trial Tr. 1599:22-1600:3. A person of ordinary skill in the art would understand what the suitable compression methods were for compressing the data streams. Ex. D, Trial Tr. 1600:4-7. Suitable compression methods include those disclosed in Aharoni, which have multiple quality levels, just like the many other multiple quality level systems disclosed in SuperNOVA. Ex. D, Trial Tr. 1600:8-10.

In sum, Apple proved by clear and convincing evidence that: (1) Aharoni disclosed the additional limitation of claim 40; (2) there were multiple motivations to combine Aharoni with Cohen; and (3) the system that a person of ordinary skill in the art would design to benefit from that combination would practice all of the limitations of claim 40 and the claim from which it depends. Ex. D, Trial Tr. 1600:11-20. Notably, Emblaze offered no proof whatsoever of any secondary considerations of non-obviousness to rebut Apple's clear and convincing proof of obviousness.

## V. APPLE IS ENTITLED TO A NEW TRIAL ON INVALIDITY.

If the Court decides against granting judgment as a matter of law that the Asserted Claims of the '473 patent are invalid, then Apple is entitled to a new trial on invalidity under Rule 59. At the very least, the jury's validity verdict is "contrary to the clear weight of the evidence," for all of the reasons discussed above. *Molski*, 481 F.3d at 729.

/////

/////

/////

/////

## VI. CONCLUSION

For the foregoing reasons, should the Court grant any motion for judgment as a matter of law filed by Emblaze (which it should not), Apple also requests that the Court grant judgment as a matter of law that the Asserted Claims of the '473 patent are invalid.

Dated:  August 8, 2014                    DLA PIPER LLP (US)


By: _/s/Mark Fowler_____
      Mark Fowler (Bar No. 124235)
      mark.fowler@dlapiper.com
      Robert Buergi (Bar No. 242910)
      robert.buergi@dlapiper.com
      DLA PIPER LLP (US)
      2000 University Avenue
      East Palo Alto, California 94303
      T: 650.833.2000
      F: 650.833.2001

      John Allcock (Bar No. 98895)
      john.allcock@dlapiper.com
      Erin Gibson (Bar No. 229305)
      erin.gibson@dlapiper.com
      Robert Williams (Bar No. 246990)
      robert.williams@dlapiper.com
      DLA PIPER LLP (US)
      401 B Street, Suite 1700
      San Diego, California 92101
      T: 619.699.2862
      F: 619.764.6662

      GREENBERG TRAURIG, LLP
      Sarah Barrows (SBN 253278)
      barrowss@gtlaw.com
      Stephen Ullmer (SBN 277537)
      ullmers@gtlaw.com
      GREENBERG TRAURIG, LLP
      4 Embarcadero Center, Suite 3000
      San Francisco, CA 94111-5983
      Telephone: (415) 655-1300
      Facsimile: (415) 707-2010

      James J. DeCarlo (Admitted *Pro Hac Vice*)
      decarloj@gtlaw.com
      Michael A. Nicodema (Admitted *Pro Hac Vice*)
      nicodemam@gtlaw.com
      GREENBERG TRAURIG, LLP
      MetLife Building
      200 Park Avenue, 34th Floor
      New York, New York 10166

Tel.: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Defendant Apple Inc.*