Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page1 of 20

MARTIN B. PAVANE (admitted pro hac vice)
LISA A. FERRARI (admitted pro hac vice)
ANDREW NEMIROFF (admitted pro hac vice)
MARILYN NEIMAN (admitted pro hac vice)
DARREN S. MOGIL (admitted pro hac vice)
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Telephone: (212) 883-4900
Facsimile: (212) 986-0604
Email: mpavane@cozen.com
lferrari@cozen.com
anemiroff@cozen.com
mneiman@cozen.com
dmogil@cozen.com

MARK V. ISOLA (SBN 154614)
REHON & ROBERTS
A Professional Corporation
830 The Alameda
San Jose, CA 95126
Telephone: (408) 494-0900
Facsimile: (408) 494-0909
Email: misola@rehonroberts.com

NATHAN DOOLEY (CA State Bar No. 224331)
COZEN O'CONNOR
601 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 892-7900
Toll Free Phone: (800) 563-1027
Facsimile: (213) 892-7999
Email: ndooley@cozen.com

*Attorneys for Plaintiff Emblaze Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

EMBLAZE LTD.,

Plaintiff,

v.

APPLE INC., a California Corporation,

Defendant.

CASE NO. 5:11-cv-01079-PSG

**PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**HEARING DATE: Sept. 30, 2014**
**TIME: 10:00 a.m.**

Before: Hon. Paul S. Grewal

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page2 of 20

# TABLE OF CONTENTS

Page

I. Argument ... 1

A. Emblaze Is Entitled To Judgment As A Matter Of Law ... 1

1. Emblaze Properly Moved For Judgment As A Matter Of Law Under Fed. R. Civ. P. 50(a) During Trial ... 1

2. No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "each slice having a predetermined data size associated therewith" Claim Limitation ... 2

a. Emblaze Did Not Waive The Right To Challenge The Court's Construction Of "each slice having a predetermined data size associated therewith" ... 4

3. No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "real-time broadcasting" Claim Limitation ... 5

a. Emblaze Did Not Waive The Right To Challenge The Court's Construction Of "real-time broadcasting" ... 7

4. No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate" Claim Limitation ... 7

5. Emblaze Offered A Limitation-By-Limitation Analysis For All Accused Streams ... 9

6. Emblaze Proved That MLB At Bat Infringes Claim 23 ... 10

7. The Court's Jury Instruction Concerning Infringement Of Apparatus Claims 28, 37 and 40 Was Improper ... 10

8. Emblaze Is Entitled To Judgment As A Matter Of Law On Induced Infringement ... 11

B. In The Alternative, Emblaze Is Entitled To A New Trial ... 13

1. Prejudice Of The Jury Foreman Toward Apple ... 14

2. Apple's Introduction Of Evidence Of Its Own Patents ... 14

II. CONCLUSION ... 15

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

i

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page3 of 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bio-Technology Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996)....................11, 14

*Broadcom Corp. v. Qualcomm, Inc.*,
543 F.3d 683 (Fed. Cir. 2008)....................15

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004)....................5

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004)....................13

*Cochran v. City of L.A.*,
222 F.3d 1195 (9th Cir. 2000) ....................2

*Coursen v. A.H. Robins Co., Inc.*,
764 F.2d 1329 (9th Cir. 1985) ....................4, 7, 10

*EEOC v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009) ....................2

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) ....................2

*Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*,
786 F.2d 1342 (9th Cir. 1985) ....................2

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
Case No.: 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012) ....................15

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)....................14

*Global-Tech Appliance, Inc. v SEB S.A.*,
131 S. Ct. 2060 (2011)....................12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
2:07-cv-00331-PMP-PAL, 2013 U.S. Dist. LEXIS 117190 (D. Nev. Aug. 16, 2013) ....................15

*Holland v. City of San Francisco*,
No. C10-2603 THE, 2013 U.S. Dist. LEXIS 179099 (N.D. Cal. Dec. 19, 2013) ....................2

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

ii

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page4 of 20

*Landes Constr. Co. v. Royal Bank of Can.*,
833 F.2d 1365 (9th Cir. 1987) ....................2

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007) ....................13

*Murphy v. Long Beach*,
914 F.2d 183, 186 (9th Cir. 1990) ....................13

*Nat'l Indus., Inc. v. Sharon Steel Corp.*,
781 F.2d 1545, 1549 (11th Cir. 1986) ....................2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................5

*Reeves v. Teuscher*,
881 F.2d 1495 (9th Cir. 1989) ....................2

*SanDisk Corp. v. Kingston Tech. Co.*,
695 F.3d 1348 (Fed. Cir. 2012)....................5

*United States v. Mitchell*,
568 F.3d 1147 (9th Cir. 2009) ....................14

*United States v. Necoechea*,
986 F.2d 1273 (9th Cir. 1993) ....................13

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
944 F.2d 870 (Fed. Cir. 1991)....................11, 14

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010)....................15

**Statutes**

35 U.S.C. § 112(d) ....................4

**Other Authorities**

Fed. R. Civ. P. 50....................1, 2, 7, 15

Fed. R. Civ. P. 59....................13, 15

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

iii

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page5 of 20

Plaintiff Emblaze Ltd. ("Emblaze") submits this Memorandum in reply to defendant Apple Inc.'s ("Apple") Opposition ("Opposition") (D.E. 636) to Emblaze's motion for judgment as a matter of law or, in the alternative, for a new trial ("Motion") (D.E. 628).

Emblaze properly moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) during trial and renewed that motion under Fed. R. Civ. P. 50(b) after trial. *See* D.E. 628. As explained in Emblaze's Motion, at trial, Emblaze established that the streams provided by MLB at Bat met all of the limitations of claim 23 and that the streams provided by MLB at Bat, ABC News, PGA, NFL Preseason, ESPN, Apple Keynotes and iTunes Festival (collectively, "Accused Streams") met all of the limitations of claims 28, 37 and 40 Emblaze's U.S. Patent No. 6,389,473 ("the '473 Patent").

The only evidence Apple introduced at trial in support of its non-infringement defense concerned three claim limitations, *i.e.*, (1) "each slice having a predetermined data size associated therewith"; (2) "real-time broadcasting"; and (3) "upload[] the sequence [of files] to a server," and as explained in Emblaze's Motion and below, there was no legally sufficient evidentiary basis for a reasonable jury to find that one or more of these limitations was lacking in the Accused Streams. Accordingly, the jury's verdict of no direct infringement must be overturned and Emblaze should be granted judgment as a matter of law on the issue of direct infringement.

For the reasons discussed in Emblaze's Motion and below, Emblaze is also entitled to judgment as a matter of law that Apple induced infringement of claims 23, 28, 37 and 40 of the '473 Patent.

In the alternative, and also for the reasons explained in Emblaze's Motion and below, Emblaze should be granted a new trial as the verdict was against the weight of the evidence and not fair to Emblaze.

## I. ARGUMENT

### A. Emblaze Is Entitled To Judgment As A Matter Of Law

#### 1. Emblaze Properly Moved For Judgment As A Matter Of Law Under Fed. R. Civ. P. 50(a) During Trial

Apple acknowledges that Emblaze made a Rule 50(a) motion at the close of evidence, but questions the sufficiency of that motion. Opposition, pp. 2-3. Contrary to Apple's argument,

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

1

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page6 of 20

Emblaze's Rule 50(a) motion was sufficient. Courts in the Ninth Circuit have consistently taken a liberal view of what suffices as a proper motion under Rule 50(a). *See Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1345-1347 (9th Cir. 1985). "Fed. R. Civ. P. 50(b) may be satisfied by an ambiguous or inartfully made [Rule 50(a)] motion for a directed verdict or by an objection to an instruction for insufficient evidence to submit an issue to the jury." *Reeves v. Teuscher*, 881 F.2d 1495 (9th Cir. 1989); *see also Farley Transp. Co.*, 786 F.2d at 1346-1347; *Holland v. City of San Francisco*, No. C10-2603 THE, 2013 U.S. Dist. LEXIS 179099, *4 (N.D. Cal. Dec. 19, 2013). Indeed, absent a liberal interpretation of what constitutes a sufficient Rule 50(a) motion, "the rule is a harsh one." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009), quoting *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986).

The motion for judgment as a matter of law made by Emblaze at the close of evidence (*see* Ex. 1 to the Gibson Decl. in support of Apple's Opposition, Trial Tr., 1789:16-24) was sufficient and Emblaze's present renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is, therefore, proper.[1]

2. <u>No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "each slice having a predetermined data size associated therewith" Claim Limitation</u>

The Court construed this limitation to mean "each slice having a data size, which may be established by setting a time duration of the slice, assigned in advance of the stream being divided." *See, e.g.*, D.E. 424, pp. 5-6. Apple acknowledges that "the Court's construction permits someone to utilize the time duration of a slice to predetermine a slice's data size" (Opposition, p. 9), and argues only that "the actual data size of each slice must be known in advance." *See, e.g.*, Opposition, p. 8. As explained in Emblaze's Motion, there is no such requirement in the '473 Patent or the Court's claim construction. *See also* Motion, pp. 4-8.

[1] Failure to move for judgment as a matter of law bars a party from later challenging the sufficiency of the evidence, not questions of law. *See, e.g., F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 962-963 (9th Cir. 2010) (finding that a motion for judgment as a matter of law need not be made to preserve challenge to issue of law on appeal); *Cochran v. City of L.A.*, 222 F.3d 1195, 1200 (9th Cir. 2000); *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1370 (9th Cir. 1987) ("As long as a party properly raises an issue of law before the case goes to the jury, it need not include the issue in a motion for a directed verdict in order to preserve the question on appeal").

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

2

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Consistent with this Court's claim construction, Emblaze demonstrated at trial that all of the content providers establish both (1) a time duration in advance of the stream being divided, and (2) a target data rate for each stream. Therefore, it cannot be disputed that the Accused Streams meet the "each slice having a predetermined data size associated therewith" limitation. As Emblaze's expert, Dr. Madisetti explained at trial, there is no requirement that the data sizes of the slices be the same. *See, e.g.*, Ex. B,[2] Trial Tr., 1893:24-1894:16. And as Dr. Madisetti also explained, the "predetermined data size associated therewith" is a target data size assigned to the slice before it is divided, so "you know what sort of data size it should belong to," and this should not be confused with the number of bits in the file corresponding to the slice, which may vary. Ex. B, Trial Tr., 539:8-12.

Apple argues that "nothing is ever done to predetermine or assign in advance any data size." Opposition, p. 8. But that is wrong. The data size of the slices is assigned in advance by setting at the encoder a target data rate and a time duration for each slice. *See, e.g.*, *id*.

Apple argues that "Emblaze's assertion that 'nothing in the Asserted Claims requires that the actual data size of each slice be known in advance' (Mot. at 4) is not only unsupported by the patent, it is contrary to the claim language . . . and the Court's construction." Opposition, p. 8. But, as explained in Emblaze's Motion, this Court in its Summary Judgment Order found that "the patent simply does not teach always assigning the exact number of bits prior to slice division. In fact, it teaches the opposite by describing one embodiment in which setting the time duration predetermines the data size of the slice." D.E. 424, p. 15. And, contrary to Apple's suggestion (Opposition, p. 8, citing Trial Tr. 1757:9-1758:9), Dr. Madisetti did not testify that the actual data size of the segments must be assigned in advance. Rather, Dr. Madisetti testified that the data size can be established by assigning a time duration to the slices:

> Q. The data size has to be assigned in advance; true? That's what it says, right?

---

[2] References to Exhibits A-R herein are to the exhibits attached to the Ferrari Declaration (D.E. 628-1) submitted with Emblaze's Motion.

> A. It says here that it can be established by time duration, and using the time duration, you are essentially establishing a data size that's associated with the slice.

Ex. 1 to the Gibson Decl. in support of Apple's Opposition, Trial Tr., 1757:21-25.

Apple's argument that Emblaze is "asserting that the predetermined slice duration requirement of dependent claim 23 somehow obviates the separate claim 1 requirement of predetermining the data size of the slice" is also wrong. Opposition, p. 9. Claim 23 depends from claim 1 and adds the limitation "wherein dividing the stream into the sequence of slices comprises dividing the stream into a sequence of time slices, each having a predetermined duration associated therewith," *i.e.*, claim 23 recites one way in which the "dividing the stream into a sequence of slices, each slice having a predetermined data size associated therewith" limitation of claim 1 can be met. *See* 35 U.S.C. § 112(d) ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed").

For the reasons explained above and in Emblaze's Motion, the evidence presented at trial could lead to only one reasonable conclusion, *i.e.*, that implementation of the Accused Streams meets the "each slice having a predetermined data size associated therewith" limitation. For this reason, *i.e.*, because no reasonable jury could have found that this claim limitation was not met, the jury's verdict finding no direct infringement of the Asserted Claims cannot be sustained on the ground that the Accused Streams do not meet this claim limitation.

a. <u>Emblaze Did Not Waive The Right To Challenge The Court's Construction Of "each slice having a predetermined data size associated therewith"</u>

To the extent that this Court finds there was sufficient evidence under the Court's claim construction to support a finding that implementation of the Accused Streams meets the "each slice having a predetermined data size associated therewith" limitation, the jury's finding of no direct infringement of the Asserted Claims cannot be sustained because this Court incorrectly charged the jury as to the meaning of this claim term. *See Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1337 (9th Cir. 1985) ("An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless").

Apple's argument that Emblaze waived the right to contest the Court's claim construction is wrong. Emblaze did not "explicitly agree[] with the Court's amended construction." Opposition, p. 9. At the time of the hearing concerning Apple's motion for reconsideration (D.E. 356), the parties were discussing a clarification of the Court's earlier claim construction Order (D.E. 169), in which the Court had rejected Emblaze's originally proposed construction. Courts have repeatedly held that a party is not required to continuously contest a Court's claim construction to preserve the right to challenge the construction on appeal. *See SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1355 (Fed. Cir. 2012) ("Nor was SanDisk required to repeat its unsuccessful construction arguments to the district court during summary judgment to preserve the issue for appeal"); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1358-59 (Fed. Cir. 2008) (finding that party did not waive right to challenge claim construction on appeal when it had advanced the argument during *Markman* proceedings but did not object to the district court's jury instruction on that claim construction); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004) (same).

Thus, the fact that Emblaze did not again propose its original construction upon Apple's motion for reconsideration did not waive Emblaze's right to contest the Court's construction of the "each slice having a predetermined data size associated therewith" claim term.

Under Emblaze's proposed claim construction -- which for the reasons set forth in Emblaze's opening and reply claim construction briefs (D.E. 111 and D.E. 127) should have been adopted by this Court -- the only reasonable conclusion from the evidence presented at trial and discussed above is that implementation of all of the Accused Streams met the "each slice having a predetermined data size associated therewith" limitation.

3. <u>No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "real-time broadcasting" Claim Limitation</u>

Apple asserts that it is not Apple's position that this claim limitation requires simultaneous reception by clients, yet Apple continues to argue that it "presented substantial evidence that there is no simultaneous transmission of data to clients" and that "HLS purposefully was designed so that the <u>servers</u> do not transmit data simultaneously <u>to clients</u>." Opposition, p. 10 (emphasis added). While

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page10 of 20

the claim language and the Court's construction include the words "to one or more client[s]," there is no requirement in the Court's construction that the clients receive the data simultaneously. As Dr. Madisetti explained:

> So in all the systems that analyzed [sic], you're transmitting to multiple clients at the same time because there's one video source sitting in the stadium, there's one video encoder sitting there transmitting to millions. That is simultaneous transmission.

Ex. B, Trial Tr., 710:11-15.

Apple's misunderstanding of the "real-time broadcasting" limitation is further illustrated by Apple's reliance on the transmission from the server to the clients. The claim language makes clear that the "real-time broadcasting" is from the transmitting computer, and the Court's construction is consistent with the unambiguous claim language.

Apple's further argument that the Accused Streams do not infringe because there is a latency or lag time ignores both the Court's claim construction and the '473 Patent specification. The Court's construction of "real-time broadcasting" to mean "simultaneous transmission of data to one or more clients matching the human perception of time or proceeding at the same rate as a physical or external process" (D.E. 169) allows for a lag time between the live occurrence of the streamed event and receipt of the stream by the end user. And as explained in Emblaze's Motion and at trial, the '473 Patent recognizes that a lag time is not only permissible, but is required:

> When one of computers 30 connects to server 36 and begins to download the data stream, it first reads the index file in order to identify at what point in stream 40 to begin and to start receiving the data stream substantially in real time, preferably with only a minimal lag, as it is transmitted from computer 34. Alternatively, a user of one of computers 30 may choose to begin downloading data stream 40 from an earlier point in time than that indicated by ID 52.

Ex. A, PTX-1, 8:1-9; *see also* PTX-1, 7:4-17; 8:32-41.

Although Emblaze cited the above-quoted passage from the '473 Patent in its Motion, Apple's Opposition simply ignores it. In fact, Apple never explains the basis in the Court's claim construction for Apple's position that there can be no lag time in a "real-time broadcasting" system, which is not surprising as no such basis exists.

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

6

*Emblaze Ltd. v. Apple, Inc.,*
Case No. 5:11-CV-01079-PSG

For the reasons explained above and in Emblaze's Motion, the evidence presented at trial could lead to only one reasonable conclusion, *i.e.*, that implementation of all of the Accused Streams met the "real-time broadcasting" limitation of the claims. *See* Ex. B, Trial Tr., 454:14-666:9; 698:28-768:2; 710:11-15; 1488:13-22; 409:19-20, 443:6-7 (during which 263:17-264:1 and 166:2-15 from Ex. D, Mr. Inzerillo's August 23, 2013 deposition, were played); Ex. A, PTX-1, 8:1-9, 7:4-17; 8:32-41; D.E. 169. Because no reasonable jury could have found that this claim limitation was not met, the jury's verdict finding no direct infringement of the Asserted Claims cannot be sustained on the ground that the Accused Streams do not meet this claim limitation.

a. Emblaze Did Not Waive The Right To Challenge The Court's Construction Of "real-time broadcasting"

To the extent that this Court finds there was sufficient evidence under the Court's claim construction to support a finding that implementation of the Accused Streams meets the "real-time broadcasting" limitation, the jury's finding of no direct infringement of the Asserted Claims cannot be sustained because this Court incorrectly charged the jury as to the meaning of this clam term. *See Coursen*, 764 F.2d at 1337.

Apple argues that Emblaze waived the right to challenge the Court's construction of "real-time broadcasting" because Emblaze did not make a Rule 50(a) motion on that ground. But as explained above, there is no requirement that a party make a Rule 50(a) motion challenging a Court's claim construction, provided it had argued earlier for a different construction. *See* cases cited *supra* at page 5.

Under Emblaze's proposed claim construction -- which for the reasons set forth in Emblaze's opening and reply claim construction briefs (D.E. 111 and D.E. 127) should have been adopted by this Court -- the evidence presented at trial and discussed above clearly established that implementation of all of the Accused Streams met the "real-time broadcasting" limitation.

4. No Reasonable Jury Could Find That The Accused Streams Do Not Meet The "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream, such that the one or more client computers can download the sequence over the network from the server at a download rate generally equal to the data rate" Claim Limitation

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page12 of 20

As explained in Emblaze's Motion (*see, e.g.*, Motion, p. 12), implementation of the Accused Streams includes "uploading" a sequence of files to a server and downloading that sequence of files by end users from the same server.

Apple asserts that the sequence of files must be downloaded by a client directly from the same server to which the sequence was uploaded. *See* Opposition, pp. 12-13. However, the addition of other servers, *e.g.*, edge servers, does not alter the fact that the sequence is downloaded from the same server to which the sequence is uploaded. The Court's construction of the Asserted Claims recognizes that the download is performed "over the network," *e.g.*, a content delivery network ("CDN"), such as Akamai's CDN. *See, e.g.*, Motion, pp. 11, 15. As explained in Emblaze's Motion (*see* Motion, pp. 11-16), the claims do not require that the download to the end user be directly from the server to which the sequence has been uploaded, *i.e.*, there may be intermediate servers. *See* Ex. A, PTX-1, '473 Patent, claims 1 and 25 (from which the Asserted Claims depend), 14:18-32, 15:63-16:9; D.E. 169; *see also* Ex. B, Trial Tr., 1875:12-1876:8. And it is axiomatic that infringement is not avoided by adding elements to an otherwise infringing system/method. *See, e.g.*, Motion, pp. 11-12.

Apple argues that "Emblaze's motion ignores the substantial evidence that the Akamai intermediate files are substantially different than the HLS segments because, for example, the Akamai intermediate files are in a proprietary Akamai format and are never sent to client devices, and because the intermediate files for a given stream have different time durations" (Opposition, pp. 14-15).[3] But the '473 Patent claims and the Court's construction allow for different time durations, as long as the durations are assigned in advance. *See, e.g.*, Ex. A, claim 23 and Fig. 7. And Akamai's corporate representative, Christopher Knox, testified that that is what Akamai does. *See, e.g.*, Motion, pp. 13-15; Ex. 1 to the Gibson Decl. in support of Apple's Opposition, Trial Tr., 1351:20-22. Apple also ignores the unchallenged testimony that the target segment time duration for all the Accused Streams was five or ten seconds. *See, e.g.*, Ex. B, Trial

[3] The ABC News and PGA streams are the only Accused Streams that use the Akamai RTMP architecture.

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

8

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Tr., 662:22-663:11. Apple's argument also ignores that the claims require only that the same sequence is uploaded and downloaded, regardless of whether the file "format" is changed prior to download from Akamai's intermediate file format to an HLS format. The evidence at trial could lead to only one reasonable conclusion, *i.e.*, the same sequence that *is* uploaded is also downloaded. *See, e.g.*, Ex. B, Trial Tr., 1876:20-25; 1879:3-24. *See also* Ex. B, Trial Tr., 409:10-11 (during which 74:11-75:14 from Ex. C, Mr. Knox's August 29, 2013 deposition, was played); Motion, pp. 13-16.

Accordingly, for the reasons explained in Emblaze's Motion and above, the evidence adduced at trial could lead to only one reasonable conclusion, *i.e.*, that implementation of the Accused Streams includes "uploading" a sequence of files to a server and downloading that same sequence of files by end users from the server over a network, and consequently that this limitation is met by all of the Accused Streams. *See* Ex. B, Trial Tr., 454:14-666:9; 698:28-768:2; 1451:3-1452:16; 409:19-20, 443:6-7 (during which 80:8-82:6 and 82:21-83:5 from Ex. D, Mr. Inzerillo's August 23, 2013 deposition, were played); 409:10-11 (during which 70:18-73:20 from Ex. C, Mr. Knox's August 29, 2013 deposition, was played); Ex. G, PTX-162; Ex. H, PTX-163. For this reason, *i.e.*, because no reasonable jury could have found that this claim limitation was not met, the jury's verdict finding no direct infringement of the Asserted Claims cannot be sustained on the ground that the Accused Streams do not meet this claim limitation.

5. Emblaze Offered A Limitation-By-Limitation Analysis For All Accused Streams

Apple argues that Emblaze did not provide a limitation-by-limitation analysis for any of the accused streams other than MLB At Bat. *See* Opposition, p. 16. This is simply not true. *See e.g.*, Ex. B, Trial Tr., 601:17-630:9. Based on his Wireshark analysis of all streams, Dr. Madisetti testified that the analysis for MLB At Bat was the same as the analysis for the other content providers. *See, e.g.*, Ex. B, Trial Tr., 607-17-19; 616:12-14. Apple did not challenge that analysis. In addition, Dr. Madisetti also explained in painstaking detail, for each limitation, how the HLS protocol (which is followed by all of the accused content providers) necessitates an implementation which meets the limitations of the claims. *See, e.g.*, Ex. B, Trial Tr., 454:14-630:9.

6. Emblaze Proved That MLB At Bat Infringes Claim 23

Apple argues that MLB At Bat does not directly infringe claim 23 because direct infringement of a method claim requires the practice of each step of the method by a single party. *See* Opposition, pp. 16-17. While this is a correct statement of the law, Emblaze did establish that only one party -- MLB Advanced Media -- practices all the steps of claim 23.

Apple first points to testimony from Dr. Madisetti who "relied on MLB's use of a Cisco media processor as allegedly practicing the 'transmitting computer' limitations of claim 1." Opposition, p. 16. But Dr. Madisetti's testimony is clear. It is MLB -- not Cisco -- that is "using" the Cisco Media Processor. *See, e.g.*, Ex. B, Trial Tr., 508:2-512:13; 644:1-645:9. Indeed, MLB's corporate representative, Joseph Inzerillo, testified that MLB does the encoding:

> Q. Is it fair to say that MLBAM did its own encoding, though?
> A. Yes, we do our own encoding.
> Q. Did MLB ever use any third parties to do their encoding?
> A. No.

*See* Ex. B, Trial Tr. 409:19-20, 443:6-7 (during which 67:2-7 from Ex. D, Mr. Inzerillo's August 23, 2013 deposition, was played).

Apple also argues that the "server" limitation in Claim 1 is handled by a third party, *i.e.*, Akamai. That is simply not true; the evidence at trial established that MLB uploads the encoded stream to an HTTP server owned and operated by MLB. *See* Ex. B, Trial Tr., 484:24-485:19; 560:22-561:9; 564:25-565:7; 701:24-707:14; 409:19-20, 443:6-7 (during which excerpts from Ex. D, Mr. Inzerillo's August 23, 2013 deposition, were played). Therefore, the evidence at trial unequivocally established that all of the steps of claim 1 are performed by one party: MLB, and no reasonable jury could have found otherwise.

7. The Court's Jury Instruction Concerning Infringement Of Apparatus Claims 28, 37 and 40 Was Improper

Contrary to Apple's argument (*see* Opposition, pp. 17-18), for the reasons explained in Emblaze's Motion (*see* Motion, pp. 16-17), the jury instruction concerning infringement of apparatus claims 28, 37 and 40 was improper, and for this reason the jury's verdict of no direct infringement of claims 28, 37 and 40 cannot be sustained. *See Coursen*, 764 F.2d at 1337.

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page15 of 20

8. Emblaze Is Entitled To Judgment As A Matter Of Law On Induced Infringement

For the above reasons and those explained in Emblaze's Motion, no reasonable jury could have found that Emblaze did not prove direct infringement at trial.

Furthermore, for the reasons explained in Emblaze's Motion, the evidence adduced at trial, when viewed in a light most favorable to Apple, allowed only one reasonable conclusion, *i.e.*, that on and after October 29, 2009, Apple was aware of the '473 Patent, that Apple's acts induced direct infringement of claims 23, 28, 37 and 40 of the '473 Patent, that Apple knew that the conduct it was inducing constituted infringement of the '473 Patent, and that Apple specifically intended that the Accused Streams infringe claims 23, 28, 37 and 40 of the '473 Patent. Motion, pp. 17-22.

As evidence of Apple's (1) lack of knowledge that the induced acts constituted infringement, (2) lack of specific intent to cause infringement of the '473 Patent, and (3) good-faith belief of non-infringement/invalidity, Apple first argues that "Apple engineers . . . developed HLS from scratch without any reference to or knowledge of either the '473 patent or Emblaze's technology." Opposition, p. 19. But even if all of that were true, it has no bearing on whether Apple intended that third parties infringe the '473 Patent after Apple had knowledge of the '473 Patent.

Apple next argues that "Apple obtained patents on the inventive core HLS technology." *Id.* But that too is immaterial; Apple's own patents are no defense to patent infringement, and have no bearing on whether Apple intended that third parties infringe. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991) ("it is well-established that the existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell"); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (same).

Apple also argues that "HLS users have substantial freedom in how to design their back-end system." Opposition, p. 19. But as explained in Emblaze's Motion, Apple took affirmative steps to encourage direct infringement, and no reasonable jury could have found otherwise. As Dr. Madisetti testified, "Apple has encouraged third parties to practice all the limitations of the asserted claims by

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

11

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page16 of 20

distributing the literature, such as the Apple Overview [*i.e.*, "HTTP Live Streaming Overview"] and the [IETF] specification." Ex. B, Trial Tr., 639:11-14; *see also* Ex. J, PTX-23; Ex. G, PTX-162; Ex. H, PTX-163. Dr. Madisetti further testified that Apple has "described how to implement an HLS compliant system," "sold Apple client devices that can play these multimedia live sequences using the HLS standard," and "worked with content providers, such as MLB, and discussed technology with them and how to implement the system to work out the problems." Ex. B, Trial Tr., 639:15-20. *See also* Ex. B, Trial Tr., 454:14-630:9; 400:15-16, 401:7-8, 402:8-9 (during which 53:4-54:20 from Ex. E, Mr. Pantos' August 13, 2013 deposition, was played). None of this testimony was challenged at trial, nor could it have been. Moreover, as explained in Emblaze's Motion (*see* Motion, p. 13), only two methods were presented at trial for the "back-end" system; the method used, for example, by MLB at Bat, and the method which Apple referred to as the Akamai RTMP architecture. *See*, *e.g.*, Ex. B, Trial Tr., 1740:8-16. Emblaze established that both methods are within the scope of the Asserted Claims. *See*, *e.g.*, Ex. B, Trial Tr., 459:12-630:9; 1740:8-1741:17; 409:10-11 (during which 70:18-73:20 from Ex. C, Mr. Knox's August 29, 2013 deposition, was played). The jury, therefore, did not have a legally sufficient evidentiary basis to find that the Accused Streams did not infringe the Asserted Claims because of the way the content providers implemented their "back-end."

Apple next argues that "neither Mr. Pantos, Mr. Biderman nor Mr. May knew that HLS users were infringing the '473 patent or intended anyone that anyone do so." Opposition, p. 19. This argument ignores common sense. Mr. Pantos, Mr. Biderman and Mr. May are Apple engineers, not patent lawyers. And Messrs. Pantos, Biderman and May testified that they never read the '473 Patent, so they could not possibly have made an informed decision that Apple did not intend for anyone else to infringe. *See* Ex. B, Trial Tr., 1149:17-18; 1288:17-20; 1332:5-7. The subjective opinions of Mr. Pantos, Mr. Biderman and Mr. May are simply irrelevant. It is the knowledge and intent of the defendant, *i.e.*, Apple, that is relevant, and as is evident from Apple's conduct, Apple had the requisite knowledge and intent to induce infringement of the '473 Patent. *See, e.g.*, Motion, pp. 18-22; *Global-Tech Appliance, Inc. v SEB S.A.*, 131 S. Ct. 2060, 2068, 2070 (2011).

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

12

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Apple also argues that "Apple in-house counsel sent three pre-suit letters to Emblaze's outside counsel identifying reasons why Apple did not infringe the patent and why the patent is invalid." Opposition, p. 19. But the arguments asserted in the pre-suit letters are different from those asserted by Apple at trial. *See, e.g.*, Exs. 5-7 to the Gibson Decl. in support of Apple's Opposition. And Apple never produced a non-infringement or invalidity opinion from outside counsel, a relevant factor in the induced infringement analysis.

Finally, Apple argues that "Apple defended itself at trial on meritorious non-infringement and invalidity defenses." Opposition, p. 19. But Apple's defenses at trial do not establish that Apple lacked the requisite knowledge and intent when Apple learned of the '473 Patent, as Apple's defenses relied upon a misreading of the Court's claim constructions as explained in Emblaze's Motion and above.

The evidence adduced at trial (*see, e.g.*, Motion, pp. 17-22), even when viewed in a light most favorable to Apple, leads to only one reasonable conclusion, *i.e.*, that Apple induced infringement of the '473 Patent. Accordingly, Emblaze is entitled to judgment as a matter of law that Apple induced infringement of the Asserted Claims.

**B. <u>In The Alternative, Emblaze Is Entitled To A New Trial</u>**

For the reasons explained above and in Section II of Emblaze's Motion, the jury's verdict was against the weight of the evidence and, for this reason, Emblaze is entitled to a new trial. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (Grounds for a new trial under Fed. R. Civ. P. 59 include, but are not limited to, instances where "the verdict is against the weight of the evidence, [] the damages are excessive, or [] for other reasons, the trial was not fair to the party moving"); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004), citing *Murphy v. Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990); *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993).

As also explained in Emblaze's Motion, Emblaze is also entitled to a new trial because of: (1) prejudice of the jury foreman against Emblaze and in favor of Apple; and (2) this Court's ruling during the trial allowing Apple to introduce evidence of its own patents over Emblaze's objection.

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page18 of 20

1. Prejudice Of The Jury Foreman Toward Apple

Apple cites *United States v. Mitchell*, 568 F.3d 1147, 1151 (9th Cir. 2009) for the proposition that a party may demonstrate implied bias by showing that "the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." Opposition, p. 20. For the reasons explained in Emblaze's Motion, the relationship between juror number 8 and Apple would indeed make it "highly unlikely that the average person [in juror number 8's position] could remain impartial in his deliberations under the circumstances."

2. Apple's Introduction Of Evidence Of Its Own Patents

Apple argues that the Court did not err in admitting evidence of Apple's own patents because Apple's patents are relevant: (1) to damages; (2) non-infringement; and (3) specific intent for induced infringement; and because the Court gave an instruction to the jury concerning Apple's patents.

Concerning damages, one of the *Georgia-Pacific* factors for determining a reasonable royalty is "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Accordingly, Apple was free to argue at trial that its accused devices also include features not covered by Emblaze's '473 Patent. But the fact that Apple has patents concerning those features is immaterial to that argument. Moreover, Apple did not offer any testimony mapping any of the claims of the Apple patents to Apple's devices or HLS technology, and, therefore, Apple should not have been permitted to argue that the Apple patents cover Apple's devices or HLS technology.

Concerning non-infringement, as noted above, Apple's patents do not provide a defense to patent infringement. *See Vaupel*, 944 F.2d at 879 n.4; *Bio-Technology*, 80 F.3d at 1559 (same).

Concerning specific intent for induced infringement, as explained in Plaintiff Emblaze Ltd.'s Bench Brief Concerning Apple Inc.'s Use Of Its Own Patents As A Defense To Infringement (D.E.

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

14

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page19 of 20

583, pp. 2-3), case law cited by Apple finding that a party's own patents may be relevant to the issue of willfulness is not relevant here, as willfulness was not at issue, and the Federal Circuit has held that the intent necessary to establish inducement is different from the intent necessary to establish willfulness. *See Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010) ("However, the legal standards for willfulness and inducement, such as the requisite intent, are not identical"); *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (same); *see also Fujitsu Ltd. v. Belkin Int'l, Inc.*, Case No.: 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 2:07-cv-00331-PMP-PAL, 2013 U.S. Dist. LEXIS 117190 (D. Nev. Aug. 16, 2013). For Apple's own patents to be relevant to Apple's intent to induce infringement, Apple would have to have argued that it believed its patents gave Apple the right to practice the technology claimed in those patents -- an argument that a company with Apple's sophistication could not make. And as noted above, Apple did not offer any testimony mapping any of the claims of the Apple Patents to Apple's devices or HLS technology.

Although the Court gave the jury an instruction concerning the relevance of Apple's patents, the introduction of Apple's patents at trial still unfairly prejudiced Emblaze, as it permitted the jury to draw the inference that Apple had the right to practice HLS technology that infringes Emblaze's '473 Patent.

## II. CONCLUSION

For the reasons stated herein and in Emblaze's Motion, Emblaze respectfully requests that this Court (a) enter judgment as a matter of law in favor of Emblaze pursuant to Fed. R. Civ. P. 50(b) on the issues of direct infringement and induced infringement, or (b) in the event the Court does not grant Emblaze judgment as a matter of law on the issue of direct infringement, grant Emblaze a new trial pursuant to Fed. R. Civ. P. 59.

Respectfully Submitted,

DATED: August 29, 2014

REHON & ROBERTS
COZEN O'CONNOR

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

15

*Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG

Case5:11-cv-01079-PSG Document642 Filed08/29/14 Page20 of 20

By: /s/ Martin B. Pavane
Martin B. Pavane *(admitted pro hac vice)*

*Attorneys for Plaintiff Emblaze Ltd.*

LEGAL\20255704\3

PLAINTIFF EMBLAZE'S MEMORANDUM IN REPLY TO APPLE INC.'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

16

*Emblaze Ltd. v. Apple, Inc.*,
Case No. 5:11-CV-01079-PSG